**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311 <br> Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS CASES** | |
| **THIS RELATES TO:** <br><br> **ALL DEALERSHIP ACTIONS AND ALL END-PAYOR ACTIONS** | W:12-cv-00102-MOB-MKM <br> W:12-cv-00103-MOB-MKM |

**END-PAYOR AND AUTOMOBILE DEALER PLAINTIFFS' RESPONSE TO**
**DEFENDANTS TRAM, INC. AND TOKAI RIKA CO., LTD'S**
**MOTION TO DISMISS ALL ACTIONS**

## TABLE OF CONTENTS

COUNTERSTATEMENT OF ISSUES PRESENTED.................................................iii

CONTROLLING AUTHORITIES...............................................................iv

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................... 2

    A.   The Standard of Review............................................................... 2

    B.   The Complaints' Allegations Are Sufficient ................................. 3

    C.   The Tokai Rika Defendants Cannot Cherry Pick Allegations ........... 7

    D.   The Complaints Are Sufficient Against Both Parent and Subsidiary Defendants.............. 9

CONCLUSION.......................................................................................... 10

2402814v1/012878

## <u>TABLE OF AUTHORITIES</u>

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)...................................................................2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................................*passim*

*Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2008)...........................4

*Conley v. Gibson,* 355 U.S. 41 (1957).............................................................................................2

*Cupp v. Alberto-Culver USA, Inc*., 310 F. Supp. 2d 963 (W.D. Tenn. 2004)..................................5

*Hyland v. Homeservices of America, Inc.*, 2007 WL 2407233 (W.D. Ky. Aug. 17, 2007)..............3

*In re Air Cargo Shipping Srvcs. Antitrust Litig.*,2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009).....4

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363 (E.D. Pa. 2008)..............3

*In re Southeastern Milk*, 555 F. Supp. 2d 934 (E.D. Tenn. 2008)...................................................3

*In re Title Ins. Antitrust Cases,* 702 F. Supp. 2d 840 (N.D. Ohio 2010)..........................................5

*In re Vitamins Antitrust Litig.*, 2000 WL 1475705 (D.D.C. May 9, 2000)......................................4

*Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009)...................2

*Phillips v. Cnty.Of Allegheny*, 515 F.3d 224 (3d Cir. 1998).............................................................2

Fed. R. Civ. P. 8............................................................................................................................2

2402814v1/012878

## COUNTERSTATEMENT OF ISSUES PRESENTED

1.      Whether the End-Payors Corrected Consolidated Amended Class Action Complaint (Dkt No. 174) ("EP Compl.") and the Automobile Dealers Consolidated Class Action Complaint (Dkt. No. 85) ("AD Compl.") (collectively the "Complaints") Satisfy the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), where the Complaints allege:

- raids conducted by the United States Department of Justice ("DOJ"), with the assistance of the Federal Bureau of Investigations ("FBI") and pursuant to search warrants, on the offices of certain defendants, including Defendant TRAM, Inc.'s office in Plymouth, MI;

- guilty pleas of both defendant companies and company executives to antitrust violations;

- guilty plea agreements that admit the existence of illegal contracts, combinations, or conspiracies between defendants and additional unknown parties;

- pricing of automotive parts that cannot be explained by market forces;

- a market structure conducive to collusion; and

- specific opportunities for the defendants to meet, collude and facilitate conspiratorial conduct?

2.      Whether Defendant TRAM, Inc.'s motion to dismiss its parent company, Defendant Tokai Rika, Ltd., should be denied because the Complaints' allegations are sufficient and should be deferred as premature to allow for discovery?

## CONTROLLING AUTHORITIES

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

*Cupp v. Alberto-Culver USA, Inc*., 310 F. Supp. 2d 963 (W.D. Tenn. 2004)

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363 (E.D. Pa. 2008)

*In re Title Ins. Antitrust Cases,* 702 F. Supp. 2d 840 (N.D. Ohio 2010)

Federal Rule of Civil Procedure 8

iv

The End-Payor and Automobile Dealer Indirect Purchaser Plaintiffs ("Plaintiffs") submit this Memorandum of Law in Response to Defendants TRAM, Inc. and Tokai Rika, Ltd.'s (collectively "Tokia Rika Defendants") Motion to Dismiss All Actions.

## INTRODUCTION

As the Court is aware, and as Plaintiffs have outlined in detail in their Complaints, numerous investigations, actions, and criminal proceedings involving antitrust violations by defendant auto part manufacturers, including the Tokia Rika Defendants, are proceeding around the globe. In the United States alone, the DOJ's ongoing investigation has resulted in at least *five* guilty pleas on behalf of auto part manufacturers and numerous guilty pleas on behalf of auto part manufacturer executives.

On February 23, 2010, the DOJ executed a search warrant and raided the Tokai Rika Defendants' offices located in Plymouth, Michigan. Issuance of the warrant required a Federal District Court Judge or Magistrate Judge to find probable cause that evidence of a criminal violation in the automobile part industry would be found at the Defendants' offices. Refusing to come to grips with this fact and ignoring the substantive allegations in the Complaints, Defendants seek dismissal, arguing that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) imposes a "plausibility" standard that has not been met. As movants, Defendants have not met their burden to support the dismissal of Plaintiffs' Complaints and their Motion to Dismiss should be denied.

1

**ARGUMENT**

**A.     The Standard of Review**

The "notice pleading" standard of Federal Rule of Civil Procedure 8 was not displaced by *Twombly*, and its application is still valid in antitrust cases.[1]  In *Twombly* the Supreme Court reaffirmed that Rule 8, "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' " and that this standard does not require "detailed factual allegations."  *Twombly,* 127 S.Ct. at 1964 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99).  Further, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  *Id.*; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

In antitrust cases, where the plaintiff alleges an illegal agreement, "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; but simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Twombly* at 556.[2]

In applying *Twombly*, the Sixth Circuit has reaffirmed that courts must "construe the Complaint in the light most favorable to Plaintiffs and accept all allegations as true."  *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009).  Further, a motion

---

[1]*See, e.g. Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231  (3d Cir. 1998)(noting that under *Twombly*, notice pleading is "still the rule" and "requires only a short and plain statement of the claim showing that the pleader is entitled to relief.")

[2]Unlike the facts here, in *Twombly* there was no plausible conspiracy to engage in anticompetitive conduct.  The best that the *Twombly* plaintiffs could allege was "parallel conduct" by defendants that gave rise to an inference of a conspiracy.  As the Court explained, the *Twombly* complaint "failed to set forth a single fact that suggested an agreement."  550 U.S. at 561-562.  Even so, the Court recognized that the allegation of "parallel conduct . . . gets the complaint close to stating a claim" but that by itself it did not "nudge claims across the line from conceivable to plausible." *Id.* at 556-57.  The *Twombly* plaintiffs lacked facts that are detailed in the present Complaint, including specific allegations of collusion, admissions of anticompetitive agreement, DOJ investigations, indictments, and guilty pleas.

to dismiss should be denied if "factual allegations [are] enough to raise a right to relief above a speculative level" and that "the claim to relief is plausible on its face." *Id.*

## B.    The Complaints' Allegations Are Sufficient

In this case, Plaintiffs have more than met their pleading burden under Rule 8, as well as *Twombly* and its progeny.  Plaintiffs' Complaints contain numerous, detailed factual allegations concerning the Tokai Rika Defendants and the conspiracy in which Plaintiffs allege they participated.  Taken together, Plaintiffs' factual allegations establish a plausible conspiracy in which the Tokai Rika Defendants joined.  These allegations include, without limitation:

> ➢ Defendant Tokai Rika, Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – "manufactured, marketed and/or sold automotive Wire Harness Systems that were purchased throughout the United States." .EP Compl. ¶ 115; AD Compl. ¶ 122;

> ➢ Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. is a Michigan Corporation with its principal place of business in Plymouth, Michigan. It is a subsidiary of and wholly owned and/or controlled by its parent Tokai Rika, Ltd. During the Class Period, Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. manufactured, marketed and/or sold Automotive Wire Harness Systems that were purchased throughout the United States.  EP Compl. ¶ 116; AD Compl. ¶ 121;

> ➢ "Defendants [collectively] and their co-conspirators supplied Automotive Wire Harness Systems to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere.  Defendants and their co-conspirators manufactured Automotive Wire Harness Systems (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in vehicles manufactured and sold

3

in the United States, and (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States."  EP Compl. ¶ 140;

➤ "Defendants and the co-conspirators supplied Automotive Wire Harness Systems to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere. Defendants and their co-conspirators manufactured Automotive Wire Harness Systems (a) in the United States (including in all of the states having laws permitting recovery of damages by indirect purchasers, as listed infra), for installation in vehicles manufactured and sold in the United States (including all of the states having laws permitting recovery of damages by indirect purchasers as listed infra), (b) in Japan, and possibly other countries, for export to the United States (including all of the states having laws permitting recovery of damages by indirect purchasers, as listed infra)and installation in vehicles manufactured and sold in the United States (including all of the states having laws permitting recovery of damages by indirect purchasers as listed infra), and (c) in Japan, and possibly other countries, for installation in vehicles manufactured in Japan, and possibly other countries, for export to and sale in the United States (including all of the states having laws permitting recovery of damages by indirect purchasers, as listed infra)."  AD Compl. ¶ 138.

➤ "By virtue of their market shares, Defendants [collectively] are the dominant manufacturers and suppliers of Automotive Wire Harness Systems in the United States and the world."  EP Compl. ¶ 150; AD Compl. ¶ 151.

➢ "The price of Automotive Wire Harness Systems increased during the Class Period, while major input costs virtually remained the same," thereby supporting an inference of anticompetitive conduct.  EP Compl..¶ 153; AD Compl. ¶ 154.

➢ "The structure and other characteristics of the Automotive Wire Harness Systems market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market."  EP Compl..¶ 154; AD Compl. ¶ 156; *see also* EP Compl. ¶¶ 155-63; AD Compl. ¶¶ 157-165 (detailing characteristics of the wire harness market rendering it ripe for collusion).

➢ "A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan, aimed at suppliers of Automotive Wire Harness Systems."  EP Compl. ¶ 164; AD Compl. ¶ 168; *see also*  EP Compl. ¶¶ 165-69; AD Compl. ¶¶ 169-175 (providing additional details concerning the global investigation, as well as raids and seizures of evidence).

➢ "Indeed, on February 23, 2010, around the same time as the raids by the Japanese and European competition authorities, investigators from the FBI raided three Detroit-area Japanese auto parts makers as part of a federal antitrust investigation."  EP Compl. ¶ 170; AD Compl. ¶ 174.

➢ "The FBI executed warrants and searched the offices of these companies, including Defendants Denso, Tokai Rika, as well as Yazaki's subsidiary in Canton Township, Michigan."  EP Compl. ¶ 170 (emphasis added); AD Compl. ¶ 174.

➢ "To obtain search warrants, the United States was legally required to have probable cause, accepted by a magistrate, to believe that it would obtain evidence

of an antitrust violation as a result of executing the search warrant – that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence must have been examined and accepted by a magistrate. That belief, which was recounted in sworn affidavits or testimony, must be grounded on reasonably trustworthy information."  EP Compl. ¶ 171; AD Compl. ¶ 176.

➢ Numerous co-defendant corporations and individuals have already pleaded guilty to the conspiracy Plaintiffs allege.  EP Compl. ¶¶ 172-83; AD Compl. ¶¶ 183-196.

Taken together and accepted as true for the purpose of analyzing the Tokai Rika Defendants' motion to dismiss, Plaintiffs' allegations establish:  (1) the Tokai Rika Defendants manufactured automotive wire harnesses and participated in the market for the same; (2) the wire harness market was ripe for Defendants to enter into an unlawful conspiracy; (3) anticompetitive price increases during the Class Period support the inference of a conspiracy; (4) guilty pleas establish that the Defendants actually entered into a price-fixing conspiracy; and (5) the U.S. Department of Justice had probable cause to raid the Tokai Rika Defendants offices for evidence of the conspiracy.  Based on these allegations, the Plaintiffs have pleaded a price fixing conspiracy among all named Defendants—including the Tokai Rika Defendants—that is not only plausible but supported by facts admitted by co-conspirators in open court and that resulted in significant monetary fines and incarceration.  The Plaintiffs have satisfied their pleading burden.

###### C.      The Tokai Rika Defendants Cannot Cherry Pick Allegations

Defendants' arguments fail because they attempt to isolate and individualize specific

allegations, while ignoring the totality of the facts alleged against Defendants and their co-

conspirators in the Complaint.  Defendants' hyper-focused approach finds no support in the law.

"Nothing in *Twombly* however, contemplates this 'dismemberment' approach to assessing the

sufficiency of a Complaint." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d

363, 373 (E.D. Pa. 2008).  "Rather, a district court must consider a complaint in its entirety

without isolating each allegation for individualized review." *Id.; accord In re Southeastern Milk*,

555 F. Supp. 2d  934, 943-44 (E.D. Tenn. 2008).  As described more fully above, the Plaintiffs'

detailed factual allegations can in no way be described as "labels and conclusions" or a formulaic

recitation of the elements of the claims.  *See Hyland v. Homeservices of America, Inc.*, 2007 WL

2407233, at *3 (W.D. Ky. Aug. 17, 2007) (denying motion to dismiss where plaintiffs supported

their allegations of price fixing conspiracy by referring to DOJ actions, broker admissions,

increases of prices while costs declined, and exchanges of price information).

Defendants argue that Plaintiffs have not specifically identified exactly which wire

harness products they sell, even going so far as to infer that they do not participate in the wire

harness product market.  (Defs'. Br. at 2.)  To the contrary, Plaintiffs have alleged that

Defendants sell wire harness products and participated in the conspiracy to fix prices.  Notably,

Defendants have failed to deny that they (1) sell wire harness products or (2) participated in the

market by submitting bids that help set the prices for wire harness products.

Likewise, Defendants do not deny that their offices were raided by the DOJ pursuant to a

search warrant executed by a district court judge or magistrate under the probable cause that

evidence of antitrust violations would be found therein.  *See* EP Compl. ¶ 170.  As the

Complaints detail, this investigation was part of a coordinated effort to raid the offices of several

7

different auto part manufacturers, all of which evidences a collusive agreement between the guilty defendants and other yet unrevealed market participants. EP Compl.¶ 169; AD Compl. ¶ 173.  Moreover, these guilty pleas are likely not limited to just these specific defendants and plausibly extend in scope to other market participants, including Defendants.  *See In re Vitamins Antitrust Litig.*, 2000 WL 1475705, at *11 (D.D.C. May 9, 2000) (district court rejected Defendants' argument that the scope of guilty pleas foreclosed a broader conspiracy stating "[g]uilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources" and that "criminal guilty pleas do not establish the boundaries of this civil litigation.").[3]  These allegations alone would satisfy *Twombly*, but there is additional detail in the Complaints.

In addition to the criminal investigations, the Complaints also allege that the market structure for wire harness products is conducive to anticompetitive conduct.  EP Compl.¶¶ 154-163; AD Compl. ¶¶ 156-167.  In doing so, the Complaints explain that the historical pricing of wire harness products relative to the costs of manufacture suggests that the prices have been artificially high for numerous years.  Several cases have found allegations of market structure probative under *Twombly*,  *See e.g., Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 576 (M.D. Pa. 2008).  The industry also holds regular trade meetings that provide market participants, including Defendants, the opportunity to engage in collusion.

---

[3]Applying *Twombly*, Judge Gleason in the Eastern District of New York reversed the Magistrate Judge's dismissal of plaintiffs' claims because "[t]he additional fact that numerous [other] Defendants have pled guilty to criminal charges of fixing prices on air cargo shipments further supports that conclusion."  *In re Air Cargo Shipping Srvcs. Antitrust Litig.*,  2009 WL 3443405, at *1 (E.D.N.Y. Aug. 21, 2009).

Examining the Complaints as a whole and the collective aggregation of facts, the requirements of *Twombly* are clearly met as to the Tokai Rika Defendants and their motion to dismiss should be denied.

### D.  The Complaints Are Sufficient Against Both Parent and Subsidiary Defendants

As detailed above and contrary to Defendants' assertions, the Complaints' allegations are sufficient as to both Defendants – the parent and the subsidiary.  The Plaintiffs have pleaded adequately that Tokai Rika, Ltd. (the parent) controlled Tokai Rika U.S.A., Inc. and that both participated in the conspiracy alleged in the Complaints.

The Tokai Rika Defendants erroneously claims that Plaintiffs' allegations against Tokai Rika, Ltd. are legally insufficient, citing two inapposite cases. (Def.'s Br. at 2, fn 6).  First, the Ohio case, *In re Title Ins. Antitrust Cases,* 702 F. Supp. 2d 840, 877 (N.D. Ohio 2010), was not determined as Defendants infer on the basis of corporate structure.  Rather, the Ohio district court determined that plaintiffs' claims against the subsidiary company defendant were barred by the filed rate doctrine and/or the McCarran-Ferguson Act, therefore those same claims against the parent were likewise barred.  *In re Title Ins. Antitrust Cases* 702 F. Supp. 2d 840, 877 (N.D. Ohio 2010).  Here, Plaintiffs claims are not barred against Defendant TRAM, Inc. and are not likewise barred against the parent Defendant Tokai Rika, Ltd.  The Plaintiffs have alleged sufficiently a price fixing claim as to both Tokai Rika Defendants.

The second case cited to support the dismissal of one, or both of the Defendants is likewise inappropriate.  *Cupp v. Alberto-Culver USA, Inc*., 310 F. Supp. 2d 963 (W.D. Tenn. 2004) dealt with hair care products sold at either salons or in retail stores.  In *Cupp*, the complaint failed because plaintiffs failed to adequately define the market for hair care products, and impermissibly brought allegations against retail distributors based only on their relationship

with salon distributors and nothing more.  *Id.* at 971 ("Plaintiffs attempted definition of the relevant product market is insufficiently and fatally vague.")  In the case at bar, Defendants have made no argument whatsoever that the market defined by Plaintiffs is insufficiently vague. Plaintiffs have named both entities in the Complaints because it is plausible that one or both are involved in the anticompetitive conduct that was the basis for the DOJ raids on the offices and the ongoing investigation that has led to the guilty pleas of other competitor companies.[4]  At this time, however, it would not be just or efficient to dismiss either Defendant.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.[5]

Date: September 11, 2012

---

[4] Defendants reference to the need to "pierce the corporate veil" (Defs' Br. at 2, fn 6) is a red herring.  The facts alleged in the Complaints support the plausibility of illegal conduct on behalf of either parent or subsidiary entity.

[5] Plaintiffs incorporate by reference all arguments and authority referenced in their response to Defendants' Joint Memorandum of Law in Support of Motion to Dismiss the End-Payors' Consolidated Amended Complaint and the Automobile Dealers' Consolidated Amended Complaint.

2402814v1/012878

Dated:  September 11, 2012

**COTCHETT, PITRE & McCARTHY, LLP**


By   _/s/ Frank C. Damrell_____

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com


September 11, 2012

**LABATON SUCHAROW LLP**

By   _/s/ Hollis Salzman_____

Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

11

September 11, 2012                    **SUSMAN GODFREY L.L.P.**

                                     By   */s/ Marc M. Seltzer* _____

                                     Marc M. Seltzer
                                     Steven G. Sklaver
                                     **SUSMAN GODFREY L.L.P.**
                                     1901 Avenue of the Stars, Suite 950
                                     Los Angeles, CA 90067-6029
                                     Telephone: (310) 789-3100
                                     Facsimile: (310) 789-3150
                                     mseltzer@susmangodfrey.com
                                     ssklaver@susmangodfrey.com

                                     Terrell W. Oxford
                                     Warren T. Burns
                                     **SUSMAN GODFREY L.L.P.**
                                     901 Main Street, Suite 5100
                                     Dallas, Texas 75202
                                     Telephone: (214) 754-1900
                                     Facsimile: (214)754-1933
                                     toxford@susmangodfrey.com
                                     wburns@susmangodfrey.com

September 11, 2012                    **THE MILLER LAW FIRM, P.C.**

                                     By   */s/ E. Powell Miller* _____

                                     E. Powell Miller (P39487)
                                     Adam T. Schnatz (72049)
                                     **THE MILLER LAW FIRM, P.C.**
                                     950 W. University Dr., Ste. 300
                                     Rochester, Michigan 48307
                                     Telephone: (248) 841-2200
                                     Facsimile: (248) 652-2852
                                     epm@millerlawpc.com

                                     *Attorneys End-Payor Plaintiffs*

September 11, 2012

**MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.**

By___/s/ *Gerard V. Mantese*_____
Gerard V. Mantese (Michigan Bar No.
P34424)
David Hansma (Michigan Bar No. P71056)
Brendan Frey (Michigan Bar No. P70893)
Joshua Lushnat (Michigan Bar No. P75319)
**MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

September 11, 2012

**BARRETT LAW GROUP, P.A.**

By ___/s/ *Don Barrett*_____

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

13

September 11, 2012                    **CUNEO GILBERT & LADUCA, LLP**

                                     By ___/s/ *Jonathan W. Cuneo*_____

                                     Jonathan W. Cuneo
                                     Victoria Romanenko
                                     **CUNEO GILBERT & LADUCA, LLP**
                                     507 C Street, N.E.
                                     Washington, DC 20002
                                     Phone: (202) 789-3960
                                     Fax: (202) 789-1813
                                     jonc@cuneolaw.com
                                     Vicky@cuneolaw.com

                                     Joel Davidow
                                     Daniel Cohen
                                     **CUNEO GILBERT & LADUCA, LLP**
                                     Bethesda, Maryland
                                     8120 Woodmont Ave
                                     Suite 810
                                     Bethesda, MD 20814
                                     Phone: (202) 789-3960
                                     joel@cuneolaw.com

                                     Michael J. Flannery
                                     **CUNEO GILBERT & LADUCA, LLP**
                                     300 North Tucker Boulevard
                                     Suite 801
                                     St. Louis, MO 63101
                                     Phone: (202) 789-3960
                                     Fax: (202) 789-1813
                                     mflannery@cuneolaw.com

September 11, 2012

**LARSON • KING, LLP**

By ____/s/ *Shawn M. Raiter*_____

Shawn M. Raiter
Paul A. Sand
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

*Attorney for Auto Dealer Plaintiffs*

15

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS CASES** | |
| **THIS RELATES TO:**<br><br>**ALL DEALERSHIP ACTIONS AND ALL END-PAYOR ACTIONS** | W:12-cv-00102-MOB-MKM<br>W:12-cv-00103-MOB-MKM |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2012 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all filing users indicated on the Electronic Notice List through the Court's electronic filing system.  I also certify that I will serve copies via First Class U.S. Mail upon all other parties indicated on the Manual Notice List.

Respectfully submitted,
*/s/ Warren T. Burns*
Warren T. Burns
Susman Godfrey, LLP
901 Main Street, Suite 5100
Dallas, Texas 75202

16