**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12–md–02311 Honorable Marianne O. Battani |
| In Re: Occupant Safety Restraint Systems | |
| THIS DOCUMENT RELATES TO: | |
| All Automobile Dealer Actions All End–Payor Actions | Child Case: 12–cv–00602 Child Case: 12–cv–00603 |
| | **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
COLLECTIVE MOTION TO DISMISS THE END-PAYORS'
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND
THE AUTOMOBILE DEALERS' CONSOLIDATED CLASS COMPLAINT[1]**

---

[1] All abbreviations used herein have the same meaning they had in Defendants' Collective Motion to Dismiss the End Payors' Consolidated Amended Class Action Complaint and the Automobile Dealers Consolidated Class Complaint ("MTD") No. 2:12-cv-00602, ECF No. 62; No. 2:12-cv-00603, ECF No. 65.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................v

INTRODUCTION ..............................................................................................................1

ARGUMENT ....................................................................................................................1

I.      DISMISSAL IS REQUIRED UNDER *TWOMBLY* AND *IQBAL* BECAUSE THE
        GUILTY PLEAS DO NOT SUPPORT THE BREADTH OF THE ALLEGED
        CONSPIRACY AND NO OTHER SUPPORTING FACTS HAVE BEEN PLED............1

II.     IPPs LACK CONSTITUTIONAL STANDING. ...............................................................2

        A.      IPPs Have Not Pled Sufficient Facts To Establish Injury-in-Fact.........................2

        B.      ADs Lack Standing To Assert Claims Under North Dakota Law.........................4

        C.      The Question of Article III Standing Is Ripe for Adjudication Now. ....................4

III.    IPPs LACK STANDING TO ASSERT THEIR CLAIMS IN *AGC* STATES..................5

IV.     IPPs FAIL TO SALVAGE THEIR UNJUST ENRICHMENT CLAIMS. .......................6

        A.      IPPs Do Not Adequately Identify Or Plead Claims For Unjust Enrichment..........6

        B.      IPPs Cannot Use UE To Recover on Failed Antitrust and Consumer
                Protect Theories. ..................................................................................................7

        C.      IPPs Neither Rebut nor Satisfy the Direct Benefit Requirement.............................8

        D.      IPPs Neither Rebut nor Evade the Benefit of the Bargain Limitation....................8

        E.      IPPs Neither Rebut nor Evade the Consideration Limitation. ................................9

        F.      IPPs' Cites to Federal Rule of Civil Procedure 8 Are Irrelevant............................9

V.      STATUTES OF LIMITATIONS BAR MANY OF IPPs' STATE-LAW
        CLAIMS. ....................................................................................................................9

        A.      The Discovery Rule Does Not Apply to IPPs' Claims ...........................................9

        B.      IPPs Fail To Sufficiently Plead Fraudulent Concealment. ...................................10

VI.     IPPs FAIL TO SALVAGE THEIR DEFICIENT STATE-SPECIFIC
        ANTITRUST, CONSUMER PROTECTION AND UNJUST ENRICHMENT
        CLAIMS. ..................................................................................................................11

A. Arizona.................................................................................................................11

B. Arkansas...............................................................................................................12

C. California .............................................................................................................13

D. District of Columbia ............................................................................................15

E. Florida..................................................................................................................16

F. Hawaii..................................................................................................................18

G. Illinois..................................................................................................................19

H. Iowa.....................................................................................................................20

I. Kansas..................................................................................................................21

J. Maine ...................................................................................................................22

K. Massachusetts ......................................................................................................23

L. Michigan..............................................................................................................24

M. Minnesota ............................................................................................................25

N. Mississippi...........................................................................................................26

O. Missouri ...............................................................................................................27

P. Montana ...............................................................................................................28

Q. Nebraska ..............................................................................................................29

R. Nevada .................................................................................................................29

S. New Hampshire....................................................................................................30

T. New Mexico.........................................................................................................31

U. New York .............................................................................................................32

V. North Carolina .....................................................................................................35

W. North Dakota........................................................................................................37

X. Oregon..................................................................................................................38

Y. Rhode Island ........................................................................................................38

Z.      South Carolina ................................................................................................40

AA.     South Dakota.....................................................................................................41

BB.     Tennessee ..........................................................................................................41

CC.     Utah....................................................................................................................42

DD.     Vermont .............................................................................................................44

EE.     West Virginia ....................................................................................................45

FF.     Wisconsin...........................................................................................................45

# INDEX OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Anzai v. Chevron Corp.*, 168 F. Supp. 2d 1180 (D. Haw. 2001) .....................................................18

*Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795 (D. Utah 1988)...............................................43

*Brooks v. GAF Materials Corp.*, 2012 WL 5195982 (D.S.C. Oct. 19, 2012) ...............................40

*California v. Infineon Technologies AG* ("*Infineon I*"), 531 F. Supp. 2d 1124
(N.D. Cal. 2007).............................................................................................................26

*California v. Infineon Technologies, Inc.* ("*Infineon II*"), 2008 WL 1766775 (N.D.
Cal. Apr. 15, 2008) .......................................................................................................42

*Carmona v. Spanish Broad. Sys., Inc.*, 2009 WL 890054 (S.D.N.Y.
Mar. 30, 2009)................................................................................................................34

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)......................................................9

*Comprehensive Care Corp. v. Katzman*, 2010 WL 3190136 (M.D. Fla.
July 30, 2010)..................................................................................................................17

*Crummer Co. v. Du Pont*, 255 F.2d 425 (5th Cir. 1958) ..................................................................18

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013)...........................................................33

*D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485
(E.D. Pa. 2006)................................................................................................................12

*Davis v. Four Seasons Hotel Ltd.*, 2011 WL 5025521 (D. Haw. Oct. 20, 2011) ........................18

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) .......................................................41

*Eivaz v. Edwards*, 2013 WL 989843 (E.D. Wis. Mar. 13, 2013) ....................................................7

*Fernandes v. Havkin*, 731 F. Supp. 2d 103 (D. Mass. 2010)............................................................23

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 2012 WL 3841397 (E.D.
Wis. Sept. 5, 2012)...................................................................................................3–4, 17

*FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999)..........................................................43

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) ...........................................................9

*Glenwood Farms, Inc. v. Ivey*, 228 F.R.D. 47 (D. Me. 2005) .........................................................22

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439
(E.D.N.Y. 2007)................................................................................................35

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*, 2005 WL 323750 (S.D.N.Y. Feb. 9,
2009) ...............................................................................................................32

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009) ............................7

*Hyland v. Homeservices of Am., Inc.*, 2008 WL 4000546 (W.D. Ky.
Aug. 25, 2008) ..................................................................................................3

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ..............................................6, 42, 43

*In re Actiq Sales & Mktg. Practices Litig.* ("*Actiq*")., 790 F. Supp. 2d 313 (E.D.
Penn. 2011) ..................................................................................18, 23, 42, 43

*In re Aftermarket Filters Antitrust Litig.* ("*Aftermarket II*"), 2010 WL 1416259
(N.D. Ill. Apr. 1, 2010) .............................................................................22, 31, 43

*In re Automotive Parts Antitrust Litig. (In re Wire Harness Cases)* ("*WH*"),
2013 WL 2456612 (E.D. Mich. June 6, 2013).................................................. *passim*

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000) ...................... *passim*

*In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D. Miss. 1993)............................27

*In re Chocolate Confectionary Antitrust Litig.* ("*Chocolate I*"), 602 F. Supp. 2d
538 (M.D. Pa. 2009) ........................................................................................31

*In re Chocolate Confectionary Antitrust Litig.* ("*Chocolate II*"), 749 F. Supp. 2d
224 (M.D. Pa. 2010) ....................................................................................34, 37

*In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198
(S.D.N.Y. 2012)...........................................................................................17, 31

*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011) ........................ *passim*

*In re Dynamic Random Access Memory (Dram) Litig.*, 516 F. Supp. 2d 1072
(N.D. Cal. 2007).........................................................................................5, 28

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) .............................13

*In re Graphics Processing Units Antitrust Litig.* ("*GPU I*"), 527 F. Supp. 2d 1011
(N.D. Cal. 2007).............................................................................................13

*In re Graphics Processing Units Antitrust Litig.* ("*GPU II*"), 540 F. Supp. 2d
1085 (N.D. Cal. 2007).......................................................................................26

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
2013 WL 3830124 (S.D. Fla. July 24, 2013)..................................................16

*In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961 (N.D. Iowa
2011) ...............................................................................................................1

*In re K-Dur Antitrust Litig.* ("*K-Dur*"), 338 F. Supp. 2d 517 (D.N.J. 2004) .............18, 23, 42, 43

*In re Magnesium Oxide Antitrust Litig.* ("*MgO I*"), 2011 WL 5008090
(D.N.J. Oct. 20, 2011).....................................................................................5

*In re Magnesium Oxide Antitrust Litig.* ("*MgO II*"), 2012 WL 1150123
(D.N.J. Apr. 5, 2012) ......................................................................................6

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, 2012 WL 5408563 (D.S.C.
Nov. 6, 2012) .................................................................................................40

*In re Microsoft Corp. Antitrust Litig.*, 2003 WL 22070561 (D. Md. Aug. 22,
2003) ..............................................................................................................26

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV*"), 350 F. Supp.
2d 160 (D. Me. 2004).........................................................................7, 31, 32

*In re Nexium Esomeprazole Antitrust Litig.*, 2013 WL 4832176 (D. Mass.
Sept. 11, 2013) ..............................................................................................40

*In re Optical Disk Drive Antitrust Litig.* ("*ODD*"), 2012 WL 1366718 (N.D. Cal.
Apr. 19, 2012) ...............................................................................................40

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011).......................*passim*

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009)....................................5, 20, 21

*In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa.
2012) ...........................................................................................................*passim*

*In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), 2013 WL
1431756 (E.D. Mich. Apr. 9, 2013) .......................................................5, 20, 22, 24

*In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL 2181185 (E.D. Tenn. May
20, 2013) ........................................................................................................23

*In re Static Random Access (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal.
2009) ...............................................................................................................3

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla.
2001) ...............................................................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD I*"), 586 F. Supp. 2d 1109 (N.D. Cal. 2008).................................................................................................31

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD II*"), 599 F. Supp. 2d 1179 (N.D. Cal. 2009).............................................................................24, 26, 29, 34

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD III*"), 2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) ............................................................... *passim*

*In re US Capital Holdings, LLC*, 2013 WL 5297352 (Bankr. S.D. Fla. Aug. 5, 2013) ...........................................................................................16–17

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009).......................................6, 40

*Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5 (2d Cir. 2012) ........................................32, 33

*Lipov v. Louisiana-Pacific Corp.*, 2013 WL 3805673 (W.D. Mich. July 22, 2013)..............24–25

*McKee v. Meltech, Inc.*, 2011 WL 1770461 (W.D. Tenn. May 9, 2011) .....................................42

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214 (E.D. Cal 2005) ........................................................................................................13

*Miller v. Basic Research, Inc.*, 2008 WL 4755787 (D. Utah Oct. 27, 2008)................................43

*Minebea Co. v. Papst*, 444 F. Supp. 2d 68 (D.D.C. 2006) ..........................................................16

*Munson v. Countrywide Home Loans, Inc.*, 2008 WL 5381866 (E.D. Mich. Dec. 17, 2008).......................................................................................................24

*Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73 (D.D.C. 2013) ......................................3

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) .........................................4

*Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) ....................................................17

*Romano v. Motorola, Inc.*, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) ...................................17

*Rotella v. Wood*, 528 U.S. 549 (2000) ........................................................................................10

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC* ("*SMW*"), 737 F. Supp. 2d 380 (E.D. Pa. 2010).....................................20, 24, 32, 35, 36

*Sidibe v. Sutter Health*, 2013 WL 2422752 (N.D. Cal June 3, 2013).............................................4

*Smith v. Lawyers Title Ins. Corp.*, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009) ..........................4

*Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269 (10th Cir. 2008) ...............................................20

*Stutz Motor Car of Am., Inc. v. Reebok Int'l Ltd.*, 909 F. Supp. 1353
(C.D. Cal. 1995) ................................................................................................. 14

*Sun Dun, Inc. of Wash. v. Coca-Cola Co. ("Sun Dun I")*, 740 F. Supp. 381
(D. Md. 1990) ..................................................................................................... 15

*Sun Dun, Inc. of Wash. v. Coca-Cola Co. ("Sun Dun II")*, 770 F. Supp. 285
(D. Md. 1991) ..................................................................................................... 15

*Taylor v. KeyCorp*, 680 F.3d 609 (6th Cir. 2012) ......................................................... 2

*Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 875 F. Supp. 8 (D. Me. 1994) ................ 23

*United States v. Takata Corp.*, No. 2:13-cr-20741 (E.D. Mich. filed Dec. 5, 2013),
ECF No. 13 ......................................................................................................... 11

*Von Der Werth v. Johns Manville*, No. 1:07-CV-2012-JEC,
(N.D. Ga. Mar. 23, 2009), ECF No. 152 .......................................................... 5–6

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) ........................ 34

*Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ...... 17

*Wittenberg v. First Indep. Mortg. Co.*, 2011 WL 1357483 (N.D. W.Va. April 11,
2011) .................................................................................................................. 45

## STATE CASES

*Alakayak v. British Columbia Packers Ltd.*, 48 P.3d 432 (Alaska 2002) ................ 18–19

*Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322 (Fla. Dist. Ct. App. 2007) .......... 17

*Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891 (N.D. 1999) ......................... 37

*Arena Res., Inc. v. Obo, Inc.*, 238 P.3d 357 (N.M. Ct. App. 2010) .............................. 32

*Aryeh v. Canon Bus. Solutions*, 292 P.3d 871 (Cal. 2013) ................................... 14, 15

*Austin v. House of Vision, Inc.*, 243 N.E.2d 297 (Ill. App. Ct. 1968) .......................... 19

*Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754 (N.H. 2013) ................................... 31

*Baker Constr. Co. v. City of Burlington*, 2009 WL 3350747 (N.C. Ct. App. Oct.
20, 2009) ............................................................................................................ 36

*Barre v. Hoffman*, 326 S.W.3d 415 (Ark. 2009) ........................................................ 13

*Bergstrom v. Noah*, 974 P.2d 520 (Kan. 1999)...........................................................................22

*Blue Cross & Blue Shield v. Philip Morris USA, Inc.* ("*BC/BS*"), 818 N.E.2d 1140
(N.Y. 2004) .................................................................................................................33, 34

*Bowyer v. Davidson*, 584 P.2d 686 (Nev. 1978).........................................................................30

*BTA Oil Producers v. MDU Res. Grp.*, 642 N.W.2d 873 (N.D. 2002) ......................................37

*Butler v. Deutsche Morgan Grenfell, Inc.*, 140 P.3d 532 (N.M. Ct. App. 2006)........................32

*Carder v. BASF Corp.*, 919 So. 2d 258 (Miss. Ct. App. 2005) ..................................................27

*Carioca Co. v. Sult*, 2010 WL 2606623 (Ariz. Ct. App. June 29, 2010)....................................12

*Cedric Elec., Inc. v. Shea*, 472 A.2d 757 (Vt. 1984) .................................................................44

*Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021 (N.H. 2009).......................................................30

*Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005 (Ariz. Ct. App. 1995)....................................12

*Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910 (Utah 1987)...........................................43

*Cnty. Asphalt Paving Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704 (Mo. Ct. App.
2007) ..............................................................................................................................27

*Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147 (App. Div. 2004)..............................................33, 34

*Crandell v. Wall Lake View Auburn Bd. of Educ.*, 2002 WL 987665 (Iowa Ct.
App. May 15, 2002).........................................................................................................20

*Crouch v. Crompton Corp.*, 2004 WL 2414027 (N.C. Super. Ct. Oct. 28, 2004) .........................6

*Crown Mortg. Co. v. Young*, 989 N.E.2d 621 (Ill. App. Ct. 2013)..............................................19

*Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916 (N.C. 1992).....................................36

*Emergency Physicians Integrated Care v. Salt Lake Cnty.*, 167 P.3d 1080 (Utah
2007) ..............................................................................................................................43

*ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351 (R.I. 1997).......................................39

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C.
2008) ..............................................................................................................................16

*Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005).......................................42

*Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002).......................................................33

*Hakki v. Zima Co.*, 2006 WL 852126 (D.C. Super. Ct. Mar. 28, 2006) .........................................16

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839 (Kan. 1996).....................21

*High v. Davis*, 584 P.2d 725 (Or. 1978) ..................................................................................38

*Hirsch v. Bank of Am., N.A.*, 132 Cal. Rptr. 2d 220 (Ct. App. 2003) ...........................................14

*Howard v. Turnbull*, 316 S.W.3d 431 (Mo. Ct. App. 2010)........................................................27

*Investors Equity Life Holding Co. v. Schmidt*, 126 Cal. Rptr. 3d 135 (Ct. App. 2011) ............................................................................................................................9

*Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324 (N.D. 1982) ..............................................37

*Johnston v. Brown*, 357 S.E.2d 450 (S.C. 1987) .....................................................................41

*Kammer Asphalt Paving Co. v. E. China Township Sch.*, 504 N.W.2d 635 (Mich. 1993) ...............................................................................................................24

*Kowalski v. Cedars of Portsmouth Condo. Ass'n*, 769 A.2d 344 (N.H. 2001).............................30

*Landry v. Landry*, 697 A.2d 843 (Me. 1997)..........................................................................22

*Lawrence v. UMLIC-Five Corp.*, 2007 WL 2570256 (N.C. Super. Ct. June 18, 2007) ...............................................................................................................................36

*Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869 (Ill. App. Ct. 2003) ................................................19

*Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461 (Utah 1978) ..............................................................43

*Matrix Props. Corp. v. TAG Invs.*, 644 N.W.2d 601 (N.D. 2002)................................................38

*Milliken & Michaels, Inc. v. Fred Netterville Lumber Co.*, 676 So. 2d 266 (Miss. 1996) .......................................................................................................................26–27

*Minn. Twins P'ship v. State ex rel. Hatch*, 592 N.W.2d 847 (Minn. 1999)..................................26

*Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898 (Mich. Ct. App. 2006).....................24

*Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308 (D.C. 2008) ................................................16

*Myrtle Beach Hosp. Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000) ...........................41

*New York v. Rattenni*, 613 N.E.2d 155 (N.Y. 1993)...................................................................35

*Niemi v. Am. Axle Mfg. & Holding, Inc.*, 2007 WL 29383 (Mich. Ct. App. Jan. 4, 2007)...................................................................................................................24

*O'Brien v. Leegin Creative Leather Prods., Inc.*, 277 P.3d 1062 (Kan. 2012) ............................21

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 925 N.Y.S.2d 61 (App. Div. 2011) ................................................................................................................................35

*Opp v. Matzke*, 559 N.W.2d 837 (N.D. 1997) ..........................................................37

*Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316 (Ct. App. 2008)................................14

*Petrie-Clemons v. Butterfield*, 441 A.2d 1167 (N.H. 1982) ................................30–31

*Pike v. Chuck's Willoughby Pub, Inc.*, 904 A.2d 1133 (Vt. 2006) ..............................44

*Porter v. Hu*, 169 P.3d 994 (Haw. Ct. App. 2007) ....................................................18

*Puritan Med. Ctr., Inc. v. Cashman*, 596 N.E.2d 1004 (Mass. 1992) ........................24

*Rawlings v. Rawlings*, 240 P.3d 754 (Utah 2010) ......................................................43

*Ray Reilly's Tire Mart, Inc. v. F. P. Elnicki, Inc.*, 537 A.2d 994 (Vt. 1987)................44

*Rivers v. Amato*, 2001 WL 1736498 (Me. Super. Ct. June 22, 2001) .........................22

*Rivers v. Amato*, 827 A.2d 827 (Me. 2003) ...............................................................22

*Rohter v. Passarella*, 617 N.E.2d 46 (Ill. App. Ct. 1993)...........................................19

*Rose v. Vulcan Materials Co.*, 194 S.E.2d 521 (N.C. 1973)........................................37

*Rosetta v. Moretti*, 2005 WL 1109638 (R.I. Super. Ct. May 4, 2005) ........................39

*Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741 (Utah 2005)..............................44

*Sauner v. Public Serv. Auth. of S.C.*, 581 S.E.2d 161 (S.C. 2003) .............................40

*Schumacher v. Schumacher*, 627 N.W.2d 725 (Minn. Ct. App. 2001)........................25

*Senne & Co., Inc. v. Simon Capital Ltd.*, 2007 WL 1175858 (Kan. Ct. App. Apr. 20, 2007) ......................................................................................................................21

*S. Cal. Foam & Coatings, Inc. v. Summers*, 2011 WL 96466 (Cal. Ct. App. Jan. 12, 2011) ......................................................................................................................14

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137 (Minn. Ct. App. 1992) ............................................................................................................25

*Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007)..........................................34

*Stark v. Visa U.S.A. Inc.*, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)............6, 11

*Tri-State Mech., Inc. v. Northland Coll.*, 681 N.W.2d 302 (Wis. Ct. App. 2004)........................45

*Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485 (Ariz. Ct. App. 2002) ..........................11

*Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005) ................................................................12

*Washa v. Miller*, 546 N.W.2d 813 (Neb. 1996) ............................................................................29

*Williams v. Bear Stearns & Co.*, 725 So. 2d 397 (Fla. Dist. Ct. App. 1998)................................16

*Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583 (Miss. 2012) .....................................................26

*Winters v. Cnty. of Clatsop*, 150 P.3d 1104 (Or. Ct. App. 2007) .................................................38

*Yellowstone Conf. of United Methodist Church v. D.A. Davidson, Inc.*, 228 Mont. 288 (1987) .....................................................................................................................................29

*Zinter v. Univ. of Minn.*, 799 N.W.2d 243 (Minn. Ct. App. 2011) ...............................................25

## STATUTES

740 ILCS 10/7(2) .............................................................................................................................19

740 ILCS 10/11 ...............................................................................................................................19

Ariz. Rev. Stat. § 44-1408 ..............................................................................................................12

Ariz. Rev. Stat § 44-1412 ...............................................................................................................12

Ark. Code Ann. § 4-88-107(a).........................................................................................................13

Ark. Code Ann. § 4-88-113 ........................................................................................................12, 13

Cal. Bus. & Prof. Code § 16750(a)..................................................................................................14

D.C. Code § 28-4508 .......................................................................................................................16

D.C. Code § 28-4515 .......................................................................................................................16

Fla. Stat. Ann. § 501.211(2)............................................................................................................17

Haw. Rev. Stat. § 480-13(a)............................................................................................................18

Haw. Rev. Stat. § 480-3 ..................................................................................................................18

Iowa Code Ann. § 553.2 ..................................................................................................................20

Iowa Code Ann. § 553.12 ................................................................................................................20

Iowa Code Ann. § 553.16(1)........................................................................................20

Kan. Stat. Ann. § 50-161(b)....................................................................................21–22

Mass. Gen. Laws Ann. ch. 93, § 1 .............................................................................24

Mass. Gen. Laws Ann. ch. 93, § 12 ...........................................................................24

Me. Rev. Stat. Ann. tit. 10, § 1104.1 .........................................................................23

Me. Rev. Stat. Ann. tit. 14, § 859 ..............................................................................23

Mich. Comp. Laws Ann. § 445.778 ...........................................................................25

Mich. Comp. Laws Ann. § 445.784 ...........................................................................25

Mich. Comp. Laws Ann. § 600.5855 .........................................................................25

Minn. Stat. Ann. § 325D.57 .......................................................................................26

Miss. Code Ann. § 15-1-49(2) ...................................................................................26

Mo. Rev. Stat. § 407.025 ...........................................................................................27

Mont. Code Ann. § 27-2-102(1)(a)............................................................................29

Mont. Code Ann. § 27-2-102(3)(b)............................................................................29

Mont. Code Ann. § 30-14-133(1) ..............................................................................28

N.C. Gen. Stat. § 75-1................................................................................................35

N.C. Gen. Stat § 75-16...............................................................................................37

N.D. Cent. Code § 28-01-24 ......................................................................................38

N.D. Cent. Code § 51-08.1-01 .....................................................................................4

N.D. Cent. Code § 51-08.1-02 .....................................................................................4

N.D. Cent. Code § 51-08.1-08(2) ..............................................................................38

N.H. Rev. Stat. Ann. § 356:11 ...................................................................................31

N.H. Rev. Stat. Ann. § 356.14 ...................................................................................31

N.Y. Gen. Bus. Law § 340(5) ....................................................................................35

Neb. Rev. Stat. § 59-821 ............................................................................................29

Neb. Rev. Stat. § 59-829 .................................................................................................29

Nev. Rev. Stat. § 598A.060 ............................................................................................29

Nev. Rev. Stat. § 598A.220(1) ........................................................................................30

Or. Rev. Stat. Ann. § 646.715(2) .....................................................................................38

Or. Rev. Stat. Ann. § 646.780(3) .....................................................................................38

R.I. Gen. Laws § 6-13.1-5.2 ............................................................................................39

S.C. Code Ann. § 39-5-140(a) .........................................................................................40

S.D. Codified Laws § 37-1-3.1 ........................................................................................41

S.D. Codified Laws § 37-1-14.3 ......................................................................................41

S.D. Codified Laws § 37-1-22 .........................................................................................41

Tenn. Code Ann. § 47-25-106 .........................................................................................42

Utah Code Ann. § 76-10-3109(1)(a) ................................................................................44

Utah Code Ann. § 76-10-3118 .........................................................................................44

V.A.M.S. § 516.280 .....................................................................................................27–28

W. Va. Code Ann. § 47-18-3(a) .......................................................................................45

W. Va. Code Ann. § 47-18-11 .........................................................................................45

## MISCELLANEOUS

Fed. R. Civ. R. 8(d)(3) ......................................................................................................9

Fed. R. Civ. R. 9(b).............................................................................................................9

51 Am. Jur. 2d Limitation of Actions § 158 (2012) ......................................................10

## INTRODUCTION

IPPs do not deny that (1) the alleged OSS "product" at issue here is actually four distinct, non-interchangeable products—seat belts, airbags, steering wheels, and safety electronic systems; (2) Defendants have only pleaded guilty to fixing the prices of some of these OSS products and, in some instances, do not even sell all four products; and (3) the guilty pleas on which IPPs' complaints rely implicate only a select group of foreign OEMs, and no U.S. OEMs. Instead, IPPs chose to ignore these facts altogether. Yet these facts distinguish IPPs' complaints from the *Wire Harnesses* ("*WH*") complaints, and warrant their dismissal for the reasons stated below and in Defendants' opening brief. At the very least, the Court should dismiss all claims that concern U.S. OEMs (because the guilty pleas do not implicate any U.S. OEM, and IPPs plead no additional facts making plausible a conspiracy affecting U.S. OEMs) and dismiss all claims to the extent they concern safety electronic systems (because there are no facts, in the guilty pleas or otherwise, to suggest a plausible conspiracy affecting these parts).

## ARGUMENT

I. **DISMISSAL IS REQUIRED UNDER *TWOMBLY* AND *IQBAL* BECAUSE THE GUILTY PLEAS DO NOT SUPPORT THE BREADTH OF THE ALLEGED CONSPIRACY AND NO OTHER SUPPORTING FACTS HAVE BEEN PLED.**

IPPs argue that their civil antitrust suit should not be circumscribed by the Defendants' guilty pleas. Opp. at 6. That argument misses the point. For IPPs' industry-wide, non-product-specific, all-OSS-sales-to-all-customers conspiracy claim to survive, they must plead *facts* to support it. *See, e.g.*, *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 979 (N.D. Iowa 2011) (holding allegations referencing narrow guilty pleas did not state a claim of "an 'overarching' conspiracy"). IPPs rely on guilty pleas for their facts, but those pleas—no matter how favorably construed—do not support the breadth of the conspiracy alleged. Tokai Rika does not sell airbags; Takata has not been charged with or pleaded guilty to any conduct

involving airbags or steering wheels; part of Autoliv's plea relates exclusively to seat belts and thus implicates no other OSS product; and none of the pleas concern safety electronic systems. MTD at 4–6. Moreover, *not one* of the guilty pleas contains the slightest hint of any conspiratorial conduct involving any U.S. auto manufacturer. *Id*. Thus, the pleas provide an insufficient basis to plausibly infer the existence of an industry-wide, global conspiracy. IPPs argue their allegations need not be "highly detailed and describe the 'who, what, when and where' of each element of the conspiracy claim." Opp. at 4 (citing *WH*, 2013 WL 2456612, at *24–25 (E.D. Mich. June 6, 2013)). But IPPs must allege *something* to support the breadth of the conspiracy alleged.

IPPs cannot simply import the Court's finding in *WH* that plaintiffs' allegations suggested a "broad industry-wide conspiracy" and apply it willy-nilly to each and every purported conspiracy, regardless of the product (in this case, products) at issue. The factual allegations are *not* the same. The guilty pleas here do not suggest a conspiracy involving the entire OSS industry. Rather, each describes conduct relating to distinct—but not all—OSS products and none concern U.S. OEMs or safety electronic systems. This is in stark contrast to the plea agreements in *WH*, which were not clearly limited to specific OEMs or parts. *See* MTD at 5 n.4. There is simply no basis for inferring from the facts alleged here that all Defendants conspired world-wide with respect to all OSS parts.

## II.     IPPs LACK CONSTITUTIONAL STANDING.

### A.     IPPs Have Not Pled Sufficient Facts To Establish Injury-in-Fact.

Again, IPPs are wrong that the decision in *WH* controls the outcome here. Opp. at 7–8. The injury-in-fact analysis is case-specific, requiring review of *each* complaint to see what *facts*, if any, are alleged. Here, IPPs' factual allegations do not show "a causal connection between the injury and the conduct complained of." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012).

This pleading deficiency compels a finding that IPPs have failed to demonstrate constitutional standing.

IPPs' conclusory allegations concerning traceability and supra-competitive prices, *see, e.g.*, AD CCC ¶¶ 185–86; EP CAC ¶¶ 140–41, are wholly lacking in factual support. EPs allege *nothing* about which parts (or even vehicles) they bought, while ADs allege they bought for resale virtually every vehicle made. Yet neither EPs nor ADs allege facts suggesting that any OSS part in their vehicle—one small part of thousands—was impacted by Defendants' conduct, much less that it impacted the prices of every OSS product in every vehicle sold in the U.S. during a six-year period. IPPs plead nothing about the size of the alleged overcharge on each OSS part, how it compares to the finished car's price, or what market dynamics plausibly suggest it was passed on to them. Like the complaints dismissed in *National ATM Council, Inc. v. Visa Inc.*, IPPs' complaints suffer from a "factual or logical gap between the complained-of conduct and the alleged harm." 922 F. Supp. 2d 73, 84 (D.D.C. 2013).

Moreover, IPPs' cited cases do not support their position. Neither *Hyland v. Homeservices of America, Inc.*, 2008 WL 4000546 (W.D. Ky. Aug. 25, 2008), nor *In re Processed Egg Products Antitrust Litig.* ("*Eggs*"), 851 F. Supp. 2d 867 (E.D. Pa. 2012), involved an overcharge on one of thousands of components affecting a finished product's price. *Eggs* did not even address this traceable injury-in-fact issue. See 851 F. Supp. 2d at 886–88. The complaint at issue in *In re Static Random Access (SRAM) Antitrust Litig.* contained detailed allegations that the cost of SRAM was a significant part of the selling price of the finished product and that the finished products' sellers were unable to absorb any part of the increased cost. *SRAM* Compl. ¶¶ 152–56, No. 07-1819 (N.D. Cal. 2009), ECF No. 902. Similarly, plaintiffs in *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co.* had specific, detailed

allegations concerning the extent to which prices for the affected parts increased as a result of the alleged conspiracy and the traceability of the price increase. 2012 WL 3841397, at *1, *3 (E.D. Wis. Sept. 5, 2012). And the complaint at issue in *Sidibe v. Sutter Health* also contained specific factual allegations of higher prices as a result of defendant's conduct. 2013 WL 2422752, at *9 (N.D. Cal. June 3, 2013). Such factual allegations of a traceable injury are fatally lacking here.

### B. ADs Lack Standing To Assert Claims Under North Dakota Law.

Contrary to IPPs' claim (Opp. at 12), ADs must allege a causal connection between their injuries and conduct barred by North Dakota law. Thus, ADs must plead facts showing Defendants' conduct occurred, or effects were felt by ADs, in-state. *See* N.D. Cent. Code § 51-08.1-01, 02. Pleading "prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota," and "Defendants' illegal conduct had a substantial effect on North Dakota commerce" (AD CCC ¶ 268), is insufficient when no AD allegedly resides or suffered injury in North Dakota, as many courts have found. *See* MTD at 9 (collecting cases).[2]

### C. The Question of Article III Standing Is Ripe for Adjudication Now.

A named plaintiff in a putative class action must establish Article III standing to raise *each asserted claim.* *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000); *Smith v. Lawyers Title Ins. Corp.*, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009). In antitrust cases, the standing determination should be made early, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 656–57 (E.D. Mich. 2011); *Smith*, 2009 WL 514210, at *3, and Defendants thus urge the Court to reconsider its contrary holding in *WH*, 2013 WL 2456612, at *9.

---

[2] Although Defendants originally moved to dismiss ADs' claims under Hawaii on standing grounds, IPPs aver that two ADs have since filed a complaint under seal in Hawaii and that the Hawaii Attorney General has stated they could proceed with their antitrust claim. Opp. at 44.

### III.    IPPs LACK STANDING TO ASSERT THEIR CLAIMS IN *AGC* STATES.

Because EPs plead nothing about the cost of OSS, and ADs only plead that the cost of an OSS is something more than "insignificant" (AD CCC ¶ 210), no reasonable inference can be drawn that any conspiracy traceable to these Defendants had any impact on the price IPPs pay for *any*, much less *every*, car.  Such major factual differences from *WH* render *these* plaintiffs' claims too remote and speculative to accord them standing upon application of the *AGC* factors (or a similar remoteness analysis) in the numerous states that apply them.  *See* MTD §§ III, VI, and Ex. B.  The first *AGC* factor unambiguously requires that an antitrust plaintiff participate in the market allegedly affected by the conspiracy, or in a market "inextricably intertwined" with that market, to have antitrust standing.  *See* MTD at 12.  IPPs concededly buy and sell *cars,* not OSS, and thus participate neither in the OSS market, nor in any "inextricably intertwined" market, and IPPs' Opposition points to nothing even suggesting IPPs were "manipulated or utilized" by Defendants in any way to inflict injury in the OSS market.  *Id.*

IPPs claim their conclusory allegations that OSSs are discrete, removable, and traceable through the distribution chain satisfy *AGC*'s "directness of the alleged injury" and "speculative nature of the alleged harm" factors.  Opp. at 13–14.  Here, EPs allege nothing about OSS cost, and ADs allege only that OSS make up "a not insignificant portion" (AD CCC ¶ 210) of a car's cost.  Thus, IPPs' claims are essentially indistinguishable from those in *In re Dynamic Random Access Memory (Dram) Litig.* ("*DRAM I*"), 516 F. Supp. 2d 1072, 1092 (N.D. Cal. 2007); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 940 (N.D. Ill. 2009); *In re Magnesium Oxide Antitrust Litig.* ("*MgO I*"), 2011 WL 5008090, at *7 (D.N.J. Oct. 20, 2011); and *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), 2013 WL 1431756, at *14 (E.D. Mich. Apr. 9, 2013), where plaintiffs alleged nothing about the cost of the component cost relative to the finished product cost, and *Von Der Werth v. Johns Manville*, No. 1:07-CV-2012-

JEC, slip op. at 14 (N.D. Ga. Mar. 23, 2009), ECF No. 152; *Crouch v. Crompton Corp.*, 2004 WL 2414027, at *20 (N.C. Super. Ct. Oct. 28, 2004); and *In re Magnesium Oxide Antitrust Litig.* ("*MgO II*"), 2012 WL 1150123, at *4 (D.N.J. Apr. 5, 2012), where plaintiffs pled the component cost was a small portion of the finished good cost. These courts all found plaintiffs' alleged injuries too remote and speculative to accord them standing even though, as here, some involved components that were discrete, removable, and traceable. *See* MTD at 12–13.

*AGC*'s apportioning damages and risk of duplicative recovery factors also doom IPPs' claims. *See* MTD at 13. IPPs point to the concern in *WH* that application of the latter factor would "undermine what the state legislatures have condoned" by repealing *Illinois Brick* (Opp. at 14), but those repealers did not eradicate standing principles. *See Stark v. Visa U.S.A. Inc.*, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23, 2004); *cf. Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728 n.7 (1977) ("indirect purchaser" question is "analytically distinct from" the antitrust standing question). Thus, application of the *AGC* factors is consistent with legislative intent.

## IV. IPPs FAIL TO SALVAGE THEIR UNJUST ENRICHMENT CLAIMS.

### A. IPPs Do Not Adequately Identify Or Plead Claims For Unjust Enrichment.

As this Court found in *WH*, 2013 WL 2456612, at *31, IPPs have failed to adequately plead unjust enrichment ("UE") claims. IPPs argue that the UE claims here are distinguishable from those in *WH* (Opp. at 16), but the allegations here are identical to the EP allegations rejected there (*WH* EP CAC ¶¶ 277–280). IPPs' UE allegations here should also be dismissed.

Even if the Court were to accept IPPs' supposed distinction, IPPs' UE claims still fail for the same reasons the UE claims failed in *In re Wellbutrin XL Antitrust Litigation*: IPPs improperly seek to "cobbl[e] together the elements of a claim of unjust enrichment" to form a general rule of common law. 260 F.R.D. 143, 167 (E.D. Pa. 2009). A viable UE claim must

identify the state in which it is brought, the elements of that state's UE claim, and specific facts to support each element.  IPPs have not done so here.

IPPs argue they need only allege facts to support the UE elements identified in the Restatement of Restitution.  Opp. at 17.  IPPs are wrong.  *See, e.g.*, *Eivaz v. Edwards*, 2013 WL 989843, at *2–3 (E.D. Wis. Mar. 13, 2013) (finding similar allegations insufficient).  IPPs cite just one case—*Hoving v. Lawyers Title Insurance Co.*—in alleged support, but there the defendant conceded the UE elements in the four states at issue were consistent.  256 F.R.D. 555, 568 (E.D. Mich. 2009).  That is not true with respect to the 31 state UE claims IPPs purport to assert here *en masse*.  *See, e.g.*, *Packaged Ice*, 779 F. Supp. 2d at 667 ("[s]tate law requirements under [UE] law vary widely" (citing cases)); MTD at 51, 71, 76, 80–81, 87 (different elements of UE claims); MTD at 18, 34–35, 41–42, 45, 78–79, 86 (differing state definitions of "unjust").

### B.   IPPs Cannot Use UE To Recover on Failed Antitrust and Consumer Protect Theories.

IPPs first argue their UE claims are proper because they have sufficiently pleaded antitrust and consumer protection claims.  Opp. at 17.  But the issue here is whether IPPs can pursue a UE claim where the underlying claim is *not* viable. *See* MTD at 15–16.  Numerous courts have held they cannot.  *See id*. (citing cases).

IPPs also argue, relying on *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000), that their UE claims are viable even if their antitrust and consumer protection claims are not.  But the better reasoned analysis is found in both *Digital Music* and *NMV*, which dismissed plaintiffs' autonomous UE claims on the ground that permitting such claims would directly circumvent the common law and statutory schemes at issue. *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV*"), 350 F. Supp. 2d 160, 209 (D. Me. 2004).

Thus, the Court should dismiss IPPs' UE claims where IPPs cannot recover under antitrust or consumer protection laws.

### C.      IPPs Neither Rebut nor Satisfy the Direct Benefit Requirement.

IPPs rely solely on federal cases to suggest that "direct benefit" has a universal meaning. Opp. at 19–20.  But state direct-benefit requirements vary, requiring, e.g., direct contact (*see, e.g.*, MTD at 33) or a focus on the parties' relationship (*see, e.g.*, *id.* at 65–66).  Defendants thus addressed this requirement on a state-by-state basis (*id.* at 16–17 and § V) and showed, for each state in which Defendants challenge IPPs' claims on this basis, that IPPs' allegations fall short. *See also infra* § VI.  IPPs have not rebutted that showing.

### D.      IPPs Neither Rebut nor Evade the Benefit of the Bargain Limitation.

Equally unpersuasive is IPPs' response to Defendants' argument that certain of IPPs' UE claims fail because IPPs received the benefit of their bargains (the "BOTB limitation").  <u>First</u>, although IPPs claim the BOTB limitation applies only when parties are in contractual privity (Opp. at 20), they neither distinguish, nor cite *any* authority to counter, Defendants' numerous cases denying UE claims because the plaintiff received the benefit of its bargain *with a third party*.  MTD at 17–18.  <u>Second</u>, IPPs argue Defendants' authority is inapposite because it does not involve antitrust claims (Opp. at 20–21), but cite nothing to suggest state UE requirements vary based on the underlying claim.  <u>Third</u>, IPPs irrelevantly argue that "bargain" has multiple meanings.  Opp. at 79, 83–84, 88–89, 91–92, 104.  But, in the BOTB limitation context, "bargain" means an agreement to engage in an exchange, and IPPs cite no contrary authority. <u>Finally</u>, IPPs argue they could not "bargain for an illegal supracompetitive price" (Opp. at 104, 105, 108), but they do not dispute that they bargained for and received a properly functioning OSS (AD CCC ¶¶ 20–105; EP CAC ¶¶ 2, 19–63).  That is all that is required.  MTD at 17–18.

8

### E.      IPPs Neither Rebut nor Evade the Consideration Limitation.

Certain states do not recognize UE claims where the defendant paid consideration for the benefit it received because retention of that benefit is not "unjust."  *See* MTD at 18–19.  IPPs ask the Court to assume their consideration was improper (Opp. at 22), but on a motion to dismiss the Court must assess whether IPPs' allegations sufficiently support their claims, e.g., whether IPPs sufficiently alleged that Defendants did *not* provide "adequate" or "valuable" consideration in each state at issue.  IPPs did not, and their claims thus require dismissal.

### F.      IPPs' Cites to Federal Rule of Civil Procedure 8 Are Irrelevant.

IPPs cite Federal Civil Procedure Rule 8(d)(3) to argue they can bring UE claims in the alternative.  Opp. at 28, 41, 44, 102.  Rule 8 cannot save IPPs' UE claims, which (1) were not properly pled in the first instance and (2) are duplicative, not pled in the alternative.  "The Federal Rules . . . do not authorize end runs around state laws."  *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001).

## V.      STATUTES OF LIMITATIONS BAR MANY OF IPPs' STATE-LAW CLAIMS.

This Court must apply substantive statute of limitations ("SOL") principles from the state where each claim is made, but federal procedural rules apply to determine whether such a claim has been sufficiently pleaded to avoid dismissal.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426 (1996).  Under federal law, IPPs are required to plead any applicable equitable tolling or accrual doctrines in each state with particularity as required by Rule 9(b).  *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012).

### A.      The Discovery Rule Does Not Apply to IPPs' Claims

IPPs bear the burden of demonstrating that the discovery rule applies to salvage their claims outside the SOL period.  *See, e.g.*, *Investors Equity Life Holding Co. v. Schmidt*, 126 Cal. Rptr. 3d 135, 146 (Ct. App. 2011).  IPPs fail to cite a single case applying the discovery rule to

their state law antitrust or consumer protection claims, and thus fail to meet their burden.  IPPs

errantly suggest that Defendants ignore the discovery rule (Opp. at 22), but as Defendants have

previously explained, the discovery rule is inapplicable here:  mere "[i]gnorance of an antitrust

cause of action alone is insufficient to toll the statute of limitations."  *See* Defs.' Collective Mot.

to Dismiss the Direct Purchasers' Actions ("DPP MTD"), No. 2:12-cv-00601, ECF No. 61, at 19

(incorporated by reference in MTD at 20).

   As explained in Section III.A of Defendants' Collective Reply in Support of Defendants'

Motion to Dismiss the Direct Purchasers' Actions ("DPP Reply") (the analysis and reasoning of

which is incorporated by reference as if fully set forth herein), the discovery rule is a common

law accrual rule which "postpones the accrual of a cause of action until the plaintiff discovers, or

has reason to discover, the cause of action," 51 Am. Jur. 2d Limitation of Actions § 158 (2012),

which simply does not apply because an injury-only rule is applied to Clayton Act claims for

violations of the Sherman Act, *see, e.g.*, *Rotella v. Wood*, 528 U.S. 549, 554 n.2 (2000).  Save for

a few exceptions, the states at issue here have adopted the same accrual rule language from the

Sherman Act.  Therefore, there simply is no basis for application of the discovery rule to these

claims, especially where states have harmonizing statutes.

   **B.**  **IPPs Fail To Sufficiently Plead Fraudulent Concealment.**

   IPPs cited cases confirm Defendants' original position that fraudulent concealment

requires affirmative acts and/or due diligence to be pleaded in each state.  IPPs allegations do not

satisfy their pleading burden with respect to fraudulent concealment.  *See* DPP Reply § III.B.

   Even if fraudulent concealment were sufficiently alleged, it would only toll the SOL until

IPPs should have discovered their claims.  ADs and EPs, without explanation, contend their

claims are tolled until different dates:  June 6, 2012 for ADs, when Autoliv's plea agreement was

announced (AD CCC ¶¶ 217–18) and February 2011 for EPs, when DOJ publicly announced its

investigation into the OSS industry (EP CAC ¶¶ 145–46). *ADs* apparently believe that facts

which informed the *EPs* of the existence of an alleged claim in February 2011 established no

duty to perform due diligence themselves, despite their obviously greater connection with, and

closer proximity to, the automobile industry.  Ultimately, however, IPPs were obligated to

perform due diligence far before either date; namely, when certain market factors they claim

show the existence of a conspiracy first existed.  *See* DPP Reply § III.B.  That consideration

aside, and even if fraudulent concealment could apply here, IPPs had a duty to investigate in—

and the SOL would only be tolled until—February 2010 at the latest, when it was publicly

announced that Tokai Rika was being investigated for possible antitrust violations.[3]

## VI.   IPPs FAIL TO SALVAGE THEIR DEFICIENT STATE-SPECIFIC ANTITRUST, CONSUMER PROTECTION AND UNJUST ENRICHMENT CLAIMS.

IPPs fail to rebut Defendants' state-specific authority establishing the adoption of *AGC*

(or similar standards) in 24 states and D.C.  *See* MTD §§ III, IV.  IPPs argue the *Visa* cases are

"inapposite" because they "did not involve indirect purchases of price-fixed" parts (Opp. at 16),

but that misses the point.  Those cases show the states' widespread adoption of *AGC*, which

requires dismissal of IPPs' antitrust claims for lack of antitrust standing.  *See supra* § III.

Defendants address all other state-specific arguments below.

### A.      Arizona

**IPPs' UE claims fail.**  First, *Trustmark Insurance Co. v. Bank One*, *Arizona, NA*, states

that an element of a UE claim is "absence of a legal remedy."  48 P.3d 485, 492 (Ariz. Ct. App.

2002); *see also Eggs*, 851 F. Supp. 2d at 917–18.  Second, rather than address Defendants'

---

[3] IPPs falsely state that "Takata pleaded guilty to, with its co–conspirators, 'employing measures to keep their conduct secret, including destroying documents.'"  Opp. at 25.  That was alleged in the Information.  Takata decidedly did not plead guilty to it.  *See* Takata Plea Agreement, *United States v. Takata Corp.*, No. 2:13-cr-20741 (E.D. Mich. filed Dec. 5, 2013), ECF No. 13.

Arizona direct-benefit authority, IPPs cite two irrelevant cases: *D.R. Ward Construction Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 507 (E.D. Pa. 2006), which relies wholly on *Cardizem*, a case that did not involve Arizona UE claims, and *Community Guardian Bank v. Hamlin*, which did not address the direct-benefit requirement, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995). Third, IPPs argue that the BOTB limitation "assumes a contractual relationship between [IPPs] and Defendants" (Opp. at 29), but IPPs' authority says no such thing, and does not even involve a UE claim. *See Carioca Co. v. Sult*, 2010 WL 2606623, at *4 (Ariz. Ct. App. June 29, 2010).

**Arizona's SOL bars or limits IPPs' claims.** The discovery rule is inapplicable because Arizona's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly. *See* Ariz. Rev. Stat. §§ 44-1408, 1412; *supra* § V(A). IPPs concede they must allege "trick or contrivance," equivalent to an affirmative act of concealment (Opp. at 29), but they have not done so. *See* MTD § V; *supra* § V(B).

## B. Arkansas

**ADs claims are not viable under the ADTPA.** First, ADs do not contest Defendants' argument—which this Court has not addressed—that price-fixing claims are not actionable under the ADTPA because such claims subvert state legislative intent. MTD at 23. Second, as to whether a claim of mere overpayment qualifies as "actual damage or injury" under the ADTPA, Ark. Code Ann. § 4-88-113(f)—and contrary to ADs' assertion (Opp. at 31)—*Wallis v. Ford Motor Co.*, an on-point case from Arkansas's highest court, holds without qualification that "a private cause of action is *not cognizable* under the ADTPA" where, as here "the only alleged injury is the diminution in value of the product," 208 S.W.3d 153, 161 (Ark. 2005) (emphasis added). This question is not addressed in ADs' cited cases, which look at whether price-fixing is "unconscionable" conduct, and whether indirect purchasers can sue, under the ADTPA.

12

**ADs consumer protection claims are not viable**. Under Ark. Code Ann. § 4-88-107(a), ADs must allege they had "grossly unequal bargaining power" compared to Defendants, *In re Graphics Processing Units Antitrust Litig.* ("*GPU I*")*, 527 F. Supp. 2d 1011, 1030 (N.D. Cal. 2007). ADs cannot meet this requirement, given their conceded lack of "direct contact or interaction" with Defendants. AD CCC ¶ 217. Moreover, in ADs' cited case, the plaintiffs "allege[d] specifically that 'Defendants' conduct . . . unfairly benefited Defendants at the expense of Plaintiffs and the public.'" *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1157 (N.D. Cal. 2009). The ADs' complaint makes no such allegation of unequal bargaining power. Nor do IPPs attempt to distinguish *GPU I*. Opp. at 32.

**ADs' UE claim fails.** ADs cite no case to support their position that the BOTB limitation under Arkansas law exists only when there is a contract between parties. Opp. at 33.

**Arkansas's SOL bars or limits IPPs' claims.** <u>First</u>, the discovery rule does not apply because Arkansas's accrual rule for consumer protection claims is an injury-only rule. *See* Ark. Code Ann. § 4-88-113. <u>Second</u>, *Barre v. Hoffman*, 326 S.W.3d 415 (Ark. 2009), cited by ADs, confirms fraudulent concealment requires both affirmative acts of concealment and due diligence, but ADs satisfy neither requirement, *see* MTD § V; *supra* § V(B).

### C. California

**EPs do not plead a sufficient nexus with intrastate commerce.** Contrary to EPs' assertions (Opp. at 35), residency was *not* the lynchpin of *Meridian Project Systems, Inc. v. Hardin Construction Co.*; instead, the court focused on the lack of allegations of injury or misconduct *in California*. 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005). EPs allege neither here. EPs' allegation that defendants sold in-state (Opp. at 34) does not establish *mis*conduct in-state. And, because EPs do not allege where any California plaintiff bought OSS or cars (EP CAC ¶¶ 24–25), they also fail to plead in-state injury. Alleging where an EP lived at the time of suit

13

says nothing about *where she made the purchase*. Third, *Packaged Ice*, 779 F. Supp. 2d at 662–63, fails to address *California*'s intrastate nexus requirement, a state-law specific inquiry, and thus does not save EPs' California claims.

**IPPs' UE claims fail.** California does not recognize a cause of action for UE. *See* MTD at 27–28. IPPs' cited case law (Opp. at 35) does not reflect the *current* judicial treatment of UE in California, and IPPs fail to distinguish the numerous, more recent cases Defendants cited. Alternatively, IPPs' California UE claims fail because IPPs received the benefit of their bargains. *See* MTD at 27. IPPs' effort to distinguish *Peterson v. Cellco Partnership* fails; the issue there was whether the plaintiff got "the exchange . . . he expected," not whether a contract existed. 80 Cal. Rptr. 3d 316, 326 (Ct. App. 2008). Nor does IPPs' authority support their argument that the BOTB limitation applies only if there is a "binding contract between the parties" (Opp. at 35): *Southern California Foam & Coatings, Inc. v. Summers* does not consider the limitation (it just restates the unremarkable proposition that "the existence of a contract on the same subject matter would preclude *quantum meruit* recovery"), 2011 WL 96466, at *4 (Cal. Ct. App. Jan. 12, 2011), and the defendants in *Hirsch v. Bank of America, N.A.* did not raise the BOTB limitation, 132 Cal. Rptr. 2d 220, 229–30 (Ct. App. 2003).

**California's SOL bars or limits IPPs' claims.** First, California's accrual rule for state antitrust claims is equivalent to the Clayton Act. *See* Cal. Bus. & Prof. Code § 16750(a). Although not necessarily binding, federal law interpretation is at least instructive of the interpretation of similar terms in the Cartwright Act. *Compare Stutz Motor Car of Am., Inc. v. Reebok Int'l Ltd.*, 909 F. Supp. 1353 (C.D. Cal. 1995) (applying federal law interpretation directly), *with Aryeh v. Canon Bus. Solutions*, 292 P.3d 871 (Cal. 2013) (calling federal law interpretation instructive). Thus, California would not apply the discovery rule to antitrust

claims under the Cartwright Act.  *See supra* § V(A).  IPPs cite no contrary authority.  Unlike antitrust claims, California consumer protection act claims are subject to a discovery rule with a due diligence requirement.  *See Aryeh*, 292 P.3d at 1196 (distinguishing consumer protection claims from antitrust claims).  Nonetheless, California would still not allow recovery for damages incurred outside the four year statutory period.  *Id.* at 1200–01.  Second, IPPs do not contest that fraudulent concealment requires both affirmative acts of concealment and due diligence (Opp. at 36), but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).  This failure also prevents application of the discovery rule to IPPs' consumer protection claims.

### D.    District of Columbia

**ADs do not oppose dismissal of their DC CPPA claim.**  *See* Opp. at 37.

**IPPs' antitrust claims fail.**  The *Sun Dun* cases (relied on in *WH*) make clear that, for the DCAA to apply, a plaintiff must show "sales in [D.C.] that did not have an interstate aspect." *Sun Dun, Inc. of Wash. v. Coca-Cola Co.* ("*Sun Dun II*"), 770 F. Supp. 285, 289 (D. Md. 1991); *accord Sun Dun, Inc. of Wash. v. Coca-Cola Co.* ("*Sun Dun I*"), 740 F. Supp. 381, 397 (D. Md. 1990).  EPs' assertion that *Sun Dun I* allowed discovery to determine whether there was a D.C. nexus (Opp. at 38–39) is wrong:  the court allowed discovery only because it held plaintiff's *allegation* that it did "much of its business" in D.C. sufficient to infer the "possib[ility]" that plaintiff suffered injury there.  740 F. Supp. at 396.  *Here, no EP alleges residency in, purchase in, or anything else related to DC*.  EP CAC ¶¶ 19–63, 175.  Thus, this Court's DCAA analysis in *WH*, which rested on the premise that plaintiffs "purchased price-fixed products that entered [D.C.]," 2013 WL 2456612, at *20, does not apply.  EPs' reliance on federal cases holding that general allegations of anticompetitive conduct causing nationwide, supracompetitive prices satisfy DCAA's intrastate nexus requirement is misplaced because none of those cases analyzes the DCAA nexus requirement.  EPs' other cited cases do not address the DCAA at all.

**IPPs' UE claims fail.**  First, IPPs cite nothing to support their claim that D.C. does not require a direct benefit, and ignore and mischaracterize Defendants' authority.  Opp. at 39.  As part of a detailed analysis of D.C. UE law, the court in *Minebea Co. v. Papst* made clear that a plaintiff must allege a "direct benefit" it conferred on defendant.  444 F. Supp. 2d 68, 186 (D.D.C. 2006).  This was no "passing" use of the word "direct," as IPPs maintain, and *Minebea* is consistent with other D.C. case law cited by Defendants.  *See* MTD at 30.  Defendants' other cited cases also demonstrate that D.C. law requires more than mere receipt of a benefit by defendants.  *See Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008); *Hakki v. Zima Co.*, 2006 WL 852126, at *3 (D.C. Super. Ct. Mar. 28, 2006).

**D.C.'s SOL bars or limits IPPs' claims.**  First, the discovery rule is inapplicable because D.C.'s accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly.  *See* D.C. Code §§ 28-4508(a)(1), 4515; *supra* § V(A).  IPPs cite no contrary authority.  D.C. consumer protection act claims are subject to a discovery rule with a due diligence requirement.  *See Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308 (D.C. 2008).  Second, IPPs concede that fraudulent concealment requires both affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

### E.    Florida

**IPPs' UE claims fail.**  First, IPPs argue they need not plead lack of an adequate remedy at law, but IPPs' authority either:  (1) recognizes "[v]arious courts disagree" on that issue, *In re Horizon Organic Milk*, 2013 WL 3830124, at *15 (S.D. Fla. July 24, 2013); (2) does not involve Florida claims, *Cardizem*, 105 F. Supp. 2d at 671 n.25; or (3) does not address current Florida law, *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998).  The "overwhelming majority" of Florida cases addressing this issue hold that a UE claim is "not

available where there is an adequate legal remedy." *In re US Capital Holdings*, *LLC*, 2013 WL 5297352, at *8 n.12 (Bankr. S.D. Fla. Aug. 5, 2013) (collecting Florida authority).

      <u>Second</u>, IPPs wrongly contend that Defendants "equate 'direct benefit' with 'direct contact' between the parties." Opp. at 42. Defendants expressly stated that Florida's direct-benefit requirement does *not* exclusively mean privity or direct contact. MTD at 33–34. IPPs do not claim they meet the requirement, but instead argue that only "some" benefit flowing to the defendant is required. Opp. at 42. IPPs' cases say no such thing. Some expressly state Florida *has* a direct-benefit requirement. *See, e.g.*, *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011); *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007). In others, the defendants wrongly argued that privity or direct contact *is* required. *See, e.g.*, *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 233 (S.D.N.Y. 2012); *Fond du Lac*, 2012 WL 3841397, at *5. In still others, the court relied on Florida authority predating that cited by Defendants. *See, e.g.*, *Eggs*, 851 F. Supp. 2d at 928.

      <u>Third</u>, IPPs misconstrue the BOTB limitation and cite no authority supporting their argument that it "only applies . . . where the parties have a contract." Opp. at 42. IPPs cite *Comprehensive Care Corp. v. Katzman*, 2010 WL 3190136, at *4 (M.D. Fla. July 30, 2010), for a contract law principle that has no bearing on the BOTB limitation. And despite IPPs' contrary assertion (Opp. at 43), *Prohias v. Pfizer, Inc.* ("*Prohias I*"), 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007), and *American Safety Insurance Service, Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. Dist. Ct. App. 2007), do not stand for the proposition that Florida law only requires them to plead an "injury traceable to the defendants." Rather, they explicitly require a plaintiff to "plead . . . at a minimum, that they did not get the 'benefit of their bargain' when they purchased [the product]." *Prohias I*, 485 F. Supp. 2d at 1335.

17

Fourth, relying on cases that do not even address Florida UE law, IPPs erroneously claim

the consideration limitation is a "re-iteration" of the BOTB limitation. Opp. at 43 (citing *In re*

*K-Dur Antitrust Litig.* ("*K-Dur*"), 338 F. Supp. 2d 517 (D.N.J. 2004) and *In re Actiq Sales &*

*Mktg. Practices Litig.* ("*Actiq*"), 790 F. Supp. 2d 313 (E.D. Penn. 2011)).

**Florida's SOL bars or limits IPPs' claims.**  First, the discovery rule does not apply

because Florida's accrual rule for consumer protection claims is an injury-only rule.  *See* Fla.

Stat. Ann. § 501.211(2); *accord Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir. 1958).

Second, IPPs' cases (Opp. at 43) confirm fraudulent concealment requires affirmative acts of

concealment and due diligence.  IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

### F.     Hawaii

**IPPs' UE claims fail.**  IPPs cite no Hawaii state law, and the federal cases they cite

(Opp. at 44–45) contain no reference to, or analysis of, Hawaii UE law.  Defendants' Hawaii

authority, *Porter v. Hu*, makes clear that the "necessary prerequisite" to an equitable remedy is

"the absence of an adequate remedy at law."  169 P.3d 994, 1007 (Haw. Ct. App. 2007).  IPPs'

distinction of *Porter* (Opp. at 44) is inapposite because tort laws are not at issue here.  Further,

the summary judgment posture of *Davis v. Four Seasons Hotel Ltd*., 2011 WL 5025521 (D.

Haw. Oct. 20, 2011), is irrelevant as the cited proposition does not rely on factual findings.

**Hawaii's SOL bars or limits IPPs' claims.**  First, the discovery rule is inapplicable

because Hawaii's accrual rule for antitrust and consumer protection claims is equivalent to the

Clayton Act and harmonized accordingly.  *See* Haw. Rev. Stat. §§ 480-13(a), 480-3; *supra*

§ V(A).  IPPs incorrectly rely on *Anzai v. Chevron Corp*., 168 F. Supp. 2d 1180 (D. Haw. 2001),

to argue they can recover damages for the entire conspiracy period regardless of the SOL.

Hawaii itself has not adopted this position, and state Supreme Courts that have analyzed this

language have disagreed with *Anzai* and declined to adopt this position.  *See, e.g.*, *Alakayak v.*

18

*British Columbia Packers Ltd.*, 48 P.3d 432, 460–63 (Alaska 2002). Furthermore, EPs provide no justification why their single purchase of an automobile should be treated as a continuing conspiracy. Second, the cases cited by IPPs confirm fraudulent concealment requires affirmative acts of concealment, but IPPs have not satisfied this requirement. *See* MTD § V; *supra* § V(B).

G.    **Illinois**

**ADs do not oppose dismissal of their IAA claim.** *See* Opp. at 46.

**ADs' unjust enrichment claim fails.** First, ADs concede Illinois law requires that defendants owed a duty to plaintiffs (Opp. at 46), and ADs do not argue (nor could they) that any such "allegation" was made in their *complaint*. Even if it had been, it would be inadequate since in Illinois there must "be some independent basis which establishes a duty on . . . the defendant to act." *Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 877 (Ill. App. Ct. 2003). And ADs' federal cases do not analyze Illinois UE claims. Second, ADs cite no authority refuting Defendants' argument that a plaintiff may not recover for UE under Illinois law where it received the benefit of its bargain, and they cite no case restricting that limitation to situations involving a written contract. *Rohter v. Passarella* does not address a BOTB limitation; it uses the phrase in passing to describe a damages calculation, 617 N.E.2d 46, 51 (Ill. App. Ct. 1993), and *Crown Mortgage Co. v. Young* briefly references the BOTB limitation in a concurrence but does not limit it to contract cases. 989 N.E.2d 621, 627 (Ill. App. Ct. 2013).

**Illinois's SOL bars ADs' claims.** First, the discovery rule is inapplicable because Illinois' accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly. *See* 740 ILCS 10/7(2), 10/11; *supra* § V(A). IPPs' reliance on *Austin v. House of Vision, Inc.* is misplaced; *Austin* refused to allow damages outside the SOL period. 243 N.E.2d 297, 299–300 (Ill. App. Ct. 1968). Second, ADs' cited cases (Opp. at 47–48) confirm fraudulent

concealment requires both affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

### H.    Iowa

**IPPs' UE claims fail.**  First, the cases cited by Defendants (MTD at 39) establish that Iowa UE law requires a causal relationship, and are not limited to the specific factual situations. IPPs' attempt to address this requirement by citation to *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC* ("*SMW*") (Opp. at 48) fails, as that federal case wrongly focused on the relationship between the parties, *not* the relationship between the benefit and the harm.  737 F. Supp. 2d 380, 434–35 (E.D. Pa. 2010).  Second, UE is not a proper remedy here as IPPs received the benefit of their bargains.  *See* MTD at 40.  IPPs fail to distinguish *Crandell v. Wall Lake View Auburn Board of Education*, 2002 WL 987665, at *1–2 (Iowa Ct. App. May 15, 2002), and because IPPs have no viable claim for *any* remedy, IPPs' assertion that UE is an equitable remedy in Iowa is irrelevant.  The assertion that the BOTB limitation applies only where there is contractual privity is not supported by IPPs' cases.  Opp. at 49.  Finally, *Potash* does not address a BOTB limitation.  667 F. Supp. 2d at 949.

**Iowa's SOL bars or limits IPPs' claims.**  First, the discovery rule is inapplicable because Iowa's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly.  *See* Iowa Code Ann. §§ 553.12, 553.2; *supra* § V(A).  Furthermore, the applicable SOL specifically prohibits only "fraudulent concealment of th[e] cause of action," and does not contain a discovery provision.  Iowa Code Ann. § 553.16(1).  Second, IPPs' cases (Opp. at 49) confirm fraudulent concealment requires both affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

I.      **Kansas**

**IPPs' UE claims fail.**  First, IPPs' arguments (Opp. at 50–51) that (1) their Kansas unjust

enrichment claims survive because Kansas has no direct-benefit requirement, and (2)

Defendants' Kansas authority is distinguishable, both fail.  Although *Eggs*, 851 F. Supp. 2d at

929–30, erroneously focused on the factual context of *Spires v. Hospital Corp. of America*, while

ignoring the portion of that case requiring a direct benefit for a Kansas unjust enrichment claim,

*see* 289 F. App'x 269, 273 (10th Cir. 2008), *Compressors II* and *Potash* correctly relied on the

direct benefit requirement to dismiss UE claims.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*

("*LCD III*") relied only on a case holding *privity* is not required, 2011 WL 4501223, at *12 (N.D.

Cal. Sept. 28, 2011), but defendants do not contend "direct benefit" means "privity."  IPPs try to

distinguish *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.* based on its facts, but fail to

acknowledge its inclusion of *general* Kansas law analysis and its holding that "an essential

prerequisite" for UE absent privity between the parties (as here) is "the acceptance [by the

defendant] . . . of benefits rendered under such circumstances as reasonabl[e to] notify" him that

the plaintiff will expect to be compensated by him.  910 P.2d 839, 847 (Kan. 1996).  Second,

IPPs fail to respond to the cases Defendants cite that hold a UE claim does not exist where

defendant provided consideration for the benefit received.  MTD at 41–42.  Indeed, *Senne & Co.,

Inc. v. Simon Capital Ltd.,* 2007 WL 1175858, at *8 (Kan. Ct. App. Apr. 20, 2007), expressly

recognizes that a UE claim is premised on "the defendant receiv[ing] a benefit without having

paid for it."  IPPs' federal cases fail to address Kansas UE law.

**Kansas's SOL bars or limits IPPs' claims.**  First, although the Kansas Supreme Court

has passed on opportunities to decide the applicability of the discovery rule to antitrust claims,

*see O'Brien v. Leegin Creative Leather Prods., Inc.*, 277 P.3d 1062 (Kan. 2012), Kansas' accrual

rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly, *see* Kan.

Stat. Ann. § 50-161(b); *Bergstrom v. Noah*, 974 P.2d 520, 530 (Kan. 1999). Thus, the discovery rule is inapplicable. *See supra* § V(A). Second, IPPs concede that fraudulent concealment requires both affirmative acts of concealment and due diligence (Opp. at 51), but IPPs satisfy neither requirement. *See* MTD § V; *supra* § V(B).

### J. Maine

 **IPPs' UE claims fail.** IPPs' argument that Maine UE law does not require that a plaintiff confer a benefit directly on the defendant (Opp. at 52) ignores the *Rivers* court's conclusion that the plaintiff conferred *no* benefit on the defendant because (1) the plaintiff had not *directly* conferred a benefit on him, and (2) no support under Maine law existed for the "indirect benefit" theory the plaintiff (like IPPs here) sought to assert. *Rivers v. Amato*, 2001 WL 1736498, at *4 (Me. Super. Ct. June 22, 2001). IPPs stress that, in affirming *Rivers*, the Maine Supreme Court did not discuss "direct" vs. "indirect" benefit, but the court found *no* benefit had been conferred and, thus, had no need to consider its directness. *Rivers v. Amato*, 827 A.2d 827, 830 (Me. 2003). Thus, the decision from this District in *Compressors II* dismissing a Maine UE claim in the same context is sound because it is based on *In re Aftermarket Filters Antitrust Litig.* ("*Aftermarket II*"), 2010 WL 1416259, at *3 (N.D. Ill. Apr. 1, 2010), which in turn is based on *Rivers*, as IPPs recognized, Opp. at 52. IPPs' authority is not to the contrary. *Landry v. Landry* involved a benefit that a son *directly* bestowed on his father by making home improvements, 697 A.2d 843, 844 (Me. 1997), and *LCD III* found "a direct relationship" between plaintiffs' loss and defendants' benefit where the component at issue comprised 60 to 70% of the cost of the product, 2011 WL 4501223, at *8, *10–11. While IPPs argue the inapplicability of *Glenwood Farms, Inc. v. Ivey*, that court dismissed plaintiffs' claim because the "benefit simply was not conferred on the defendants by the plaintiffs, but rather by third parties." 228 F.R.D. 47, 52 (D. Me. 2005).

22

**Maine's SOL bars or limits IPPs' claims.**  First, the discovery rule is inapplicable because Maine's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly.  *See* Me. Rev. Stat. Ann. tit. 10, § 1104.1; *Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 875 F. Supp. 8, 14 (D. Me. 1994); *supra* § V(A).  Second, the cases cited by IPPs confirm that fraudulent concealment—a statutory doctrine, *see* Me. Rev. Stat. Ann. tit. 14, § 859—requires both affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

### K.    Massachusetts

**EPs do not oppose dismissal of their Massachusetts antitrust claim.**  Opp. at 53–54.

**IPPs' UE claims fail.**  First, IPPs cite no authority in claiming their UE claims should not be dismissed because other available remedies exist (Opp. at 53), and wrongly argue that Defendants' authority, *Fernandes v. Havkin*, dismissed a UE claim due to the existence of a contract; the claim was dismissed because other laws provided an adequate remedy.  731 F. Supp. 2d 103, 114 (D. Mass. 2010) (consumer protection and negligence claims "preclude[d] a claim for unjust enrichment").  Second, to evade the BOTB limitation and consideration limitation, IPPs erroneously emphasize the existence of contracts in Defendants' cited cases (Opp. at 53) to support their argument that these limitations apply only where there is contractual privity.  IPPs cite no authority that the BOTB limitation does not apply, and no state authority supporting a claim of UE when a defendant paid consideration for the benefit received.  IPPs' federal cases did not analyze Massachusetts UE law.  *See In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL 2181185, at *25 (E.D. Tenn. May 20, 2013); *K-Dur*, 338 F. Supp. 2d at 543–46; *Actiq*, 790 F. Supp. 2d at 329–31; *Cardizem*, 105 F. Supp. 2d at 668.

**Massachusetts's SOL bars or limits IPPs' claims.**  First, the discovery rule is inapplicable because Massachusetts's accrual rule for antitrust claims is equivalent to the

Clayton Act and harmonized accordingly.  *See* Mass. Gen. Laws Ann. ch. 93, §§ 1, 12; *supra* § V(A).  Second, IPPs cite the wrong standard from *Puritan Medical Center, Inc. v. Cashman*, which applied an "inherently unknowable" test for application of discovery rule in *breach of contract* cases.  596 N.E.2d 1004, 1009–10 (Mass. 1992).  Third, the cases cited by IPPs (Opp. at 54) confirm that both affirmative acts of concealment and due diligence are required for fraudulent concealment, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

### L.  Michigan

**IPPs' UE claims fail.**  First, IPPs erroneously emphasize the presence of a contract in Defendants' cited case in an attempt to undermine the BOTB limitation, but their only authority is federal cases that do not analyze Michigan law or the BOTB limitation.  Second, IPPs argue Michigan UE law does not require the conferral of a direct benefit, but courts in this District have found otherwise.  *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25–26; *Munson v. Countrywide Home Loans, Inc.*, 2008 WL 5381866, at *9 (E.D. Mich. Dec. 17, 2008).  IPPs misconstrue *Kammer Asphalt Paving Co. v. East China Township Schools*; there, plaintiff conferred a *direct* benefit on defendant by paving its athletic facilities.  504 N.W.2d 635, 637 (Mich. 1993).  Similarly, the defendant in *Morris Pumps v. Centerline Piping, Inc*. was in direct contact with and was directly benefitted by plaintiffs.  729 N.W.2d 898, 901 (Mich. Ct. App. 2006).  And the federal cases IPPs cite do not help them:  *Cardizem* has no analysis of Michigan case law on this point, 105 F. Supp. 2d at 668–71; and *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD II*"), 599 F. Supp. 2d 1179, 1189–90 (N.D. Cal. 2009), and *SMW*, 737 F. Supp. 2d at 438, rely on the erroneous reading of *Kammer* that IPPs espouse.  IPPs cannot factually distinguish *Niemi*, which involved a benefit conveyed on intermediaries, not directly upon a defendant.  *Niemi v. Am. Axle Mfg. & Holding, Inc*., 2007 WL 29383, at *6 (Mich. Ct. App. Jan. 4, 2007).  "[I]ndirect transactions do not state a claim that Plaintiff conferred a direct benefit on

Defendants" as required to state a Michigan UE claim.  *Lipov v. Louisiana-Pacific Corp.*, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013) (criticizing plaintiffs' reliance on *Kammer*).

**Michigan's SOL bars or limits IPPs' claims.**  <u>First</u>, the discovery rule is inapplicable because Michigan's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly.  Mich. Comp. Laws Ann. ("MCL") §§ 445.778, 445.784; *see supra* § V(A).  IPPs rely on MCL § 600.5855, but cite no case applying it to antitrust claims.  Even if § 600.5855  did apply, IPPs should have discovered their claims through due diligence by February 2010 at the latest, when it was publicly announced that Tokai Rika was being investigated for possible antitrust violations—more than two years before the first IPP complaint was filed.  <u>Second</u>, fraudulent concealment requires both affirmative acts of concealment and due diligence in Michigan, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

### M.    Minnesota

**IPPs' UE claims fail.**  <u>First</u>, IPPs' attempt to distinguish *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.* fails; that case is not limited to situations where plaintiff did not pursue available remedies at law, and instead makes clear that "[i]t is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law."  493 N.W.2d 137, 140 (Minn. Ct. App. 1992).  <u>Second</u>, IPPs ignore facts central to the analysis in Defendants' cited case in an attempt to evade Minnesota's direct-benefit requirement.  Opp. at 57.  *Schumacher v. Schumacher* involved parents who allegedly benefitted *directly* from their son's investment in their business and land.  627 N.W.2d 725, 729 (Minn. Ct. App. 2001).  <u>Third</u>, despite IPPs' contrary claims (Opp. at 57), *Zinter v. University of Minnesota* does *not* limit the BOTB limitation to contractual settings.  799 N.W.2d 243, 247 (Minn. Ct. App. 2011).

**Minnesota's SOL bars or limits IPPs' claims.**  <u>First</u>, the discovery rule is inapplicable because Minnesota's accrual rule for antitrust claims is equivalent to the Clayton Act and

harmonized accordingly. *See* Minn. Stat. Ann. § 325D.57; *Minn. Twins P'ship v. State ex rel. Hatch*, 592 N.W.2d 847, 851 (Minn. 1999); *supra* § V(A). Second, the cases cited by IPPs confirm fraudulent concealment requires both affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement. *See* MTD § V; *supra* § V(B).

### N. Mississippi

**IPPs fail to plead a sufficient Mississippi nexus.** IPPs' failure to allege some conduct by defendants performed wholly in-state is fatal to their Mississippi antitrust claims. MTD at 49–50. IPPs allege *no* activity or conduct *by Defendants* in Mississippi. For this reason, IPPs' reliance on *In re Graphics Processing Units Antitrust Litig.* ("*GPU II*"), 540 F. Supp. 2d 1085, 1099 (N.D. Cal. 2007), cases involving in-state sales by defendants or their co-conspirators, is misplaced. IPPs' reliance on *California v. Infineon Technologies AG* ("*Infineon I*") also is misplaced; the court dismissed plaintiffs' MAA claim because they pled no intrastate activity by defendants. 531 F. Supp. 2d 1124, 1158 (N.D. Cal. 2007). And while *LCD II*, 599 F. Supp. 2d at 1188, held the Mississippi nexus was met based on allegations like IPPs', it did so in reliance on *GPU II* and *Infineon I*, which do not support that conclusion in the absence of allegations of in-state conduct by defendants. Finally, *In re Microsoft*'s failure to cite a general rule of construction does not undermine its holding that Mississippi's antitrust statute requires IPPs to allege "at least some conduct by [defendants] which was performed wholly interstate." *In re Microsoft Corp. Antitrust Litig.*, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003).

**IPPs' UE claims fail.** First, unlike IPPs, Defendants rely on the *current* judicial treatment of UE claims under Mississippi law, which requires plaintiffs to allege money paid to defendants by "mistake of fact." MTD at 51 (citing *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012)). IPPs make no such allegation and do not attempt to distinguish *Willis*. Instead, they cite (Opp. at 60) outdated and inapposite federal or lower state court cases and one

state case addressing "unjust enrichment in contract cases." *Milliken & Michaels, Inc. v. Fred Netterville Lumber Co.*, 676 So. 2d 266, 269 (Miss. 1996). *Eggs* does not analyze the elements of Mississippi UE law, 851 F. Supp. 2d at 912–14, and *LCD III* is concerned with the parties' relationship, not the elements of UE, 2011 WL 4501223, at *8–9.

**Mississippi's SOL bars or limits IPPs' claims.**  In Mississippi, a "cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."  Miss. Code Ann. § 15-1-49(2).  Courts applying this statute to antitrust claims require plaintiffs to plead both affirmative acts of concealment and due diligence.  *See, e.g.*, *Carder v. BASF Corp.*, 919 So. 2d 258, 261 (Miss. Ct. App. 2005).  IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).  *In re Catfish Antitrust Litigation*, cited by IPPs, is inapposite because it is applying federal, not Mississippi state, substantive fraudulent concealment law.  826 F. Supp. 1019, 1029 (N.D. Miss. 1993).

### O.   Missouri

**IPPs' UE claims fail.**  First, IPPs wrongly argue the BOTB limitation only applies where there is contractual privity (Opp. at 61) by mischaracterizing *Howard v. Turnbull*, in which the court denied plaintiff's UE claim because he got "precisely what he bargained for" *from a third-party*, not defendants. 316 S.W.3d 431, 438 (Mo. Ct. App. 2010).  IPPs cite none of their own case law to the contrary.  Second,  IPPs' attempt to distinguish *County Asphalt Paving Co. v. Mosley Construction, Inc*., fails because defendants there, like here, provided the agreed-upon consideration. 239 S.W.3d 704, 711–12 (Mo. Ct. App. 2007).  IPPs' federal case law (Opp. at 61) does not analyze Missouri unjust enrichment law.

**Missouri's SOL bars or limits IPPs' claims.**  First, Missouri's accrual rule for consumer protection claims is an injury-only rule, not a discovery rule.  *See* Mo. Rev. Stat. § 407.025.  Second, IPPs point to V.A.M.S. § 516.280, which allows for fraudulent concealment

27

to toll a statute of limitation, but point to no case applying it to consumer protection claims in Missouri.  Even if this section did apply to such claims, it requires affirmative acts of concealment and due diligence.  IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

**P.    Montana**

**EPs' Montana consumer protection claim fails.**  First, like the Illinois bar, the Montana class-action bar survives *Shady Grove* and requires dismissal of EPs' Montana consumer protection claim.  Not only is the class action bar "contained in the same paragraph of the same statute as the substantive right," *WH*, 2013 WL 2456612, at *22 (citing *Digital Music*, 812 F. Supp. 2d at 416); but the substantive right of action and class bar are *in the same sentence,* with the class bar specifically limiting the right of action *as it is granted*, Mont. Code Ann. § 30-14-133(1).  EPs' argument that *Shady Grove* created a blanket rule that all state class bars are procedural and, thus, do not apply in federal court (Opp. at 63), is wrong because it rests on *Shady Grove*'s non-controlling plurality opinion.  *See Packaged Ice*, 779 F. Supp. 2d at 661 n.4 (recognizing Justice Stevens's opinion as the controlling *Shady Grove* opinion and that Montana consumer protection class action bar would apply in federal court).

Second, there is no dispute that Montana's consumer protection law requires IPPs to plead "conduct or activity taking place within [Montana]."  *DRAM I*, 516 F. Supp. 2d at 1104; *see also WH*, 2013 WL 2456612, at *29.  EPs fail to do so.  They do not plead *where any EP bought OSS or cars*.  EP CAC ¶¶ 19–63, 207.  Although IPPs argue "[t]his is not the case," Opp. at 64, their failure to cite to the CAC makes the opposite point.  EPs' allegations thus differ from those held sufficient in *WH* where the Court was silent on EPs' claim but held that *ADs* met the nexus requirement because they alleged purchases in Montana.  2013 WL 2456612, at *29.  EPs' citation to *Packaged Ice* does not help because it did not address Montana's nexus requirement.

**Montana's SOL bars or limits IPPs' claims.** First, Montana's accrual rule for consumer protection claims is an injury-only rule, not a discovery rule. *See* Mont. Code Ann. § 27-2-102(1)(a). Second, IPPs' cited authority confirms that fraudulent concealment requires both affirmative acts of concealment and due diligence, *see* Mont. Code Ann. § 27-2-102(3)(b); *Yellowstone Conf. of United Methodist Church v. D.A. Davidson, Inc.*, 228 Mont. 288, 294 (1987), but IPPs satisfy neither requirement, *see* MTD § V; *supra* § V(B).

**Q.     Nebraska**

**IPPs' UE claims fail.** IPPs argue against application of the BOTB limitation because the parties in *Washa v. Miller* were parties to a contract (Opp. at 66), but *Washa*'s holding was not contingent on a contract. 546 N.W.2d 813, 819 (Neb. 1996). IPPs' federal authority (Opp. at 66) neither involves a Nebraska state claim not addresses the BOTB limitation.

**Nebraska's SOL bars or limits IPPs' claims.** First, the discovery rule is inapplicable because Nebraska's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly. *See* Neb. Rev. Stat. §§ 59-821, 829; *supra* § V(A). Second, IPPs do not dispute that fraudulent concealment requires both affirmative acts of concealment and due diligence; IPPs satisfy neither requirement. *See* MTD § V; *supra* § V(B).

**R.     Nevada**

**IPPs' Nevada antitrust claims fail.** Nevada's antitrust statute requires IPPs to allege at least *some* unlawful conduct that took place within Nevada. Nev. Rev. Stat. § 598A.060. Contrary to IPPs' (irrelevant) assertions, EPs do *not* allege that any EP made in-state purchases (EP CAC ¶¶ 43, 184)—thus, any reliance on *LCD II*, 599 F. Supp. 2d at 1189, which ignores the plain language of the Nevada statute and cites no Nevada case law, is misplaced. Even if EPs made such allegations, their claims would still fail because the Nevada statute is focused on *defendants*' in-state conduct, *not* plaintiffs', and ADs' claims fail for the same reason.

**IPPs' UE claims fail.**  IPPs' "any consideration" articulation misstates the Nevada consideration limitation and, thus, their federal authority (which does not address Nevada UE law) is irrelevant.  Opp. at 68.  IPPs cannot distinguish *Bowyer v. Davidson*, which makes no reference the legality of a party's actions in holding that there is no UE where, like here, a defendant provides the consideration due under an agreement.  584 P.2d 686, 720 (Nev. 1978).

**Nevada's SOL bars or limits IPPs' claims.**  IPPs need to allege facts to show they sued "within 4 years after [they] discovered, or by the exercise of reasonable diligence, should have discovered" the cause of action.  Nev. Rev. Stat. § 598A.220(1).  IPPs have not satisfied this requirement.  *See* MTD § V; *supra* § V(B).

## S.    New Hampshire

**IPPs cannot assert retroactive antitrust claims.**  As it did in *WH*, 2013 WL 2456612, at *19, the Court should dismiss IPPs' New Hampshire antitrust claims to the extent they seek recovery prior to January 1, 2008.  Contrary to IPPs' unsupported claims, Opp. at 70, the New Hampshire antitrust statute certainly "create[d] a new duty or liability" with respect to indirect purchasers when it was enacted.  Thus, IPPs' authority does not support retroactive application.

**IPPs' UE claims fail.**  First, IPPs are wrong that New Hampshire rejects the BOTB limitation.  Opp. at 70.  In *Kowalski v. Cedars of Portsmouth Condominium Ass'n*, the court upheld the UE claim where the plaintiff (unlike here) did not receive the benefit of his bargain. 769 A.2d 344, 347–48 (N.H. 2001) (plaintiff who believed he received the benefit of a licensed real estate agent's expertise did not receive the benefit of his bargain when defendant lacked a real estate license).  IPPs also argue erroneously (Opp. at 71) that defendants citation to *Clapp v. Goffstown School District*, 977 A.2d 1021, 1025 (N.H. 2009) is inapposite because the BOTB limitation applies only in contractual settings.  *Clapp* is not so restricted.  IPPs' only other citation, *Petrie-Clemons v. Butterfield*, is inapposite because it did not address the BOTB

30

limitation.  441 A.2d 1167, 1171–72 (N.H. 1982).  <u>Second</u>, rather than directly address the New

Hampshire consideration requirement or cite their own authority, IPPs misconstrue *Axenics, Inc.*

*v. Turner Construction Co*., which held that a plaintiff cannot assert a UE claim against a

defendant who fulfilled its obligation to a third party.  62 A.3d 754, 766–67 (N.H. 2013).

**New Hampshire's SOL bars or limits IPPs' claims.**  <u>First</u>, the discovery rule does not

apply because New Hampshire's accrual rule for antitrust claims is equivalent to the Clayton Act

and harmonized accordingly.  *See* N.H. Rev. Stat. Ann. §§ 356:11, 14; *supra* § V(A).  <u>Second</u>,

IPPs do not dispute that fraudulent concealment requires affirmative acts of concealment and due

diligence, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

### T.     New Mexico

**IPPs' consumer protection claims fail.**  IPPs' complaints are devoid of any facts to

support the alleged "gross disparity" between the (unpled) prices IPPs paid for OSS and the

value they received, and their allegations related to concealing the conspiracy are irrelevant for

purposes of the statute.  IPPs' dearth of factual support distinguishes IPPs' complaints from

those in *every* case they cite—and on which this Court relied in *WH*, 2013 WL 2456612, at

*27—where plaintiffs quantified in some way the alleged "gross disparity."  *See Aftermarket*

*Filters I*, 2009 WL 3754041, at *2 (price increase of "at least 5%"); *DDAVP* Compl. ¶ 28,

*DDAVP*, 903 F. Supp. 2d 198 (S.D.N.Y. 2012) (No. 7:05-cv-2237), ECF No. 84 (first generic

manufacturer "typically charges 90% or more" of brand-name drug price); *Digital Music*, 812 F.

Supp. 2d at 397 (non-conspirator retailer charges "less than half of Defendants' wholesale

price"); *Eggs*, 851 F. Supp. 2d at 906 ("40% [price] increase"); *LCD I* Compl. ¶ 151, *LCD I*, 586

F. Supp. 2d 1109, (No. 3:07-md-01827), ECF No. 367 ("approximately 35%" price increase);

MTD at 62–63 (detailing quantification of "gross disparity" in *NMV*  and *In re Chocolate*

*Confectionary Antitrust Litig*. ("*Chocolate I*"), 602 F. Supp. 2d 538 (M.D. Pa. 2009)).  IPPs'

New Mexico consumer protection claims rest on nothing more than the "formulaic recitation" *Twombly* forbids and should be dismissed.

**IPPs' UE claims fail.** IPPs' effort to minimize the import of *Arena Resources, Inc. v. Obo, Inc.* (Opp. at 74) fails; *Arena* makes clear that a plaintiff cannot recover for UE if it has received that for which it bargained. 238 P.3d 357, 361–62 (N.M. Ct. App. 2010). Further, IPPs cite to *LCD III*, 2011 WL 4501223, but that case did not address the BOTB limitation.

**New Mexico's SOL bars or limits IPPs' claims.** While New Mexico's SOL incorporates a discovery rule for antitrust and consumer protection claims, a plaintiff attempting to invoke the rule "has the burden of 'demonstrat[ing] that if she had diligently investigated the problem she would have been unable to discover' the facts underlying the claim." *Butler v. Deutsche Morgan Grenfell, Inc.*, 140 P.3d 532, 539 (N.M. Ct. App. 2006) (citation omitted). IPPs have not satisfied this requirement. *See* MTD § V; *supra* § V(B).

U.    **New York**

**EP fail to allege a sufficient impact on intrastate commerce.** Despite their claims to the contrary (Opp. at 76–77), EPs' complaint alleges conduct principally affecting interstate commerce and is outside the scope of New York's antitrust law. EPs do not allege a single OSS or vehicle purchase in New York, nor do they allege any defendant is located, or has a principal place of business, there. Thus, EPs' New York nexus allegations are even weaker than those found deficient in *H-Quotient, Inc. v. Knight Trading Groupf, Inc.*, 2005 WL 323750 (S.D.N.Y. Feb. 9, 2009). Further, *SMW*, 737 F. Supp. at 398–99, cited by IPPs, *dismisses* the Donnelly Act claim for deficient pleading; *NMV*, 350 F. Supp. 2d at 196–97, and *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8 (2d Cir. 2012), address the intrastate nexus requirement of New York's *consumer protection* law; *Digital Music*, 812 F. Supp. 2d at 417, involves defendants headquartered or incorporated in-state who "clearly conduct[ed] significant business [there]";

32

and *Packaged Ice*, 779 F. Supp. 2d at 664, finds allegations similar to EPs' sufficient *without analyzing a single New York case*.

**EPs injuries are too remote.**  EPs' New York consumer protection claim fails because EPs do not allege that any deceptive transactions occurred in New York, as required by *Goshen v. Mutual Life Insurance Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002).  EPs falsely state that *Goshen* and *Kaufman* are limited to claims by out-of-state plaintiffs.  Opp. at 76–77.  *Kaufman* specifically holds that "as *Goshen* makes clear, the 'analysis does not turn on the residency of the parties,' . . . but on the lack of any plausible claim that [plaintiffs] engaged in a transaction with [the defendant] within New York."  474 F. App'x at 8 n.1.  Further, EPs selectively quote *Cruz v. FXDirectDealer, LLC*, which states that the plaintiff had standing under Section 349 because the case "clearly involves a series of allegedly deceptive transactions that *occurred in New York*."  720 F.3d 115, 123 (2d Cir. 2013) (emphasis added).  Although EPs' opposition alleges the transactions occurred in New York, no such allegations are in their complaint.

**IPPs have not alleged a deceptive act directed towards consumers.**  IPPs' New York consumer protection claims should be dismissed for failure to allege "a deceptive act or practice *directed toward consumers* and that such act or practice resulted in actual injury to plaintiff."  *Blue Cross & Blue Shield v. Philip Morris USA, Inc.* ("*BC/BS*"), 818 N.E.2d 1140, 1143 (N.Y. 2004) (emphasis added).   IPPs admit they had no contact with Defendants.  In *WH*, the Court dismissed ADs' claims on this ground but allowed EPs' claim based on *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 148 (App. Div. 2004).  *WH*, 2013 WL 2456612, at *28.  *Cox* addressed *monopolistic* practices and is an intermediate level New York decision that predates and conflicts with *BC/BS*, a decision of New York's *highest* court.  It also is inconsistent with the two post-*BC/BS* cases cited by Defendants (MTD at 64) dismissing antitrust *conspiracy* claims by indirect

purchasers because they, like IPPs, did not plead misrepresentations by defendants directed at them.  IPPs cite no post-*BC/BS* New York case allowing similar claims, and none of the federal cases they cite considers *BC/BS*.

**IPPs' UE claims fail.**  First, IPPs wrongly conflate the concepts of direct *relationship* and direct *benefit*.  Opp. at 74.  In New York, a party may recover on a UE claim only where they engaged in an "actual, substantive relationship" with *or* conferred a direct benefit upon the defendant.  *See, e.g.*, *Carmona v. Spanish Broad. Sys., Inc.*, 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009).  IPPs' authority does not state otherwise.  The relationship between IPPs and Defendants is akin to that in *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007), and distinguishable from that in *Waldman* and *Cox*, where the indirect purchasers sued the makers of the products they bought, not the manufacturers of a *component* of those products, *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403–04 (E.D.N.Y. 2010); *Cox*, 778 N.Y.S.2d at 149.  IPPs' federal cases also do not help them:  *Eggs*, 851 F. Supp. 2d at 930, relies largely on other federal cases, and misinterprets *Sperry* (which holds privity, *not* direct benefit, is not required); *In re Chocolate Confectionary Antitrust Litig.* ("*Chocolate II*"), 749 F. Supp. 2d 224, 240–41 (M.D. Pa. 2010), relies on two cases pre-dating *Sperry*; *Cardizem* cites no New York law holding that a direct benefit is not required, 105 F. Supp. 2d at 670–71; and *LCD II* does not involve a New York UE claim, 599 F. Supp. 2d at 1189.  IPPs' other state case on this issue pre-dates *Sperry and* involved a direct benefit.

Second, IPPs cite no New York authority supporting their assertion that the BOTB limitation applies only where there is contractual privity.  Opp. at 79.  Their authority either does not address the BOTB limitation, *see Cardizem*, 105 F. Supp. 2d at 668–71; *Chocolate II*, 749 F. Supp. 2d at 240–41, or rejects it for lack of jurisdiction-specific authority, *see Eggs*, 851 F. Supp.

2d at 918–19, which defendants provide here.  IPPs' attempt to distinguish *One Step Up, Ltd. v. Webster Business Credit Corp.* fails because the existence of a contract is irrelevant to the fact defendant was not enriched.  925 N.Y.S.2d 61, 70 (App. Div. 2011).

**New York's SOL bars or limits IPPs' claims.**  First, New York's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly, N.Y. Gen. Bus. Law § 340(5); *New York v. Rattenni*, 613 N.E.2d 155, 158 (N.Y. 1993); thus, the discovery rule is inapplicable, *see supra* § V(A).  Likewise, the discovery rule does not apply to New York's consumer protection claims, which applies an explicit injury-only accrual rule.  *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007).  Second, IPPs concede that fraudulent concealment requires affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

## V.      North Carolina

**IPPs fail to allege conduct that took place in North Carolina.**  North Carolina's antitrust law requires allegations of anticompetitive conduct *by Defendants in the state*.  *See* MTD at 68.  IPPs wrongly claim that the statute only "requires the trade or commerce of North Carolina be restrained" (Opp. at 81); the plain language of the statute requires allegations of a "conspiracy in restraint of trade or commerce *in the State of North Carolina*," N.C. Gen. Stat. § 75-1 (emphasis added).  *IPPs cite no contrary case law*.  Thus, in-state conduct by *plaintiffs* and alleged in-state *effects* of defendants' conduct—which is all IPPs point to (Opp. at 81)—do not meet the *conduct*-based nexus requirement of North Carolina's antitrust law.  *See* MTD at 68.  Neither *WH* nor *SMW* can save IPPs' claims.  *WH* relied on cases construing the *effects*-based intrastate nexus standard of North Carolina's *consumer protection* law.  *SMW* included allegations "that [defendant] *engaged in business in North Carolina* by producing a drug sold and promoted in" North Carolina. 737 F. Supp. 2d at 400 (emphasis added); *see also SMW*

Compl. ¶ 19 ("Defendants manufactured and sold Wellbutrin SR from their headquarters in . . . North Carolina.").  IPPs make no such allegations here.

**IPPs fail to allege a sufficient intrastate commerce nexus.**  IPPs fail to refute Defendants' argument (MTD at 68–69) that IPPs have not alleged a sufficient nexus between Defendants' conduct and intrastate commerce to support a claim under North Carolina's consumer protection laws.  EPs' cited cases (Opp. at 82–83) do not help them:  in *Lawrence v. UMLIC-Five Corp.*, 2007 WL 2570256, at \*5–6 (N.C. Super. Ct. June 18, 2007), the court dismissed the claim even though all four defendants were North Carolina residents, and *SMW* involved allegations of both in-state sales by defendants headquartered in North Carolina and in-state purchases by named plaintiffs (*SMW* Compl. ¶¶ 14, 19), *neither of which EPs plead here*.  All of IPPs' other cited cases fail to address the intrastate nexus requirement.

**IPPs' UE claims fail**.  First, in an attempt to evade North Carolina's direct benefit requirement, IPPs rely on outdated cases that mischaracterize or do not substantively address relevant North Carolina precedent.  Opp. at 83.  IPPs have no answer to *Baker Construction Co. v. City of Burlington*, 2009 WL 3350747, at \*6 (N.C. Ct. App. Oct. 20, 2009), and assert that *Embree Construction Group, Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 922–23 (N.C. 1992) (both cited in MTD at 71), does not require a direct benefit.  But the *Embree* plaintiff had a direct relationship with, and directly benefited from, the defendant.  IPPs' federal cases do not find otherwise, but rather misinterpret *Embree* by erroneously equating a lack of privity with absence of a direct benefit.  In contrast, the state cases—*Embree* and *Baker*—are consistent in involving the conferral of a direct benefit, which IPPs have not alleged.  Second, IPPs cite no North Carolina authority to support their assertion that the BOTB limitation applies only where there is contractual privity, and their federal cases either (1) do not address the limitation, *Cardizem*, 105

F. Supp. 2d at 668–71; *Chocolate II*, 749 F. Supp. 2d at 240–41; or (2) reject it for lack of jurisdiction-specific authority, *Eggs*, 851 F. Supp. 2d at 918–19, which Defendants provide here, MTD at 70, and which IPPs fail to address.

      **North Carolina's SOL bars or limits IPPs' claims.** First, the discovery rule is inapplicable because North Carolina's accrual rule for antitrust and consumer protection claims is equivalent to the Clayton Act and harmonized accordingly. *See* N.C. Gen. Stat § 75-16; *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973); *supra* § V(A). Second, IPPs concede fraudulent concealment requires affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement. *See* MTD § V; *supra* § V(B).

      **W.    North Dakota**

      **IPPs' UE claims fail.** First, IPPs claim they have pled the five elements of a North Dakota UE claim (Opp. at 85–86), but fail to cite any portion of their complaints alleging "[a]bsence of a justification" or "absence of a remedy provided by law." Second, IPPs argue North Dakota has no direct-benefit requirement (Opp. at 86), but rely on cases that pre-date the North Dakota Supreme Court's holding in *Apache Corp. v. MDU Resources Group, Inc.*, requiring a "direct" benefit. 603 N.W.2d 891, 895 (N.D. 1999). *BTA Oil Producers v. MDU Resources Group*, relied on by IPPs, dismissed the plaintiffs' UE claims based on the reasoning in *Apache*. 642 N.W.2d 873, 882 (N.D. 2002). IPPs mischaracterize *Opp v. Matzke*, which held the defendants were legally "obligated to [the plaintiff] directly rather than on a theory of unjust enrichment," and thus did not "further consider the theory of recovery." 559 N.W.2d 837, 841 (N.D. 1997). Third, IPPs cite none of their own case law to argue against application of the BOTB limitation. IPPs claim *Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324, 328 (N.D. 1982), requires "an agreement between the enriched and the impoverished," Opp. at 87.

However, as IPPs admit, "[n]o such agreement exists here," *id.*, and therefore their North Dakota UE claims should be dismissed on IPPs' own reading of the case.

**North Dakota's SOL bars or limits IPPs' claims.** <u>First</u>, North Dakota's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly, N.D. Cent. Code § 51-08.1-08(2); *Matrix Props. Corp. v. TAG Invs.*, 644 N.W.2d 601 (N.D. 2002); thus, the discovery rule is inapplicable, *see supra* § V(A). <u>Second</u>, IPPs cite no authority that applies N.D. Cent. Code § 28-01-24 to state antitrust claims. Even if applicable, the statute allows IPPs to "commence an action within one year from the time" the claim "is discovered . . . or might have been discovered." *Id.* IPPs should have discovered their claims through due diligence (at the latest) in February 2010 and thus fail to satisfy this requirement.

## X. Oregon

**IPPs' UE claims fail.** IPPs' claim that Oregon law applies the BOTB limitation only when there is contractual privity (Opp. at 88) is incorrect. Both *High v. Davis*, 584 P.2d 725, 736 (Or. 1978), and *Winters v. County of Clatsop*, 150 P.3d 1104, 1107–08 (Or. Ct. App. 2007), applied the BOTB limitation to deny UE claims where plaintiffs (like IPPs) received the benefit of their bargain from third parties.

**Oregon's SOL bars or limits IPPs' claims.** <u>First</u>, the discovery rule is inapplicable because Oregon's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly. *See* Or. Rev. Stat. Ann. §§ 646.780(3), 646.715(2); *supra* § V(A). <u>Second</u>, IPPs concede fraudulent concealment requires affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement. MTD § V; *supra* § V(B).

## Y. Rhode Island

**EPs' claims are not actionable under Rhode Island's consumer protection laws.** EPs fail to address Defendants' authority from the Rhode Island Supreme Court establishing that

38

price-fixing claims are not cognizable under the state's consumer protection law. MTD at 73–74 (citing *ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1353–54 (R.I. 1997) (per curiam)). Their Rhode Island consumer protection claim should be dismissed because it is not "predicated upon conduct on the part of the respondent that reasonably tended to confuse and mislead the general public into purchasing his product when the actual intent of the purchaser was to buy the product of the complainant." *Streisand*, 690 A.2d at 1353–54.

**EPs' UE claim fails.** <u>First</u>, contrary to EPs' assertion (Opp. at 90), Defendants cite both a Rhode Island Supreme Court decision and a decision by this Court analyzing Rhode Island UE law and requiring a direct benefit. *See* MTD at 74. The only case cited by EPs, *LCD III*, 2011 WL 4501223, at *7, misreads the underlying Rhode Island authority. <u>Second</u>, in an attempt to undermine Rhode Island's BOTB limitation, EPs misconstrue *Rosetta v. Moretti*. Opp. at 91. *Just like EPs*, the *Rosetta* plaintiffs complained post-sale that they received consideration worth less than they paid, but the court found it was *not* inequitable for the defendant to retain the purchase price. 2005 WL 1109638, at *8 (R.I. Super. Ct. May 4, 2004). EPs cite no Rhode Island authority permitting indirect purchasers to bring a UE claim, and their cited federal cases do not address Rhode Island law. Opp. at 92.

**Rhode Island's SOL bars or limits IPPs' claims.** <u>First</u>, the discovery rule is inapplicable because Rhode Island's accrual rule for consumer protection claims is an injury-only rule. *See* R.I. Gen. Laws § 6-13.1-5.2; supra § V(A). <u>Second</u>, IPPs concede that fraudulent concealment requires affirmative acts of concealment (or express misrepresentations to them), and do not contest that due diligence is also required, but IPPs satisfy neither requirement. *See* MTD § V; *supra* § V(B).

Z.     **South Carolina**

**ADs' consumer protection claim is not viable.**  South Carolina's consumer protection

class-action bar is contained in *the same sentence* as the substantive right of action, with the bar

*limiting the right as it is granted*.  S.C. Code Ann. § 39-5-140(a).  The class action bar, like the

Illinois bar enforced in *WH*, thus survives *Shady Grove* and requires dismissal of ADs' consumer

protection claim.  ADs' claim that *Shady Grove* held all state bars on class actions are procedural

fails for the same reasons as their identical Montana argument.  *See supra* § VI.P.  Nor does

*Brooks v. GAF Materials Corp*. help ADs because plaintiffs there *did not seek class certification*

*of their South Carolina consumer protection claim*.  2012 WL 5195982, at *1 n.1 (D.S.C. Oct.

19, 2012); *Brooks* Compl., Prayer for Relief ¶ A, ECF No. 1-1.  ADs' effort to discount *MI*

*Windows* also fails; the court there considered independently whether the South Carolina bar

even contained a class action bar (it does), and if any bar was still applicable after *Shady Grove*

(it is).  *In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, 2012 WL 5408563, at *5 & n.3

(D.S.C. Nov. 6, 2012).  ADs are thus left with only *In re Optical Disk Drive Antitrust Litigation*

("*ODD*")—an outlier devoid of *Shady Grove* analysis.  2012 WL 1366718 (N.D. Cal. Apr. 19,

2012).  *ODD* cannot save ADs' claim in the face of the numerous well-reasoned opinions

consistently enforcing the South Carolina class action bar and other similar class-action bars

post-*Shady Grove*.  *See, e.g.*, *MI Windows*, 2012 WL 5408563, at *5 n.3; *Packaged Ice*, 779 F.

Supp. 2d at 661 n.4; *In re Nexium Antitrust Litig.,* 2013 WL 4832176, at *28 (D. Mass. Sept. 11,

2013); *Wellbutrin*, 756 F. Supp. 2d at 675; *Digital Music*, 812 F. Supp. 2d at 415.

**ADs' UE claim fails.**  First, ADs rely on *Sauner v. Public Service Authority of South*

*Carolina*, 581 S.E.2d 161, 167 (S.C. 2003) to argue they adequately allege a South Carolina UE

claim.  Opp. at 94.  Yet *Sauner* is clear that for a UE claim to succeed, a defendant must retain a

benefit without providing consideration.  581 S.E.2d at 167–68.  Here, defendants provided

consideration in the form of OSSs.  Second, ADs argue (Opp. at 94)  that some of Defendants' authority do not use the exact phrase "direct benefit," but fail to rebut the principle of those cases and its application here.  *See, e.g.*, *Myrtle Beach Hosp. Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 873 (S.C. 2000) (must allege conferral of a benefit directly—*not* "incidental[ly]" or through an intermediary); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551 (D. Md. 2011).  Third, ADs fail to distinguish Defendants' authority on the BOTB limitation.  *Johnston v. Brown*, 357 S.E.2d 450, 452 (S.C. 1987) held the trial court had erroneously concluded that the plaintiff received an agreed-upon payment and did not address applicability of the BOTB limitation.

### AA.   South Dakota

**IPPs fail to allege a sufficient intrastate commerce nexus.**  IPPs cite no South Dakota law to support their theory that they have properly pled a sufficient nexus to intrastate commerce. Because the plain language of South Dakota's antitrust law requires the alleged conspiracy take place "within" South Dakota, S.D. Codified Laws § 37-1-3.1, IPPs' South Dakota antitrust claims should be dismissed.

**IPPs' do not oppose dismissal of their South Dakota UE claims.**  Opp. at 95–97.

**South Dakota's SOL bars or limits IPPs' claims.**  The discovery rule is inapplicable because South Dakota's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly.  *See* S.D. Codified Laws §§ 37-1-14.3, 37-1-22; *supra* § V(A).  Further, IPPs concede that fraudulent concealment requires affirmative acts, and do not contest that due diligence is also required, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).

### BB.   Tennessee

**EPs fail to allege a sufficient intrastate commerce nexus.**  EPs cannot, and do not, cite to any portion of their complaint alleging any EP purchased a vehicle or OSS in Tennessee.  EPs' failure to so allege is fatal to their Tennessee antitrust claim.  *WH*, 2013 WL 2456612, at *20.

41

**IPPs' UE claims fail.** <u>First</u>, IPPs' argument that "self-evident" futility obviates any requirement to allege they unsuccessfully sought relief from their direct sellers (Opp. at 99) was expressly rejected by Tennessee's Supreme Court in *Freeman Industries v. Eastman Chemical Co.*, which makes clear that a bare *allegation* of futility will not do, 172 S.W.3d 512, 526 (Tenn. 2005). IPPs' cited cases do not say otherwise. <u>Second</u>, in Tennessee, "if a defendant has given any consideration to any person for the benefits received from the plaintiff [like here], there is no injustice in allowing the defendant to retain those benefits without paying the plaintiff." *McKee v. Meltech, Inc.*, 2011 WL 1770461, at *10 (W.D. Tenn. May 9, 2011). IPPs cite no case law to support their argument that Defendants' cases are distinguishable as "*quantum meruit* type [UE] claims." Opp. at 100. IPPs also cite to *K-Dur* and *Actiq* (Opp. at 100), but those cases do not address Tennessee law. *K-Dur*, 338 F. Supp. 2d at 543–46; *Actiq*, 790 F. Supp. 2d at 329–31.

**Tennessee's SOL bars or limits IPPs' claims.** <u>First</u>, Tennessee's accrual rule for antitrust claims is equivalent to the Clayton Act, Tenn. Code Ann. § 47-25-106, and Defendants have found no Tennessee case suggesting that the discovery rule would be applied to Tennessee antitrust claims (and IPPs offer no suggestion to the contrary). Thus, the discovery rule should be deemed inapplicable. *See supra* § V(A). <u>Second</u>, IPPs concede that fraudulent concealment requires affirmative acts of concealment, and do not contest that due diligence is also required, but IPPs satisfy neither requirement. *See* MTD § V; *supra* § V(B).

**CC.    Utah**

**IPPs cannot assert retroactive antitrust claims.** Contrary to IPPs' claim (Opp. at 102), Utah's repealer is substantive because it "enlarge[d] the rights of parties under the [Utah Antitrust Act], and created an entire cause of action for indirect purchasers." *Cal. v. Infineon Technologies, Inc. ("Infineon II")*, 2008 WL 1766775, at *5 (N.D. Cal. Apr. 15, 2008). Because *Illinois Brick* barred Utah indirect purchaser claims before the 2006 repealer and the repealer is

42

not retroactive, IPPs' Utah claims must be limited to post-May 1, 2006 conduct. *WH*, 2013 WL

2456612, at *19; *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 805 (D. Utah 1988).

**IPPs' UE claims fail.**  First, IPPs' argument that dismissal would be "premature" (Opp.

at 108) is not supported by their cited case, *Miller v. Basic Research, Inc.*, 2008 WL 4755787, at

*8 (D. Utah Oct. 27, 2008), which cites no Utah authority allowing a claim to proceed where

there is a pleading deficiency and ignores that, in Utah, "adequacy" of a legal claim means

claims that are available, *not* claims that are successful, *see Mann v. Am. W. Life Ins. Co.*, 586

P.2d 461, 465 (Utah 1978).  Second, IPPs argue Utah has no direct-benefit requirement (Opp. at

103), but their cited authority is a federal case that misconstrues Utah law, *see Emergency

Physicians Integrated Care v. Salt Lake Cnty.*, 167 P.3d 1080, 1086 (Utah 2007), or involves the

direct conferral of benefits by plaintiffs on defendant, *Rawlings v. Rawlings*, 240 P.3d 754, 756–

57 (Utah 2010).  IPPs' efforts to distinguish defendants' cases also fail.  *Concrete Products Co.

v. Salt Lake County* held "[n]o *direct* benefit . . . [wa]s present," 734 P.2d 910, 911–12 (Utah

1987) (emphasis added), not that there was "no benefit" whatsoever.  *Aftermarket Filters II* is

clear that privity of contract is "not the same as a requirement that the plaintiff has conferred a

benefit directly," 2010 WL 1416259, at *3, and Defendants do not argue privity is required.  The

fact that *FTC v. Mylan Laboratories, Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999), was decided before

Utah's *Illinois Brick* repealer was enacted is irrelevant.

Third, IPPs cite no case addressing Utah law that holds the BOTB limitation applies only

where there is contractual privity.  *Compare* Opp. at 104 (citing federal law), *with* MTD at 84

(citing Utah authority).  Fourth, IPPs concede Defendants provided consideration, which bars

their UE claim.  MTD at 84.  IPPs cite to *K-Dur* and *Actiq* (Opp. at 104), but those cases do not

address Utah law.  *See K-Dur*, 338 F. Supp. 2d at 545–46; *Actiq*, 790 F. Supp. 2d at 330.

43

**Utah's SOL bars or limits IPPs' claims.**  First, the discovery rule is inapplicable because Utah's accrual rule for antitrust claims is equivalent to the Clayton Act and harmonized accordingly.  Utah Code Ann. §§ 76-10-3109(1)(a), 76-10-3118; *accord Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005); *see supra* § V(A).  Second, *Russell Packard* acknowledges fraudulent concealment in Utah requires both affirmative acts of concealment and due diligence, but IPPs satisfy neither requirement.  *See* MTD § V; *supra* § V(B).  Utah allows dismissal of such claims on motions to dismiss where, as here, "the facts underlying the allegation of fraudulent concealment are so tenuous, vague, or insufficiently established that . . . the claim fails as a matter of law."  *Russell Packard*, 108 P.3d at 751.

### DD.     Vermont

**IPPs' UE claims fail.**  IPPs' Vermont UE claims must be dismissed because IPPs admit Defendants paid consideration.  MTD at 86.  IPPs mischaracterize *Ray Reilly's Tire Mart, Inc. v. F. P. Elnicki, Inc.*, which held "injustice" occurs "where the defendant . . . has not paid anyone for the benefit received."  537 A.2d 994, 995 (Vt. 1987).  *Cedric Electric, Inc. v. Shea* does not help IPPs because defendant there received a benefit *without paying*.  472 A.2d 757, 757–58 (Vt. 1984).  Where, as here, the defendant paid "any consideration," there is no UE.  *Ray Reilly's*, 537 A.2d at 995.  IPPs' other cites (Opp. at 105–06) do not address Vermont law.

**Vermont's SOL bars or limits IPPs' claims.**  Vermont has adopted a discovery rule for claim accrual that applies to antitrust and consumer protection claims.  *See Pike v. Chuck's Willoughby Pub, Inc.*, 904 A.2d 1133 (Vt. 2006).  Nonetheless, plaintiffs are required to plead due diligence.  *Id.*  IPPs have not satisfied this requirement.  *See* MTD § V; *supra* § V(B).   And IPPs do not contest that fraudulent concealment requires affirmative acts of concealment in addition to due diligence, but they have not satisfied this requirement either.  *Id.*

44

### EE.    West Virginia

**EPs do not allege a sufficient impact on intrastate commerce.**  West Virginia antitrust

law "is directed towards intrastate commerce."  *WH*, 2013 WL 2456612, at *21.  Although the

statute plainly requires conspiratorial conduct *by defendants within West Virginia*, *see* W. Va.

Code Ann. § 47-18-3(a), EPs allege none.  Although this Court found the nexus met in *WH* by

allegations that *plaintiffs* purchased price-fixed products in-state, EPs do *not* plead that any EP

purchased a car or OSS in West Virginia.  EP CAC ¶¶ 60–62.

**IPPs' UE claims fail.**  IPPs do not allege how it would be *inequitable and*

*unconscionable under West Virginia law* for Defendants to retain any benefit received. IPPs

misread *Wittenberg v. First Independent Mortgage Co.*, which *requires* such allegations.  2011

WL 1357483, at *15 (N.D. W.Va. April 11, 2011).

**West Virginia's SOL bars or limits IPPs' claims.**  First, West Virginia applies a

modified accrual rule for antitrust claims that incorporates the discovery rule, but nonetheless

required Plaintiffs to plead due diligence.  *See* W. Va. Code Ann. § 47-18-11.  IPPs have not

satisfied this requirement.  *See* MTD § V; *supra* § V(B).   Second, IPPs do not contest that

fraudulent concealment requires affirmative acts of concealment in addition to due diligence, but

they have not satisfied this requirement either.  *Id.*

### FF.    Wisconsin

**IPPs' UE claims fail**.  Under Wisconsin law, retention of a benefit is not unjust if, like

here, the defendant provided consideration.  *See Tri-State Mech., Inc. v. Northland Coll.*, 681

N.W.2d 302, 305–06 (Wis. Ct. App. 2004); MTD at 88.  Because IPPs' Complaints do not plead

the elements of Wisconsin UE law, their discussion of "fair value" is irrelevant.  IPPs' cited

cases are not to the contrary and do not address Wisconsin law.  Opp. at 108–09.

45

Dated:  February 10, 2014

Respectfully submitted,

| | |
|---|---|
| David M. Zinn<br>John E. Schmidtlein<br>Samuel Bryant Davidoff<br>**Williams & Connolly LLP**<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>202–434–5000<br>Fax: 202–434–5029<br>dzinn@wc.com<br>jschmidtlein@wc.com<br>sdavidoff@wc.com | By: /s/ Robert J. Wierenga<br>Robert J. Wierenga (P59785)<br>Suzanne L. Wahl (P71364)<br>**Schiff Hardin LLP**<br>350 S. Main Street, Suite 210<br>Ann Arbor, MI  48104<br>734–222–1500<br>Fax: (734) 222–1501<br>rwierenga@schiffhardin.com<br>swahl@schiffhardin.com |
| **COUNSEL FOR DEFENDANTS TAKATA CORPORATION AND TK HOLDINGS INC.** ||

| | |
|---|---|
| | /s/Howard B. Iwrey<br>James P. Feeney (P13335)<br>Howard B. Iwrey (P39635)<br>Benjamin W. Jeffers (P57161)<br>David J. Council (P73163)<br>DYKEMA GOSSETT PLLC<br>39577 Woodward Avenue, Suite 300<br>Bloomfield Hills, MI 48304<br>248 203–0526<br>Fax: 248–203–0763<br>jfeeney@dykema.com<br>hiwrey@dykema.com<br>bjeffers@dykema.com<br>dcouncil@dykema.com |
| **COUNSEL FOR DEFENDANTS TRW AUTOMOTIVE HOLDINGS CORP. AND TRW DEUTSCHLAND HOLDING GMBH** ||

| | |
|---|---|
| W. Todd Miller<br>BAKER & MILLER PLLC<br>2401 Pennsylvania Ave., N.W.<br>Suite 300<br>Washington, DC 20037<br>202–663–7820<br>Fax: 202–663–7849<br>tmiller@bakerandmiller.com | /s/ David F. DuMouchel<br>David F. DuMouchel (P25658)<br>Sheldon H. Klein (P41062)<br>George B. Donnini (P66798)<br>BUTZEL LONG PC<br>150 W. Jefferson, Suite 900<br>Detroit, MI 48226–4430<br>313–225–7000<br>dumouchd@butzel.com<br>Klein@butzel.com<br>donnini@butzel.com |
| **COUNSEL FOR DEFENDANTS TRAM, INC. AND TOKAI RIKA CO., LTD.** | |

| | |
|---|---|
| Peter Kontio<br>ALSTON & BIRD<br>1201 W. Peachtree Street, Suite 4000<br>Atlanta, GA 30309–3424<br>404–881–7000<br>Fax: 404–253–9690<br>peter.kontio@alston.com | /s/ Joanne Geha Swanson<br>Joanne Geha Swanson (P33594)<br>Fred K. Herrmann (P49519)<br>Dwayne D. Stresman (P73283)<br>KERR, RUSSELL & WEBER PLC<br>500 Woodward Avenue, Suite 2500<br>Detroit, MI 48226–3406<br>313–961–0200<br>jswanson@kerr–russell.com<br>fherrmann@kerr–russell.com |
| **COUNSEL FOR AUTOLIV DEFENDANTS** | |

47

## CERTIFICATE OF SERVICE

I, Robert J. Wierenga, hereby certify that on February 10, 2014, I caused the foregoing Defendants' Collective Reply in Support of Defendants' Collective Motion to Dismiss the End–Payors' Consolidated Amended Class Action Complaint and the Automobile Dealers' Consolidated Class Complaint to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Robert J. Wierenga
Robert J. Wierenga (P59785)
**Schiff Hardin LLP**
350 S. Main Street, Suite 210
Ann Arbor, MI  48104
734–222–1500
Fax: (734) 222–1501
rwierenga@schiffhardin.com