UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | 12-md-02311 Honorable Marianne O. Battani |
| In Re: ALL PARTS | : : : |  |
| THIS DOCUMENT RELATES TO: All Cases | : : : |  |

# DIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIMIT UNIFORM SUBPOENAS TO OEMS

Direct Purchaser Plaintiffs ("DPPs") respectfully submit that the proposed Uniform OEM Subpoena should be deferred pending discovery of information relevant to the indirect purchaser actions for use in the indirect purchaser actions by parties to the indirect purchaser actions, as originally contemplated by indirect purchaser plaintiffs ("IPPs") and Defendants ("Serving Parties").

### A. Indirect Purchaser Plaintiffs and Defendants Sought Coordination of OEM Discovery Relevant to the Indirect Purchaser Actions

IPPs admit[1] that the Court directed the plaintiffs in *indirect* purchaser actions and Defendants in *indirect* purchaser actions to coordinate discovery in the *indirect* purchaser actions with respect to non-party OEM discovery (IPP Resp. at 1, 2), and that the information sought by the Uniform OEM Subpoena has no relevance to the direct purchaser actions (*id*. at 3, 5). *See* Defs. Opp. at 6 (OEM subpoenas necessary for litigation of *indirect* cases). However, on April 14, 2015, Serving Parties for the first time proposed issuing and serving the Uniform OEM Subpoena in *direct* purchaser actions as well. Dkt. 967, DPP Mem., Ex. 1. In their Opposition filed May 28, 2015, Defendants now admit to seeking OEM discovery for defense of the *direct* purchaser actions, claiming relevance to liability and damages, and impact for class certification. Defs. Opp. at 10-12. Rather than coordinating a uniform subpoena directed to pass-on in the indirect actions, Defendants seek information they did not and, with regard to downstream discovery, could not previously pursue in the direct purchaser actions. Such discovery should not be part of the coordinated OEM subpoena process. In addition, contrary to Defendants' accusations of delay (Defs. Opp. at 2-3), DPPs have followed the procedures and deadlines set by the Court and Special Master: they submitted written comments by letter dated April 28, 2015, reiterated their concerns by Motion on May 13, 2015, and submit this Reply in accordance with the Special Master's schedule.

---

[1] IPPs' Response ("IPP Resp.") (Dkt. 979) was filed on behalf of End-Payor Plaintiffs and the State of Florida. Auto Dealers filed a separate Opposition ("AD Opp.") (Dkt. 980) which Truck and Equipment Dealer Plaintiffs joined (Dkt. 983). Defendants filed a separate Opposition (Dkt. 981) and corrected Opposition (Defs. Opp.") (Dkt. 984).

1

**B. DPPs Have Standing to Seek Relief and Have Waived Nothing**

DPPs have standing pursuant to the Court's direction and Federal Rule of Civil Procedure 26(c). Serving Parties ignore both. IPP Resp. at 5-7; Defs. Opp. at 3-7. First, this Court provided a mechanism for DPPs and Ford to be heard which they have followed. Serving Parties' standing argument denigrating DPPs' reliance on it must be rejected, as should Defendants' waiver argument. *See* Defs. Opp. at 7-9; IPP Resp. at 22.

Second, Rule 26(c) authorizes DPPs to move for a protective order as the Uniform OEM Subpoena is to be issued and served in *direct* purchaser actions and non-party OEMs are absent members of putative *direct* purchaser classes. *See* DPP Motion at 1 (alternative grounds). A *party* or person from whom discovery is sought may move for a protective order. Fed. R. Civ. P. 26(c)(1). The explicit mention of "a party" in the rule has been interpreted to provide standing for a party to contest discovery sought from third-parties. *Underwood v. Riverview of Ann Arbor*, No. 08-CV-11024-DT, 2008 WL 5235992, at * 2 (E.D. Mich. Dec. 15, 2008). In addition, Fed. R. Civ. P. 26(b) defines the scope of discovery issued pursuant to Federal Rule of Civil Procedure 45. *Sys. Prods. & Solutions, Inc. v. Scramlin*, No 13-cv-14947, 2014 WL 3894385, at * 9 (E.D. Mich. Aug. 8, 2014); *Underwood*, 2008 WL 5235992, at * 1 (enunciating standard).

DPPs (a party), therefore, may move for a protective order to contest OEM discovery in the direct purchaser actions, and may do so even where no litigated class has been certified.[2] *See, e.g. In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549-555 (E.D. Tenn. 2013) ("*Skelaxin*") (granting in part direct purchasers' motion for protective order where class not certified); *Groth v.*

---

[2] To the extent Serving Parties suggest that OEMs are not members of *any* direct purchaser class (IPP Resp. at 3, 6, 11), the Court in *Wire Harness* certified a *settlement* class of direct purchasers and notably only three OEMs opted out: Saab AutomobileAB, aka Saab Automotive AB; Ford Motor Company; and AutoAlliance International, Inc.  *See* Settlement Class Counsel's Report on Dissemination of Notice of Proposed Settlement Between the Direct Purchaser Plaintiffs and Defendant Lear Corporation and Class Members' Response. 2:12-cv-00101 (Dkt.193).

*Robert Bosh Corp.*, No. 1:07-cv-962, 2008 WL 2704709, *1 (W.D. Mich. July 9, 2008) (granting plaintiff motion for protective order where class not certified). Even authority relied upon by IPPs (IPP Resp. at 6) is in accord. *In re Aftermarket Filters*; No. 08-C-4883, 2010 WL 3909502 (N.D. Ill. Oct. 1, 2010) (direct purchasers' motion objecting to defendants' served and unserved subpoenas seeking discovery from absent members of a putative direct purchaser class denied on the merits). Thus, DPPs are not "try[ing] to get around" anything, as Defendants contend (Defs. Opp. at 4); or proceed pursuant to Fed. R. Civil P. 45 or "interfere in the indirect purchaser actions," as IPPs contend (IPP Resp. at 3, 6).

### C. The Uniform OEM Subpoena Seeks Information Not Relevant to Claims or Defenses in Direct Purchaser Actions

The particularized need rule and prohibitions against downstream discovery must be considered because Defendants intend to issue and serve the Uniform OEM Subpoena in direct purchaser actions and, in their opposition brief, for the first time, admitted their intention to *use* discovery responsive to the Uniform OEM Subpoena to defend against direct purchaser actions. Courts in the Sixth Circuit endorse a demonstration of particularized need for discovery from absent members of a putative class. *Groth*, 2008 WL 2704709, at * 1; *Khaliel v. Norton Healthcare, Inc. v. Retirement Plan*, No 3:08-cv-69-C, 2013 WL 6554714, at * 1 (W.D. Ky. Nov. 12, 2012); *Boynton v. Headwaters*, No. 1-02-1111, 2009 WL 3103161, at *1 (W.D Tenn. Jan. 30, 2009). Contrary to Serving Parties' assertions regarding the inapplicability of particularized need (IPP Resp. at 11-12; Defs. Opp. at 4-7), that demonstration is required here where the Uniform OEM Subpoena has not been served and Serving Parties propose discovery in direct purchaser actions from absent members of the putative direct purchaser class. *Id*.; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-MD-2196, 2014 WL 764617, at *2 (N.D. Ohio Feb. 26, 2014) (prior court approval required). *Skelaxin*, a multi-district litigation in this Circuit, is instructive. There, defendants sought discovery from absent

3

members of a putative direct purchaser class claiming relevance to both direct and indirect purchaser actions. The court addressed direct purchasers' motion for protective orders under both Rule 26(c) and the particularized need rule. The court granted the motion for protective orders with respect to downstream discovery and data because some information was not relevant to claims or defenses in the case or alternatively the burden of production outweighed its usefulness, and other information was not relevant to direct purchasers' measure of damages or for the purpose of responding to direct purchasers' class certification motion. *Skelaxin,* 292 F.R.D. at 549-554. The court reserved ruling on relevance of some information to indirect purchaser damages in the indirect purchaser actions, agreeing with direct purchasers that defendants could get all the information they needed from a commercially available database and defendants "have not demonstrated a particularized need for the requested documents and data simply because *indirect* purchaser plaintiffs are also before the Court." *Id*. at 554. (internal quotations omitted). The court also wanted defendants to explain why they could not obtain the information more efficiently from indirect purchasers themselves and/or from a commercial database. *Id*. at 555. Here, DPPs have raised similar concerns with respect to the Uniform OEM Subpoena.

Serving Parties claim they need not meet the particularized need standard because: 1) OEMs are "sophisticated businesses" and 2) the purpose of the particularized need rule is to prevent "abusive discovery requests" (and they claim this subpoena is not that). Defs. Opp. at 4-5; IPP Resp. at 11-12. The fact that an absent class member is "sophisticated" does not change policy concerns regarding discovery from absent class members; and the prevention of abusive discovery requests is only part of the policy underlying the rule that discovery of absent class members is disfavored and subject to a heightened standard of need. The fundamental reason behind the rule, and the reason the sophistication of the absent class member does not matter, is that class actions are favored and the burden on absent class members must be kept to a minimum. *See Phillips Petroleum Co. v. Shutts*,

4

472 U.S. 797, 810 (1985) ("an absent class-action plaintiff is not required to do anything"); *Groth*, 2008 WL 2704709, at *1 (one of the principal advantages of class actions would be lost if all class members were routinely subject to discovery); *Garden City Emp. Ret. Sys. v. Psych. Solutions, Inc.*, 3:09-00882, 2012 WL 4829802, at *2 (M.D. Tenn. Oct. 10, 2012) (purpose of rule is to promote the policy of Federal Rule 23, *i.e.*, to prevent absent class members from being compelled to participate actively in the litigation); *McCarthy v. Paine Webber Grp., Inc.*, 164 F.R.D. 309, 313 (D. Conn. 1995) (discovery of absent class members while not forbidden is rarely permitted because they are not "parties" to the action and to permit extensive discovery would defeat the purpose of class actions which is to prevent massive joinder of small claims). For these reasons, the Uniform OEM Subpoena must still meet the particularized need standard.

Here, neither Serving Parties nor Auto Dealers have demonstrated that the Uniform OEM Subpoena meets the particularized need standard. In fact, many of the Requests do not even meet the typical Rule 26(b) standard for relevance. IPPs argue "it is not the right time to resolve challenges to specific requests." IPP Resp. at 10. DPPs disagree. Now is precisely the appropriate time to address certain relevance issues in order to avoid undue burden on OEMs by eliminating Requests that do not provide substantive value to the litigation.[3] Requests implicating downstream data should be narrowly compartmentalized for use in the indirect actions only, as downstream discovery is

---

[3] Downstream discovery is not relevant to and must not be permitted in the direct purchaser actions. DPP. Mem. at 4-5. In addition, DPPs identified specific Requests (Nos 7, 9, 10, 11, 12, 18, 20, 25, 26, 27, 31, 35, 36) that seek information not relevant to any action (the Special Master denied party discovery of similar information). DPP. Mem at 12-13. Even with respect to information that may be deemed relevant to indirect purchaser actions, DPPs identified specific Requests (Nos. 1-2, 4-12, 17, 20-22, 24, 29-32, and 34) that seek information in the possession of or soon to be produced by parties to the indirect purchaser actions (DPP Mem. at 5-10); Requests (Nos. 12-16, 19, 22-24, 28, 30, 32-34) that seek closely guarded and highly secret proprietary information (DPP Mem. at 12); Requests (Nos. 1, 2, 19, 4-12, 20-22) that seek information available from parties or commercial sources (DPP Mem. at 14); and Requests (Nos. 1-5, 8, 12-15, 19-20, 23-25, 35-36) that are vague and ambiguous in contravention of this Court's guidance for ESI discovery (DPP Mem. at 11). DPPs reserve their right to address more fully each individual Request at the Court's request.

generally prohibited in direct purchaser cases. *See, e.g., In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732-LDD, 2008 WL 2275528, *4 (E.D. Pa. April 8, 2008) (courts have consistently noted that downstream discovery is not favored in price fixing class actions). Defendants cannot dispute this.

Instead, Defendants now focus on upstream discovery and impermissibly seek to use the Uniform OEM Subpoena, a mechanism for coordinated discovery in *indirect* purchaser actions by parties to the *indirect* actions, for discovery of information purportedly relevant to their defense of the *direct* purchaser actions.[4] Defendants seek, for example: 1) how OEMs "set" purchase prices for auto parts "to determine whether DPPs have a claim, to what extent, if any, they were damaged" and OEM documents and data relevant both to liability and damages and for assessing impact for class certification purposes; 2) whether a DPP had a "direct-buy" relationship with OEMs such that a "cost plus" exception applies to permit a pass-on defense in direct purchaser actions; and 3) adequacy and typicality concerns. Defs. Opp. at 10-12. The Uniform OEM Subpoena is massive (thirty-six multi-subpart requests covering a time period of over 22 years), and these three categories of information alone implicate extensive argument that would require significantly more briefing than could be included in this Reply.[5]

Nevertheless, the following preliminary points are exemplar. With respect to the first category of information, Defendants transform a "bidding process" between Defendants and OEMs into a process by which OEMs unilaterally "set" prices, the implication being that requested information is exclusively in the possession of OEMs. Such information, however, to the extent it is

---

[4] Defendants and their expert, Dr. Snyder, rely on allegations of the DPPs' Second Amended Consolidated Class Action Complaint. Defs. Opp. at 10; Snyder (Dec. Dkt. 984-1) at ¶12. That complaint was amended. The Third Consolidated Amended Class Action Complaint (filed under seal-highly confidential) is the operative complaint. *See Auto Parts*, Order Granting Leave to Amend Second Am. CAC. 2:12-cv-00101 (Oct. 10, 2014) (Dkt. 187).

[5] In opposition to their Motion, DPPs were confronted with three separate briefs comprising over fifty pages, as well as two expert declarations. Pursuant to Federal Rule of Civil Procedure 26(c), DPPs request the opportunity to address fully the Uniform OEM Subpoena requests should the court permit discovery to proceed in the direct purchaser actions.

relevant, can and should be obtained from Defendants, the other participants in the bidding process, not non-party OEMs. The second category seeks information that is not relevant because the cost-plus exception is extremely narrow, as a skeptical Sixth Circuit notes:

> [W]e are not persuaded that a cost-plus contract exception, assuming it exists, precludes the direct purchaser from maintaining suit in the case at bar. To allow the passing on defense in this particular case, we believe, would invite precisely the sort of complexities, uncertainties, and other untoward consequences that the indirect purchaser rule was designed to avoid.

*Cnty. of Oakland v. City of Detroit*, 866 F.2d 839, 849 (6th Cir. 1989). Even assuming the exception does exist, discovery necessary to support such a defense would be far different from the information sought by the Uniform OEM Subpoena in its current form. *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 218 (1990) (need to inquire into precise operation of market forces would negate simplicity and certainty that could justify a cost-plus contract exception). The third category inappropriately seeks information from absent class members to determine the adequacy and typicality of named class representatives. Adequacy simply means that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Inquiry into the adequacy of the named class representatives must be directed at the named class representatives themselves. Typicality only requires a "sufficient relationship between the injury to the name plaintiff and the conduct affecting the class." *In re Am. Med. Sys., Inc.* 75 F.3d 1069, 1082 (6th Cir. 1996). Under the permissive standards of Federal Rule of Civil Procedure 23(a), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Finally, Defendants have had ample opportunity to seek discovery in the direct purchaser action from DPPs as well as non-parties. In fact, Defendants propounded downstream discovery to DPPs in August 2013, which was the subject of a motion to compel in July 2014 (Dkt. 183) that was resolved by agreement when DPPs produced discovery to Defendants. That Defendants chose not to

7

pursue certain discovery at that time from non-party OEMs is no reason to permit them to exploit the Uniform OEM Subpoena to accomplish that task now.

### D. Any Information Deemed Relevant to Indirect Purchaser Actions Can and Should Be Obtained from Other Available Sources First

Serving Parties[6] have not demonstrated why the benefit of the information they seek from non-party OEMs outweighs the burden to non-party OEMs, particularly as responsive information has been (or shortly will be) produced from parties and is available commercially. In fact, in compromising the scope of subpoenas issued to Auto Dealer DSM providers, Defendants concede they do not need all the information requested by the Uniform OEM Subpoena, and if IPPs require further information they can seek it in the indirect cases. Serving Parties claim that only OEMs can raise burden objections[7] and that it should be left to each OEM to negotiate the scope of its response individually. IPP Resp. at 12-16; Defs. Opp. at 21-22. Yet, Serving Parties ignore the significance of the *actual burden and expense* asserted by OEM Ford. *See, e.g.,* Ford Resp. at 5-7. Other OEMs will face similar burden and expense. *See* DPP Mem. at 10-11.

IPPs claim the Uniform OEM Subpoena is "deliberately comprehensive" and "necessarily inclusive." IPP Resp. at 12. However, wordsmithing does not justify the expansive and overbroad nature of the Uniform OEM Subpoena which does not even include specific start or end dates. Ford Resp. at 6-7. Moreover, the notion that individual non-party OEM specific meet and confers can cure the impermissible over breadth of the Uniform OEM Subpoena is illusory. Discovery requests must

---

[6] IPPs claim DPPs "acknowledge the relevance" of requested information to indirect purchaser actions. IPP Resp. at 8. DPPs, however, merely acknowledge that the requested information is intended to be used in the indirect purchaser actions, not that it is necessarily relevant for such purposes. DPP Mem. at 1-2.

[7] Although Serving Parties take issue with DPPs' raising burden concerns, the Uniform OEM Subpoena is burdensome on its face as demonstrated by the sheer breadth, volume, vagueness and questionable relevance of the Requests. *See* DPP Mem. at 10-13.

8

be proportionate at the outset, as this Court's Model Order and Sedona Principles proscribe. *See* DPP Mem. at 10-11, 13-14; *see also* Fed. R. Civ. P. 45(d)(1).

Serving Parties argue that highly sensitive commercial information can be protected under the Protective Order. IPP Resp. at 16; Defs. Opp. at 20. Again, however, they ignore the valuable actual insight from Ford, glossing over that such information is generally only shared among a company's elite insiders and that disclosure of such sensitive materials could damage the OEMs' businesses and the automotive industry. *See, e.g.*, Ford Resp. at 3-4. Such information should be shielded from production, particularly if it is available from another source. *See* DPP Mem. at 12.

Together Serving Parties and Auto Dealers basically argue that non-party OEM production is required because no party and other third party productions combined could possibly satisfy the Uniform OEM Subpoena.[8] In conclusory fashion, Auto Dealers and Defendants claim that *all* information cannot be obtained from Auto Dealers; IPPs claim information being produced by Defendants, Auto Dealers and other third-parties is not enough. *See* AD Resp. at 1-2: Levinson Dec. at 2; IPP Resp. at 18-22. First, it is difficult to discern what information is actually being sought by vague and ambiguous requests. *See* DPP Mem. at 11; Ford Resp. at 11. Second, conclusory statements do not demonstrate sufficient need, and neither Serving Parties nor Auto Dealers outright assert that they do not have responsive information. Inexplicably, Auto Dealers imply just that, claiming that production of dealership information from third-party DSM providers was "unsuccessful" because DSM providers filed motions to quash (AD Opp. at 2). Auto Dealers, however, ignore both representations from their counsel to the Court that motions had been resolved and the stipulated Order regarding production filed May 12, 2015 (*see* DPP Mem. at 7-9). Although the terms of the agreement reached with provider Reynolds & Reynolds are not public, the stipulated

---

[8] Even in *Plasma*, cited by Auto Dealers (AD Opp. at 1), the court considered whether the requested discovery was needed for trial, unnecessarily broad, and available from other sources before ordering discovery from absent class members. *Plasma*, 2012 WL 1533221, at *1, 3, 5-6.

Order regarding provider CDK Global was filed on May 28, 2015. 2:12-cv-00100 (Dkt. 304). Defendants got what they needed in the indirect purchaser actions. Third, although Serving Parties and Auto Dealers concede that responsive discovery is being or already has been produced (AD Opp. at 2; IPP Resp. at 19-21; Defs. Opp. at 16-19), none has articulated a reason why staging and sampling, mechanisms recommended by this Court's Model Order and Sedona Principles, should not be used to evaluate such discovery before issuing an expansive subpoena to non-party OEMs.

Despite almost fifty pages of briefing and two expert declarations, Serving Parties failed to demonstrate sufficient need for an overwhelming amount of discovery from non-party OEMs. Responsive information is available from parties and commercial sources. The Uniform OEM Subpoena should, therefore, be held in abeyance. *Skelaxin*, 292 F.R.D. at 554-555 (defendants did not demonstrate particularized need for downstream discovery of unnamed members of proposed direct purchaser class simply because indirect purchaser plaintiffs were also before the court). Staging and sampling mechanisms consistent with Sedona Principles should be employed first to evaluate information currently available (and soon to be produced) to determine whether and to what extent non-party OEM discovery is necessary.

DATED: June 1, 2015                          Respectfully submitted,

*/s/ David H. Fink*
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500

Interim Liaison Counsel for the Direct Purchaser Plaintiffs

| | |
|---|---|
| Steven A. Kanner<br>William H. London<br>Michael E. Moskovitz<br>FREED KANNER LONDON<br>  & MILLEN LLC<br>2201 Waukegan Road, Suite 130<br>Bannockburn, IL  60015<br>Telephone:  (224) 632-4500 | Joseph C. Kohn<br>William E. Hoese<br>Douglas A. Abrahams<br>KOHN, SWIFT & GRAF, P.C.<br>One South Broad Street, Suite 2100<br>Philadelphia, PA  19107<br>Telephone:  (215) 238-1700 |
| Gregory P. Hansel<br>Randall B. Weill<br>Michael S. Smith<br>PRETI, FLAHERTY, BELIVEAU<br>  & PACHIOS LLP<br>One City Center, P.O. Box 9546<br>Portland, ME  04112-9546<br>Telephone:  (207) 791-3000 | Eugene A. Spector<br>William G. Caldes<br>Jonathan M. Jagher<br>Jeffrey L. Spector<br>SPECTOR ROSEMAN KODROFF<br>  & WILLIS, P.C.<br>1818 Market Street, Suite 2500<br>Philadelphia, PA  19103<br>Telephone:  (215) 496-0300 |

Interim Lead Counsel for the Direct Purchasers Plaintiffs

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2015, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

> FINK + ASSOCIATES LAW
> By: /s/David H. Fink
> David H. Fink (P28235)
> Darryl Bressack (P67820)
> 100 West Long Lake Road, Suite111
> Bloomfield Hills, MI  48304
> (248) 971-2500
> dfink@finkandassociateslaw.com