# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311 Honorable Marianne O. Battani |
| In Re:  All Auto Parts Cases | 2:12-MD-02311-MOB-MKM |
| THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES | ORAL ARGUMENT REQUESTED |

## CERTAIN DEFENDANTS' OBJECTIONS TO, AND MOTION TO MODIFY, MASTER ESSHAKI'S JUNE 18, 2015 ORDER

Certain Defendants[1] respectfully submit this Objection to, and Motion to Modify, Master

Esshaki's June 18, 2105 Order (the "Objection") regarding the depositions of End Payor

Plaintiffs ("EPPs") and Auto Dealer Plaintiffs ("ADPs").  In support of this motion, Defendants

---

[1] "Certain Defendants" refer to: Bridgestone Corporation, Bridgestone APM Company, Calsonic Kansei Corporation, CalsonicKansei North America, Inc., DENSO Corp., DENSO International America, Inc., ASMO Co., Ltd., ASMO North America, LLC, ASMO Manufacturing, Inc., ASMO Greenville of North Carolina Inc., SKF USA Inc., NSK Ltd., NSK Americas, Inc., JTEKT Corporation, JTEKT Automotive North America, Inc., Nachi-Fujikoshi Corp., Nachi America, Inc., Toyo Tire & Rubber Co., Ltd., Toyo Automotive Parts (USA), Inc., Toyo Tire North America OE Sales LLC, Toyo Tire North America Manufacturing Inc., NTN Corporation, NTN USA Corporation, Mitsuba Corporation, American Mitsuba Corporation, Yamashita Rubber Co., Ltd., YUSA Corporation, Keihin North America, Inc., Alps Electric Co., Ltd., Alps Electric (North America), Inc., Alps Automotive, Inc., Schaeffler Group USA, Incorporated, Continental Automotive Systems, Inc., Continental Automotive Electronics LLC., Sumitomo Riko Co., Ltd., DTR Industries, Inc., Showa Corporation, American Showa, Inc., Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., Mitsubishi Electric Automotive America, Inc, Robert Bosch LLC, Robert Bosch GmbH, Bosch Electrical Drives Co., Ltd., Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., II Stanley Co., Inc., Diamond Electric Mfg. Co., Ltd., Diamond Electric Mfg. Corp., Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., TG Missouri Corp., Takata Corporation, TK Holdings Inc., Valeo S.A., Valeo Japan Co., Ltd., Valeo Inc., Valeo Electrical Systems, Inc., Valeo Climate Control Corp., Aisan Industry Co., Ltd., Aisan Corporation of America, Franklin Precision Industry, Inc., Koito Manufacturing Co., Ltd., North American Lighting, Inc., Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc., and Sumitomo Wiring Systems (U.S.A.) Inc.

submit the accompanying Memorandum of Law in Support of the Objection. For the reasons set forth in the memorandum, Defendants respectfully request that the Court enter the accompanying Proposed Order Modifying Master Esshaki's June 18, 2015 Order.

Pursuant to E.D. Mich. Local Rule 7.1(a), counsel for Defendants attempted to reach agreement with the ADPs and EPPs in advance of this filing, but were unable to do so.

Dated: June 19, 2015      Respectfully submitted,

By: _____

Steven A. Reiss
Adam C. Hemlock
Kajetan Rozga
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
kajetan.rozga@weil.com

Frederick R. Juckniess
SCHIFF HARDIN LLP
350 South Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1504
fjuckniess@schiffhardin.com

*Attorneys for Bridgestone Corporation and Bridgestone APM Company*

By: _____

Steven A. Reiss
Adam C. Hemlock
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119

Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

Fred K. Herrmann
Joanne G. Swanson
Matthew L. Powell
KERR RUSSELL & WEBER PLC
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
Fax (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Calsonic Kansei Corporation and
CalsonicKansei North America, Inc.*

By: /s/ Steven F. Cherry (w/ consent)
Steven F. Cherry
David P. Donovan
Patrick J. Carome
Brian C. Smith
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C.
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
patrick.carome@wilmerhale.com
brian.smith@wilmerhale.com
kurt.kastorf@wilmerhale.com

*Counsel for Defendants DENSO Corp., DENSO
International America, Inc., ASMO Co., Ltd.,
ASMO North America, LLC, ASMO Manufacturing,
Inc., ASMO Greenville of North Carolina Inc.*

By: /s/ Debra H. Dermody (w/ consent)
Debra H. Dermody
Michelle A. Mantine
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: (412) 288-3302/4268
Fax:   (412) 288-3063
Email: ddermody@reedsmith.com
mmantine@reedsmith.com

/s/ Howard B. Iwrey (w/ consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Fax:(248) 203-0763
Email: hiwrey@dykema.com
bmoore@dykema.com

*Attorneys for Defendant SKF USA Inc. in actions
2:13-cv-00502, -00503, -00505, and -13356-MOB-
MKM)*

By: /s/ Jeremy J. Calsyn (with consent)

Jeremy J. Calsyn (DC Bar #467737)
Teale Toweill (DC Bar #996061)
CLEARY GOTTLIEB STEEN & HAMILTON
LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
jcalsyn@cgsh.com
ttoweill@cgsh.com

David A. Ettinger (P26537)
HONIGMAN, MILLER, SCHWARTZ AND
COHN LLP
660 Woodward Avenue Suite 2209
Detroit, MI 48226-3506

(313) 465-7368 (Telephone)
(313) 465-7369 (Facsimile)
dettinger@honigman.com

*Attorneys for Defendants NSK Ltd. and NSK
Americas, Inc.*

By: /s/ Heather L. Kafele (with consent)
Heather L. Kafele
Keith R. Palfin
SHEARMAN & STERLING LLP
801 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Tel.: (202) 508-8097
Fax: (202) 508-8100
heather.kafele@shearman.com
keith.palfin@shearman.com

Brian M. Akkashian
PAESANO AKKASHIAN, PC
132 N. Old Woodward Avenue
Birmingham, MI 48009
Tel.: (248) 792-6886
bakkashian@paesanoakkashian.com

*Counsel for JTEKT Corporation and JTEKT
Automotive North America, Inc.*

By: /s/ Kenneth R. Davis II (w/ consent)
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi
LANE POWELL PC
MODA Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
(503) 778-2100
(503) 778-2200 (facsimile)
davisk@lanepowell.com
bachmanc@lanepowell.com
sandsd@lanepowell.com
yamaguchi@lanepowell.com

Larry S. Gangnes

U.S. Bank Centre
1420 Fifth Ave., Ste. 4100
Seattle, WA 98101-2338
(206) 223-7000
(206) 223-7107 (facsimile)
gangnesl@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
(248) 528-1111
(248) 528-5129 (facsimile)
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Nachi-Fujikoshi Corp.*
*and Nachi America, Inc.*

By: /s/ David C. Giardina (w/ consent)
David C. Giardina
Courtney A. Hoffmann
SIDLEY AUSTIN LLP
One S. Dearborn St.
Chicago, IL 60603
Tel.: (312) 853-7000
Fax: (312) 853-7036
dgiardina@sidley.com
choffmann@sidley.com

Bradley J. Schram
HERTZ SCHRAM PC
1760 S. Telegraph Rd., Suite 300
Bloomfiled Hills, MI 48302
Tel.: (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Defendants Toyo Tire & Rubber Co.,*
*Ltd., Toyo Automotive Parts (USA), Inc., Toyo Tire*
*North America OE Sales LLC, and Toyo Tire North*
*America Manufacturing Inc.*

By: /s/ Jeffrey L. Kessler (w/ consent)

Jeffrey L. Kessler
A. Paul Victor
Jeffrey J. Amato
Molly M. Donovan
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
jamato@winston.com
mmdonovan@winston.com

Fred K. Herrmann
KERR, RUSSELL & WEBER PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Attorneys for Defendants NTN Corporation and
NTN USA Corporation*

By: /s/ George A. Nicoud (w/ consent)
George A. Nicoud III
Austin Schwing
Stuart C. McPhail
Leslie A. Wulff
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Tel.:  (415) 393-8200
Fax:  (415) 393-8306
TNicoud@gibsondunn.com
ASchwing@gibsondunn.com
SMcphail@gibsondunn.com
LWulff@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation and
American Mitsuba Corporation*

By: /s/ James L. Cooper (w/ consent)
James L. Cooper

Danielle Garten
Adam Pergament
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
(202) 942-5000
(202) 942-5999 (facsimile)
james.cooper@aporter.com
danielle.garten@aporter.com
adam.pergament@aporter.com

Fred K. Herrmann
Joanne Geha Swanson
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
(313) 961-0388 (facsimile)
jswanson@kerr-russell.com
fherrmann@kerr-russell.com

*Attorneys for Defendants Yamashita
Rubber Co., Ltd., and YUSA Corporation*


By: /s/ Anita F. Stork (w/ consent)
Anita F. Stork
COVINGTON & BURLING LLP
One Front Street
35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

Bruce A. Baird
Sarah L. Wilson
Michael A. Fanelli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Fax: (202) 662-6291
bbaird@cov.com
swilson@cov.com
mfanelli@cov.com

/s/ Maureen T. Taylor
Maureen T. Taylor
BROOKS WILKINS SHARKEY & TURCO PLLC
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com

*Attorneys for Defendant Keihin North America, Inc.*

By: /s/ Anita F. Stork (w/ consent)

Anita F. Stork
Gretchen Hoff Varner
Cortlin H. Lannin
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

/s/ Maureen T. Taylor (w/ consent)

Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 Old South Woodward, Suite 400
Birmingham, MI  48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Alps Electric Co., Ltd.;*
*Alps Electric (North America), Inc.; and Alps*
*Automotive, Inc.*

By: /s/ Eric J. Mahr (w/ consent)
Eric J. Mahr
Stacy E. Frazier
1875 Pennsylvania Ave., NW

Washington, DC 20006
202-663-6446
eric.mahr@wilmerhale.com
stacy.frazier@wilmerhale.com

*Attorneys for Defendant Schaeffler Group USA,
Incorporated*

By: /s/ Ronald M. McMillan (w/ consent)
Ronald M. McMillan (OH 0072437)
John J. Eklund (OH 0010895)
Maura L. Hughes (OH 0061929)
Alexander B. Reich (OH 0084869)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
jeklund@calfee.com
mhughes@calfee.com
rmcmillan@calfee.com
areich@calfee.com

Maureen T. Taylor
Herbert C. Donovan
BROOKS, WILKINS, SHARKEY & TURCO
PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
(248) 971-1800 (Phone)
(248) 971-1801 (Fax)
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Continental Automotive
Systems, Inc. and Continental Automotive
Electronics LLC*

By: /s/ J. Clayton Everett, Jr. (with consent)
J. Clayton Everett, Jr.
Zarema A. Jaramillo
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW

Washington, DC 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001
jeverett@morganlewis.com
zarema.jaramillo@morganlewis.com

*Counsel for Defendants Sumitomo Riko Company
Limited and DTR Industries, Inc.*

By: /s/ J. Clayton Everett, Jr. (with consent)
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel: 202-739-3000
Fax: 202-739-3001
jeverett@morganlewis.com

Matthew L. Fornshell
ICE MILLER LLP
250 West Street
Suite 700
Columbus, OH 43215
Tel: 614-462-1061
Fax: 614-222-3692
Matthew.Fornshell@icemiller.com

*Counsel for Defendants Showa Corporation and
American Showa, Inc.*

By: /s/ Terrence J. Truax   (w/ consent)
Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
Jamie J. Janisch
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374
gaugust@zacfirm.com
jjanisch@zacfirm.com

*Counsel for Mitsubishi Electric Corporation,
Mitsubishi Electric US Holdings, Inc., and
Mitsubishi Electric Automotive America, Inc.*


By: /s/ Michael S. Feldberg (with consent)
Michael S. Feldberg
John Roberti
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10128
212-610-6300

1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
michael.feldberg@allenovery.com
john.roberti@allenovery.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Robert Bosch LLC, Robert Bosch
GmbH and Bosch Electrical Drives Co., Ltd.*



By: /s/ Matthew J. Reilly (w/consent)
Matthew J. Reilly
Abram J. Ellis
David T. Shogren
SIMPSON THACHER & BARTLETT LLP

1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com
dshogren@stblaw.com

George S. Wang
Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Stanley Electric Co., Ltd.,*
*Stanley Electric U.S. Co., Inc., and II Stanley Co.,*
*Inc.*


By: /s/ Matthew J. Reilly (w/consent)
Matthew J. Reilly
Abram J. Ellis
SIMPSON THACHER & BARTLETT LLP
1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Diamond Electric Mfg.*
*Co., Ltd. and Diamond Electric Mfg. Corp.*

By: /s/ Randall J. Turk (w/ consent)
Randall J. Turk
John Taladay
Mark Miller
Heather Souder Choi
Baker Botts L.L.P.
1299 Pennsylvania Avenue., NW
Washington, D.C. 20004-2400
Phone: 202.639.7700
Fax: 202.639.7890

*Counsel for Defendants Toyoda Gosei Co., Ltd.,
Toyoda Gosei North America Corp., and TG
Missouri Corp.*

By: /s/ David M. Zinn (w/ consent)
David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

Robert J. Wierenga (P59785)
Suzanne L. Wahl (P71364)
SCHIFF HARDIN LLP
340 S. Main Street, Suite 210
Ann Arbor, MI 48104
Telephone: 734-222-1500
Fax: 734-222-1501
rwierenga@schiffhardin.com
swahl@schiffhardin.com

*Attorneys for Defendants Takata Corporation and
TK Holdings Inc.*

By: /s/ Brian Byrne (w/ consent)
Brian Byrne
Ryan M. Davis

CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 974-1850
Facsimile: (202) 974-1999
bbyrne@cgsh.com
rmdavis@cgsh.com

By: /s/ Howard B. Iwrey (w/ consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Valeo S.A., Valeo Japan Co., Ltd., Valeo Inc., Valeo Electrical Systems, Inc., and Valeo Climate Control Corp.*

By: /s/ Barry A. Pupkin (w/ consent)
Barry A. Pupkin
Iain R. McPhie
Jeremy W. Dutra
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 457-6315
Barry.Pupkin@squirepb.com
Iain.McPhie@squirepb.com
Jeremy.Dutra@squirepb.com

*Counsel for Aisan Industry Co., Ltd., Aisan Corporation of America and Franklin Precision Industry, Inc.*

By: /s/ Franklin R. Liss (w/ consent)
Franklin R. Liss
Barbara H. Wootton
Tiana L. Russell

15

Danielle M. Garten
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Tel: (202) 942-5969
Fax: (202) 942-5999
frank.liss@aporter.com
barbara.wootton@aporter.com
tiana.russell@aporter.com
danielle.garten@aporter.com

Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendants Koito Manufacturing Co.,
Ltd. and North American Lighting, Inc.*

By: /s/ Marguerite M. Sullivan (w/ consent)
Marguerite M. Sullivan
Lawrence E. Buterman
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Fax: (202) 637-2201
Marguerite.Sullivan@lw.com
Lawrence.Buterman@lw.com

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-0600
Fax: (415) 395-8095
dan.wall@lw.com

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.

16

101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060
bhorton@gmhlaw.com

*Attorneys for Defendants Sumitomo Electric
Industries, Ltd.; Sumitomo Wiring Systems, Ltd.;
Sumitomo Electric Wiring Systems, Inc.; K&S
Wiring Systems, Inc.; and Sumitomo Wiring Systems
(U.S.A.) Inc.*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re:  All Auto Parts Cases** | |
| **THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES** | 2:12-MD-02311-MOB-MKM |

## MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' OBJECTIONS TO, AND MOTION TO MODIFY, MASTER ESSHAKI'S JUNE 18, 2015 ORDER

## STATEMENT OF ISSUES PRESENTED

**Issue #1**: Whether Defendants should be permitted to take three Rule 30(b)(1) depositions and up to eighteen hours of Rule 30(b)(6) testimony of each Auto Dealer Plaintiff ("ADP").

> **Answer**: Yes. Additional opportunity to depose the ADPs is required to obtain discovery on facts that are critical to Defendants' arguments on key issues in this litigation, particularly where ADPs purchased cars from multiple OEMs and have many employees with varying job duties relevant to this litigation. Accordingly, the Court should modify Paragraph 1.C. of the Special Master's June 28, 2015 Order (the "Order") to permit Defendants to take up to three depositions under Rule 30(b)(1), and Paragraph 1.E. to permit Defendants to take up to 18 hours of deposition testimony under Rule 30(b)(6), of each ADP.

**Issue #2**: Whether Defendants should have the option to take up to fourteen hours of Rule 30(b)(1) testimony of each End Payor Plaintiff ("EPP").

> **Answer**: Yes. An additional day of testimony with many EPPs will be necessary for Defendants to develop important testimony that is central to their defenses in these cases, particularly in light of recent revelations that some EPPs have purchased or leased four or more cars. Accordingly, the Court should modify Paragraph 1.B. of the Order to permit Defendants to depose each EPP for up to fourteen hours.

**Issue #3**: Whether Defendants should be required to provide deposition topics to Plaintiffs in advance of Rule 30(b)(1) depositions.

> **Answer**: No. This requirement serves no apparent purpose, while imposing on Defendants an obligation – lacking any basis in the Federal Rules and without apparent precedent in antitrust MDLs – that would undermine Defendants' efforts to vigorously defend these cases by revealing otherwise protected attorney work product, and would likely lead to further disputes. Accordingly, the Court should vacate Paragraph 2 of the Order.

**Issue #4**: Whether there should be a limitation that no more than three defense counsel may ask questions during the depositions of Plaintiffs.

> **Answer**: No. While defense counsel will certainly coordinate during depositions to ensure efficiency, this limitation – apparently unprecedented in antitrust MDLs – denies Defendants' basic rights to defend themselves and obtain deposition discovery on named Plaintiffs. Accordingly, the Court should modify Paragraph 4 of the Order to eliminate this restriction.

**STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*In re Auto. Parts Antitrust Litig.*, No. 12-md-2311 (E.D. Mich.)

*Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004)

*Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x. 900 (6th Cir. 2009)

*Dow Chemical Co. v. Reinhard,* No. 07-12012-BC, 2008 WL 1735295 (E.D. Mich. 2008)

*Marisco v. Sears Holding Corp.*, 370 F. App'x. 658 (6th Cir. 2010)

Fed. R. Civ. P. 23

Fed. R. Civ. P. 30

Fed. R. Civ. P. 53(f)(5)

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................. 1

STANDARD OF REVIEW ........................................................................................ 4

BACKGROUND ....................................................................................................... 4

ARGUMENT ............................................................................................................. 6

I.    The Court Should Reinstate Master Esshaki's Previous Ruling Entitling Defendants to Three Rule 30(b)(1) Depositions and Up to Eighteen Hours of Rule 30(b)(6) Testimony of Each ADP ............................................................. 6

    A.    If three Rule 30(b)(1) depositions and eighteen hours of Rule 30(b)(6) testimony for each ADP were previously deemed necessary by Master Esshaki for the Wire Harness action alone, it is the bare minimum necessary for thirty independent putative class actions ................................ 6

    B.    Differences among the thirty cases require that Defendants depose multiple ADP fact witnesses and have additional time for deposing ADP corporate representatives ........................................................................ 7

    C.    The ADP depositions will have to cover significant and complex issues critical to key defenses against both the ADPs and EPPs ............................ 8

    D.    Master Esshaki's Order runs counter to precedent in antitrust MDLs ................ 11

    E.    Defendants' request does not impose an unreasonable burden on ADPs ............. 12

II.   Defendants Require Up to Fourteen Hours of Deposition Time with EPPs ...................... 13

    A.    Examining the EPPs on their car purchases and leases will likely require at least seven hours of deposition time, and possibly even more time in some instances .................................................................................... 14

    B.    The need to ask questions that are specific to certain parts at issue in particular cases further requires that Defendants have more than seven hours to depose EPPs ................................................................. 16

    C.    Defendants require adequate time to depose the EPPs on each car they bought or leased during the relevant time period, which in some instances is up to five transactions .................................................... 17

    D.    Discovery of EPPs to date strongly suggests that depositions will be a critical – and in some instances the only – opportunity for Defendants to obtain key discovery .......................................................... 18

    E.    Requiring EPPs to sit for a second day of deposition will not impose an unreasonable burden, especially given the importance of their testimony to this litigation ................................................................. 18

III.  It Is Unnecessary and Prejudicial to Limit the Number of Defendants That Can Examine the ADPs and EPPs .................................................... 19

IV.    Defendants Should Not be Required to Disclose the Topics to be Covered at Rule 30(b)(1) Depositions .............................................................................................................21

V.    Master Esshaki's Order Undermines Constitutional and Other Protections That Guarantee Defendants the Right to Adequately and Vigorously Defend Themselves ................................................................................................................................23

CONCLUSION ..................................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Medical Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig., et al.*,
   MDL Nos. 2325, 2326, 2327, 2012 WL 432533 (J.P.M.L. Feb. 7, 2012)............................3, 5

*Armstrong v. Manzo*,
   380 U.S. 545 (1965)..........................................................................................................23

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*,
   917 F.2d 1413 (6th Cir. 1990) ..........................................................................................17

*Associated Gen. Contractors of Cal., Inc. v. Cal., State Council of Carpenters*,
   459 U.S. 519 (1983)..........................................................................................................17

*In re Auto. Parts Antitrust Litig.*,
   Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456612 (E.D. Mich. June 6, 2013).......11, 17

*Ball v. Union Carbide Corp.*,
   385 F.3d 713 (6th Cir. 2004) ..............................................................................................9

*Bouaphakeo v. Tyson Foods, Inc.*,
   593 F. App'x 578 (8th Cir. 2014), *cert. granted*, 2015 WL 1278593
   (U.S. June 8, 2015) (No. 14-1146).................................................................................. 9-10

*Brent v. Midland Funding, LLC*,
   No. 3:11 CV 1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ......................................13

*Calderone Enters. v. United Artists Theatre Circuit*,
   454 F.2d 1292 (2d Cir. 1971)............................................................................................17

*In re Capacitors Antitrust Litig.*,
   No. 3:14-cv-3264-JD, ECF No. 741 (N.D. Cal. June 16, 2015)........................................7, 8

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 3:07-cv-5944-SC, ECF No. 1526 (N.D. Cal. Jan. 10, 2013) ..........................................7

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 3:07-cv-5944-SC, ECF No. 1097 (N.D. Cal. Mar. 19, 2012)........................................12

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013).......................................................................................................9

*Conti v. Am. Axle & Mfg., Inc.*,
   326 F. Appx. 900 (6th Cir. 2009).........................................................................................4

*In re: Credit Default Swaps Antitrust Litig.*,
    No. 13-md-2476-DLC, ECF No. 326-1 (S.D.N.Y. Sept. 16, 2014) ................................11, 12

*Dow Chemical Co. v. Reinhard*,
    No. 07-12012-BC, 2008 WL 1735295 (E.D. Mich. Apr. 14, 2008)........................................24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. 4:02-md-1486-PJH, ECF No. 1684 (N.D. Cal. Aug. 17, 2007)........................................7

*Engl v. Aetna Life Ins. Co.*,
    139 F.2d 469 (C.C.A.2d, 1943) .............................................................................................23

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
    177 F.R.D. 360 (E.D. La. 1997)............................................................................................19

*Goldberg v. Kelly*,
    397 U.S. 254 (1970)...............................................................................................................23

*Hickman v. Taylor*,
    329 U.S. 495 (1947)...............................................................................................................24

*In re Horvath*,
    No. 13-34137, 2015 WL 2195060 (Bankr. N.D. Ohio May 7, 2015).....................................22

*Huguley v. General Motors Corp.*,
    128 F.R.D. 81 (E.D. Mich. 1989) .........................................................................................13

*Jaffee v. Redmond*,
    518 U.S. 1 (1996)...................................................................................................................23

*King v. Pratt & Whitney, a Div. of United Techs. Corp.*,
    161 F.R.D. 475 (S.D. Fla. 1995),
    *aff'd sub nom. King v. Pratt & Whitney*, 213 F.3d 646 (11th Cir. 2000),
    213 F.3d 647 (11th Cir. 2000) ..............................................................................................22

*Marisco v. Sears Holding Corp.*,
    370 F. Appx. 658 (6th Cir. 2010)............................................................................................4

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)...............................................................................................................23

*McKinley v. City of Mansfield, et al.*,
    404 F.3d 418 (6th Cir. 2005) ..................................................................................................4

*Miller v. Experian Info. Solutions, Inc.*,
    No. 3:13-CV-90, 2014 WL 7176620 (S.D. Ohio Sept. 18, 2014)........................................22

*Murray v. E\* Trade Fin. Corp.*,
  240 F.R.D. 392 (N.D. Ill. 2006) ..................................................................................19

*In re Optical Disk Drive Prods. Antitrust Litig.*,
  No. 3:10-md-2143-RS, ECF No. 945 (N.D. Cal. July 19, 2013) ....................................7

*In re: Polyurethane Foam Antitrust Litig.*,
  No. 1:10-md-02196, ECF No. 241 (N.D. Ohio Sep. 15, 2011) ...............................11, 12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  MDL No. 1869, 725 F.3d 244 (D.C. Cir. 2013) ...........................................................9

*Shoen v. Shoen*,
  5 F.3d 1289 (9th Cir. 1993) .....................................................................................23

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  No. 4:07-md-1819-CW, ECF No. 1067 (N.D. Cal. Aug. 5, 2010) ...............................7

*Taylor v. CSX Transp., Inc.*,
  264 F.R.D. 281 (N.D. Ohio 2007) ...........................................................................19

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ...............................................................................................23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 3:07-md-1827-SI, ECF No. 1546 (N.D. Cal. Feb. 17, 2010) .......................... 20-21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 3:07-md-1827-SI, ECF No. 2694 (N.D. Cal. Apr. 29, 2011) .................................7

*U.S. v. Bryan*,
  339 U.S. 323, 331 (1950) ........................................................................................23

*In re: Vehicle Carrier Servs. Antitrust Litig.*,
  13-cv-03306, ECF No. 197 (D.N.J. Oct. 6, 2014) ....................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .............................................................................................9

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................................16

Fed. R. Civ. P. 23(a)(4) ..................................................................................................19

Fed. R. Civ. P. 23(b)(3) ....................................................................................................9

Fed. R. Civ. P. 26 Advisory Committee's Note (1946 Amendment) ..............................23

Fed. R. Civ. P. 26(b)(1)........................................................................................22

Fed. R. Civ. P. 30(b)(6)........................................................................................21

Fed. R. Civ. P. 30(d)(1)........................................................................................24

Fed. R. Civ. P. 53(f)(5) ..........................................................................................4

**Other Authorities**

8A Charles A. Wright et al., *Federal Practice & Procedure* § 2106 (3d ed. 2015)......................22

Commonwealth Chevrolet, http://www.commonwealthchevrolet.com.........................................12

Commonwealth Kia, www.commonwealthkia.com ...............................................................12

Transcript of Hearing Regarding Deposition Protocol, No. 12-md-2311, ECF No. 965
(E.D. Mich. May 8, 2015)...............................................................................7

Transcript of Status Conference, No. 12-md-2311, ECF No. 892
(E.D. Mich. Feb. 4, 2015) ..........................................................................7, 21

Transcript of Status Conference & Motion Hearing, No. 12-md-2311, ECF No. 974
(E.D. Mich. May 6, 2015)...............................................................................7

Transfer Order, No. 12-md-2311, ECF No. 197 (J.P.M.L. June 12, 2012) ...............................3, 5

## PRELIMINARY STATEMENT

The undersigned defendants ("Defendants"), made up of parties to the cases that were filed subsequent to the Wire Harness action (which was the first filed Auto Parts case), submit this objection to the Court to modify Special Master Esshaki's June 18, 2015 Order ("Master Esshaki's Order" or the "Order").  The Order imposes severe and unfairly prejudicial limits on the number and length of depositions that Defendants can take of the named Plaintiffs, and imposes certain unusual conditions – which appear to be unprecedented in antitrust MDLs – that limit the number of counsel that can ask questions during named Plaintiff depositions and require the disclosure of percipient witness deposition topics to opposing counsel.  These objectionable aspects of the Order result from the erroneous premise that what is good for one case is good for all thirty.  The reality is far different.  Each of these cases is a distinct putative class action in which Plaintiffs allege separate conspiracies as to distinct products that were made by largely non-overlapping Defendants and sold under unique conditions to different subsets of OEMs (or suppliers to those OEMs).

The fact that the named Plaintiffs, by their own choosing, are largely the same across the thirty (and growing) different parts cases has no bearing on these significant differences.  The various Defendants need – and have the right – to depose each End Payor Plaintiff ("EPP") and Auto Dealer Plaintiff ("ADP") on all of the significant and complex issues that are relevant to each Defendant and their respective parts cases.  The fact that most EPPs will need to be examined about multiple car purchases, leases, and/or re-sales (in some cases as many as five different transactions), and many of the ADPs will need to testify as to multiple OEM brands and dealership locations (in addition to differences in their sales and pricing practices that occurred over the lengthy ten-to-fifteen year alleged class periods), further compounds the need for more deposition testimony from the named Plaintiffs.

The Order simply does not provide enough time to cover these topics, all of which go to the core of Plaintiffs' claims and are critical to the arguments that Defendants will make in opposing class certification as well as the dispositive motions that they will likely file. As to depositions of ADPs, Defendants simply ask the Court to reinstate Master Esshaki's January 21, 2015 decision, which granted the Wire Harness Defendants three Rule 30(b)(1) depositions and eighteen hours of testimony under Rule 30(b)(6) for each ADP. Master Esshaki's decision was a reasonable compromise following extensive briefing and argument by the Wire Harness parties regarding the depositions required in the Wire Harness case alone. Defendants ask only that the same result apply now that the issues raised by twenty-nine additional independent cases must be covered at these depositions. Notably, Master Esshaki retracted his earlier decision only in response to the Court's comments at the January 28, 2015 status conference, and not because of any new argument or procedural development. As to depositions of EPPs, Defendants request the opportunity – which they may not need to exercise for every witness – to extend the single deposition that will be taken of the EPPs to a second day if necessary.

Defendants further request that the Court strike from the Order its requirements that no more than three counsel may examine each named Plaintiff and that Defendants must provide topics for Rule 30(b)(1) depositions to Plaintiffs in advance of those depositions, which appear to lack precedent in antitrust MDLs. Plaintiffs did not originally ask for these restrictions. The requirements serve no valid purpose, and they appear intended to solve problems that no one, including Plaintiffs, has raised. Rather, these requirements will inevitably lead to inefficient examinations with disruptions about who can examine the witness and what questions can or cannot be asked. Defendants whose questions are left unasked may need to file motions to reopen depositions.

Absent the requested relief, there is a material risk that Defendants' ability to develop the factual record necessary to defend themselves will be irreversibly prejudiced, potentially undermining the integrity of all the class actions in this proceeding.  All of the restrictions at issue in this objection could deny Defendants their rights to comprehensive pre-trial discovery under the Federal Rules as well as their due process rights to a full and fair opportunity to litigate these cases.

Finally, it bears noting that the Order's severe limits on deposition discovery threaten to undermine the efforts of the Judicial Panel on Multidistrict Litigation ("JPML") to "promote the just and efficient conduct of the litigation" by transferring the first six parts cases to this Court. Transfer Order, No. 12-md-2311, ECF No. 197 at 2 (J.P.M.L. June 12, 2012).  These restrictions are based on the false premise – advanced by the Plaintiffs – that all of these thirty separate parts cases raise the same factual and legal issues as to each EPP and ADP.  Limiting discovery based on this oversimplified view of this litigation has the potential to seriously prejudice the Defendants, a concern that the JPML acknowledged when it noted that in many situations it was "hesitant to bring together actions naming *separate defendants* and involving *separate products*." *Id.* (citing *In re Am. Medical Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig., et al.*, MDL Nos. 2325, 2326, 2327, 2012 WL 432533 (J.P.M.L. Feb. 7, 2012)) (emphasis added).  The JPML voiced that concern when transferring the initial parts cases that were coordinated with the Wire Harness litigation.  The JPML's caution has proved justified now that the number of different parts cases has swelled to thirty (and growing), and efforts to coordinate deposition discovery across all of them is on track to directly impede the ability of Defendants to adequately defend themselves.

## STANDARD OF REVIEW

This Court reviews a Special Master's Order regarding a procedural dispute for abuse of discretion.[1]   Fed. R. Civ. P. 53(f)(5).   An order denying or limiting discovery constitutes an abuse of discretion when it results in substantial prejudice.   *Marisco v. Sears Holding Corp.*, 370 F. Appx. 658, 663 (6th Cir. 2010).   The Sixth Circuit has found that the district court abused its discretion when it imposed restrictions on a party's ability to depose representatives from the opposing party where those depositions may impose a substantial burden.   *See id.* at 665 (holding that the district court abused its discretion in denying motion to compel depositions).   *See also Conti v. Am. Axle & Mfg., Inc.*, 326 F. Appx. 900, 907 (6th Cir. 2009) (holding that the district court abused its discretion in refusing to allow plaintiff to depose one of defendant's employees in an employment discrimination case, stating "[t]o allow a [party] to avoid his discovery obligations on such a thin basis [that the deposition would present a substantial burden] frustrates the purpose of discovery, and runs counter to the Supreme Court's explicit instruction that discovery privileges should be construed broadly").   Restrictive discovery orders entered before meaningful discovery has taken place – as is the case here – are especially suspect.   *See McKinley v. City of Mansfield, et al.*, 404 F.3d 418, 443 (6th Cir. 2005) (holding that "the district court abused its discretion because at the time of its highly restrictive discovery order, no discovery had occurred and the court offered no explanation for limiting discovery").

## BACKGROUND

This case has grown from a single Multidistrict Litigation ("MDL") consolidating all of the various Wire Harness actions into a sprawling litigation made up of thirty distinct parts cases,

---

[1] To the extent that the Special Master did not exercise his discretion, but rather based his ruling on his interpretation of the Court's views at the January 28 status conference (discussed *infra*), the appropriate standard of review is de novo, and not an abuse of discretion.

a number that continues to grow.  The JPML transferred only the first six cases, with its last transfer order issued in April 2013.  *See, e.g.*, Transfer Order, No. 12-md-2311, ECF No. 197 (J.P.M.L. Jun. 12, 2012) (indicating in many situations it has been "hesitant to bring together actions naming separate defendants and involving separate products") (citing *In re Am. Medical Sys.*, 2012 WL 432533 (J.P.M.L. Feb. 7, 2012)).  Since then, the litigation has grown five-fold, as Plaintiffs have filed twenty-four more cases – involving "separate products" and mostly "separate defendants" – in this Court, pursuant to a Case Management Order that allows complaints arising out of or relating to the same subject matter to be automatically made a part of this centralized proceeding.  Case Management Order No. 1 for All Direct Purchaser, Automobile Dealer and End-Payor Actions, No. 12-md-2311, ECF No. 73 at ¶ 15 (E.D. Mich. Mar. 29, 2012).  And even more cases are expected to follow.

The result is, for purpose of discovery, a single massive litigation made up of thirty distinct and large class actions, each of which is very likely to be tried separately.  There is not a meaningful degree of overlap of Defendants: more than thirty of the defendant groups (well over half) are named in only one of the cases.  The operative complaints in these thirty cases do not allege any single overarching conspiracy, or even a conspiracy across any two or more cases.  Instead, each of the thirty actions alleges a separate, distinct, and individual conspiracy, with the alleged conduct implicating different parts that were sold to different OEMs.  As a result, each of these thirty parts cases could, like the Wire Harness actions that were initially consolidated here, constitute its own separate MDL.

## ARGUMENT

**I.      The Court Should Reinstate Master Esshaki's Previous Ruling Entitling Defendants to Three Rule 30(b)(1) Depositions and Up to Eighteen Hours of Rule 30(b)(6) Testimony of Each ADP**

Defendants should be permitted to take three Rule 30(b)(1) depositions and up to eighteen hours of Rule 30(b)(6) testimony of each ADP, consistent with Master Esshaki's previous decision in the Wire Harness action.

*A.       If three Rule 30(b)(1) depositions and eighteen hours of Rule 30(b)(6) testimony for each ADP were previously deemed necessary by Master Esshaki for the Wire Harness action alone, it is the bare minimum necessary for thirty independent putative class actions*

Master Esshaki's January 21 decision providing three Rule 30(b)(1) depositions and up to eighteen hours of Rule 30(b)(6) testimony of each ADP for the Wire Harness case was the result of careful consideration of extensive briefing and argument by the parties to that action.  It is logical that at least that much deposition discovery is merited for *thirty* cases, each of which has a unique combination of parts, Defendants, affected OEMs, alleged conspiracy periods, and other facts.[2]  Leaving Master Esshaki's current Order as it is would result in over fifty Defendants across thirty separate litigations receiving less than half of the time for ADP depositions that Master Esshaki believed was necessary for just the Wire Harness action.  Notably, Master Esshaki reversed his earlier decision only because he believed certain statements made by the Court during the January 28, 2015 status conference required him to do so, though the Court has since acknowledged its comments may have been premature given Master Esshaki's responsibility to coordinate discovery.[3]

---

[2]  Some parts cases also have additional plaintiffs, including an OEM, classes of direct purchasers, as well as governments and municipalities.

[3]  At the January 28 status conference, the Court indicated the need for Defendants to coordinate EPP and ADP depositions across all cases in this litigation to avoid duplicative depositions of

B.      *Differences among the thirty cases require that Defendants depose multiple ADP fact witnesses and have additional time for deposing ADP corporate representatives*

Each of these thirty actions alleges a distinct conspiracy of such complexity and scope that it would typically be the subject of its own individual MDL proceeding.  Each of the ADPs' thirty cases differs as to their Defendants, OEMs affected, how parts were distributed, relevant time periods, and other facts.  These meaningful differences cannot be ignored simply because some of those parts may have ended up in the same cars.  Courts have treated price fixing cases separately even when they involved some of the same Defendants and parts that went into the same automobile.  For example, class actions against manufacturers of SRAM, DRAM, optical disc drives, CRTs, LCDs, and capacitors are each an individual MDL proceeding, even though those parts were all found in personal computers.[4]  Moreover, the cases were kept separate

---

individual witnesses. Transcript of Status Conference at 25:7-28:4, No. 12-md-2311, ECF No. 892 (E.D. Mich. Feb. 4, 2015).  As a result, at his May 6 hearing, Master Esshaki concluded: "[A]s I remember we worked on a deposition protocol, we came very clearly to a solution, there were some open issues that I ruled upon, and subsequent to that we had our status conference, and at the status conference quite frankly, Judge Battani, in my mind, upset the apple cart of what I had been doing."  Transcript of Hearing Regarding Deposition Protocol at 4:24-5:4, No. 12-md-2311, ECF No. 965 (E.D. Mich. May 8, 2015).  At the May 6 status conference that immediately preceded the May 6 hearing before Master Esshaki, however, the Court stated: "I may have overstepped my bounds last time when I made a comment as to what I was thinking because what I'm thinking on these issues right now is not really important, it is … the argument between the parties and the decision of the master that counts, and then if there is an objection I will deal with it."  Transcript of Status Conference & Motion Hearing at 28:2-8, No. 12-md-2311, ECF No. 974 (E.D. Mich. May 6, 2015).

[4] *See* class action complaints in *In re Static Random Access Memory (SRAM) Antitrust Litig.,* No. 4:07-md-1819-CW, ECF No. 1067 (N.D. Cal. Aug. 5, 2010); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* No. 4:02-md-1486-PJH, ECF No. 1684 (N.D. Cal. Aug. 17, 2007); *In re: Cathode Ray Tube (CRT) Antitrust Litig.,* No. 3:07-cv-5944-SC, ECF No. 1526 (N.D. Cal. Jan. 10, 2013); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143-RS, ECF No. 945 (N.D. Cal. July 19, 2013); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 3:07-md-1827-SI, ECF No. 2694 (N.D. Cal. Apr. 29, 2011); *In re Capacitors Antitrust Litig.*, No. 3:14-cv-3264-JD, ECF No. 741 (N.D. Cal. June 16, 2015).

despite the contention by the plaintiffs that many resulted from a single "computer parts industry" investigation by the DOJ.[5]

The material differences between each of the thirty cases will result in specific and unique deposition discovery that each parts group, and perhaps specific Defendants, will seek from the ADPs. Where a particular auto dealer sells both Hondas and Fords, for example, Defendants in a parts case alleging a conspiracy that affected Honda will want to depose a witness from the Honda division of the dealer's operations, while Defendants in a separate parts case that alleges a conspiracy affecting Fords will want a witness from the Ford side of the dealer's operations. If only one deposition were permitted, the Defendants would have no means to compromise, denying some Defendants the discovery to which they are entitled and that the Court will need to decide key issues related to class certification, standing, and damages. The same concern arises with respect to cases that involve parts sold only as options, or parts that were installed in only some cars. Defendants who require testimony on how the options affect sales practices, pricing, costs, and revenue may need a different witness than those who need no such testimony, and Defendants whose parts are included only in certain models (such as electric or hybrid cars) would have no interest in testimony involving other car models at all. With so many cases involving so many Defendants across so many product tracks, such conflicts are inevitable if, per the Order, Defendants have only a single seven-hour Rule 30(b)(1) deposition.

C.    *The ADP depositions will have to cover significant and complex issues critical to key defenses against both the ADPs and EPPs*

This litigation raises complex class certification, injury, and damages issues that will require extensive development of the factual record through ADP depositions. As the

---

[5] Indirect Purchaser Plaintiffs' Second Consolidated Complaint, *In re Capacitors Antitrust Litig.*, No. 14-cv-3264-JD, ECF No. 741 at ¶15 (N.D. Cal. Jun. 16, 2015)

middlemen between the OEMs and the EPPs, discovery of both the ADPs' upstream (buying cars) and downstream (selling or leasing cars) transactions are essential to both the ADP and EPP actions, including discovery of facts that are critical to the Court's consideration of class certification motions as well as the alleged existence of injury and the extent of damages, if any, incurred by Plaintiffs.

The Supreme Court's recent class certification decisions in *Comcast* and *Dukes* require that District Courts conduct a "rigorous analysis" of the class certification requirements. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011). Plaintiffs may not certify their class unless, among other requirements, they can show that common issues in these actions predominate over issues that are unique to individual class members. *See* Fed. R. Civ. P. 23(b)(3). *See also Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004) (upholding denial of class certification because "any claim the class may have had in common threatened to splinter into individualized claims").

Plaintiffs will need to show a homogenized theory of common proof of injury and damages, whereas Defendants will seek to demonstrate that a fact-intensive analysis of individualized outcomes renders it impossible to rely on class-wide proof to establish injury and damages. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 725 F.3d 244, 252-53 (D.C. Cir. 2013) (vacating certification of direct purchaser class because expert methodology purporting to show that all class members suffered injury generated "false positives" and "detect[ed] injury where none could exist"). The Supreme Court is especially focused on these requirements, as it recently granted certiorari to review an Eighth Circuit decision that affirmed class certification based on a statistical model that ignored differences among class members with respect to damages (including that some class members were shown

to have not been harmed).  *Bouaphakeo v. Tyson Foods, Inc.*, 593 F. App'x 578 (8th Cir. 2014), *cert. granted*, 2015 WL 1278593 (U.S. June 8, 2015) (No. 14-1146).

To establish whether ADPs can meet the predominance requirement as to their claims, their depositions will need to explore differences in their relationship and dealings with each OEM or car distributor (*i.e.*, upstream transactions), including (1) pricing and other terms with each OEM or distributor, including the various types of incentives offered by some of those OEMs; (2) processes and strategies for acquiring cars; and (3) how competition between OEMs affected pricing or other terms of the transaction.  In addition, the ADP depositions will have to cover differences in their dealings with car buyers (*i.e.*, downstream transactions), including (1) all of the factors that impact the price and other terms of the lease or sale; (2) rebates and incentives provided to car buyers and their impact on the negotiation of the sales price and the dealer's net profit on the lease or sale; (3) how they set advertised, base, and minimum nominal unit prices; (4) the nature of competition between different dealers and different brands, and its effect on the price and other terms reached with car buyers; (5) marketing and advertising practices; (6) costs, revenues, and profitability from leasing and selling cars; (7) the relationship between costs (and changes thereto) and the net price at which they are willing to lease or sell a car; and (8) revenue earned from financing, insurance, warranties, aftermarket products, and services plans associated with the sale or lease of cars.

All of these issues will be relevant to the Court's determination of the ADPs' and EPPs' respective motions for class certification, in particular whether ADPs can prove on a class-wide basis using common evidence that each of the members of their putative classes absorbed any overcharges rather than passed them on downstream, and conversely whether EPPs can prove on a class-wide basis using common evidence that each of the members of their putative classes

absorbed any overcharges as a result of pass on by the ADPs. The ADPs will be critical to developing the facts that Defendants require to demonstrate the many differences among OEMs, dealers, and EPPs in the terms and conditions of their respective purchases and sales of cars. The overwhelming diversity in sales and lease terms, and the factors that determine them for the particular ADP or EPP, will make it impossible for Plaintiffs to satisfy the requirements of Rule 23 and the Supreme Court's strict test for class certification. Without a proper opportunity to explore these details with the witnesses, Defendants will be severely prejudiced in their opposition to class certification, and the Court will be left with a one-sided factual record that is insufficient to make an informed ruling on class certification.

All of these same issues will also be relevant to determining whether the EPPs and ADPs suffered injury and, if so, what their damages were. *See In re Auto. Parts Antitrust Litig.*, Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456612, at *8 (E.D. Mich. June 6, 2013) ("The Court recognizes that [the EPPs and ADPs] face a difficult challenge in succeeding on their claims. They must show that every reseller in the chain passed on some or all of the alleged overcharge to demonstrate that the price of their vehicle was higher than it would have been because of the overcharge on the wire harness system."). Moreover, larger ADPs will need to be examined on all of these issues – as to both class certification and damages – concerning all of the important distinctions between their multiple dealership locations and each of their various OEM brands. Each ADP will also have to be examined about any changes in their practices over the lengthy alleged class periods – again, separately for each of their locations and brands.

D.     *Master Esshaki's Order runs counter to precedent in antitrust MDLs*

Reinstating Master Esshaki's earlier January 21 decision would be consistent with the practice of other recent antitrust MDL courts. Deposition protocols in *In re: CRT Antitrust Litigation, In re: Credit Default Swaps Antitrust Litigation, In re: Polyurethane Foam Antitrust*

*Litigation*, and others have allowed for at least five percipient witness depositions – with some allowing over ten – of corporate named plaintiffs.[6]  For example, in *In re: Polyurethane Foam Antitrust Litigation*, an MDL involving eleven defendant corporate families and multiple plaintiff corporate families, the defendants were permitted up to six depositions of any named plaintiff group.  No. 1:10-md-02196, ECF No. 241 (N.D. Ohio Sept. 15, 2011).  Notably, these comparisons – as well as Defendants' request – are conservative, given that each of these cited MDLs is akin to a single one of the thirty distinct parts cases in this litigation.  There is no valid reason why deposition discovery in thirty large and complicated litigations should be less than what similarly-situated corporate plaintiffs have had to undertake in other antitrust class actions for a single product.

E.      *Defendants' request does not impose an unreasonable burden on ADPs*

ADPs are sophisticated businesses – some appear to have many locations, hundreds of employees, and significant revenues[7] – that made a voluntary decision to file thirty separate and distinct major antitrust litigations and serve as named Plaintiffs on behalf of alleged classes of thousands of businesses nationwide.  ADPs are represented by able and experienced class action counsel, and it should come as no surprise that the consequence of initiating thirty massive litigations is that they will sit for depositions.  Notably, eleven (out of nearly fifty) of the ADPs

---

[6] *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944-SC, ECF No. 1097 (N.D. Cal. Mar. 19, 2012); *In re: Credit Default Swaps Antitrust Litig.*, No. 13-md-2476-DLC, ECF No. 326-1 (S.D.N.Y. Sept. 16, 2014)*; In re: Polyurethane Foam Antitrust Litig.*, No. 1:10-md-02196, ECF No. 241 (N.D. Ohio Sep. 15, 2011).

[7] For example, auto dealer plaintiff Commonwealth Motors sells cars manufactured by GM, Nissan, Honda, Kia, and Volkswagen at numerous different locations and employs more than 300 people.  *See* Press Release, Commonwealth Motors, Commonwealth Motors 20 Years of Sales, Community Service in Lawrence MA (Oct. 24, 2014), *available at* http://www.pr.com/press-release/588653; Commonwealth Kia, www.commonwealthkia.com (last visited June 18, 2015); Commonwealth Chevrolet, http://www.commonwealthchevrolet.com/ (last visited June 18, 2015).

are named Plaintiffs in another ongoing antitrust MDL. *See In re: Vehicle Carrier Servs. Antitrust Litig.*, 13-cv-03306, Consolidated Second Amended Class Action Complaint, ECF No. 197, at 1 (D.N.J. Oct. 6, 2014).

The minimal obligation asked of ADPs will pale in comparison to the significant deposition discovery they will seek from Defendants.[8] It will severely prejudice Defendants if they are subjected to rigorous discovery, but they are unduly constrained from seeking the discovery they need from the plaintiffs who brought these claims. Moreover, given the practice in other recent antitrust MDLs, Defendants' proposal is meaningfully less burdensome than what Plaintiffs could have reasonably expected when they filed these cases.[9]

## II.    Defendants Require Up to Fourteen Hours of Deposition Time with EPPs

The Court has ruled that EPPs are to each sit for only one deposition, but it has not yet taken a position on the duration of those depositions. Since Defendants are likely to have only one opportunity to depose each EPP, they request the right to depose each EPP for up to fourteen hours so that they are able to adequately cover the various issues that are raised by these thirty separate class actions – instead of the seven hours that is standard for a single action. The need for additional EPP deposition time has been intensified by the paucity of written document discovery from the EPPs and the fact that most of them purchased, and resold, multiple vehicles

---

[8] In the Wire Harness action, Plaintiffs have requested fifteen depositions of each Defendant group (with the exception of Leoni Defendants, who would be deposed up to seven times). *See* Stipulation and [Proposed] Order Regarding Deposition Protocol, No. 12-cv-100, ECF No. 259-1 at 4 (Jan. 12, 2015).

[9] Named plaintiffs can receive incentive payments or other compensation for the time and expense – including participation in discovery – of adequately representing their class. *See, e.g.*, *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) (providing for incentive payments "[i]n view of the time, effort, risk, and expense the Named Plaintiffs have undertaken in pursuing this litigation (including participation in discovery and settlement efforts"); *Huguley v. General Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989) (award paid to named plaintiffs as compensation for burden imposed by litigation).

during the relevant period. While Defendants may not use all fourteen hours with every witness, it is clear that more than seven hours will be required in many, if not most, instances.

A.  *Examining the EPPs on their car purchases and leases will likely require at least seven hours of deposition time, and possibly even more time in some instances*

Defendants anticipate that at least seven hours of deposition time – and, in some instances, more – will be necessary to question the EPPs on the circumstances surrounding the cars that they purchased or leased. Each car transaction raises a significant number of important issues that will involve detailed questioning of the EPPs, including various merits and class certification issues that require Defendants be able to delve far beyond the basic questions of when a car was purchased, from whom, and for what price.

      i.    <u>EPP depositions will be critical to establishing the existence of any alleged injury and damages</u>

To determine whether each EPP was harmed by the alleged conduct, their depositions will need to probe all of the nuances of how they selected their car(s) and how they reached their final purchase price. The key issue that the EPP depositions must cover with respect to injury and damages will be whether, and to what extent, auto dealers passed on any overcharge incurred by them to EPPs. This extensive line of questioning will need to cover, among many other topics about the EPPs transactions, the following:

- **Negotiation of the sales price of the transaction, including any incentives or rebates**. For example, an EPP who bought a car for cash on a weekday morning during a low-sales month for the auto dealer may have substantially negotiated down the price of their car.

- **Whether there was any car trade-in credit**. For example, an EPP that obtained a significant trade-in credit would pay less out-of-pocket for their new car.

- **The features of the car they purchased or leased, including any options or add-ons**. For example, an EPP may have bargained for a free upgrade to side-impact air bags, suggesting that any overcharge on occupant safety systems was absorbed entirely by the ADP.

- **Financing terms**. For example, an EPP with a high credit rating who bought a car during the 2009 financial crisis may have received favorable terms on a loan, such as extended-year zero interest financing.

- **How other consideration provided by the auto dealer factored into the buying decision**. For example, an EPP may have obtained an extended warranty, which may have increased the total price paid.

- **The other cars they were considering, including whether they shopped around at other dealerships**. For example, an EPP may have negotiated the purchase price of a car that is at issue in this litigation by requiring the auto dealer to match or take into consideration another dealer's price on a different car that was made by an OEM not at issue in this litigation. As a result, the EPP's price could be unaffected by the alleged conspiracy.

Moreover, if any EPPs later sold their cars, they will have to be examined about the details of those sales transactions. This testimony is essential to determining whether EPPs were able to "pass on" any alleged overcharge to the purchaser of their used vehicle, which could demonstrate that they suffered no injury or damage and therefore have no standing. Also, to the extent that the car was traded in at a dealership for a new car, the value of the used car and its role in the auto dealership's determination of the price of the new car is critical to determining whether a car buyer suffered injury on the new car purchase, and whether any such injury was ameliorated by recovery from the sale of the used car back to the dealership.

  ii.  <u>EPP depositions will be highly relevant to key class certification issues</u>

In support of class certification, EPPs will have to show that they can prove through common evidence that the alleged conspiracy injured members of their putative classes. *See supra* Sec. I.C. (discussion of class certification requirements). In order for Defendants to oppose class certification, they must have the opportunity to explore and identify the innumerable differences between each EPP and the terms of their automobile purchases. Defendants will show that the substantial variability among these transactions is so great that

class certification cannot be granted, but their ability to do so will be hindered if the Court does not provide for the necessary and adequate opportunity to develop the factual record.

Specifically, Defendants will need to delve into the details of each of the EPPs' individual transactions in order to determine the extent to which dealer-specific or customer-specific factors make it impossible to use class-wide proof to establish whether, and to what extent, any particular EPP incurred any alleged overcharge. Factors of such individualized outcomes that would need to be explored during depositions of EPPs include differences in their (1) cars, including features, options, and add-ons; (2) prices paid for the cars, net of any rebates, discounts, and trade-ins; (3) down payments and financing terms; (4) negotiation tactics; (5) decisions whether to buy or lease; (6) considerations of other non-price conditions, such as warranties; (7) decisions concerning how to pay, including financing options; and (8) the extent to which there was competition among dealerships, as well as with alternative makes and models of cars (including some that may not have been subject to the alleged conspiracy).[10]

B. *The need to ask questions that are specific to certain parts at issue in particular cases further requires that Defendants have more than seven hours to depose EPPs*

In addition to the extensive questioning about the EPPs' car transactions, Defendants are entitled to sufficient deposition time with EPPs to develop facts relevant to the particular parts at issue in their individual cases. For example, some automotive parts at issue were options (such as air conditioning systems and power windows) or were subject to choice among a variety of types and options (such as head lamps, occupant safety systems, and heater control panels). EPPs that purchased cars containing these parts will need to be questioned about how their

---

[10] Depositions of EPPs will also be relevant to determining whether a lack of injury or damage means that any named Plaintiffs fail to meet the Rule 23 "adequacy" requirement. *See* Fed. R. Civ. P. 23(a). Given that there are a small number of EPPs from each state, showing that particular EPPs have no injury, and are therefore not adequate class representatives, may extinguish all claims for a state in which those EPPs are the only putative class representatives.

selection of the cars was impacted by their demand for the parts, and how the prices of the cars were affected by whether the parts were included in the transaction. Such testimony will be highly relevant to whether including the part in the deal affected the price of the car, which goes directly to whether the EPP suffered any injury and damages from the alleged conduct.

The extent to which an EPP did or did not consider a particular part in the decision to buy the car will also bear on whether EPPs' alleged harm is too far or remote from the conduct at issue for purposes of establishing antitrust standing. *In re Auto. Parts Antitrust Litig.*, No. 12-md-2311, 2013 WL 2456612, at *13 (E.D. Mich. June 6, 2013) ("[E]ven when a plaintiff plausibly alleges an injury-in-fact sufficient for constitutional standing, the plaintiff still must establish antitrust standing.") (citing *Associated Gen. Contractors of Cal., Inc. v. Cal., State Council of Carpenters*, 459 U.S. 519, 535 (1983)).[11] For example, testimony that EPPs were not even aware of certain parts, in addition to other evidence of the numerous complex channels of distribution that an alleged price-fixed auto part would go through before reaching the EPP, will demonstrate the attenuated connection between the EPPs and the markets in which the alleged conduct occurred.

C. *Defendants require adequate time to depose the EPPs on each car they bought or leased during the relevant time period, which in some instances is up to five transactions*

Defendants only recently learned through discovery in the Wire Harness action that most EPPs purchased or leased more than one car and, in many instances, several cars. In fact, based on a recent supplemental response from EPPs received on May 29, 2015, Defendants have now

---

[11] *See also Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1438 (6th Cir. 1990) ("[I]n order to have 'standing' to sue for treble damages under § 4 of the Clayton Act, a person must be within the 'target area' of the alleged antitrust conspiracy . . . . [W]e have drawn a line excluding those who have suffered economic damage by virtue of their relationships with 'targets' or with participants in an alleged antitrust conspiracy, rather than being 'targets' themselves." (quoting *Calderone Enters. v. United Artists Theatre Circuit*, 454 F.2d 1292, 1295 (2d Cir. 1971)).

learned that some EPPs purchased or leased as many as five cars.  Given recent discovery from

EPPs, there is no assurance that EPPs will not disclose further automobile purchases or leases.

As a result, it may be necessary for Defendants at the deposition of each EPP to repeat – as many

as five times – the extensive lines of questioning, discussed above, about the nature and details of

the acquisition (and any subsequent sale or trade-in) of a car.

> D.     *Discovery of EPPs to date strongly suggests that depositions will be a critical –
> and in some instances the only – opportunity for Defendants to obtain key discovery*

The depositions of EPPs may be the best and only way for Defendants to obtain certain

critical facts about the transactions at issue in this litigation.  EPPs have, to date, refused to

provide any substantive responses to the interrogatories served on them by the Wire Harness

Defendants.  Instead, EPPs have simply referenced documents that they claim provide all their

responses to all substantive interrogatories, even though in many instances EPPs have not

produced any documents, and those who have produced some documents can point to nothing

that provides answers to many of the questions that Wire Harness Defendants have asked.

Recently, on May 29, 2015, EPPs informed Defendants of an additional twenty-seven new cars

that they claim to have purchased or leased, for the vast majority of which no documents have

yet been produced.  Depositions may, therefore, be Defendants' only opportunity to obtain basic

information about many of the car transactions underlying EPPs' claims.

> E.     *Requiring EPPs to sit for a second day of deposition will not impose an
> unreasonable burden, especially given the importance of their testimony to this litigation*

The potential for imposing any meaningful burden on EPPs was eliminated by the

Court's ruling that they not sit for more than one deposition.  Given that EPPs are already going

to sit for a deposition, an additional day is completely reasonable.  The EPPs each voluntarily

filed thirty separate and distinct complex class actions that will impose significant discovery

obligations on Defendants.  Moreover, the EPPs have the opportunity to be compensated for their

18

participation in this litigation, and presumably the burdens that it may impose on them. *See supra* Sec. I.E., n. 9 (discussing ability of named plaintiffs to be compensated).

In addition, with each EPP's decision to be a named Plaintiff in these class actions came a responsibility under Rule 23 to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires class representatives to exhibit a "willingness and ability to participate in discovery." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 291 (N.D. Ohio 2007) (quoting *Murray v. E\* Trade Fin. Corp.*, 240 F.R.D. 392, 398 (N.D. Ill. 2006)). In fact, a motion for class certification can be denied on the grounds that the representative plaintiffs failed to cooperate in discovery. *See In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 367-68 (E.D. La. 1997) (finding that named plaintiffs were inadequate representatives because they failed to cooperate in discovery). By opposing more than seven hours of deposition time, the named EPPs risk falling short of their obligations to serve as adequate representatives for the absent class members.

## III.    It Is Unnecessary and Prejudicial to Limit the Number of Defendants That Can Examine the ADPs and EPPs

Master Esshaki's Order that only three defense counsel may question any Plaintiff in a deposition is unwarranted. Worse, it could result in the complete denial of some Defendants' rights to ask questions of named Plaintiffs and the wholesale elimination of questions concerning particular parts by knowledgeable counsel. Plaintiffs never asked for this restriction – which appears to be unprecedented in antitrust MDLs – and there is no need for it. As with any MDL, defense counsel will coordinate and allocate time in an efficient and appropriate manner, but it may be the case that more than three Defendants will need to ask additional or follow-up questions in light of the diversity of the facts in these cases and varying discovery priorities that different Defendants and parts groups may have.

Leaving this restriction in place would create problems, including the potential for irreconcilable conflicts among Defendants.  The examining counsel, who are unfamiliar with the unique issues of each product case, will be unjustly burdened (at their client's expense) with preparing for and taking testimony on products and issues that have no relevance to their own client.  Meaningful differences between the thirty parts cases will necessarily result in Defendants having different areas of focus and priority in seeking discovery.  For example, an EPP who bought two cars from two different OEMs may be the focus of certain parts groups for one car but not for the other car, and it is only reasonable that each interested parts group have an opportunity to ask questions on the areas of legitimate and specific interest to them.

Moreover, even if no conflicts arise, it is unavoidable that counsel for Defendants in some parts cases will have more expertise than counsel in other parts cases as to certain case-specific topics – like competitors, OEMs, or the parts at issue – and therefore will be better positioned to effectively and efficiently examine the witness.  Rather than making depositions efficient, restricting the number of counsel who can ask questions will do just the opposite, as defense counsel on the sidelines clamor for frequent and repeated breaks to adequately prepare examining counsel to ask necessary follow up questions.  This could lead to motions to reopen examinations by Defendants who believe that issues critical to their case were not adequately covered at the deposition.

Defendants are unaware of comparable antitrust MDLs where a court limited the number of defendants permitted to ask questions during the deposition of a named plaintiff.  To the contrary, courts typically give counsel the discretion to allocate the time provided for witness depositions.  For example, in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, the court provided that "[a]s to depositions noticed by Defendants, or by Individual Plaintiffs, the examination time

at any deposition shall be allocated by agreement among that side." No. 07-md-1827-SI, ECF No. 1546 (N.D. Cal. Feb. 17, 2010). The Court itself has indicated its deference to Defendants' judgment on how to split up their time: "there are a lot of defendants so you can decide how many you want to take the depositions." Transcript of Status Conference & Motion Hearing at 33:11-12, No. 12-md-2311, ECF No. 892 (E.D. Mich. Feb. 4, 2015); *see also*, *id.* at 36:12-14 ("You [Defendants] can do whatever you want. Hopefully you come to terms amongst yourselves. . . ."). Unless and until any difficulties arise at the depositions, the Court should defer to defense counsels' discretion concerning how to allocate time among themselves.

To avoid potential conflicts and burdening the Court with their resolution, as well as to ensure that Defendants are able to adequately defend themselves in their respective parts cases, each Defendant should be allowed to ask questions on its own if time remains after counsel taking the lead on any deposition have completed their inquiries. The Order contains instructions requiring Defendants to coordinate questions and avoid duplicative questions, and places limits on the duration of the examination, all of which render this problematic restriction unnecessary. *See* Order §§ 1, 4.

## IV. Defendants Should Not be Required to Disclose the Topics to be Covered at Rule 30(b)(1) Depositions

Nothing in the Federal Rules calls for defendants to provide deposition topics to plaintiffs in advance of Rule 30(b)(1) depositions. Only Rule 30(b)(6) depositions of corporate representatives require the examining party to "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Notably, that requirement is not intended to provide improved notice or protection to corporate deponents, but rather to ensure that the corporate entity chooses a witness able to knowledgably testify on the identified topics for the organization. Fed. R. Civ. P. 30(b)(6), Notes of Advisory Committee on Rules (1970

Amendment).  *See also King v. Pratt & Whitney, a Div. of United Techs. Corp.*, 161 F.R.D. 475, 476 (S.D. Fla. 1995), *aff'd sub nom. King v. Pratt & Whitney*, 213 F.3d 646 (11th Cir. 2000), 213 F.3d 647 (11th Cir. 2000).

Since Defendants will choose the Rule 30(b)(1) witness, there is no apparent rationale for the requirement that Defendants provide depositions topics for those depositions, which are limited only by relevance.  *See* Fed. R. Civ. P. 26(b)(1).  *See also Miller v. Experian Info. Solutions, Inc.*, No. 3:13-CV-90, 2014 WL 7176620, at *1 (S.D. Ohio Sept. 18, 2014) (quoting Fed. R. Civ. P. 26(b)(1)) ("'[T]he scope of discovery' encompasses 'any nonprivileged matter that is relevant to any party's claim or defense[.]'").  Fact witnesses testify as to their personal experience, and there is no basis in the Federal Rules for requiring Defendants to identify areas of inquiry to Plaintiffs in advance of their Rule 30(b)(1) depositions.  *See* 8A Charles A. Wright et al., *Federal Practice & Procedure* § 2106 (3d ed. 2015) (notice under Rule 30(b)(1) "is not required to state the subject matter concerning which the examination will be made.").

Imposing such a requirement will only lead to disputes about whether the topics have been sufficiently described and whether questions asked at the depositions fall within or outside them.  Moreover, notice of the topics to be covered would do no more than inform Plaintiffs' counsel of Defendants' deposition plans and strategy, undermining the ability of Defendants to vigorously defend themselves by requiring their counsel to reveal otherwise protected work product.  *See In re Horvath*, No. 13-34137, 2015 WL 2195060, at *7 (Bankr. N.D. Ohio May 7, 2015) (protection applies where work product that was "was created by the attorney in anticipation of litigation" is "being sought by an adversary of the attorney's client").  Indeed, such disclosure in advance of Rule 30(b)(1) depositions will make it more likely that Defendants

receive responses crafted in advance by Plaintiffs' counsel, rather than the unvarnished recollection of the witnesses to which Defendants are entitled.

## V.   Master Esshaki's Order Undermines Constitutional and Other Protections That Guarantee Defendants the Right to Adequately and Vigorously Defend Themselves

By impeding Defendants' access to critical discovery, Master Esshaki's Order impairs Defendants' fundamental due process protections and violates principles of open discovery provided by the Federal Rules and longstanding federal common law.

Principles of constitutional due process guarantee each Defendant the "full and fair opportunity to litigate" their case. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).

Consistent with these constitutional principles, longstanding common law and the Federal Rules require that litigants be permitted to perform full and adequate pre-trial discovery.  The broad right of discovery is "based on the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.'"  *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *U.S. v. Bryan*, 339 U.S. 323, 331 (1950)).[12]

---

[12] *See also Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) ("'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence.'" (quoting *U.S. v. Bryan*, 339 U.S. at 331)).  "The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."  Fed. R. Civ. P. 26 Advisory Committee's Note (1946 Amendment) (citing *Engl v. Aetna Life Ins. Co.*, 139 F.2d 469 (C.C.A.2d, 1943)).

These protections extend to depositions, which the Supreme Court has described as "one of the most significant innovations of the Federal Rules of Civil Procedure" that serves to "narrow and clarify the basic issues between the parties" and enable "the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947). In keeping with those principles, the Federal Rules require that parties be provided with sufficient time to depose a witness, even if it means more than seven hours.

> Although [Federal Rule of Civil Procedure 30(d)(1)] generally limits a deposition to a single day of seven hours, on its face, the rule provides for extensions beyond that presumptive limitation. Indeed, "[t]he court *must* allow additional time . . . if needed to fairly examine the deponent. . . ." Thus, the Court has an obligation to permit additional time, if the circumstances require that a fair examination of the deponent run longer. When making this assessment, the Advisory Committee to the 2000 Amendments noted that a court should consider such factors as whether each party has had an opportunity to examine a deponent in a multi-party case and whether the deponent's lawyer also wishes to examine the deponent.

*Dow Chemical Co. v. Reinhard,* No. 07-12012-BC, 2008 WL 1735295, at *3 (E.D. Mich. Apr. 14, 2008) (quoting Fed. R. Civ. P. 30(d)(1)) (emphasis added).

The inadequate amount of time and number of depositions permitted of the named Plaintiffs – who are at the core of the claims of this litigation and in possession of many of its most germane facts – directly undermines Defendants' rights to access evidence on critical facts that will support key arguments on standing, class certification, injury, and damages. Defendants' due process rights to put on an adequate defense may be prejudicially compromised by the inability to adequately question named Plaintiffs and by the potential conflicts among defense counsel to allocate the limited time provided for the depositions.

Similarly, preventing all but three of fifty Defendant groups – some of whom may have questions that are specific to the facts of their particular parts cases – from asking even one or two questions at the deposition of the named Plaintiffs would deny Defendants' most basic due process rights, curtailing their access to important discovery and denying their rights to confront

and cross-examine adverse witnesses.    Finally, the requirement that Defendants provide deposition topics to Plaintiffs in advance of 30(b)(1) depositions is completely at odds with the adversarial process and will undermine Defendants' due process rights to full and fair opportunity to litigate the cases brought against them.

## <u>CONCLUSION</u>

For the foregoing reasons, the undersigned Defendants respectfully request that the Court enter the accompanying Proposed Order Modifying Master Esshaki's June 18, 2015 Order, so that Defendants have the opportunity to fully and adequately obtain discovery of the named Plaintiffs on issues that are critical to this litigation.

Dated:  June 19, 2015

Respectfully submitted,


By: _Steven Alan Reiss_____

Steven A. Reiss
Adam C. Hemlock
Kajetan Rozga
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
kajetan.rozga@weil.com

Frederick R. Juckniess
SCHIFF HARDIN LLP
350 South Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1504
fjuckniess@schiffhardin.com

*Attorneys for Bridgestone Corporation and
Bridgestone APM Company*

By: _Steven Alan Reiss_____

Steven A. Reiss
Adam C. Hemlock
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

Fred K. Herrmann
Joanne G. Swanson
Matthew L. Powell
KERR RUSSELL & WEBER PLC
500 Woodward Avenue
Suite 2500

Detroit, MI 48226
Tel. (313) 961-0200
Fax (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Calsonic Kansei Corporation and*
*CalsonicKansei North America, Inc.*


By: /s/ Steven F. Cherry (w/consent)
Steven F. Cherry
David P. Donovan
Patrick J. Carome
Brian C. Smith
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C.
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
patrick.carome@wilmerhale.com
brian.smith@wilmerhale.com
kurt.kastorf@wilmerhale.com

*Counsel for Defendants DENSO Corp., DENSO*
*International America, Inc., ASMO Co., Ltd.,*
*ASMO North America, LLC, ASMO Manufacturing,*
*Inc., ASMO Greenville of North Carolina Inc.*


By: /s/ Debra H. Dermody (w/ consent)
Debra H. Dermody
Michelle A. Mantine
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: (412) 288-3302/4268
Fax:    (412) 288-3063
Email: ddermody@reedsmith.com
mmantine@reedsmith.com

/s/ Howard B. Iwrey (w/ consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Fax:(248) 203-0763
Email: hiwrey@dykema.com
bmoore@dykema.com

*Attorneys for Defendant SKF USA Inc. in actions 2:13-cv-00502, -00503, -00505, and -13356-MOB-MKM)*

By: /s/ Jeremy J. Calsyn (with consent)

Jeremy J. Calsyn (DC Bar #467737)
Teale Toweill (DC Bar #996061)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
jcalsyn@cgsh.com
ttoweill@cgsh.com

David A. Ettinger (P26537)
HONIGMAN, MILLER, SCHWARTZ AND COHN LLP
660 Woodward Avenue Suite 2209
Detroit, MI 48226-3506
(313) 465-7368 (Telephone)
(313) 465-7369 (Facsimile)
dettinger@honigman.com

*Attorneys for Defendants NSK Ltd. and NSK Americas, Inc.*

By: /s/ Heather L. Kafele (with consent)
Heather L. Kafele
Keith R. Palfin
SHEARMAN & STERLING LLP

801 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Tel.: (202) 508-8097
Fax: (202) 508-8100
heather.kafele@shearman.com
keith.palfin@shearman.com

Brian M. Akkashian
PAESANO AKKASHIAN, PC
132 N. Old Woodward Avenue
Birmingham, MI 48009
Tel.: (248) 792-6886
bakkashian@paesanoakkashian.com

*Counsel for JTEKT Corporation and JTEKT
Automotive North America, Inc.*

By: /s/ Kenneth R. Davis II (w/ consent)
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi
LANE POWELL PC
MODA Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
(503) 778-2100
(503) 778-2200 (facsimile)
davisk@lanepowell.com
bachmanc@lanepowell.com
sandsd@lanepowell.com
yamaguchi@lanepowell.com

Larry S. Gangnes
U.S. Bank Centre
1420 Fifth Ave., Ste. 4100
Seattle, WA 98101-2338
(206) 223-7000
(206) 223-7107 (facsimile)
gangnesl@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM

201 W. Big Beaver, Suite 600
Troy, MI 48084
(248) 528-1111
(248) 528-5129 (facsimile)
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Nachi-Fujikoshi Corp.
and Nachi America, Inc.*

By: /s/ David C. Giardina (w/ consent)
David C. Giardina
Courtney A. Hoffmann
SIDLEY AUSTIN LLP
One S. Dearborn St.
Chicago, IL 60603
Tel.: (312) 853-7000
Fax: (312) 853-7036
dgiardina@sidley.com
choffmann@sidley.com

Bradley J. Schram
HERTZ SCHRAM PC
1760 S. Telegraph Rd., Suite 300
Bloomfiled Hills, MI 48302
Tel.: (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Defendants Toyo Tire & Rubber Co.,
Ltd., Toyo Automotive Parts (USA), Inc., Toyo Tire
North America OE Sales LLC, and Toyo Tire North
America Manufacturing Inc.*

By: /s/ Jeffrey L. Kessler (w/ consent)

Jeffrey L. Kessler
A. Paul Victor
Jeffrey J. Amato
Molly M. Donovan
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

jkessler@winston.com
pvictor@winston.com
jamato@winston.com
mmdonovan@winston.com

Fred K. Herrmann
KERR, RUSSELL & WEBER PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Attorneys for Defendants NTN Corporation and
NTN USA Corporation*

By: /s/ George A. Nicoud (w/ consent)
George A. Nicoud III
Austin Schwing
Stuart C. McPhail
Leslie A. Wulff
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Tel.: (415) 393-8200
Fax: (415) 393-8306
TNicoud@gibsondunn.com
ASchwing@gibsondunn.com
SMcphail@gibsondunn.com
LWulff@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation and
American Mitsuba Corporation*

By: /s/ James L. Cooper (w/ consent)
James L. Cooper
Danielle Garten
Adam Pergament
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
(202) 942-5000
(202) 942-5999 (facsimile)
james.cooper@aporter.com
danielle.garten@aporter.com

adam.pergament@aporter.com

Fred K. Herrmann
Joanne Geha Swanson
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
(313) 961-0388 (facsimile)
jswanson@kerr-russell.com
fherrmann@kerr-russell.com

*Attorneys for Defendants Yamashita*
*Rubber Co., Ltd., and YUSA Corporation*


By: /s/ Anita F. Stork (w/ consent)
Anita F. Stork
COVINGTON & BURLING LLP
One Front Street
35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

Bruce A. Baird
Sarah L. Wilson
Michael A. Fanelli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Fax: (202) 662-6291
bbaird@cov.com
swilson@cov.com
mfanelli@cov.com

/s/ Maureen T. Taylor
Maureen T. Taylor
BROOKS WILKINS SHARKEY & TURCO PLLC
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801

taylor@bwst-law.com

*Attorneys for Defendant Keihin North America, Inc.*

By: /s/ *Anita F. Stork* (w/ consent)

Anita F. Stork
Gretchen Hoff Varner
Cortlin H. Lannin
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

/s/ Maureen T. Taylor (w/ consent)

Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 Old South Woodward, Suite 400
Birmingham, MI  48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Alps Electric Co., Ltd.;*
*Alps Electric (North America), Inc.; and Alps*
*Automotive, Inc.*

By: /s/ Eric J. Mahr (w/ consent)

Eric J. Mahr
Stacy E. Frazier
1875 Pennsylvania Ave., NW
Washington, DC 20006
202-663-6446
eric.mahr@wilmerhale.com
stacy.frazier@wilmerhale.com

*Attorneys for Defendant Schaeffler Group USA,*
*Incorporated*

By: /s/ Ronald M. McMillan (w/ consent)
Ronald M. McMillan (OH 0072437)
John J. Eklund (OH 0010895)
Maura L. Hughes (OH 0061929)
Alexander B. Reich (OH 0084869)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
jeklund@calfee.com
mhughes@calfee.com
rmcmillan@calfee.com
areich@calfee.com

Maureen T. Taylor
Herbert C. Donovan
BROOKS, WILKINS, SHARKEY & TURCO
PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
(248) 971-1800 (Phone)
(248) 971-1801 (Fax)
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Continental Automotive
Systems, Inc. and Continental Automotive
Electronics LLC*

By: /s/ J. Clayton Everett, Jr. (with consent)
J. Clayton Everett, Jr.
Zarema A. Jaramillo
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001
jeverett@morganlewis.com
zarema.jaramillo@morganlewis.com

*Counsel for Defendants Sumitomo Riko Company
Limited and DTR Industries, Inc.*

By: /s/ J. Clayton Everett, Jr. (with consent)
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel: 202-739-3000
Fax: 202-739-3001
jeverett@morganlewis.com

Matthew L. Fornshell
ICE MILLER LLP
250 West Street
Suite 700
Columbus, OH 43215
Tel: 614-462-1061
Fax: 614-222-3692
Matthew.Fornshell@icemiller.com

*Counsel for Defendants Showa Corporation and
American Showa, Inc.*

By: /s/ Terrence J. Truax   (w/ consent)
Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
Jamie J. Janisch
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374
gaugust@zacfirm.com
jjanisch@zacfirm.com

*Counsel for Mitsubishi Electric Corporation,*
*Mitsubishi Electric US Holdings, Inc., and*
*Mitsubishi Electric Automotive America, Inc.*


By: /s/ Michael S. Feldberg  (with consent)
Michael S. Feldberg
John Roberti
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10128
212-610-6300

1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
michael.feldberg@allenovery.com
john.roberti@allenovery.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Robert Bosch LLC, Robert Bosch*
*GmbH and Bosch Electrical Drives Co., Ltd.*


By: /s/ Matthew J. Reilly (w/consent)
Matthew J. Reilly
Abram J. Ellis
David T. Shogren
SIMPSON THACHER & BARTLETT LLP
1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com
dshogren@stblaw.com

George S. Wang
Shannon K. McGovern

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Stanley Electric Co., Ltd.,
Stanley Electric U.S. Co., Inc., and II Stanley Co.,
Inc.*


By: /s/ Matthew J. Reilly (w/consent)
Matthew J. Reilly
Abram J. Ellis
SIMPSON THACHER & BARTLETT LLP
1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Diamond Electric Mfg.
Co., Ltd. and Diamond Electric Mfg. Corp.*


By: /s/ Randall J. Turk (w/ consent)
Randall J. Turk
John Taladay
Mark Miller
Heather Souder Choi
Baker Botts L.L.P.
1299 Pennsylvania Avenue., NW
Washington, D.C. 20004-2400

Phone: 202.639.7700
Fax: 202.639.7890

*Counsel for Defendants Toyoda Gosei Co., Ltd.,
Toyoda Gosei North America Corp., and TG
Missouri Corp.*


By: /s/ David M. Zinn (w/ consent)
David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

Robert J. Wierenga (P59785)
Suzanne L. Wahl (P71364)
SCHIFF HARDIN LLP
340 S. Main Street, Suite 210
Ann Arbor, MI  48104
Telephone: 734-222-1500
Fax: 734-222-1501
rwierenga@schiffhardin.com
swahl@schiffhardin.com

*Attorneys for Defendants Takata Corporation and
TK Holdings Inc.*


By: /s/ Brian Byrne (w/ consent)
Brian Byrne
Ryan M. Davis
CLEARY GOTTLIEB STEEN & HAMILTON
LLP
2000 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 974-1850
Facsimile: (202) 974-1999
bbyrne@cgsh.com
rmdavis@cgsh.com

By: /s/ Howard B. Iwrey (w/ consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Valeo S.A., Valeo Japan Co., Ltd.,
Valeo Inc., Valeo Electrical Systems, Inc., and
Valeo Climate Control Corp.*

By: /s/ Barry A. Pupkin (w/ consent)
Barry A. Pupkin
Iain R. McPhie
Jeremy W. Dutra
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 457-6315
Barry.Pupkin@squirepb.com
Iain.McPhie@squirepb.com
Jeremy.Dutra@squirepb.com

*Counsel for Aisan Industry Co., Ltd., Aisan
Corporation of America and Franklin Precision
Industry, Inc.*

By: /s/ Franklin R. Liss (w/ consent)
Franklin R. Liss
Barbara H. Wootton
Tiana L. Russell
Danielle M. Garten
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Tel: (202) 942-5969
Fax: (202) 942-5999
frank.liss@aporter.com
barbara.wootton@aporter.com
tiana.russell@aporter.com

danielle.garten@aporter.com

Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendants Koito Manufacturing Co.,
Ltd. and North American Lighting, Inc.*

By: /s/ Marguerite M. Sullivan (w/ consent)
Marguerite M. Sullivan
Lawrence E. Buterman
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Fax: (202) 637-2201
Marguerite.Sullivan@lw.com
Lawrence.Buterman@lw.com

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-0600
Fax: (415) 395-8095
dan.wall@lw.com

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060
bhorton@gmhlaw.com

*Attorneys for Defendants Sumitomo Electric
Industries, Ltd.; Sumitomo Wiring Systems, Ltd.;
Sumitomo Electric Wiring Systems, Inc.; K&S
Wiring Systems, Inc.; and Sumitomo Wiring Systems
(U.S.A.) Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2015, I, D. Jane Cooper, electronically caused to be filed the foregoing Certain Defendants' Objections to, and Motion to Modify, Master Esshaki's June 18, 2015 Order, and the Memorandum In Support thereof, with the Clerk of the Court using the ECF system which will send notification of such filing to the ECF participants.

Dated:  June 19, 2015                      By:  _____
                                                D. Jane Cooper

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In re: All Auto Parts Cases | |
| THIS DOCUMENT RELATES TO:<br>All Auto Parts Cases | 2:12-md-02311-MOB-MKM |

**[PROPOSED] ORDER MODIFYING MASTER ESSHAKI'S JUNE 18, 2015 ORDER**

WHEREAS the Court has reviewed Certain Defendants' Objections To, And Motion To Modify, Master Esshaki's June 18, 2015 Order (the "June 18 Order") and Plaintiffs' response, and rules as follows:

1.      Paragraphs 1.C and 1.E of the June 18 Order are hereby modified as follows: Defendants in all cases in *In re Automotive Parts Antitrust Litigation* collectively may take no more than three (3) depositions under Fed. R. Civ. P. 30(b)(1) and eighteen (18) hours of deposition testimony under Fed. R. Civ. P. 30(b)(6) of each Auto Dealer Plaintiff.

2.      Paragraph 1.B of the June 18 Order is hereby modified as follows: Each deposition of an End Payor Plaintiff shall not exceed fourteen (14) hours in length.

3.      Paragraph 2 of the June 18 Order is hereby vacated.

4.      Paragraph 4 of the June 18 Order is hereby modified to eliminate the requirement that "Not more than three defense counsel may examine each End Payor Plaintiff and Auto Dealer Plaintiff witness absent good cause."

5.      The parties shall submit for entry by the Court an Amended End Payor Plaintiff and Auto Dealer Plaintiff Deposition Protocol consistent with this Order.

IT IS SO ORDERED.

Date: _____          _____
                                Marianne O. Battani
                                United States District Judge