# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 2:12-md-02311 : Honorable Marianne O. Battani : Master Gene J. Esshaki |
| ALL PARTS CASES IN RE WIRE HARNESS CASES | : 2:12-md-02311-MOB-MKM : 2:12-cv-00100-MOB-MKM |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR CASES | : : : |

## END-PAYOR PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS AND WIRE HARNESS DEFENDANTS' OBJECTIONS TO, AND MOTIONS TO MODIFY, MASTER ESSHAKI'S JUNE 18, 2015 ORDER

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the Court should disturb the decisions made by the Special Master after extensive and protracted negotiation, briefing, and multiple hearings, including hearings with this Court.

2. Whether the Court should vacate the Special Master's order that each deposition of an End-Payor Plaintiff shall not exceed seven hours in length, absent a showing of good cause, by instead requiring that all End-Payor Plaintiffs provide *14 hours* of testimony about purchasing or leasing automobiles—even though no percipient defense witnesses, even those who pled guilty and went to prison, are required to provide testimony for more than seven hours in English or 13 hours in a foreign language.

3. Whether the Court should vacate the Special Master's order that, in advance of each deposition of an End-Payor Plaintiff, Defendants collectively shall serve an outline that identifies the general topics on which Defendants reasonably and in good faith expect to examine the witness, absent a showing of good cause.

4. Whether the Court should vacate the Special Master's order that no more than three defense counsel may examine each End-Payor Plaintiff, absent a showing of good cause.

## **MOST APPROPRIATE AUTHORITIES FOR THE RELIEF SOUGHT**

Fed. R. Civ. P. 1

Fed. R. Civ. P. 30

28 U.S.C. § 1407

*Bush v. Dictaphone Corp.*, 161 F.3d 363 (6th Cir. 1998)

*Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 Fed. App'x. 656 (6th Cir. 2009)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  STANDARD OF REVIEW ................................................................................. 3

III. ARGUMENT ...................................................................................................... 3

    1.   The Special Master ruled that seven hours of deposition testimony from each End-Payor Plaintiff is sufficient. ................................................................. 3

        a.   Defendants are not prejudiced by the durational limit on examination because seven hours is adequate given that they already possess most of the information that they will be seeking in depositions. ........................... 4

        b.   The Court acknowledged that automotive parts-specific questions would be unnecessary. ................................................................................... 5

        c.   Fourteen hours of deposition testimony from each End-Payor Plaintiff are unnecessary and burdensome ..................................................................... 6

        d.   Defendants can examine each End-Payor Plaintiff on injury and damages and key class certification issues in seven hours. ...................................... 7

        e.   Defendants can move the Special Master to expand the length of certain End-Payor Plaintiff depositions for good cause.......................................... 8

    2.   Limiting the number of defense counsel that may examine each End-Payor Plaintiff is not prejudicial to Defendants. ................................................... 9

    3.   Ordering Defendants to serve their examination topics on End-Payor Plaintiffs in advance of his or her deposition is advantageous to all parties. .......................... 12

    4.   Defendants' allegedly undermined rights are exaggerated. .................................. 14

III. CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bush v. Dictaphone Corp.,*
   161 F.3d 363 (6th Cir. 1998) ............................................................................. 3, 5, 6

*Dow Chemical Co. v. Reinhard,*
   2008 U.S. Dist. LEXIS 30044 (E.D. Mich. Apr. 14, 2008) ..................................... 16

*Goldberg v. Kelly,*
   397 U.S. 254 (1970) .............................................................................................. 15

*Hickman v. Taylor,*
   329 U.S. 429 (1947) .............................................................................................. 16

*In re Cathode Ray Tube ("CRT") Antitrust Litigation,*
   Case No. 3:07-cv-05944-SC ................................................................................. 12

*In re Horvath,*
   2015 Bankr. LEXIS 1551 (Bankr. N.D. Ohio May 7, 2015) ................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
   Case No. 07-md-1827-SI, ECF No. 1546 (N.D. Cal. Feb. 17, 2010) ...................... 11

*Lewis v. ACB Bus. Servs., Inc.,*
   135 F.3d 389 (6th Cir. 1998) ................................................................................... 3

*Medison Am., Inc. v. Preferred Med. Sys., LLC,*
   357 F. App'x 656 (6th Cir. 2009) ......................................................................... 3, 4

*Pearce v. Chrysler Grp., L.L.C. Pension Plan,*
   2015 U.S. App. LEXIS 10407 (6th Cir. 2015) ......................................................... 3

*Shoen v. Shoen,*
   5 F.3d 1289 (9th Cir. 1993) .................................................................................... 15

*Taylor v. Sturgell,*
   553 U.S. 880 (2008) .............................................................................................. 15

*U.S. v. Bryan,*
   339 U.S. 323 (1950) .............................................................................................. 15

**Statutes**

28 U.S.C.

   § 1407 ..................................................................................................................... 8

   § 1407(a) ................................................................................................................ 8

**Rules**

Federal Rule of Civil Procedure

Rule 30 ........................................................................................................................ 4

Rule 30(b)(1) .................................................................................................... 1, 12, 13

Rule 30(b)(6) ........................................................................................................ 1, 14

Rule 53(f)(5) ............................................................................................................... 3

## I.     INTRODUCTION

End-Payor Plaintiffs respectfully submit this Opposition to both Certain Defendants' Objections to, and Motion to Modify, Master Esshaki's June 18, 2015 Order (Master File No. 2:12-md-02311, ECF No. 1009) ("Certain Defs.' Mot.") and Wire Harness Defendants' Objections to, and Motion to Modify, Master Esshaki's June 18, 2015 Order (Master File No. 2:12-md-02311, ECF No. 1010) ("Wire Harness Defs.' Mot.") (together, "Motions"). As the issues and arguments in Certain Defendants' Motion completely subsume those in the Wire Harness Defendants' Motion, End-Payor Plaintiffs will respond to both Motions in this Opposition.

There are four distinct issues between the two Motions. The first issue in both Motions—the number of depositions per Federal Rule of Civil Procedure ("Rule") 30(b)(1) and the duration of depositions per Rule 30(b)(6)—exclusively relate to Auto Dealer Plaintiffs. End-Payor Plaintiffs will therefore only respond to the other three issues in this Opposition: (1) the duration of each End-Payor Plaintiff deposition; (2) Defendants' service of an outline of examination topics in advance of each End-Payor Plaintiff deposition; and (3) the number of defense counsel that may examine each End-Payor Plaintiff.

The parties have negotiated the deposition protocols for almost a year and a half, and the negotiations have been very complex. The Special Master held multiple telephonic and in-person hearings before making his final rulings. The Special Master decided the issues now in dispute at the May 6, 2015 post-status conference hearing and on the May 26, 2015 telephonic hearing after all parties participated and presented their positions to him. The Special Master memorialized his rulings in his June 18, 2015 Order (Master File No. 2:12-md-02311, ECF No. 1005) ("Order"). He ordered that, absent a showing of good cause, (1)

1

each End-Payor Plaintiff deposition shall not exceed seven hours in length (*Id.* at ¶ 1(B)); (2) Defendants collectively shall serve an outline of general topics on which they reasonably and in good faith expect to examine an End-Payor Plaintiff in advance of his or her deposition (*Id.* at ¶ 2); and (3) not more than three defense counsel may examine each End-Payor Plaintiff (*Id.* at ¶ 4).

The Wire Harness Defendants now attack the Special Master, arguing that his rulings were based on a "mistaken" belief, "mistaken interpretation," "mistaken understanding," and "misunderstanding" of the Court's statements at the January 28, 2015 status conference (*see*, *e.g.*, Wire Harness Defs.' Mot. at 2, 3, 8, 23). These words collectively appear no less than 13 times in the Wire Harness Defendants' Motion. Likewise, Certain Defendants contend the Special Master's rulings were based on an "erroneous premise" in their Motion (Certain Defs.' Mot. at 1). On the contrary, the Special Master's rulings were based on his experience, the unique issues before him in this litigation, the parties' briefing and oral arguments, and the proper application of his discretion—not misunderstanding or error. The Court had empowered the Special Master to "assist in the resolution of any discovery disputes that arise in connection with" the *In re Automotive Parts Antitrust Litigation* [*see* Order Appointing a Master (Master File No. 2:12-md-02311, ECF No. 792)]—which includes the above-referenced deposition disputes—and the Special Master used this discretion when he ruled on them.

For the reasons set forth herein, Plaintiffs respectfully request that the Court overrule Certain Defendants and Wire Harness Defendants' objections to, and deny their motions to modify, the Special Master's June 15, 2015 Order. The parties have extensively negotiated

the End-Payor and Auto Dealer depositions for 17 months, and the Court should not permit Defendants to continue to delay the start of depositions in this litigation.

## II.    STANDARD OF REVIEW

The Special Master's rulings in his June 18, 2015 Order regarding End-Payor and Auto Dealer Plaintiff depositions constitute procedural matters. This Court reviews procedural matters for abuse of discretion per Rule 53(f)(5). Fed. R. Civ. P. 53(f)(5). The scope of discovery is within the broad discretion of the trial court. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). An order denying further discovery is grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice. *Pearce v. Chrysler Grp., L.L.C. Pension Plan*, 2015 U.S. App. LEXIS 10407, *20 (6th Cir. 2015). Discovery limits are not an abuse of discretion when they balance the right to discovery with the need to prevent "fishing expeditions." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) ("*Bush*"). A party must offer evidence that it was prejudiced if it seeks to reverse an order limiting discovery. *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 660-61 (6th Cir. 2009) ("*Medison Am.*").

## III.   ARGUMENT

1.    **The Special Master ruled that seven hours of deposition testimony from each End-Payor Plaintiff is sufficient.**

The Special Master's June 15, 2015 Order provides: "Each deposition of an End Payor Plaintiff shall not exceed seven (7) hours." Order at ¶ 1(b). Although the Court did not explicitly offer guidance on the temporal scope of each End-Payor Plaintiff deposition, the Court repeatedly stated that each End-Payor Plaintiff should be subject to only one deposition:

> . . . I have been thinking about this deposition protocol . . . let me put my two cents' worth in here. . . . do you take a deposition of each plaintiff in each part? That's impossible, that is not going to happen. First of all, certainly end payers and, unless somebody could convince me otherwise, auto dealers don't buy cars by parts, they buy the car. Certainly your end payers probably don't even know these parts exist

3

> in their cars. . . . I would assume what you want to know is about how much they paid for the car and where they purchased the car, that type of thing. And I would also assume that that's true for every defendant would want this basic information and that this can all be done in one deposition of a named plaintiff.

Jan. 28, 2015 Hrg. Tr. 23:23-24, 24:1, 24:4-15 (Master File No. 12-md-02311, ECF No. 892). One deposition means seven hours under the Rules. The Rules provide for a "presumptive durational limitation of one day of seven hours for any deposition." *See* Fed. R. Civ. P. 30 Committee Notes on Rules—2000 Amendment. End-Payor Plaintiffs are consumers who bought automobile(s) during the relevant period and should not be subject to abuse by Defendants seeking to question them about topics for which they have no knowledge, unconstrained by reasonable temporal limits.

In light of the Court's statements on the scope of End-Payor Plaintiffs' testimony—their automobile purchases and leases—the Special Master used his discretion to rule for the presumptive durational limitation of seven hours: ". . . ***14 hours for a buyer of a car is excessive, 7 is going to be the max. That wasn't an invitation to negotiate.***" May 6, 2015 Hrg. Tr. 35:11-13 (Master File No. 12-md-02311, ECF No. 965) (emphasis added). The Special Master decided 14 hours was unnecessary for ". . . the auto-dealer plaintiffs and the end-payor plaintiffs because all they did was buy and sell and buy an automobile[.]" *Id.* at 22:20-22. The Special Master's ruling is consistent with the Sixth Circuit's holding in *Medison Am.* that a district court did not abuse its discretion in entering a protective order quashing a subpoena for one deposition and limiting the scope of two others to limit discovery to relevant issues to the case. *Medison Am.*, 357 Fed. App'x. at 660.

          a.      **<u>Defendants are not prejudiced by the durational limit on examination because seven hours is adequate given that they already possess most of the information that they will be seeking in depositions.</u>**

The durational limit on examination will not substantially prejudice Defendants. End-Payor Plaintiffs have produced to Defendants ***all non-objectionable, responsive documents in his***

4

*or her possession, custody, or control* concerning their purchases and leases of automobiles over a 14-year period. Where End-Payor Plaintiffs do not have documents reflecting their purchases or leases, they have provided Defendants with written responses detailing, to the best of their recollection, the specifics of each purchase or lease. To the extent that Defendants require additional documents reflecting End-Payor Plaintiffs' purchases, Defendants may serve subpoenas on automobile dealers that sold or leased automobiles to End-Payor Plaintiffs, which will provide Defendants with all the information they seek. In fact, Defendants have already served such subpoenas on a number of automobile dealers and received much of the relevant information.

### b.   <u>The Court acknowledged that automotive parts-specific questions would be unnecessary.</u>

Contrary to Certain Defendants' representation that they "need to ask questions that are specific to certain parts at issue in particular cases" (Certain Defs.' Mot. at 16), the Court recognized that this line of questioning would be unwarranted: "First of all, certainly end payers and, unless somebody could convince me otherwise, auto dealers don't buy cars by parts, they buy the car. *Certainly your end payers probably don't even know these parts exist in their cars.*" Jan. 28, 2015 Hrg. Tr. at 24:4-9 (emphasis added). The Court's statements are in harmony with the Sixth Circuit's holding in *Bush* that discovery limits are not substantially prejudicial when they limit depositions of witnesses who may have limited knowledge regarding the cause of action. *Bush*, 161 F.3d at 367. There, the Sixth Circuit ruled that the district court did not abuse its discretion in limiting the scope of plaintiff's depositions of two of defendant's employees when the record in the case did not contain direct evidence that the deponents were involved in plaintiff's contested termination. *Id.* Limiting depositions of parties who may not have extensive relevant information on the cause of action serves to balance a party's right to discovery with "the need to prevent 'fishing expeditions.'" *Id.*

To the extent that Defendants must "develop facts relevant to the particular parts at issues in their individual cases" (Certain Defs.' Mot. at 16), Defendants may do so during each seven-hour deposition of an End-Payor Plaintiff. Most of the automotive parts that are the subject of this litigation are installed in all automobiles as a necessity (*e.g.*, wire harness systems, instrument panel clusters, fuel senders). Few automotive parts were options or subject to choice, and Defendants do not require an additional seven hours to examine an End-Payor Plaintiff on why he or she opted for power window motors over manual windows, or chose projector headlamps over reflector optics headlamps. The allotted time is already more than adequate for that purpose.

### c.  **Fourteen hours of deposition testimony from each End-Payor Plaintiff are unnecessary and burdensome.**

Defendants' claim that "a second day of deposition will not impose an unreasonable burden" on End-Payor Plaintiffs is simply incredible (Certain Defs.' Mot. at 18). Being examined for one day for seven hours is already burdensome given that each End-Payor Plaintiff has family, work, and a life outside of this litigation. Additionally, all End-Payor Plaintiffs have already produced to Defendants all non-objectionable, responsive documents in their possession, custody, or control to Defendants. Contrary to the arguments made by Defendants, having an appropriate time limit for the End-Payor depositions in no way suggests that they are anything other than adequate class representatives fulfilling their duty to the class. In this case, where many Defendants are convicted felons and others are leniency applicants, all of whom are behind a conspiracy that according to the U.S. Department of Justice caused extensive damage to American consumers, the End-Payor class representatives are fulfilling their obligations in not agreeing to wasteful and harassing depositions. The irony is rich in these Defendants, who would not agree to provide 14 hours of testimony for their own witnesses ***when an interpreter is necessary, doubling the time needed for examination***—arguing that they need more time than that to examine End-Payor

Plaintiffs in English. It is, on its face, an outrageous and absurd argument. Further, the fact that counsel for End-Payor Plaintiffs may seek, and the Court may order, service payments for the End-Payor class representatives at some future time does not justify the wasteful and harassing depositions proposed by Defendants.

> ### d.   Defendants can examine each End-Payor Plaintiff on injury and damages and key class certification issues in seven hours.

Given that Defendants already possess all End-Payor Plaintiffs' non-objectionable, responsive documents in their possession, custody, or control—and that Defendants are in the process of obtaining the same from automobile dealers from whom End-Payor Plaintiffs purchased or leased their automobiles—Defendants have or will have all of what they will be seeking in End-Payor Plaintiff depositions related to automobile purchases and leases. There is no logical explanation for the need to take 14 hours asking End-Payor Plaintiffs about these purchases and leases. Indeed, for a rational person, it is impossible to imagine—and frightening to consider— spending 14 hours under oath by being cross-examined by skilled defense counsel about purchasing an automobile. Such is the stuff that nightmares are made of, and there is no need for it in this litigation. The presumptive seven hours to examine each End-Payor Plaintiff on injury and damages, as well as class certification issues, are more than adequate.

The Judicial Panel of Multidistrict Litigation transferred *In re Wire Harness*, *In re Instrument Panel Clusters*, *In re Fuel Senders*, and *In re Heater Control Panels* to the Eastern District of Michigan for consolidated or coordinated proceedings under the caption *In re Automotive Parts Antitrust Litigation*, M.D.L. No. 2311, and assigned them to the Hon. Marianne O. Battani for the "convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Later filed complaints alleging bid-rigging and price-fixing of other automotive parts are now part of *In re Automotive Parts Antitrust Litigation*.

The cases in this litigation have been coordinated and consolidated for pretrial proceedings before Judge Battani for good reason. A limit of seven hours for each End-Payor Plaintiff deposition furthers the "just and efficient conduct" of all 30 automotive parts cases in this litigation per 28 U.S.C. § 1407 and the "just, speedy, and inexpensive determination of every action and proceeding" per Rule 1. It would be extremely unfair for Defendants to depose each End-Payor Plaintiff for 14 hours over two days on their injury and damages and class certification issues given that their responses will be the same for each automotive parts case.

Finally, Defendants' objections include declarations concerning what they claim will be topics to be addressed at class certification. End-Payor Plaintiffs do not agree that all of these topics are appropriate and believe that Defendants are wrong about many of these topics. End-Payor Plaintiffs will reserve their arguments on those points, however, for the appropriate time. At present, it is sufficient to say that even if Defendants were correct on these points, the Special Master's ruling still provides more than ample time for this examination.

**e.**     **Defendants can move the Special Master to expand the length of certain End-Payor Plaintiff depositions for good cause.**

Even in those instances where End-Payor Plaintiffs purchased or leased multiple automobiles during the relevant period, seven hours of deposition time is more than sufficient. If a Defendant believes, however, that "extensive lines of questioning . . . about the nature and details of the acquisition" are necessary as a result, that Defendant has the opportunity to make a "showing of good cause" for more time or for a second deposition under the Order. Order at ¶ 1. As the Court recognized, "Granted there may be something that comes up that would require an extra deposition, I don't know what that could be, you would know that, and we would deal with that[.]"Jan. 28, 2015 Hrg. Tr. at 26:4-7. The Court should not extend the duration of End-Payor Plaintiff depositions across the board before Defendants show good cause.

8

**2.      Limiting the number of defense counsel that may examine each End-Payor Plaintiff is not prejudicial to Defendants.**

The Special Master's June 15, 2015 Order provides: "Not more than three defense counsel may examine each End Payor Plaintiff and Auto Dealer Plaintiff witness absent good cause." Order at ¶ 4. Limiting three defense counsel to examining each End-Payor Plaintiff is not prejudicial to Defendants because, as the Court commented, "*[E]very one of these defendants knows right now what information they want from each person.*" Jan. 28, 2015 Hrg. Tr. at 28:17-18 (emphasis added). Furthermore, Defendants are obligated to "use their best efforts to coordinate in advance of the depositions so as to avoid duplicative questioning" per the Order. Order at ¶ 4. They must simply "designate who's going to be conducting the examination." Jan. 28, 2015 Hrg. Tr. at 34:14-15.

The relevant provision is based on the Special Master's ruling that "with respect to who can examine, I'm going to permit more than one attorney to examine but no more than three for defendants." May 26, 2015 Hrg. Tr. 7:7-9 (Master File No. 12-md-02311, ECF No. 982). This ruling is consistent with the Court's statement that "we need to know what's the template, what's the template of the questions that are going to be asked, and *who amongst the defendants -- which groups are going to actually be taking the depositions.*" Jan. 28, 2015 Hrg. Tr. 33:5-8 (emphasis added). The Special Master appropriately exercised his discretion to limit the number of defense counsel that may examine each End-Payor Plaintiff given that there are *50 Defendant groups* across 30 automotive parts cases. Although this restriction may be "unprecedented in antitrust MDLs" (Certain Defs.' Mot. at 19), it is not unwarranted in this massive litigation where "what [Defendants] want to know is about how much [End-Payor Plaintiffs] paid for the car and where they purchased the car . . . every defendant would want this basic information." Jan. 28, 2015 Hrg. Tr. at 24:11-14.

9

Defendants' argument that the "potential for irreconcilable conflicts among Defendants" based on the "unique issues of each product case" resulting from examining counsel "preparing for and taking testimony on products and issues that have no relevance to their own client" is a non sequitur (Certain Defs.' Mot. at 20). End-Payor Plaintiffs purchased or leased automobiles— not automotive parts—and Defendants would be wasting the parties' time and their clients' money by examining End-Payor Plaintiffs on, for example, anti-vibration rubber parts and "meaningful differences between the thirty parts cases" (*Id.*). As the Court reasoned, "[D]o you take a deposition of each plaintiff in each part? That's impossible, that is not going to happen. First of all, certainly end payers and, unless somebody could convince me otherwise, auto dealers don't buy cars by parts, they buy the car. ***Certainly your end payers probably don't even know these parts exist in their cars.***" Jan. 28, 2015 Hrg. Tr. at 24:4-9 (emphasis added).

Defendants further contend that some counsel are better positioned to examine a witness than others because they have more expertise on case-specific topics "like competitors, OEMs, or the parts at issue" (Certain Defs.' Mot. at 20). While this may be true, it is of no import because End-Payor Plaintiffs simply lack information on these topics. End-Payor Plaintiffs can testify to their automobile purchases and leases, the automobile dealers from whom they made such purchases and leases, and the details about the transactions to the best of their recollection, but Defendants cannot expect them to provide evidence about the global workings of multiple automotive parts conspiracies—End-Payor Plaintiffs retain and rely on counsel for this very reason.

If circumstances arise where Defendants "believe that issues critical to their case were not adequately covered at the deposition" (*id.*), it is likely because Defendants have failed to "use their best efforts to coordinate" as the Court instructed. Order at ¶ 4. Allowing counsel for each of the

50 Defendant groups to conduct a separate examination of each End-payor Plaintiff would be contrary to the Court's ruling. Defendant groups across this litigation have in-person meetings to organize their defense strategy, and they can do the same to organize plaintiff depositions. If a Defendant truly believes follow-up questions for an End-Payor plaintiff are necessary post-deposition, the Defendant can make a showing of good cause for more time or a second deposition under the Order. Order at ¶ 1. As the Court recognized, "Granted there may be something that comes up that would require an extra deposition, I don't know what that could be, you would know that, and we would deal with that[.]"Jan. 28, 2015 Hrg. Tr. at 26:4-7.

Defendants' reliance on *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. 07-md-1827-SI, ECF No. 1546 (N.D. Cal. Feb. 17, 2010) is misplaced. In *Flat Panel*, there were 10 defendant groups[1], and the affected product was a major component in flat-panel computer monitors, notebook computers, and flat-screen televisions[2]. The defendants could therefore reasonably expect plaintiffs to testify about the flat panel products they purchased. Here, there are five times as many defendant groups, and the affected products are a handful of the parts in a single automobile. Moreover, the absence of a restriction on the number of examining defense counsel in *Flat Panel* does not imply that such a restriction would have been inappropriate and prejudicial there, given that in practice no more than three defense counsel ever examined a plaintiff despite the fact that different plaintiffs purchased different products made by different defendants.

Similarly, in *In re Cathode Ray Tube ("CRT") Antitrust Litigation*, Case No. 3:07-cv-05944-SC, no more than two counsel from one defendant group examined class representatives at

---

[1]  *Defendants and Settlement Amounts*, LCD INDIRECT PURCHASER LITIGATION AND SETTLEMENTS, https://lcdclass.com/mainpage/DefendantsandSettlementAmounts.aspx (last visited Jun 26, 2015).
[2]  *See*, *e.g.*, Au *Optronics Corporation Executive Sentenced for Role in LCD Price-Fixing Conspiracy*, U.S. Department of Justice, http://www.justice.gov/opa/pr/au-optronics-corporation-executive-sentenced-role-lcd-price-fixing-conspiracy (last visited Jun 26, 2015).

depositions even though they purchased different defendants' products over a protracted time period. Defense counsel in that case did not believe it necessary to have different counsel examine the class representatives. Here, the Special Master has the discretion to limit the number of examining defense counsel, and the limit of three defense counsel is justifiable given the nature of the litigation and the need to streamline plaintiff depositions.

### 3.   Ordering Defendants to serve their examination topics on End-Payor Plaintiffs in advance of his or her deposition is advantageous to all parties.

The Special Master's June 15, 2015 Order states: "In advance of a Rule 30(b)(1) deposition of each Auto Dealer Plaintiff and End Payor Plaintiff, Defendants collectively shall serve an outline that identifies the general topics on which the Defendants reasonably and in good faith expect to examine the witness." Order at ¶ 2. Although the Rules do not call for Defendants to provide this outline of examination topics in advance of Rule 30(b)(1) depositions (Wire Harness Defs.' Mot. at 24), *the Rules do not preclude the Special Master from imposing this requirement either*.

This Court indicated that "this case has to move along with a little more swiftness . . . if we have to innovate we will be innovative[.]" Jan. 28, 2015 Hrg. Tr. 24:18-21. Based on the Court's statements at the January 28, 2015 status conference, the Special Master interpreted that the Court provided a "direct instruction that there will be one dep of each end payer or whoever it may be and it is going to cover all the parts so that the *defendants need to get together*, *they need to come up with a template of what the deposition outline is going to look like, all of the parts the defendants will have input into that, and if they have particular questions they can add those questions*[.]" Jan. 28, 2015 Hrg. Tr. 34:7-14(emphasis added). The Special Master explained that the outline of examination topics serves to "notify[] the plaintiffs in advance these are the areas [Defendants] intend to cover." May 26, 2015 Hrg. Tr. 25:16-17. This notice benefits all parties

12

because "it will help to streamline the witnesses' examinations." *Id.* at 14:9-10. End-Payor Plaintiffs will more likely be sufficiently prepared to answer questions on these topics, and Defendants will be more likely to elicit relevant facts and evidence as a result.

In looking at the Rules, Defendants contend the lack of "apparent rationale" for this outline because Defendants will be examining the End-Payor Plaintiffs pursuant to Rule 30(b)(1). Defendants overlook, however, the Court's rationale for a template: ". . . I want you to have the opportunity to ask, you know, to get the information you need and at the same time only do a single deposition of most of these named plaintiffs." Jan. 28, 2015 Hrg. Tr. 26:1-4. The Special Master applied this rationale in stating: "[T]he basic information needed across the board should be the same whether it is for wire harness parts or it is for control panels, such that *an outline of questions could and should be prepared for all parts, for all defendants, to be asked of the end-payors and the automobile dealers*." May 6, 2015 Hrg. Tr. 5:15-20.

Potential disputes between defense counsel about topics and questions are best resolved by "us[ing] their best efforts to coordinate[.]" Order at ¶ 4. Furthermore, Defendants' concern that serving an "outline that identifies the general topics" would reveal their "deposition plans and strategy" and "protected work product" (Certain Defs.' Mot. at 22) is unfounded. This outline is no different than the permissible notice or subpoena directed to an organization that "describe[s] with reasonable particularity the matters for examination" per Rule 30(b)(6). Fed. R. Civ. P. 30(b)(6). The Special Master exercised his discretion and made this ruling "to "streamline the process so that there will be some advance notice to the witness especially[.]" May 26, 2015 Hrg. Tr. 14:2-3.

Certain Defendants' citation to a bankruptcy court opinion from the Northern District of Ohio is inapposite because in that case, one party was seeking the legal theories of another party's

attorney, which implicates the work product doctrine (Certain Defs.' Mot. at 22). *In re Horvath*, 2015 Bankr. LEXIS 1551, *20 (Bankr. N.D. Ohio May 7, 2015). Here, the Special Master clarified that Defendants are to provide an ***outline of examination topics***, much like Rule (30)(b)(6) topics, which do not implicate the work product doctrine: "[P]rovide areas that would be subject to examination, an outline, ***not questions***, we are going to examine the witness in this area and in this area and in this area but ***not specific questions***." May 26, 2015 Hrg. Tr. 11:6-9 (emphasis added). Similarly, Wire Harness Defendants' concern that the Special Master's ruling prejudices their "ability to obtain spontaneous, non-coached responses" is unsupported because having an outline of examination topics is not synonymous with an "opportunity to study the questions in advance and to consult with counsel before answering" (Wire Harness Defs.' Mot. at 24).

Defendants' suggestion that they will "receive responses created in advance by Plaintiffs' counsel" by serving the outline is without merit (Certain Defs.' Mot. at 23). End-Payor Plaintiffs can testify to their own automobile purchases and leases; their counsel cannot and will not change the facts surrounding these transactions.

### 4.    **Defendants' allegedly undermined rights are exaggerated.**

Despite Defendants' allegations that the Special Master's June 18, 2015 Order undermines their due process rights and discovery principles under the Rules and federal common law, Defendants fail to show that the Order will deprive them of a "full and fair opportunity to litigate" their case per *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The Order does not strip Defendants of "an opportunity to confront and cross-examine adverse witnesses" pursuant to *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). In fact, Defendants may obtain up to 413 hours of deposition testimony in total from the 59 End-Payor Plaintiffs pursuant to the Order. Defendants therefore have seven hours to examine each End-Payor Plaintiff about "***how much they paid for the car and***

***where they purchased the car.***" Jan. 28, 2015 Hrg. Tr. 24:11-12 (emphasis added). The Court remarked, "[E]very one of these defendants knows right now what information they want from each person." *Id.* at 28: 17-18.

Defendants suggest that the Order denies them of their right to "every man's evidence" and "wide access to relevant facts" per *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) and *U.S. v. Bryan*, 339 U.S. 323, 331 (1950). This ignores the reality that each End-Payor Plaintiff has produced all non-objectionable, responsive documents in his or her possession, custody, or control regarding their automobile purchases and leases over a 14-year period. Naturally, certain End-Payor Plaintiffs have not maintained all documents and/or do not have a perfect recollection regarding their automobile purchases and leases over the years. These End-Payor Plaintiffs are individuals who, unlike the largest automotive parts suppliers in the world, lack sophisticated document preservation systems. Where certain End-Payor Plaintiffs lack documents reflecting their automobile purchases or leases, they have provided Defendants with information reflecting those purchases and leases.

For each Relevant Automobile, Defendants therefore have or can obtain information regarding the automobile, automobile dealership, purchase or lease, price, and if applicable, trade-in and credit. Defendants therefore have or will soon obtain much of what they need from End-Payor Plaintiffs to prepare or present their case—and they have the ability take up to 413 hours of deposition testimony in total from End-Payor Plaintiffs.

Defendants' citations to *Hickman v. Taylor* and *Dow Chemical Co. v. Reinhard* are unremarkable. *Hickman v. Taylor* describes depositions as significant (329 U.S. 429, 500-01 (1947)), and *Dow Chemical Co. v. Reinhard* found that courts have discretion to extend depositions beyond the presumptive limitation of seven hours (2008 U.S. Dist. LEXIS 30044, *11 (E.D. Mich.

Apr. 14, 2008)). None of the cases to which Defendants have cited support their claim that the Order undermined their due process rights and overarching discovery principles. Defendants maintain their rights to obtain evidence on standing, class certification, injury, and damages. Some of the Special Master's rulings may be unprecedented, but a litigation of this magnitude is unprecedented, and ". . . if we have to [be] innovative we will be innovative[.]" Jan. 28, 2015 Hrg. Tr. 24:20-21.

## III.    CONCLUSION

For the foregoing reasons, End-Payor Plaintiffs respectfully request that the Court overrule Defendants' objections to, and deny Defendants' motions to modify, the Special Master's June 18, 2015 Order. The Special Master did not abuse his discretion by (1) limiting each End-Payor Plaintiff deposition to seven hours; (2) ordering Defendants to collectively serve examination topics on each End-Payor Plaintiff in advance of his or her deposition; and (3) restricting three defense counsel to examine each End-Payor Plaintiff. Defendants may seek to modify these rulings on an End-Payor Plaintiff-specific basis for good cause shown.

Date: June 29, 2015                              Respectfully submitted,

                                                 */s/ Steven N. Williams*
                                                 Steven N. Williams
                                                 Adam J. Zapala
                                                 Elizabeth Tran
                                                 **COTCHETT, PITRE & McCARTHY, LLP**
                                                 San Francisco Airport Office Center
                                                 840 Malcolm Road, Suite 200
                                                 Burlingame, CA 94010
                                                 Telephone: (650) 697-6000
                                                 Facsimile: (650) 697-0577
                                                 swilliams@cpmlegal.com
                                                 azapala@cpmlegal.com
                                                 etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C**.
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com

17

*Interim Liaison Class Counsel for the Proposed*
*End-Payor Plaintiff Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2015, I caused the foregoing END-PAYOR PLAINTIFFS'

OPPOSITION TO CERTAIN DEFENDANTS AND WIRE HARNESS DEFENDANTS'

OBJECTIONS TO, AND MOTIONS TO MODIFY, MASTER ESSHAKI'S JUNE 18, 2015

ORDER to be electronically filed with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to all counsel of record.

*/s/ Steven N. Williams*
Steven N. Williams
