REDACTED

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : |
| | :   Master File No. 12-md-02311 |
| |    Honorable Marianne O. Battani |
| | : |
| In Re: All Auto Parts Cases | :   2:12-md-02311-MOB-MKM |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| THIS DOCUMENT RELATES TO: | : |
| | : |
| All Auto Parts Cases | |

**AUTOMOBILE DEALER PLAINTIFF BECK MOTORS INC.'S REPLY IN SUPPORT OF ITS RULE 21 MOTION TO BE DROPPED AS A NAMED PLAINTIFF AND PROPOSED CLASS REPRESENTATIVE**

REDACTED

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

   I.     PRODUCING FURTHER DISCOVERY BEYOND THE THOUSANDS OF PAGES
         IT HAS PRODCUED WOULD POSE A SEVERE BURDEN TO BECK .................... 1

   II.    BECK'S SITUATION IS NOT THE SAME AS HOLZHAUER'S AND BECK'S
         MOTION IS NOT GOVERNED BY THE HOLZHAUER DECISION ....................... 3

REDACTED

## TABLE OF MOST APPROPRIATE AUTHORITIES

**Cases**

*Boynton v. Headwaters, Inc.*, No. 1-02-1111-JPM-EGB, 2009 WL 3103161(W.D. Tenn. Jan. 30, 2009) ................................................................................................................... 5

*Doe v. Arizona Hosp. and Healthcare Ass'n*, No. CV 07-1292-PHX-SRB, 2009 U.S. Dist. LEXIS 42871 (D. Arizona March 19, 2009) ............................................................... 1

*In re Urethane Antitrust Litig.,* Case No. 04-MD-1616-JWL-DJW, 2006 WL 8096533 (D. Kan. June 9, 2006)................................................................................................................ 1,5

*Organization of Minority Vendors, Inc. v. Illinois,* Case No. No. 79 C 1512, 1987 WL 8997 (N.D. Ill. April 2, 1987) ............................................................................................... 1

*Roberts v. Electrolux Home Products, Inc.*, 2013 WL 4239050 (C.D. Cal. Aug. 14, 2013).......... 1

REDACTED

# INTRODUCTION

As has been made clear by the weight of the authority from district courts around the country, which caselaw Defendants failed to rebut, discovery from a withdrawing class member is not permissible. *Organization of Minority Vendors, Inc. v. Illinois,* Case No. 79 C 1512, 1987 WL 8997, at * 1 (N.D. Ill. April 2, 1987) (withdrawing class representatives should not be "singled out from other class members for the requested discovery."); *Doe v. Arizona Hosp. and Healthcare Ass'n*, No. CV 07-1292-PHX-SRB, 2009 U.S. Dist. LEXIS 42871, at *52 (D. Arizona March 19, 2009) (relieving withdrawing plaintiff from discovery obligations); *In re Urethane Antitrust Litig.,* Case No. 04-MD-1616-JWL-DJW, 2006 WL 8096533, at *22 (D. Kan. June 9, 2006) (denying request for discovery from withdrawing plaintiff); *Roberts v. Electrolux Home Products, Inc.*, 2013 WL 4239050, at *3 (C.D. Cal. Aug. 14, 2013) (declining to condition withdrawal on plaintiff's submission to discovery).

There is particularly no justification for such discovery from a Plaintiff who has already produced thousands of pages of responsive discovery when the materials Defendants seek have already been produced by other named plaintiffs in the litigation.  *In re Urethane Antitrust Litig.,* Case No. 04-MD-1616-JWL-DJW, 2006 WL 8096533, at *22 (D. Kan. June 9, 2006) ("[t]he information Defendants need regarding class certification issues may be obtained from the remaining class representatives.").  Over forty plaintiffs have now produced forty-five sets of data, and nearly half a million pages of documents, covering thousands of new vehicle purchases and sales.  Any concern that Defendants might not obtain this discovery from active class representatives has now been put to rest and there is no justification to further burden Beck.

## I.     PRODUCING FURTHER DISCOVERY BEYOND THE THOUSANDS OF PAGES IT HAS PRODCUED WOULD POSE A SEVERE BURDEN TO BECK

Beck has already produced thousands of pages of discovery and obviously has not been

REDACTED

trying to avoid its discovery obligations.  The production Beck has already made took up

significant time and resources, requiring discovery vendors and attorneys to be in Beck's

dealership for an extended period of time,  review confidential files, copy, scan and gather

thousands of pages, and create significant disruptions to Beck's business operations.  Beck's

production and previous involvement with the suit were by no means limited, as Defendants try

to suggest—it produced thousands of pages of the requested documents. ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████ Further, as Defendants admit, they already have detailed records of

Beck's purchases—the documents on which Dealerships' claims are based.

To require Beck to submit to a second wave of invasive and burdensome discovery after

it has withdrawn would be particularly unjust.  The additional discovery includes thousands of

pages of documents and data covering sixteen years, in numerous locations in the dealership.

The discovery includes email searches of dealership employees, a complicated data extraction, as

well as financial reports, which will include information about all facets of the dealership that

could seriously injure it if the information were to be revealed outside the dealership.  This

production would require constant help from, and disruptions to, dealership employees, for an

extended period of time.  The information at issue also includes highly sensitive commercial

information of both the dealership and its OEM, and personal non-public consumer information.[1]

---

[1] Defendants say they seek compliance with the May 12 Order and the January 7 Order.  But the
January 7 Order required that data be produced from a cooperating DMS provider.  Beck's DMS
provider, like most DMS providers, never agreed to cooperate and thus never gathered the data at
issue or prepared it for production.  The two main DMS providers filed Motions to Quash.
Defendants then began seeking Plaintiffs' data directly from Plaintiffs.  This issue was resolved
with the May 12 Order, which replaced and superseded the January 7 order. Thus, it makes no
sense for Defendants to request anything further under the January 7 order.

REDACTED

*None* of this data or documents are gathered, or ready for production and Defendants, of course, do not argue that it is. Its production would require Beck to undertake a new round of document and data gathering, copying and review, after it is no longer a class representative.

Further, as stated in Beck's motion, revelation of sensitive commercial information will require Beck to continue expending time and money monitoring the litigation to make certain this information is not misused or improperly revealed. Also, as stated in the motion, Beck may be required to be litigate revelation of personal non-public consumer information. There will additionally be follow-up and inquiries with regard to this information.  All of these factors will combine to make certain that Beck will not be able to completely withdraw from this litigation if it produces the additional requested discovery, and will create a continuing burden for it. Defendants have offered no response to these arguments in their opposition.

These arguments were not made in the opposition to Defendants' motion to deny Holzhauer's withdrawal made in July.

## II.     BECK'S SITUATION IS NOT THE SAME AS HOLZHAUER'S AND BECK'S MOTION IS NOT GOVERNED BY THE HOLZHAUER DECISION

As the Master stated on September 16 "the posture of the two plaintiffs is not identical." *See* Email sent at 6:25 PM on September 16, 2015.  In addition, at the September 24, 2015 hearing, the Master clearly indicated that his ruling on the Holzahauer motion did not mean that future withdrawing plaintiffs would be required to produce further discovery before being permitted to withdraw and indicated that Beck was not in the same position as Holzhauer.

The Master was exactly correct.  Beck has, as stated above, produced thousands of pages containing vast amounts of information, including that at issue in the May 12 Order.

Further, even more importantly, Defendants and the Master expressed concerns, back in early July, that Defendants would not receive the discovery they needed to mount their defenses.

3

REDACTED

Defendants, who had not yet received Plaintiffs' data productions, which were supposed to begin later that month, argued that "[t]o date, notwithstanding repeated attempts, Defendants have obtained very limited Dealer transactional data from any source." Defs' Mot., at 6, Case No. 2:12-cv-00102-MOB-MKM Doc # 316 Filed 07/01/15. The Master also stated in his Revoked Order his concern that all other plaintiffs could potentially withdraw and Defendants would not receive their discovery. Case No., 2:12-cv-00102-MOB-MKM, Doc # 330, at 5, Filed 08/03/15.

These concerns do not apply here. Nearly all Dealerships have remained in the litigation and they have now produced large amounts of documents and data to Defendants to allow them to mount their defenses. Dealerships have now produced 45 sets of data, covering nearly 200 fields, and thousands of new car sales, thus it is of course not the case that "Defendants have obtained very limited Dealer transactional data," as it was at the time of the Holzhauer briefing.

Further, Defendants have received nearly half a million pages of documents which include hundreds of thousands of pages of downstream discovery concerning dealership sales and operations, such as incentives to dealerships and consumers, promotional programs to dealers and consumers, advertisements and dealership financial reports. This is in addition to the hundred categories of documents and data that have been requested from OEMs. Whether Defendants have 45 sets of data or 46 does not affect whether they will be able to build their damage models and whether their economists have sufficient data to perform their analyses (nor do they argue so). Similarly, whether Beck's documents, which are substantially similar to those other dealers have produced, are added to the nearly half a million pages already produced, will not affect Defendants' class certification analysis. Some of Beck's documents will be the same as documents other dealerships have produced ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Because Defendants have the documents they need for class certification arguments, they

REDACTED

are not entitled to obtain documents from Beck, a withdrawing plaintiff, who will become an absent class member. *Urethane Antitrust Litig.*, 2006 WL 8096533, at *22 (denying request for discovery from withdrawing class representative, as "[t]he information Defendants need regarding class certification issues may be obtained from the remaining class representatives."); *Boynton v. Headwaters, Inc.*, No. 1-02-1111-JPM-EGB, 2009 WL 3103161, at *2 (W.D. Tenn. Jan. 30, 2009) (prohibiting discovery on absent class members where defendants could not show the information was not available from named class members). This is especially true for indirect purchaser plaintiffs who will not have any unique information about transactions with Defendants (and Defendants did not cite any cases where indirect purchasers in antitrust cases were required to produce anything before withdrawing). The only reason Defendants would have even potentially need Beck's discovery would be to assess it as a class representative. There is no longer any call to do so. Again, none of the above facts of Plaintiffs' productions had developed at the time when Defendants opposed Holzahauer's notice of withdrawal so they could not have been considered in the Holzhauer opinion.

Further, the Master's Amended ruling held Holzhauer did not properly withdraw from the case, and needed to file a motion to withdraw if it wanted to be considered as a withdrawing plaintiff. Amended Order, at 3, Case no. 2:12-cv-00102-MOB-MKM Doc # 332 Filed 08/03/15. Holzhauer was therefore told to produce discovery, like any plaintiff that was remaining in the case (Defendants had argued in their motion that the "notice is ineffective and a nullity" and "[t]he Court should therefore strike that notice and order Holzhauer to comply with the prior Orders of this Court." ) Defs' Mot., at 4-5, Case No. 2:12-cv-00102-MOB-MKM Doc # 316.

On the other hand, Beck has filed a proper motion to withdraw from the case, and should be treated as the absent class member it will become once that motion is granted.

REDACTED

Date: September 28, 2015.                    Respectfully submitted,


                                             /s/ *Jonathan W. Cuneo*
                                             Jonathan W. Cuneo
                                             Joel Davidow
                                             Daniel Cohen
                                             Victoria Romanenko
                                             **CUNEO GILBERT & LADUCA, LLP**
                                             507 C Street, N.E.
                                             Washington, DC 20002
                                             Telephone: (202) 789-3960
                                             jonc@cuneolaw.com
                                             joel@cuneolaw.com
                                             danielc@cuneolaw.com
                                             vicky@cuneolaw.com

                                             Don Barrett
                                             Brian Herrington
                                             David McMullan, Jr.
                                             **BARRETT LAW GROUP, P.A.**
                                             P.O. Box 927
                                             404 Court Square
                                             Lexington, MS 39095
                                             Telephone:  (662) 834-2488
                                             Facsimile:   (662)834-2628
                                             bherrington@barrettlawgroup.com
                                             dbarrett@barrettlawgroup.com
                                             dmcmullan@barrettlawgroup.com

                                             Shawn M. Raiter
                                             **LARSON · KING, LLP**
                                             2800 Wells Fargo Place
                                             30 East Seventh Street
                                             St. Paul, MN 55101
                                             Telephone:  (651) 312-6500
                                             Facsimile:   (651) 312-6618
                                             sraiter@larsonking.com

                                             ***Interim Co-Lead Class Counsel for Dealership
                                             Plaintiffs***

                                             Gerard V. Mantese (Michigan Bar No. P34424)

REDACTED

**MANTESE HONIGMAN AND WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com

*Interim Liaison Counsel for Dealership Plaintiffs*

REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2015, I filed this document via CM/ECF, which will  provide notice to all counsel of record.

/s/ *Jonathan W. Cuneo*

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com