**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | : : : | 12-MD-02311 Honorable Marianne O. Battani Special Master Gene J. Esshaki |
| **In Re:  All Auto Parts Cases** | : : : | 2:12-MD-02311-MOB-MKM |
| **THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES** | : : | **Oral Argument Requested** |

**NON-OEM DOMESTIC DISTRIBUTORS' OPPOSITION**
**TO THE PARTIES' MOTIONS TO COMPEL DISCOVERY**
**FROM NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

Statement of the Issue ................................................................................................... iii

Preliminary Statement ....................................................................................................1

Statement of Facts ...........................................................................................................2

    A.    The Parties Claim That The Upstream Cost Information They Seek
        Resides Uniquely With OEMs. ......................................................................2

    B.    The Domestic Distributors Do Not Have Possession Or Control Of The
        Upstream Cost Information The Parties Seek. ...............................................3

    C.    Vehicle Pricing And Other Downstream Data The Domestic Distributors
        Possess Would Be Irrelevant Without The Upstream Data, Would Be
        Burdensome to Produce, And Is Extremely Commercially Sensitive. ....................4

Argument ..........................................................................................................................5

I.    THE DOMESTIC DISTRIBUTORS DO NOT POSSESS UPSTREAM
      INFORMATION AND CANNOT BE MADE TO PRODUCE UPSTREAM
      COST INFORMATION IN THE POSSESSION AND CONTROL OF THEIR
      NON-DOMESTIC OEMS. ........................................................................................5

II.    THE VEHICLE PRICING AND LIMITED RANGE OF DOWNSTREAM
      INFORMATION THE DOMESTIC DISTRIBUTORS DO POSSESS WOULD
      NOT BE OF USE TO THE PARTIES. .....................................................................6

III.    THE DOMESTIC DISTRIBUTORS SHOULD NOT BE COMPELLED TO
      PRODUCE EXTREMELY BURDENSOME DOWNSTREAM DOCUMENTS
      AND DATA THAT WOULD BE OF LITTLE OR NO UTILITY TO THE
      PARTIES. ...................................................................................................................7

IV.    THE NON-PARTY DOMESTIC DISTRIBUTORS SHOULD NOT BE MADE
      TO PRODUCE EXTREMELY SENSITIVE VEHICLE PRICING
      INFORMATION, ESPECIALLY IN LIGHT OF THE TRIVIAL "BENEFIT" IT
      MIGHT PROVIDE THE PARTIES. .........................................................................7

Conclusion .......................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Insulate Am. v. Masco Corp.*,
227 F.R.D. 427 (W.D.N.C. 2005) .............................................................8

*Linde v. Arab Bank, PLC*,
262 F.R.D. 136 (E.D.N.Y. 2009) ..............................................................5

*Motorola Credit Corp. v. Uzan*,
No. 02-666, 2003 WL 203011 (S.D.N.Y. Jan. 29, 2003) ........................5

*Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*,
No. 1:05-mc-107, 2005 WL 2045818 (W.D. Mich. Aug. 24, 2005) ........8

*United States v. Int'l Union of Petroleum and Ind. Workers*,
870 F.2d 1450 (9th Cir. 1989) .................................................................6

*Universal Del., Inc. v. Comidata Network, Inc.*,
No. 3:10-mc-00104, 2011 WL 1085180 (M.D. Tenn. Mar. 21, 2011) ....8

*In re Vitamins Antitrust Litig.*,
267 F. Supp. 2d 738 (S.D. Ohio 2003) .....................................................8

*Zenith Elecs. LLC v. Vizio, Inc.*,
No. M8-85, 2009 WL 3094889 (S.D.N.Y Sept. 25, 2009).......................5

## Statement of the Issue

1.      Should the parties filing this brief, all of whom are domestic distributors of vehicles sold

to them by original equipment manufacturers ("OEMs") (collectively "Domestic Distributors")[1]

be ordered to respond to a "Uniform OEM Subpoena" from Defendants (many of whom have

pled guilty to antitrust violations) and various categories of Plaintiffs (collectively the "Parties")

and produce an unprecedented amount of proprietary information about vehicle pricing (at

extraordinary expense) when:

    (a)      the Domestic Distributors do not manufacture or assemble vehicles, do not purchase parts, Components or Assemblies for installation in new vehicles, and do not maintain records of such purchases in the ordinary course of their business;

    (b)      the Parties have represented that the upstream information they seek is uniquely in the possession of the OEMs;

    (c)      the downstream data and documents that the Parties seek from the Domestic Distributors are of little or no value to the Parties without being linked to upstream information concerning prices paid by the OEMs for parts and components and whether those prices had an impact on the prices at which the Domestic Distributor distributed vehicles;

    (d)      the Dealer Plaintiffs already have substantial downstream information about the prices at which they purchased vehicles from the Domestic Distributors, and the prices at which they sold those vehicles to end-payors; and

    (e)      any additional pricing information being sought by the Parties from the Domestic Distributors is extremely commercially sensitive information that, while of no genuine value to the Parties, would be produced, at great expense, in a Multi-District Litigation involving essentially the entire domestic automobile industry?

**Answer:**      No.

---

[1]   The Domestic Distributors on whose behalf this Opposition is filed include the following subpoenaed entities:  Mercedes-Benz USA, LLC ("MBUSA"); Porsche Cars North America, Inc. ("PCNA"); BMW of North America, LLC ("BMW NA"); Jaguar Land Rover North America, LLC ("Jaguar NA"); Volvo Cars of North America, LLC ("Volvo NA"); Volkswagen Group of America, Inc. d/b/a Volkswagen of America ("VWGoA") and d/b/a Audi of America ("AoA") (as to all models which it distributes on behalf of foreign entities); Mitsubishi Motors North America, Inc. ("MMNA"); Hyundai Motor America ("HMA"); Subaru of America, Inc. ("Subaru"); Kia Motors America, Inc. ("KMA").  Nissan North America, Inc. ("NNA") joins as to select models which it distributes on behalf of foreign entities.  Domestic Distributor declarations are filed as Exhibits to the Joint Opposition Brief, and are cited herein as "Ex. __ ¶ __ ([description])".

## Preliminary Statement

The moving Parties have represented that "the information sought by the OEM Subpoena is not obtainable from any other parties or sources," that the "OEMs are the main source for the information sought by the OEM Subpoena" and that "partial transactional data" from "other third-parties are not substitutes for the information sought from the OEMs directly."[2] Nevertheless, the Parties have served the "Uniform OEM Subpoena" upon numerous non-party U.S. distribution entities that are not OEMs, do not manufacture or assemble vehicles,[3] do not purchase component parts for the manufacture of new vehicles, and do not maintain the type of information that the issuing parties contend resides uniquely with the OEMs.  The caption of the Parties' Motion says it all:  "Motion to Compel Discovery from Non-Party *Original Equipment Manufacturers*" (emphasis added).

Compliance with the "Uniform OEM Subpoena" by the Domestic Distributors would impose extraordinary burden and expense upon the Domestic Distributors, requiring them to gather and produce pricing and other information about millions of vehicles that would be: (a) of little or no use to the Parties in the absence of the corresponding upstream parts purchasing information about those vehicles; and (b) significantly duplicative of information already in the possession of the Dealer Plaintiffs.

---

[2]   *See, e.g.*, Indirect Purchaser Plaintiffs' Response in Opposition to Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs and to Ford Motor Company's Response to the Proposed OEM Subpoena, Dkt. 979, at 4.

[3]   In addition to being a Domestic Distributor, MMNA acquired a manufacturing plant in Illinois in 2003, which plant ceased production of vehicles on November 30, 2015. Ex. 53 ¶¶ 2, 13 (Weterrings MMNA Decl.). But, as discussed more fully in the separate Smaller SSE Opposition brief submitted by MMNA and other Smaller SSEs, MMNA's assembly of vehicles that were ultimately sold in the United States was very minimal, accounting for less than 0.6% of all vehicles sold in the U.S. during the Subpoena period (and less than 0.3% of the market over the past 10 years).  *Id.* at ¶ 14.  As such, from a practical standpoint, the arguments submitted in this Opposition should apply equally to MMNA.

Finally, to the extent that the Parties seek pricing and other information that is not already in the hands of the Dealer Plaintiffs, compliance by the Domestic Distributors would not only be burdensome, but also involve production of extremely competitively sensitive information to their dealers and other industry participants and their counsel, which is a matter of substantial concern. This is not intended as a suggestion that counsel for the Parties would intentionally violate the protective order. It is simply a recognition that competitively sensitive data and documents would be produced electronically to an unprecedented number of law firms, lawyers and their administrative staff. Massive amounts of the data could be downloaded with a few keystrokes. Accidents happen and the security of data, once produced, cannot be guaranteed by any party. The Domestic Distributors should not have to put some of their most commercially sensitive information at risk when, taking the Parties at their word, the information would not provide them with what they need or could use.

The Motions to Compel as to the Domestic Distributors should be denied in all respects.

### Statement of Facts

#### A.    The Parties Claim That The Upstream Cost Information They Seek Resides Uniquely With OEMs.

The Parties represented to the Court before service of the "Uniform OEM Subpoena" that the Subpoena "seeks information from the OEMs that is crucial to this litigation and not available from any other party," specifically information "about the OEMs' purchases of their parts from their suppliers, details regarding RFQs, the OEMs' reasoning in choosing the winner, evaluations of RFQ responses, OEM supplier requirements, OEMs' analyses of their parts purchases, information about why certain parts have been purchased without soliciting a bid, and internal documents about price reductions." Auto Dealership Plaintiffs' Opposition to Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs, Dkt. 980, at 6. The Indirect

Purchaser Plaintiffs and Defendants similarly represented that the upstream data they seek resides uniquely with OEMs.[4]  Throughout their Motion, the Parties repeatedly contend that the data and documents they seek reside with the OEMs.  *See* Motion at 2, 14-31.[5]

    **B.**    **The Domestic Distributors Do Not Have Possession Or Control Of The Upstream Cost Information The Parties Seek.**

As the declarations filed in support of this Opposition demonstrate, the Domestic Distributors are not OEMs.  The Domestic Distributors do not manufacture vehicles and do not purchase the component parts for such manufacture; they purchase finished vehicles.[6]  The Domestic Distributors do not receive and maintain, in the ordinary course of their business, documents or data concerning the purchase or cost of component parts for new vehicle manufacturing, RFQs or their evaluation, supplier requirements, or the correlation, if any, between the costs of component parts and the prices paid to OEMs for the finished vehicles they purchase and distribute.[7]  The Domestic Distributors cannot provide documents or data that would address whether or not there was any initial overcharge on particular Component parts or any correlation between changes in component parts pricing and the ultimate cost of the vehicle to the Domestic Distributors, much less to the dealers or consumers.

---

[4]  *See* Indirect Purchaser Plaintiffs' (End Payor Plaintiffs and the State of Florida) Response in Opposition to Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs, Dkt. 979, at 1, 18-21; Defendants' Opposition to Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs, Dkt. 981, at 7.

[5]  Citations to the "Motion" reference The Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, Dkt. 1185, but all arguments apply equally to Certain Parties' Motion to Compel Discovery From Non-Party Original Equipment Manufacturers, Dkt. 1188, where applicable.

[6]  *See, e.g.*, Ex. 21 ¶¶ 6-7 (Schaeffer BMW NA Decl.); Ex. 76 ¶¶ 8-9 (Battaglia Volvo NA Decl.); Ex. 47 ¶¶ 7-8 (Weiner Jaguar Land Rover Decl.); Ex. 44 ¶ 3 (Zielomski HMA Decl.); Ex. 63 ¶¶ 9-10 (Allen Subaru Decl.); Ex. 71 ¶¶ 3-4 (Hannon VWGoA Decl.); Ex. 72 ¶¶ 3-4 (Schroth AoA Decl.); Ex. 51 ¶¶ 3-5 (Goldzweig KMA Decl.).  MMNA's limited production of vehicles and procurement of limited parts for those vehicles is so minimal, that any documents and data it has would be statistically irrelevant.  *See* Smaller SSE Opposition Brief.

[7]  *See, e.g.*, Ex. 21 ¶ 8 (Schaeffer BMW NA Decl.); Ex. 76 ¶ 10 (Battaglia Volvo NA Decl.); Ex. 47 ¶ 9 (Weiner Jaguar Land Rover Decl.); Ex. 44 ¶¶ 3-5 (Zielomski HMA Decl.); Ex. 45 ¶ 4 (Donnelly HMA Decl.); Ex. 71 ¶ 4 (Hannon VWGoA Decl.); Ex. 72 ¶ 4 (Schroth AoA Decl.); Ex. 51 ¶ 5 (Goldzweig KMA Decl.).

3

C.  **Vehicle Pricing And Other Downstream Data The Domestic Distributors Possess Would Be Irrelevant Without The Upstream Data, Would Be Burdensome to Produce, And Is Extremely Commercially Sensitive.**

The Domestic Distributors provide vehicles to dealers. The Dealer Plaintiffs have a great deal of the downstream pricing information that the Parties now seek from the Domestic Distributors.[8]  To the extent that the Domestic Distributors have downstream data and other documents that fall within the scope of the Subpoena, the burden of locating and collecting that information would be extreme, especially in light of its lack of value to the Parties absent the corresponding upstream data. The volume of detail sought to be compelled at the individual vehicle sale level would take thousands of hours to search for and collect, and would require voluminous searches of multiple, distinct and archived databases, and filed and archived hard copy records.[9]  It would, however, still remain divorced from the upstream information that the Parties seek. Even if the Indirect Purchaser Plaintiffs are correct that an overcharge on a component part can be traced from the price of the part through the sale to distributor to dealer to retail customer, which is dubious at best, absent the upstream data, the downstream data is irrelevant. Moreover, the vehicle pricing information the Parties seek from the Domestic Distributors—to the extent the Domestic Distributors even have such information[10]—is extremely commercially sensitive.[11]

---

[8]  *See, e.g.*, Declaration of Dr. Phillip B. Nelson in Opposition to Certain Defendants' Motion to Compel "Downstream" Discovery from Direct Purchaser and Auto Dealer Plaintiffs, 12-cv-102 (Auto Dealer Action) Dkt. 196-1, at ¶ 24 & n.5 (noting that "despite the likely redundancy between the "downstream" OEM data and the "upstream" Auto Dealer data, counsel has informed me that the Auto Dealers are willing to provide data from their files that contain information on the prices that they pay the OEMs").

[9]  Ex. 53 ¶¶ 5-6 (Weterrings MMNA Decl.); Ex. 21 ¶ 19 (Schaeffer BMW NA Decl.); Ex. 76 ¶ 23 (Battaglia Volvo NA Decl.); Ex. 47 ¶ 23 (Weiner Jaguar Land Rover Decl.); Ex. 46 ¶ 7 (DePaul HMA Decl.); Ex. 63 ¶ 4 (Allen Subaru Decl.); Ex. 71 ¶ 10 (Hannon VWGoA Decl.); Ex. 72 ¶ 10 (Schroth AoA Decl.); Ex 51 ¶¶ 8-9 (Goldzweig KMA Decl.).

[10]  For example, PCNA does not possess individual-level transaction data regarding the sale of Porsche automobiles in the United States; nor is such information regularly provided by the United States Porsche dealers to PCNA. Ex. 59 ¶ 7 (Folz PCNA Decl.). *See also* Ex. 21 ¶ 13 (Schaeffer BMW NA Decl.); Ex. 76 ¶

<u>Argument</u>

I. **THE DOMESTIC DISTRIBUTORS DO NOT POSSESS UPSTREAM INFORMATION AND CANNOT BE MADE TO PRODUCE UPSTREAM COST INFORMATION IN THE POSSESSION AND CONTROL OF THEIR NON-DOMESTIC OEMS.**

The Domestic Distributors are not OEMs and should not have been served with a "Uniform OEM Subpoena." A motion to compel should, likewise, never have been served upon the Domestic Distributors, as the Parties both in their pre-Subpoena submissions to the Court and in their Motion make clear that (1) the upstream information, documents and data they seek reside with the OEMs; and (2) downstream data and documents that are divorced from upstream OEM data and documents are of little or no utility to the analysis they purport to conduct.[12] For these reasons, the "Uniform OEM Subpoena" should never have been served upon, and the Motions to Compel discovery "from Original Equipment Manufacturers" should never have been brought against, the non-OEM Domestic Distributors and the Motions should be denied in full.

To the extent that the Subpoena and Motion seek to use domestic discovery to attempt to reach the documents and data of foreign OEMs, the law is settled that domestic subsidiaries cannot be ordered to produce information in the possession or control of their foreign parents unless that information is readily available to them.[13]

---

16 (Battaglia Volvo NA Decl.); Ex. 47 ¶ 15 (Weiner Jaguar Land Rover Decl.); Ex. 44 ¶ 8 (Zielomski HMA Decl.); Ex. 63 ¶ 6 (Allen Subaru Decl.); Ex 51 ¶ 6 (Goldzweig KMA Decl.).

[11] *See, e.g.*, Ex. 45 ¶ 7 (Donnelly HMA Decl.).

[12] The Parties state, *inter alia*, that they have "narrowed their requests to include only those requests seeking information *that is most important to proving their claims and defenses, and to addressing class certification,*" and that the "OEMS are Solely in Possession of the Majority of the Information Sought in the Narrowed Requests." Motion at 29, 31 (emphasis added); *see also* Motion at 9 n.25.

[13] *See, e.g.*, *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 141-42 (E.D.N.Y. 2009) (denying motion to compel production because "[t]here is no evidence to indicate that the documents sought 'flowed freely' between the subsidiary and parent"); *see also Zenith Elecs. LLC v. Vizio, Inc.*, No. M8-85, 2009 WL 3094889, at *3 (S.D.N.Y Sept. 25, 2009) (denying motion to compel); *Motorola Credit Corp. v. Uzan*, No. 02-666, 2003 WL 203011, at *7 (S.D.N.Y. Jan. 29, 2003) (same). The burden is on the party seeking discovery to make a

5

The Parties do not (and factually cannot) assert that Domestic Distributors have the OEMs' upstream information. The Domestic Distributors have filed declarations demonstrating they do *not* purchase component parts for installation in new vehicles and do not maintain records of such purchases.[14] As such, the Motion fails to the extent it is intended as a vehicle to seek documents from foreign corporations through domestic discovery directed to the Domestic Distributors. For this reason, too, the Motion should be denied.

## II. THE VEHICLE PRICING AND LIMITED RANGE OF DOWNSTREAM INFORMATION THE DOMESTIC DISTRIBUTORS DO POSSESS WOULD NOT BE OF USE TO THE PARTIES.

The Parties' argue that they need the upstream information to establish overcharge as the starting point of their analysis to trace the price of the overcharged part through the sale of the vehicle to the retail customer.[15] Absent this pivotal upstream information, the downstream information lacks utility, import, and relevance. The Parties say as much in their Motion.[16] Given that the Domestic Distributors lack the alleged upstream information, the Motion should be denied as to the Domestic Distributors.

---

showing that the subpoenaed party has possession, custody or control over the materials sought. *United States v. Int'l Union of Petroleum and Ind. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

[14] For example, PCNA does not manufacture Porsche vehicles; nor does it purchase anything, including parts, that go into the manufacturing of Porsche vehicles. Accordingly, PCNA has no documents or other information regarding component parts. Ex. 58 ¶¶ 4-5 (Khalil PCNA Decl.). Nor is the price that PCNA pays to purchase Porsche vehicles from the foreign OEM determined by the cost of any individual component part contained in the vehicle. Ex. 60 ¶ 4 (Ludewig PCNA Decl.). *See also* Ex. 21 ¶ 8 (Schaeffer BMW NA Decl.); Ex. 76 ¶ 10 (Battaglia Volvo NA Decl.); Ex. 47 ¶ 9 (Weiner Jaguar Land Rover Decl.); Ex. 44 ¶¶ 3-5 (Zielomski HMA Decl.); Ex. 45 ¶ 4 (Donnelly HMA Decl.); Ex. 63 ¶ 18 (Allen Subaru Decl.); Ex. 71 ¶¶ 3-4 (Hannon VWGoA Decl.); Ex. 72 ¶¶ 3-4 (Schroth AoA Decl.); Ex. 51 ¶5 (Goldzweig KMA Decl.).

[15] *See* Motion at 14-15, 17, 19, 30-31.

[16] *See id.*

**III.    THE DOMESTIC DISTRIBUTORS SHOULD NOT BE COMPELLED TO PRODUCE EXTREMELY BURDENSOME DOWNSTREAM DOCUMENTS AND DATA THAT WOULD BE OF LITTLE OR NO UTILITY TO THE PARTIES.**

While the information sought from the Domestic Distributors would be of little, if any, utility, the burden of production, in terms of time and expense, is substantial.  Moreover, the Dealer Plaintiffs who purchase vehicles from the Domestic Distributors already collectively have much of the downstream pricing information like dealer invoices, MSRPs, retail sales contracts, and the ultimate price paid by retail customers.

As more fully set out in the Joint Opposition, the law requires that the Parties demonstrate substantial need for the downstream documents and data of the non-party Domestic Distributors.  They have not and cannot do so for reasons addressed herein.  The extraordinary burden associated with production of the materials that the Domestic Distributors do possess, as outlined herein and in the accompanying declarations,[17] has not been, and cannot be, justified by the Parties and the Motion must also be denied on those grounds.

**IV.    THE NON-PARTY DOMESTIC DISTRIBUTORS SHOULD NOT BE MADE TO PRODUCE EXTREMELY SENSITIVE VEHICLE PRICING INFORMATION, ESPECIALLY IN LIGHT OF THE TRIVIAL "BENEFIT" IT MIGHT PROVIDE THE PARTIES.**

It is true, as the Parties will be quick to observe, that courts generally assume that protective orders will protect commercially sensitive information.  Were this not true, most commercial litigation would grind to a halt.  But that commonplace case law does not address the combination of the scope of information sought from the non-party Domestic Distributors here, its very sensitive commercial nature, and the unprecedented breadth of the disclosure.  Courts have concluded protective orders are insufficient to protect commercially sensitive information

---

[17]  *See, e.g.*, Ex. 21 ¶ 19 (Schaeffer BMW NA Decl.); Ex. 76 ¶¶ 22-23 (Battaglia Volvo NA Decl.); Ex. 47 ¶¶ 22-23 (Weiner Jaguar Land Rover Decl.); Ex. 46 ¶ 7 (DePaul HMA Decl.); Ex. 44 ¶ 8 (Zielomski HMA Decl.); Ex. 53 ¶¶ 5-6 (Weterrings MMNA Decl.); Ex. 63 ¶ 4 (Allen Subaru Decl.); Ex. 71 ¶ 10 (Hannon VWGoA Decl.); Ex. 72 ¶ 10 (Schroth AoA Decl.); Ex 51 ¶¶ 7- 9 (Goldzweig KMA Decl.).

on facts far less extreme than these.  *See Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*, No. 1:05-mc-107, 2005 WL 2045818, at *3-4 (W.D. Mich. Aug. 24, 2005) (quashing subpoena that requested "documents detailing sensitive and confidential aspects of [company's] business strategy" despite protective order); *Universal Del., Inc. v. Comidata Network, Inc*., No. 3:10-mc-00104, 2011 WL 1085180, at *7 (M.D. Tenn. Mar. 21, 2011) (recognizing the "constant danger inherent in disclosure of confidential information pursuant to a Protective Order" and quashing the subpoena) (citation omitted); *Insulate Am. v. Masco Corp.*, 227 F.R.D. 427, 434 (W.D.N.C. 2005) (quashing subpoena, observing that there "is a constant danger inherent in disclosure of confidential information pursuant to a Protective Order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a non-party is sought") (citation omitted); *In re Vitamins Antitrust Litig*., 267 F. Supp. 2d 738, 741-42 (S.D. Ohio 2003) (despite protective order, quashing subpoena given heightened concern "that certain of the defendants in the antitrust litigation are [the subpoenaed party's] direct competitors").

The foregoing case law applied to the facts of this Motion would by itself compel denial of the Motion.  What is more, and dispositive here, is that the Parties have wholly failed to show (they did not even attempt to show) that they have a "particularized need" for the information sought.  *See* SSE's Joint Opposition Brief at Part V.  It would be extraordinarily unfair to the Domestic Distributors to be forced to produce extremely sensitive vehicle pricing and other information and run any risk of inadvertent or improper disclosure or use of same when the Parties have not even tried to demonstrate that they have a particularized need for it, nor can they for reasons outlined herein and in the Joint Opposition Brief.

## Conclusion

For the foregoing reasons, the Motions to Compel as directed towards the Domestic Distributors (identified *supra* at i n.1) should be denied in all respects.

Dated:  February 19, 2016                          Respectfully submitted:

/s  *Richard E. Kruger*                              /s  *Daniel S. Savrin*
Richard E. Kruger (P57142)                        Daniel S. Savrin
Jaffe, Raitt, Heuer & Weiss, P.C.                  Nathaniel Bruhn
27777 Franklin Road, Suite 2500                   MORGAN LEWIS
Southfield, Michigan 48034                         One Federal Street
(248) 351.3000                                     Boston, MA  02110-1726
rkruger@jaffelaw.com                               (617) 951.8674
                                                   daniel.savrin@morganlewis.com
                                                   nathaniel.bruhn@morganlewis.com

*Attorneys for BMW of North America, LLC*

/s  *Dominic Suprenant*
Dominic Surprenant
Nithin Kumar
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
dominicsurprenant@quinnemanuel.com

*Attorneys for Mercedes-Benz USA, LLC*

/s  *Shon Morgan*
Shon Morgan
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com

*Attorneys for Hyundai Motor America*

/s  *Susan R. Peck*
Susan R. Peck (Application for  Admission
Submitted and Pending)
Jessica Avery (Application for  Admission
Submitted and Pending)
LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660
(949) 250-9954
susan.peck@lhlaw.com

*Attorneys for Kia Motors America, Inc.*

/s  *Daniel S. Savrin*
Daniel S. Savrin
Nathaniel Bruhn
MORGAN LEWIS
One Federal Street
Boston, MA  02110-1726
(617) 951.8674
daniel.savrin@morganlewis.com
nathaniel.bruhn@morganlewis.com

*Attorneys for Jaguar Land Rover North
America, LLC*

/s  *Elizabeth A. McNellie*
Elizabeth A. McNellie
Robert J. Tucker (co-signing under L.R. 83.20)
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, OH 43215
(614) 228.1541
emcnellie@bakerlaw.com
rtucker@bakerlaw.com

*Attorneys for Mitsubishi Motors North America, Inc.*

/s  *Catalina J. Sugayan*
Catalina J. Sugayan
Anthony J. Anscombe (Admission Pending)
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606
(312) 641.9050
catalina.sugayan@sedgwicklaw.com
anthony.anscombe@sedgwicklaw.com

*Attorneys for Nissan North America, Inc.*

/s  *Audra A. Dial*
Audra A. Dial (*admitted for MDL only*)
William D. Meyer (*admitted for MDL only*)
KILPATRICK TOWNSEND & STOCKTON LLP
Suite 2800, 1100 Peachtree Street NE
Atlanta, GA  30309-4528
(404) 815-6500
adial@kilpatricktownsend.com
bmeyer@kilpatricktownsend.com

*Attorneys for Porsche Cars North America, Inc.*

/s  *Neal Walters*
Neal Walters
Michael R. Carroll
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
(856) 761.3452
carrollm@ballardspahr.com

*Attorneys for Subaru of America, Inc.*

/s  Daniel S. Savrin
Daniel S. Savrin
Nathaniel Bruhn
MORGAN LEWIS
One Federal Street
Boston, MA  02110-1726
(617) 951.8674
daniel.savrin@morganlewis.com
nathaniel.bruhn@morganlewis.com

*Attorneys for Volvo Cars of North America,
LLC*

/s  Paul T. Collins
Paul T. Collins
NELSON MULLINS RILEY & SCARBOROUGH
LLP
Meridian, 17th Floor
1320 Main Street, Columbia, SC 29201
(803) 255-9747
Paul.Collins@nelsonmullins.com

/s  Timothy J. Fitzgibbon
Timothy J. Fitzgibbon
NELSON MULLINS RILEY & SCARBOROUGH
LLP
101 Constitution Avenue, N.W.
Suite 900
Washington, D.C. 20001
(202) 712-2812
Tim.Fitzgibbon@nelsonmullins.com

*Attorneys for Volkswagen Group of America, Inc., also d/b/a Audi of America LLC*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Non-OEM Domestic Distributors Opposition to the

Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers and

the Certain Serving Parties' Motion to Compel Discovery from the Non-Party Original

Equipment Manufacturers was filed via the Court's ECF system on February 19, 2016, which

will serve notice of such filing to all counsel of record.

/s/ Richard E. Kruger
Richard E. Kruger