**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | ) Master File No.: 12-md-02311<br>) Honorable Marianne O. Battani<br>) Special Master Gene J. Esshaki<br>) |
| **In Re:  All Auto Parts Cases** | ) 2:12-MD-02311-MOB-MKM<br>) |
| **THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES** | ) **Oral Argument Requested**<br>) |

**OPPOSITION TO THE PARTIES' MOTIONS TO COMPEL**
**BY SPECIFICALLY SUBPOENAED ENTITIES WHOM THE PARTIES**
**DESCRIBE AS "NON-CORE"**

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUE ................................................................................................1

PRELIMINARY STATEMENT .............................................................................................2

STATEMENT OF FACTS ......................................................................................................3

      A.    The Non-Core SSEs Are Not Part Of The Manufacturing, Distribution, or Sales Supply Chain For New Vehicles ................................................................3

      B.    The Parties' Abeyance Offer Imposes Even Greater Burdens on the Non-Core SSEs ........................................................................................................4

ARGUMENT ..........................................................................................................................5

I.     THE PARTIES FAIL TO SHOW A REASONABLE BASIS FOR MOVING TO COMPEL AS TO THE NON-CORE SSES ..............................................................5

II.    THE PARTIES' SUBPOENA IS OVERBROAD AND IMPOSES AND UNDUE BURDEN ON THE NON-CORE SSES ..................................................................7

      A.    The Subpoena Improperly Seeks Discovery Of Tangential Relevance That Should Be In The Possession Of The Parties Themselves ......................................7

      B.    The Subpoena Imposes A Vastly Disproportionate Burden On Non-Core SSEs ..............................................................................................................8

III.   THE CONDITIONS OF THE CAVEAT TO THE ABEYANCE EFFECTIVELY NEGATE THE ABEYANCE ..................................................................................11

      A.    The Parties' Demand For A Certification That The Non-Core SSEs Have No Responsive Documents Is Unworkable ..........................................................11

      B.    The Parties' Caveat Condition Requiring The Non-Core SSEs To Make A Certification As To The Production Of Third Parties Is Improper ......................12

CONCLUSION .....................................................................................................................13

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>Cases</u>

*Trusz v. UBS Realty Inv'rs LLC*,
  2011 WL 2471735 (D. Conn. June 21, 2011)...........................................................................5

*Williams v. Evogen, Inc.*,
  2013 WL 3773840 (D. Kan. July 17, 2013) ...........................................................................5

**Statement of the Issue**

1.      Should the Specifically Subpoenaed Entities that have been described as "Non-Core" ("Non-Core SSEs")[1] by the Issuing Parties ("the Parties") be compelled (at extraordinary expense) to respond to a "Uniform OEM Subpoena" from the Parties when:

    (a)     the Non-Core SSEs are ***not*** OEMs, do not manufacture or assemble vehicles, do not purchase parts, Components or Assemblies for installation in new vehicles, and do not purchase, distribute or sell vehicles;

    (b)     the Parties have not shown (and cannot show) that the Subpoena is reasonably tailored to avoid imposing undue burdens on the non-OEM, Non-Core SSEs;

    (d)     the conditions under which the Parties would agree to hold the Subpoena in abeyance for the Non-Core SSEs essentially negate the offered abeyance; and

    (e)     the mechanism for determining if the conditions for abeyance are satisfied is not specified?

**Answer:**      No.

---

[1]   The Non-Core SSEs on whose behalf this Opposition is filed are the following SSEs: American Honda Finance Corp.; BMW (US) Holding Corp.; BMW Bank of North America; BMW Insurance Agency, Inc.; BMW US Capital, LLC; Designworks/USA, Inc.; BMW Financial Services NA, LLC ("BMW FS"); Fiat Chrysler Finance North America, Inc.; Fuji Heavy Industries USA, Inc.; Hyundai Capital America ("HCA"); Hyundai America Technical Center, Inc. ("HATCI"); Hyundai AutoEver America, LLC ("HAEA"); Mercedes-Benz Advanced Design of North America Inc.; Mercedes-Benz Credit Corp.; Mercedes-Benz Financial Services USA LLC; Mercedes-Benz Research & Development North America, Inc. (CA); Mercedes-Benz Research & Development North America, Inc. (MI); Mitsubishi Motors Credit of America, Inc. ("MMCA"); Mitsubishi Motors R&D of America, Inc. ("MMRDA"); Nissan Motor Acceptance Corp.; Subaru Leasing Corp.; and Volkswagen Credit, Inc. ("VCI").

## Preliminary Statement

As the Non-Core SSEs have explained and the Parties have acknowledged, the Non-Core SSEs are not part of the manufacturing, distribution, or sales supply chain for new vehicles. While many Non-Core SSEs are members of corporate families that are involved in the automotive industry, that alone cannot justify the Parties having served them with an unprecedented subpoena clearly intended for original equipment manufacturers ("OEMs"). Although the meet-and confer discussions had identified narrowed sets of requests that *might* be applicable to certain Non-Core SSEs, the Parties seemingly have moved to compel against the Non-Core SSEs as to all of the requests identified in the motions.

Compliance with the "Uniform OEM Subpoena" by the Non-Core SSEs would impose extraordinary burden and expense upon the Non-Core SSEs. While the Parties have characterized the OEMs as "extremely powerful corporations with annual gross revenues in the billions of dollars," having such "large legal departments" that they "cannot plausibly claim that they lack the resources to respond" to the OEM Subpoena,[2] the Non-Core SSEs are ***not*** OEMs. Forcing them to comply with a "Uniform OEM Subpoena" would impose a substantial burden as the Non-Core SSEs would, among other things, be required to search for records that they either are unlikely to possess or that would be of minimal relevance and duplicative of information possessed by the Parties.

The Parties' conditional offer to hold the Subpoena in abeyance as to the Non-Core SSEs fails to meaningfully relieve the burden of the Subpoena. The "caveat" to that offer, as clarified

---

[2]  Parties Brief, Dkt. 1185 ("P. Br.") at 30-31. *See also* P. Br. at 32 ("Any claim *OEMs* make that either burden or expense would outweigh the benefits of this discovery" are undermined "considering the size and sophistication of OEMs and their legal departments." (emphasis added)).

by the Parties in correspondence following the filing of the motion, imposes conditions that

negate the offer and impose further burden on the Non-Core SSEs.

For these reasons, detailed below, the Motions to Compel should be denied in their

entirety as to the Non-Core SSEs.

## Statement of Facts

### A.    The Non-Core SSEs Are Not Part Of The Manufacturing, Distribution, or Sales Supply Chain For New Vehicles

The Non-Core SSEs are not a direct part of the manufacturing, distribution, or sales

supply chain for new vehicles.[3]  Thus, there is no reason why they should have received the

"Uniform OEM Subpoena" in the first place.  Although the Non-Core SSEs explained

throughout the collective meet-and-confer process, and in some separate communications

between Non-Core SSEs and the Parties,[4] that they do not purchase parts or manufacture or sell

vehicles, the Parties have insisted on pursuing the Subpoena as to the Non-Core SSEs.

---

[3]  Ex. 42, Declaration of Smith Reynolds for Hyundai AutoEver America LLC ("HAEA Decl.") ¶ 4; Ex. 41, Declaration of Mark Torigian for Hyundai America Technical Center, Inc. ("HATCI Decl.") ¶¶ 4, 7; Ex. 43, Declaration of Kimberly Ebright for Hyundai Capital America ("HCA Decl.") ¶¶ 4, 6; Ex. 63, Declaration of Shinichiro Sumi for Fuji Heavy Industries USA, Inc. ("FUSA Decl.") ¶ 3; Ex. 62, Declaration of R. Curtis Allen for Subaru Leasing Corp. ("SLC Decl.") ¶ 3; Ex. 31, Declaration of Stegano Luigi Salvini for Fiat Chrysler Finance North America, Inc. ("Fiat Finance Decl.") ¶ 3; Ex. 54, Declaration of John McElroy for Mitsubishi Motors Credit of America, Inc. ("MMCA Decl.") ¶¶ 2-3; Ex. 52, Declaration of Jorgen Weterrings for Mitsubishi Motors R&D of America, Inc. ("MMRDA Decl.") ¶ 4; Ex. 74, Declaration of David Rands for Volkswagen Credit Inc. ("VCI Decl.") ¶ 3; Ex. 24, Declaration of Christopher Chadwick for BMW Financial Services ("BMW FS Decl.") ¶ 2; Ex. 25, Declaration of Daniel Savrin for BMW Entities ("Savrin BMW Decl.") ¶¶ 4,6 & Exs. A-B.
[4]  For example, on July 30, 2015, and again on September 8, 2015, counsel for BMW (US) Holding Corp., BMW Bank of North America, BMW Insurance Agency, Inc., BMW US Capital, LLC, and Designworks/USA, Inc. emailed their contact point among counsel for the Parties explaining the limited relationship of those entities to the manufacturing, distribution, and sales supply chain for new vehicles (which largely amounted to the fact that they share the name of an OEM located in Germany) and that those entities "are not in the business of assembling, marketing, selling or leasing automobiles."  Savrin BMW Decl. ¶¶ 4, 6 & Exs. A-B.  No substantive response was provided by the Parties.

**B.      The Parties' Abeyance Offer Imposes Even Greater Burdens on the Non-Core SSEs**

The Subpoena is of unprecedented breadth, scope, and burden.[5]  This extraordinary burden is magnified when applied to the Non-Core SSEs.  Although the Parties contend in one of the headings in their Motions that they "Are Willing to Hold in Abeyance Subpoenas to All Non-Core Affiliated Entities," that offer is conditional, and it applies only where:

1.      A Non-Core SSE can "provide assurance" that it has no responsive information "whatsoever" to any request currently being sought by the Motions to Compel; or

2.      A Non-Core SSE can "assure" the Parties that any responsive information to any request being pursued by the motion could be readily obtained from a core entity in the same "corporate family."[6]

However, the Subpoena is so incredibly broad in time and scope that the first condition is meaningless.  In order to qualify for "abeyance," the Non-Core SSEs must locate whatever they have that is potentially responsive, and then somehow ensure that another subpoenaed entity has the same information and is producing it—a totally impracticable condition.  The "abeyance offer" is further limited by the caveat that the Parties can come back to the Non-Core SSEs if either: (a) the Parties do not get the responsive information promised from another entity in the corporate family; or (b) "additional information c[omes] to light" about the Non-Core SSEs' possession of responsive information.[7]  Thus, the Parties' most recent communication makes clear that the abeyance offer actually exacerbates the burden on the Non-Core SSEs.

---

[5]  SSEs' Joint Opposition to the Parties' Motion to Compel, Dkt. 1227 ("SSEs' Joint Opp. Br.") at 5-13, 15-35.

[6]  *See, e.g.,* P. Br. at 34; *see also* correspondence between counsel for HCA and counsel for the Parties.  (Ex. 18 (Feb. 4, 2016 Letter)).

[7]  Ex. 18 (Feb. 4, 2016 Letter).

<u>**Argument**</u>

I. **THE PARTIES FAIL TO SHOW A REASONABLE BASIS FOR MOVING TO COMPEL AS TO THE NON-CORE SSES**

In order to prevail on their Motions to Compel, the Parties must show a reasonable basis for believing the Non-Core SSEs have the requested documents. *See Williams v. Evogen, Inc.*, 2013 WL 3773840, at *3 (D. Kan. July 17, 2013) (granting a protective order in part because the party pursuing the subpoena had not shown a "reasonable basis" for believing that certain subjects of the subpoena would have the requested documents). To meet this burden, the Parties must show a factual basis for believing the Non-Core SSEs have the requested documents. *Trusz v. UBS Realty Inv'rs LLC*, 2011 WL 2471735, at *3-4 (D. Conn. June 21, 2011) (granting-in-part a motion to compel based on plaintiff's showing that defendant had produced documents reflecting communications with the subpoenaed third party). The Parties fail to show a reasonable basis for believing the Non-Core SSEs have the documents they seek through the Motions to Compel.

The Parties fail to explain either in their motions or in meet and confer correspondence the factual basis on which they served the subpoenas on each of the Non-Core SSEs or on which they now move to compel against them. The Parties devote just one paragraph to the Non-Core SSEs,[8] and in that short span do not proffer their basis for moving to compel against the Non-Core SSEs. Additionally, implicit in the Parties' offer to hold the Subpoena in abeyance as to the Non-Core SSEs, with a caveat premised on obtaining the requested documents from other entities, is an acknowledgment that the Non-Core SSEs are <u>not</u> the appropriate source of the requested documents.

---

[8]   P. Br. at 34.

Moreover, the Parties have not shown a reasonable basis to believe the Non-Core SSEs have any of the types of documents on which they have moved to compel.  While the Non-Core SSEs may be affiliated with an OEM, they are not involved in the procurement, manufacture, assembly, distribution, or sale of vehicles.[9]  For example, BMW Bank of North America is a bank based in Utah that engages in traditional banking activity, including issuing credit cards, certificates of deposit, and the like, and BMW Insurance Agency, Inc. is an insurance broker selling Liberty Mutual Insurance products.[10]  As another example, HAEA provides information technology services to the Hyundai and Kia companies in North and South America, but it does not now, nor has it ever, designed, manufactured, assembled, sold, advertised, marketed, or distributed any Hyundai or Kia brand vehicles.[11]  Similarly, HATCI is the research and development arm for all North American models of the Korean-based Hyundai-KIA Automotive Group, which includes some design, technology, and engineering duties, but is not in the business of assembling, marketing, or selling automobiles.[12]  Mitsubishi Motors R&D of America is similarly positioned.[13]  As discussed below, Non-Core SSEs such as HCA, MMCA, BMW Financial Services NA, LLC, and VCI may have discrete roles with respect to consumer and/or floor plan new vehicle financing, but they do not engage in procurement of component parts, or the manufacturing, assembly, distribution, or sales of finished vehicles.[14]

During the meet and confer process, the Parties offered to narrow the number and breadth of requests as to the Non-Core SSEs, yet still failed to demonstrate the required reasonable basis

---

[9]   *See*, *infra*, footnote 3, and *supra*, footnotes 10-14.

[10]   Savrin BMW Decl. ¶¶ 4, 6; *see also* Ex. 11 at 3 n.6 (Dec. 18, 2015 C. Kass Letter discussing BMW Insurance Agency, Inc.); BMW Performance Insurance, http://www.bmwusa.com/standard/content/financialservices/insurance.aspx.

[11]   HAEA Decl. ¶ 4.

[12]   HATCI Decl. ¶¶ 3-5.

[13]   MMRDA Decl. ¶¶ 3-5.

[14]   HCA Decl. ¶¶ 4-10; MMCA Decl. ¶¶ 2-3; VCI Decl. ¶ 3; BMW FS Decl. ¶¶ 2-4.

for those narrowed requests in light of the nature of the Non-Core SSEs' operations. Nevertheless, the Parties have moved to compel the Non-Core SSEs to respond to all the broader scope of all requests directed to OEMs.

## II.   THE PARTIES' SUBPOENA IS OVERBROAD AND IMPOSES AND UNDUE BURDEN ON THE NON-CORE SSES

The Non-Core SSEs join the main briefs as to the arguments regarding the overbreadth and undue burden of the subpoena,[15] which is particularly acute for the Non-Core SSEs because of their limited, if any, relationship with the manufacturing, distribution, and sales supply chain for new vehicles.

### A.   The Subpoena Improperly Seeks Discovery Of Tangential Relevance That Should Be In The Possession Of The Parties Themselves

The Parties' requests to Non-Core SSEs is wholly irrelevant to their claims regarding alleged price fixing of component vehicle parts.  The subpoena is also disproportionate to the needs of the case.  The requests at issue in the Parties' Motions to Compel seek, for example, all disaggregated transactional data, including, but not limited to, the vehicle cost, the dealer invoice price for each vehicle, and the final sales price for vehicles, from peripheral non-manufacturing financing entities like HCA.[16]  Request 34 seeks all "disaggregated transactional data" without any reference or relation to financing or credit data.  Such a far-reaching request is not sufficiently tailored to the component price fixing claims or issues in the underlying case.  It amounts to a fishing expedition at the expense of non-parties tantamount to a request to provide each and every document or piece of data in an entity's possession.  Moreover, information such as financing rates to consumers have no bearing on the price a component supplier is able to

---

[15]   SSEs' Joint Opp. Br. at 13-40.
[16]   Ex. 2 (Parties' Subpoena, Request 34).

charge for a component and the price of the vehicle into which that component gets installed.[17] HCA, MMCA, MMRDA, VCI and other Non-Core SSEs do not set pricing for components or vehicles.[18] For example, HCA, MMCA and VCI simply provide the financing to either the dealership itself or the customer to purchase the vehicle that has already been priced without any input from HCA, MMCA, VCI or any of the other Non-Core SSEs. [19]

The Plaintiff dealerships, who seek to burden the Non-Core SSEs with this Subpoena, are in possession of the very information and documentation they seek. For example, with regard to Request 34, the Dealer Plaintiffs themselves have access to the documents sought, including the vehicle cost, the dealer invoice price for each vehicle, and the final sales prices for vehicles. Whether financing is obtained through a non-core financing entity, such as HCA, MMCA, or VCI, or another third party through the dealership, the dealership has possession of the financing documents.[20] The Parties have failed to justify why such information should be provided by Non-Core SSEs.

### B. The Subpoena Imposes A Vastly Disproportionate Burden On Non-Core SSEs

The burden and expense the Parties seek to impose through the Subpoena is tremendous and vastly outweighs any potential benefit from obtaining evidence of such questionable relevance. For HCA and other financing Non-Core SSEs, compliance with this subpoena would

---

[17] MMCA Decl. ¶ 6; BMW FS Decl. ¶ 4

[18] MMCA Decl. ¶ 3; HCA Decl. ¶ 6; BMW FS Decl. ¶ 2; Savrin BMW Decl. ¶¶ 4, 6; *see also* Fiat Finance Decl. ¶ 3; HAEA Decl. ¶ 4; SLC Decl. ¶ 3.

[19] MMCA Decl. ¶ 2; HCA Decl. ¶ 6-7; BMW FS Decl. ¶ 4; VCI Decl. ¶ 3-4. Nearly all active retail (consumer) and commercial (floor plan) financing accounts for MMNA were acquired by Ally Bank in 2015, and MMCA stopped writing new business effective June 1, 2015 and July 1, 2015, respectively, for such financing. As such, MMCA no longer provides any financing. It does not have possession of any documents relating to current or past consumer financing, or any current floor plan financing, which, if they exist, reside with Ally Bank or the servicing entity for those loans. Documents relating to any historic floor plan financing, if any, are maintained offsite. (MMCA Decl. ¶¶ 5, 7).

[20] BMW FS Decl. ¶ 7; HCA Decl. ¶ 15; VCI Decl. ¶ 4.

be incredibly burdensome and expensive, and the Dealer Plaintiffs should already have this information.  For example, HCA provides indirect vehicle financing and leasing solutions for Hyundai and Kia vehicles in the United States.[21]  Two of HCA's main types of financing are floor plan financing to the dealerships for the purchase of vehicles from distributors, and indirect financing for consumer purchases or leases of vehicles from the dealership.[22]  For floor plan financing, HCA receives information regarding the: (1) VIN; (2) date and amount of the draft on the line of credit; (3) identification of the dealership making the vehicle purchase; and (4) purchase price /invoice amount paid by the dealership.[23]  This does not include the purchase price paid by the end-customer and does not include the price paid by the dealership to the distributor.[24]  The vehicle is sold directly to the dealership and HCA does not receive any manufacturer invoice or sales documents reflecting the transaction between the dealership and the distributor.[25]  HCA merely receives parts of the transaction details described above.

For customer financing records in electronic form, HCA estimates that there are over 1.5 million live accounts which would need to be searched to respond to the Subpoena.[26]  Additionally, there are approximately 23,297 boxes in storage containing potentially responsive physical documents.[27]  There are approximately 1,083 boxes that would apply to floor plan financing generally.[28]  HCA would have to manually review each box simply to see what type of information was included.[29]  In addition to the 1,083 floor plan banker's boxes, there are another

---

[21]   HCA Decl. ¶ 4.
[22]   HCA Decl. ¶ 7.
[23]   HCA Decl. ¶ 8.
[24]   HCA Decl. ¶ 9.
[25]   HCA Decl. ¶ 10.
[26]   HCA Decl. ¶¶ 12-14.
[27]   HCA Decl. ¶16.
[28]   HCA Decl. ¶ 17.
[29]   HCA Decl. ¶ 17.

approximately 22,214 boxes in storage for the customer financing documents containing hard copy contracts.[30]  HCA estimates that the *staging* costs alone for the 23,297 boxes in storage would be a staggering $194,000.[31]  This figure covers only the cost to pull the boxes for review and refile.[32]  Costs associated with review and production, of course, will be exponentially higher.[33]

The Subpoena requests are overly broad as they seek documents from 1992 to present, spanning over 23 years.[34]  For example, HCA estimates that there are approximately 400,000 Hyundai/Kia vehicles floor plan financed *last year alone* (figure excludes customer financing).  Based on the far-reaching request for "all transactional data" for any vehicle financed, the Parties' requests seek every piece of paper relating to financed vehicles without offering any reason for why all such documents are needed to support their claims.[35]  Rather, the Parties vaguely assert that they need this information to establish vehicle sales prices.  The actual prices charged, however, are available from the Parties themselves.  And, the Non-Core SSEs do not determine any component of vehicle pricing.

In addition, the sheer burden and expense of the proposed discovery outweighs its likely benefit.  HCA would perform the massive undertaking described above merely to attempt to ascertain the price that dealerships paid for each vehicle, and, perhaps, the prices paid by the end customers.  This, like other information the Parties seek, is information that is already in the

---

[30]  HCA Decl. ¶ 19.

[31]  HCA Decl. ¶¶ 20-21.

[32]  HCA Decl. ¶¶ 20-21.

[33]  Other financing non-Core SSEs are similarly situated.  *See, e.g.*, BMW FS Decl. ¶¶ 13-16, VCI Decl. ¶ 5. MMNA is nearly shut down.  Given the minimal remaining staffing for MMCA, compliance with the Subpoena would be extremely burdensome and would require most if not all of the attention and time of the handful of remaining employees. (MMCA Decl. ¶ 8).

[34]  Ex. 2 (Subpoena, Instructions, at 20).

[35]  Ex. 2 (Subpoena, Request 34, at 34)

possession of the Parties, including the Dealer Plaintiffs and/or the End Payor Plaintiffs. The Parties have not shown a basis for pursuing the Subpoena as to the Non-Core SSEs, much less imposing such a disproportionate burden on them in search of either duplicative or irrelevant information.

## III.   THE CONDITIONS OF THE CAVEAT TO THE ABEYANCE EFFECTIVELY NEGATE THE ABEYANCE

The two conditions the Parties impose on their offer to hold the Subpoena in abeyance as to the Non-Core SSEs negate any relief the offered abeyance would provide to the Non-Core SSEs. Satisfying the conditions requires the Non-Core SSEs to make certifications that either require Non-Core SSEs to undertake document search efforts that would negate the purpose of the abeyance or to make a certification about other entities that a Non-Core SSE does not have the knowledge or basis to make. The Parties represent the abeyance as a means of reducing the burden imposed on the Non-Core SSEs, but the two conditions imposed on its invocation preclude the purported abeyance from having that effect.

### A.   The Parties' Demand For A Certification That The Non-Core SSEs Have No Responsive Documents Is Unworkable

The Non-Core SSEs cannot fully evaluate the caveat the Parties' put on holding the Subpoena as to the Non-Core SSEs in abeyance because the motions appear to move against the Non-Core SSEs on *all* of requests that are subject to the Motions to Compel, not a more narrowed list to which the Parties had previously agreed during the meet and confer process.[36] In a letter dated October 14, 2015, the Parties proposed a narrowed list of requests for the finance and credit, insurance, design, R&D, and banking and capital entities.[37] The Parties'

---

[36]  Ex. 11 (Dec. 18 Letter at 2-6).
[37]  *See* Ex. 8 (Oct. 14, 2015 Letter at 3-4).

November 24, 2015 letter proposed narrow requests for all SSEs,[38] which the SSEs understood as narrowing the requests applicable to the Non-Core SSEs,[39] but the Parties did not confirm this understanding.  Indeed, the Motions to Compel make no reference to these narrowed requests and instead appear to seek to compel responses as to all the requests identified in the respective motions.

The sheer breadth of Subpoena in terms of duration and scope demonstrates that the Parties' offer to condition the abeyance on a certification that a Non-Core SSE has no responsive documents whatsoever is an illusory offer.  Even as narrowed, the requests imposed undue burdens.  But without the narrowing, the Non-Core SSEs do not even have a meaningful starting point to assess how to search for and produce documents in response to the Motions to Compel and Subpoena.  Thus, the Parties conditioning the Subpoena on a Non-Core SSE certifying that it has no responsive documents whatsoever is unworkable and negates the abeyance.

**B.    The Parties' Caveat Condition Requiring The Non-Core SSEs To Make A Certification As To The Production Of Third Parties Is Improper**

The second prong of the Parties' "caveat" is equally impractical.  It conditions the abeyance upon a Non-Core SSE's assurances regarding future productions by other Subpoena recipients.  Non-Core SSEs cannot provide absolute assurances as to what information other subpoenaed entities might possess, much less what those entities will produce, and therefore cannot possibly satisfy the second method of having the Subpoena held in abeyance.  The other subpoenaed entities are distinct corporate entities, with their own priorities, privileges, and protections.  Moreover, even if a Non-Core SSE were somehow able to provide an assurance that another entity possesses the responsive information the Parties seek, there is no way for a Non-Core SSE to know whether the Parties will find that such can be "*readily* obtained" from a core

---

[38]  Ex. 10 (Nov. 24, 2015 Letter at 2-6).
[39]  Ex. 11 (Dec. 18, 2015 Letter at 2-6).

entity, as required by the February 4, 2016 letter.[40]  Thus, the Parties conditioning the abeyance on the Non-Core SSEs providing an assurance as to what the Parties will obtain from other subpoenaed entities is unfeasible and negates the relief the abeyance would otherwise provide.

## Conclusion

For the foregoing reasons, the Motions to Compel as directed towards the Non-Core SSEs (identified *supra* at 1 n.1) should be denied in all respects.

---

[40]   Ex. 18 (Feb. 4, 2016 Letter at 1 (emphasis added)).

Dated:  February 19, 2016                    Respectfully submitted:

### On Behalf of Certain BMW Entities

*/s Richard Kruger* _____          */s Daniel S. Savrin* _____
Richard E. Kruger (P57142)                    Daniel S. Savrin
Jaffe, Raitt, Heuer & Weiss, P.C.             Nathaniel Bruhn
27777 Franklin Road, Suite 2500               MORGAN LEWIS
Southfield, Michigan 48034                    One Federal Street
(248) 351.3000                                Boston, MA  02110-1726
rkruger@jaffelaw.com                          (617) 951.8674
                                              daniel.savrin@morganlewis.com
                                              nathaniel.bruhn@morganlewis.com

*Attorneys for BMW Financial Services NA, LLC; BMW (US) Holding Corp.; BMW Bank of North America; BMW Insurance Agency, Inc.; BMW US Capital, LLC; Designworks/USA, Inc.*

### On Behalf of Certain Chrysler Entities

*/s Cheryl A. Bush* _____          */s Colin R. Kass* _____
Cheryl A. Bush (P37031)                       Colin R. Kass (admission pending)
Susan McKeever (P73533)                       Scott M. Abeles (admission pending)
BUSH SEYFERTH & PAIGE PLLC                     PROSKAUER ROSE LLP
3001 W. Big Beaver Road, Suite 600            1001 Pennsylvania Ave., N.W.
Troy, MI 48084                                Washington, D.C.  20004
(248) 822-7800                                (202) 416.6800
bush@bsplaw.com                               ckass@proskauer.com
                                              sabeles@proskauer.com

                                              David A. Munkittrick
                                              PROSKAUER ROSE LLP
                                              11 Times Square
                                              New York, New York 10036
                                              (212) 969.3000
                                              dmunkittrick@proskauer.com

*Attorneys for Fiat Chrysler Finance North America, Inc.*

14

**On Behalf of Certain Daimler Entities**

*/s Dominic Surprenant*
Dominic Surprenant
Nithin Kumar
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443.3000
dominicsurprenant@quinnemanuel.com

*Attorneys for Mercedes-Benz Advanced Design of North America Inc.; Mercedes-Benz Credit Corp.; Mercedes-Benz Financial Services USA LLC; Mercedes- Benz Research & Development North America, Inc. (CA); Mercedes-Benz Research & Development North America, Inc. (MI)*

**On Behalf of Certain Honda Entities**

*/s Justina Sessions*
Daniel Purcell
Justina Sessions
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400
dpurcell@kvn.com
jsessions@kvn.com

*Attorneys for American Honda Finance Corp*

**On Behalf of Certain Hyundai/Kia Entities**

*/s Meredith Jones Kingsley*

Meredith Jones Kingsley
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-4793
meredith.kingsley@alston.com

*Attorney for Hyundai America Technical Center, Inc.*

*/s Susan R. Peck*

Susan R. Peck (Application for Admission
Submitted and Pending)
Jessica B. Avery (Application for Admission
Submitted and Pending)
LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660
(949) 250-9954
susan.peck@lhlaw.com
jessica.avery@lhlaw.com

*Attorneys for Hyundai Capital America*

*/s Shon Morgan*

Shon Morgan
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com

*Attorneys for Hyundai AutoEver America, LLC*

**On Behalf of Certain Mitsubishi Entities**

*/s Elizabeth A. McNellie*

Elizabeth A. McNellie
Robert J. Tucker (Co-signing under L.R. 83.20)
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, OH 43215
(614) 228.1541
emcnellie@bakerlaw.com
rtucker@bakerlaw.com

*Attorneys for Mitsubishi Motors Credit of America, Inc. and Mitsubishi Motors R&D of America, Inc.*

**On Behalf of Certain Nissan Entities**

*/s Catalina J. Sugayan*
Catalina J. Sugayan
Anthony J. Anscombe (Admission Pending)
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606
(312) 641.9050
Catalina.sugayan@sedgwicklaw.com
anthony.anscombe@sedgwicklaw.com

*Attorneys for Nissan Motor Acceptance Corp.*

**On Behalf of Certain Subaru Entities**

*/s Neal Walters*
Neal Walters
Michael R. Carroll
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
(856) 761.3452
carrollm@ballardspahr.com

*Attorneys for Subaru Leasing Corp.; Fuji Heavy Industries U.S.A., Inc.*

**On Behalf of Certain VW Entities**

*/s Paul T. Collins*
Paul T. Collins
NELSON MULLINS RILEY & SCARBOROUGH LLP
Meridian, 17th Floor
1320 Main Street
Columbia, SC  29201
(803) 255-9747
Paul.Collins@nelsonmullins.com

*/s Timothy J. Fitzgibbon*
Timothy J. Fitzgibbon
NELSON MULLINS RILEY & SCARBOROUGH LLP
101 Constitution Avenue, N.W., Suite 900
Washington, D.C. 20001
(202) 712.2812
Tim.Fitzgibbon@nelsonmullins.com

*Attorneys for Volkswagen Credit Inc.*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Opposition To The Parties' Motions To Compel By Specifically Subpoenaed Entities Whom The Parties Describe As "Non-Core" was filed via the Court's ECF system on February 19, 2016.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Shon Morgan*
Shon Morgan