UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| IN RE: WIRE HARNESS | : | Case No. 2:12-cv-00103-MOB-MKM |
| IN RE: INSTRUMENT PANEL CLUSTERS | : | Case No. 2:12-cv-00203-MOB-MKM |
| IN RE: FUEL SENDERS | : | Case No. 2:12-cv-00303-MOB-MKM |
| IN RE: HEATER CONTROL PANELS | : | Case No. 2:12-cv-00403-MOB-MKM |
| IN RE: OCCUPANT SAFETY RESTRAINT SYSTEMS | : : | Case No. 2:12-cv-00603-MOB-MKM |
| IN RE: ALTERNATORS | : | Case No. 2:13-cv-00703-MOB-MKM |
| IN RE: RADIATORS | : | Case No. 2:13-cv-01003-MOB-MKM |
| IN RE: STARTERS | : | Case No. 2:13-cv-01103-MOB-MKM |
| IN RE: SWITCHES | : | Case No. 2:13-cv-01303-MOB-MKM |
| IN RE: IGNITION COILS | : | Case No. 2:13-cv-01403-MOB-MKM |
| IN RE: MOTOR GENERATORS | : | Case No. 2:13-cv-01503-MOB-MKM |
| IN RE: STEERING ANGLE SENSORS | : | Case No. 2:13-cv-01603-MOB-MKM |
| IN RE: HID BALLASTS | : | Case No. 2:13-cv-01703-MOB-MKM |
| IN RE: INVERTERS | : | Case No. 2:13-cv-01803-MOB-MKM |
| IN RE: AIR FLOW METERS | : | Case No. 2:13-cv-02003-MOB-MKM |
| IN RE: FUEL INJECTION SYSTEMS | : | Case No. 2:13-cv-02203-MOB-MKM |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | : : | Case No. 2:13-cv-02403-MOB-MKM |
| IN RE: VALVE TIMING CONTROL DEVICES | : : | Case No. 2:13-cv-02503-MOB-MKM |
| IN RE: ELECTRONIC THROTTLE BODIES | : : | Case No. 2:13-cv-02603-MOB-MKM |
| THIS DOCUMENT RELATES TO ALL END - PAYOR ACTIONS | : : | |

**OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT**

Class Member, Jim Sciaroni, hereby objects to the proposed class action settlement in the proceeding known as *In Re: Automotive Parts Antitrust Litigation* as referenced above and to the appropriate defendant with respect to the unique facts of this objector.

My name is Jim Sciaroni, and I reside at 19 Savannah Avenue, San Anselmo, CA 94960, telephone 415-699-1357. On July 6, 2013, I purchased from Toyota Marin in San Rafael, CA a 2013 Toyota Camry Hybrid, VIN #4T1BD1FK3DU079752 in the amount of $28,656.00, plus fees, maintenance contract, license, etc. for a total financed amount of $31,512.38, plus a $500 deposit, for a total final cost in the amount of $32,032.38. Attached as Exhibit A is my Loan

Agreement as proof of my purchase during the relevant time period.  Therefore, I am a Class Member.  I have read the Class Notice and find the settlement unfair as follows:

## INSUFFICIENT CLASS DEFINITION

The Court should deny Final Approval because the Class definition is not sufficiently definite. Before a court may certify a class pursuant to Rule 23, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) (citing 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997); see also *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition. Similarly, a reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition. Id. (citing Moore's Federal Practice § 23.21[3]). Here, the Class is defined as anyone who at any time from 1998 to 2015: (1) bought or leased a new motor vehicle in the U.S. (not for resale), or (2) paid to replace one or more of the new motor vehicle parts identified in the settlement agreements (not for resale). The Class definition has no reference to damages or injury, or to any specific geographical boundaries other than the entire United States. The Class definition is overbroad and void of any objective criteria that would put an absent Class Member on notice that his or her rights are before the Court.  Because the Class definition is not sufficiently definite, the Court should deny Final Approval.

## PROPOSED SETTLEMENTS CREATE INCURABLE MANAGEABILITY ISSUES

The Court should deny Final Approval pursuant to Rule 23(b)(3)(D) because the proposed Settlements create incurable manageability issues that invite mini-trials and fraudulent claims. The function of the Class Action device is to aggregate individual claims for the purpose of judicial and economic efficiency. In order to do so, the Court must be able to ascertain the Class. *See e.g. Kent v. SunAmerica Life Ins. Co.,* 190 F.R.D. 271, 278 (D. Mass. 2000) (ascertainablity is "essential . . . for a court to decide and declare . . . who will share in any recovery"). "It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by

fraudulent or inaccurate claims." *Carrera v. Bayer Corp.*, 727 F.3d 300, 310 (3rd Cir. 2013); *see also Jenkins v. White Castle Mgmt. Co.*, No. 12 CV 7273, 2015 WL 832409, *3 (N.D. Ill. Feb. 25, 2015) ("[P]roceeding with an ascertainable class safeguards the rights of both the parties and absent class members."). "A trial court should ensure that class members can be identified without extensive and individualized fact-finding or 'mini-trials,' a determination which must be made at the class certification stage." *Carrera* at 307 (internal quotation marks omitted) (quoting *Marcus v. BMW of North America LLC*, 687 F.3d 583, 594). Rule 23(b)(3) requires a finding that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The Court cannot reasonably make such a finding.

The Court must gather the requisite information to ascertain and manage the proposed class. *See e.g. Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) (affirming class certification where there was a "reliable and administratively feasible" method for assessing class membership). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593. Here, the Settlement Administrator has no reliable and administratively feasible method for verifying and processing claims, and calculating the amount of the recovery for each Claimant. In fact, there are no records whatsoever to determine class membership.

The Parties cannot rely on Claimants to self-identify as valid Class Members. *See e.g. Young v. Nationwide; see also Karhu v. Vital Pharmaceuticals, Inc.*, No. 14-11648, 2015 WL 3560722, at *2-4 (11th Cir. June 9, 2015) (unpublished) (holding that plaintiffs cannot satisfy the ascertainability requirement by proposing that class members self-identify, such as with sworn affidavits, without first establishing that self-identification would be "administratively feasible and not otherwise problematic"). The lack of internal data from Defendants means that the only way the Court and the Administrator could confirm class membership is through the use of either claimant affidavits or mini-trials. In both *Young v. Nationwide* and *Rikos v. Procter Gamble*, defendants possessed some internal data to confirm valid class member status. See *Young* at 539; *Rikos et al. v. The Procter & Gamble Co.*, No. 14-4088, 33-35 (6th Cir. Aug 20, 2015). The Sixth Circuit affirmed the district court in both *Young* and *Rikos* on the basis that internal data combined with supplemental information, such as receipts and affidavits, cured ascertainability defects. Such is not the case here. Based on the Class definition in the proposed Settlement Agreements, anyone could claim class membership and take advantage of settlement relief, which harms valid Class

Members and dilutes relief. Similarly, some Class Members may want to pursue litigation on their own. For those Class Members, they will not know whether or not these Settlements preclude their claims. Because the proposed Settlements demand individualized procedures to determine class membership, the Class is neither ascertainable nor manageable and mini-trials would be necessary to determine class membership, which would suffocate any aggregate efficiency of the class action mechanism. The inability to determine who is and is not a Class Member also means that individual issues predominate over class issues. Defendants have no internal data to identify class member status and, based on Sixth Circuit precedent, it would be an abuse of discretion to certify the Class and grant final approval. The Court should deny Final Approval because the Court cannot ascertain and manage the proposed Class and because individual issues predominate over Class issues.

## CLASS NOTICE FAILS TO MEET DUE PROCESS REQUIREMENTS

The Class Notice does not meet the requirements of due process. It is unfair to subject people to a binding judicial proceeding in which their rights or interests are at stake without telling them about it first. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). "Ascertainability . . . allow[s] potential class members to identify themselves for purposes of opting out of a class." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013); see also *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 325 (S.D. Ill. 2009) (finding that the ascertainability requirement "is necessary to provide the best notice that is practicable under the circumstances") (internal quotation marks omitted); Manual for Complex Litigation § 21.222 (4th ed. 2004) ("The membership of the class must be ascertainable . . . [b]ecause individual class members must receive the best notice practicable and have an opportunity to opt out . . . ."); 1 Rubenstein, supra note 14, § 3:2, at 157 (explaining that some courts impose an ascertainability requirement to facilitate notice). Due process requires the best notice practicable under the circumstances. "Ascertainability is needed for properly enforcing the preclusive effect of final judgment. The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); see also *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (finding unascertainable a class of entities making claims on the estate of an art collector from whom Nazis expropriated an abstract expressionist painting). Ascertainability is supposed to clarify claim preclusion not just for the court, but for potential litigants who need to reach their own conclusion about whether

individual litigation is possible. The Third Circuit noted that "[i]f a class cannot be ascertained in an economical and 'administratively feasible' manner[,] significant benefits of a class action are lost." *Carerra*, 727 F.3d 300, 307 (3d Cir. 2013). Here, the Notice provided to the Class is not the best notice practicable because the Class is not clearly defined so that the public can read it, determine class membership, and decide whether or not to participate in the settlement. The Notice deficiencies harm both absent Class Members that want to participate in the Settlements, and those that would rather request exclusion and file individual actions.

### SETTLEMENT RELEASES BAR FUTURE ANTITRUST CLAIMS FOR NEW PRODUCTS

Final Approval should be denied because the settlement releases bar future antitrust claims for new products. Autoliv Settlement Agreement at ¶ 20; Fujikara Settlement Agreement at ¶ 22; Hitatchi Settlement Agreement at ¶ 25; Lear and KL Sales Settlement Agreement at ¶ 18; Nippon Seiki Settlement Agreement at ¶ 20; Panasonic Settlement Agreement at ¶ 21; Sumitomo Settlement Agreement at ¶ 21; TRAD Settlement Agreement at ¶ 23; TRW Settlement Agreement at ¶ 20; Yazaki Settlement Agreements at ¶ 20. The proposed settlement releases run afoul of Rule 23's requirement for common questions of fact and law. A release of future claims is contrary to Rule 23 because neither the Class nor the Court can know what common questions or facts there will be in the future. The risks of future-conduct releases to class members are substantially greater than the risks of past-conduct releases because they do not share common questions of facts and law and, as a result, class members are unable to meaningfully assess the value of the release in comparison to the proposed relief.

The proposed releases also violate the factual predicate rule. Releases of future conduct must apply only to claims arising out of conditions that existed prior to the settlement. *See Moulton v. U.S. S. Corp.*, 581 F.3d 344, 349 (6th Cir. 2009); *see also Olden v. Gardner*, 294 Fed.Appx. 210, 220 (6th Cir. 2008). In *Moulton*, the Sixth Circuit affirmed the approval of a settlement release that included future conduct because the release applied "only to claims arising out of conditions that existed prior to the settlement." *Moulton* at 350. Based on the Sixth Circuit's analysis however, the release in *Moulton* would have been impermissible had it applied to claims for new equipment. *Id*. Here, the Settlement Releases are not limited to old products. Considering that the Settlements presented here include everyone in the United States that bought or leased a car within the last two decades, the overbroad release of future conduct shields defendants from future antitrust claims

based on new products. The expansive releases could also inhibit future government actions against defendants. The Releases should be limited to Defendants' past conduct and any released claims should be limited to the Class Period and products in existence within the Class Period.

## CREATION OF SUBCLASSES MAY CORRECT ISSUES RAISED ABOVE

Plaintiffs may be able to correct the issues identified above through the creation of subclasses. For a purchaser/lessor subclass, the Parties would need to first identify specific makes and models that contained Defendants products. For a replacement subclass, the Court could certify a subclass if Defendants have internal data that can be cross-referenced with Claimant affidavits. A new round of publication notice would be required.

## CLASS COUNSEL HAS FAILED TO SHOW FEE REQUEST IS REASONABLE

Class Counsel has not met its burden of demonstrating that its fee request of 30% of the settlement benefits is reasonable. *See Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1152 (6th Cir. 1998) ("The district court should pay particularly close attention to counsel's fee requests, because this money comes from the beneficiaries, not from the defendants."). The complexity of the issues is a significant factor to be considered in making a fee award. If the Court approves the Settlements, which it should not, the Court should limit Class Counsel's fee award to the value attributed to it as opposed to the Department of Justice. *See, e.g., Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53-54 (2d Cir. 2000) (4% fee awarded, in part because counsel benefitted from work done by federal authorities); *see also Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1259 (C.D. Cal. 1997) (court reduced "benchmark" percentage to 10% due to government's involvement). Class Counsel owes the Department of Justice significant credit; the Department of Justice engaged in significant pre-complaint investigation efforts, prosecuted defendants for their antitrust violations, and secured convictions. The Department of Justice began investigating criminal price-fixing and bid-rigging conspiracies years before Class Counsel filed any suits. In September 2011, the Department of Justice secured its first criminal convictions against Furukawa Electric Co. Ltd. for its role in a criminal price-fixing and bid-rigging conspiracy involving the sale of parts to automobile manufacturers. Class Counsel did not file any suit prior to 2012 and used information from the criminal convictions within its complaints. Because the Department of Justice's investigations and convictions paved the way for Class Counsel's actions, the risk and complexity of the actions to Class Counsel was minimal. The Department of Justice's actions dramatically

increased Class Counsel chances of success, thus, Class Counsel's fee request is unreasonable and unsupported. *See, e.g., In re First Databank Antitrust Litigation*, 209 F. Supp. 2d 96, 98 (D.D.C. 2002) (reducing fee award due to Federal Trade Commission's work reducing risk and complexity to counsel). The Court should reduce Class Counsel's fee request to 10% because the Department of Justice's legwork significantly reduced Class Counsel's risk bringing these actions and increased its chances of success.

_____
Jim Sciaroni, Objector

Dated: March 25, 2016

        Dated: March 25, 2016

        By: /s/ Joseph J. Dadich, Esq.
          Joseph J. Dadich, Esq. Attorney for Objector
           Dadich & Associates, PLLC
           2844 Livernois Rd., #4292
           Troy, MI 48099
           Telephone: 586-604-9168
           Facsimile: 248-479-1710
           E-Mail: joedadich@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on March 25, 2016, and served by the same means on all counsel of record.

/s/ Joseph J. Dadich, Esq.

**(WITH ARBITRATION PROVISION)**

| Dealer Number 04563 | Contract Number 147477 | R.O.S. Number 28763620 | Stock Number D15399 |
|---|---|---|---|
| DATE: 07/06/2013 | CONTROL # D15399 | | Salesperson: JOHN HATHAWAY |

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JAMES CHARLES SCIARONI<br>19 SAVANNAH AVE<br>SAN ANSELMO, CA 94960<br>MARIN | N/A | TOYOTA MARIN<br>445 E. FRANCISCO BLVD<br>SAN RAFAEL, CA 94901 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2013 | TOYOTA CAMRY HYBRID | 74 | 4T1BD1FK0DU081121 | Personal, family or household unless otherwise indicated below.<br>☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $500.00 is |
|---|---|---|---|---|
| 0.00 % | $ 0.00 (e) | $ 31512.38 | $ 31512.38 (e) | $ 32012.38 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| 59 | 525.20 | Monthly beginning 10/04/2013 |
| N/A One final payment | N/A 525.58 | N/A 09/04/2018 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE
**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | | Term | Premium |
|---|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | | N/A Mos. | $ N/A |
| Medical N/A | | N/A Mos. | $ N/A |
| N/A | | N/A Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | | $ N/A (a) |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____
Co-Buyer X N/A
Seller X _____ TOYOTA MARIN

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Application for Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos. | | $ N/A |
| Credit Disability | N/A Mos. | | $ N/A |
| Total Credit Insurance Premiums | | | $ N/A (b) |

Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

1. Total Cash Price
   A. Cash Price of Motor Vehicle and Accessories — $ 28545.00 (A)
     1. Cash Price Vehicle — $ 28545.00
     2. Cash Price Accessories — $ N/A
     3. Other (Nontaxable)
        Describe N/A — $ N/A
        Describe N/A — $ N/A
   B. Document Processing Charge (not a governmental fee) — $ 80.00 (B)
   C. Emissions Testing Charge (not a governmental fee) — $ N/A (C)
   D. (Optional) Theft Deterrent Device (to whom paid) N/A — $ N/A (D)
   E. (Optional) Theft Deterrent Device (to whom paid) N/A — $ N/A (E)
   F. (Optional) Theft Deterrent Device (to whom paid) N/A — $ N/A (F)
   G. (Optional) Surface Protection Product (to whom paid) N/A — $ N/A (G)
   H. (Optional) Surface Protection Product (to whom paid) N/A — $ N/A (H)
   I. EV Charging Station (to whom paid) N/A — $ N/A (I)
   J. Sales Tax (on taxable items in A through I) — $ 2433.13 (J)
   K. Electronic Vehicle Registration or Transfer Charge
      (not a governmental fee) (to whom paid) AVRS — $ 20.50 (K)
   L. (Optional) Service Contract (to whom paid) N/A — $ N/A (L)
   M. (Optional) Service Contract (to whom paid) THIS (?) — $ 650.00

Exhibit A

E. (Optional) ___ (E)
F. (Optional) Theft Deterrent Device (to whom paid) ___ $ N/A (F)
G. (Optional) Surface Protection Product (to whom paid) N/A ___ $ N/A (G)
H. (Optional) Surface Protection Product (to whom paid) N/A ___ $ N/A (H)
I. EV Charging Station (to whom paid) N/A ___ $ N/A (I)
J. Sales Tax (on taxable items in A through I) $ 2433.13 (J)
K. Electronic Vehicle Registration or Transfer Charge
   (not a governmental fee, to whom paid) AVRS ___ $ 20.50 (K)
L. (Optional) Service Contract (to whom paid) ___ $ N/A (L)
M. (Optional) Service Contract (to whom paid) TMS (TAC) ___ $ 650.00 (M)
N. (Optional) Service Contract (to whom paid) N/A ___ $ N/A (N)
O. (Optional) Service Contract (to whom paid) N/A ___ $ N/A (O)
P. (Optional) Service Contract (to whom paid) N/A ___ $ N/A (P)
Q. Prior Credit or Lease Balance paid by Seller to
   N/A ___ (e) $ N/A (Q)
   (see downpayment and trade-in calculation)
R. (Optional) Gap Contract (to whom paid) ___ $ N/A (R)
S. (Optional) Used Vehicle Contract Cancellation Option Agreement $ N/A (S)
T. Other (to whom paid) N/A ___
   For N/A ___ $ N/A (T)

Total Cash Price (A through T) $ 31228.63 (1)

2. **Amounts Paid to Public Officials**
   A. Vehicle License Fees         Estimated   $ 195.00 (A)
   B. Registration/Transfer/Titling Fees  Estimated  $ 80.00 (B)
   C. California Tire Fees                   $ 8.75 (C)
   D. Other N/A                              $ 0.00 (D)
   Total Official Fees (A through D)         $ 283.75 (2)

3. **Amount Paid to Insurance Companies**
   (Total premiums from Statement of Insurance column a + b)  $ N/A (3)

4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee  $ 0.00 (4)

5. **Subtotal** (1 through 4) $ 32012.38 (5)

6. **Total Downpayment**
   A. Agreed Trade-In Value  Yr N/A  Make N/A   $ N/A (A)
      Model N/A   Odom N/A
      VIN N/A
   B. Less Prior Credit or Lease Balance (e)   $ N/A (B)
   C. Net Trade-In (A less B) (indicate if a negative number) $ N/A (C)
   D. Deferred Downpayment                     $ N/A (D)
   E. Manufacturer's Rebate                    $ N/A (E)
   F. Other LOYALTY CASH                       $ 500.00 (F)
   G. Cash                                     $ N/A (G)
   Total Downpayment (C through G)             $ 500.00 (6)
   (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1Q above)

7. **Amount Financed** (5 less 6) $ 31512.38 (7)

---

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: N/A
Amount $ N/A   Finance Charge $ N/A
Total $ N/A    Payable in N/A
installments of $ N/A   $ N/A
from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable:
N/A

---

sign and agree to pay the extra cost. Credit life insurance is figured on the original payment schedule. The insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).
You want to buy the credit insurance.

| N/A | X N/A | N/A |
|---|---|---|
| Date | Buyer Signature | Age |
| N/A | X N/A | N/A |
| Date | Co-Buyer Signature | Age |

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1R of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A  Mos.  N/A
                Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X N/A

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1L, 1M, 1N, 1O, and/or 1P.

1L Company N/A
Term N/A  Mos. or  N/A  Miles
1M Company TMS (TAC)
Term 60  Mos. or 56000  Miles
1N Company N/A
Term N/A  Mos. or  N/A  Miles
1O Company N/A
Term N/A  Mos. or  N/A  Miles
1P Company N/A
Term N/A  Mos. or  N/A  Miles

Buyer X ___

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X ___
Co-Buyer Signs X N/A

---

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X ___                                    X N/A
Buyer                                    Co-Buyer

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X ___                        Co-Buyer Signs X N/A

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A , Year N/A . SELLER'S INITIALS ___

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

Exhibit A

**Agreement to Arbitrate:** By signing below, you agree that pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____  Co-Buyer Signs X _____

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____, Year ____. SELLER'S INITIALS ____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _____  X _____

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund.

Buyer Signature X _____  Co-Buyer Signature X _____

**Notice to buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____  Co-Buyer Signature X _____

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____ Date _____  Co-Buyer Signature X _____ Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____  Address _____

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X _____ Date _____  Guarantor X _____ Date _____
Address _____  Address _____

Seller Signs _____ Date _____ By X _____ Title _____

**LAW® FORM NO. 553-CA-ARB** (REV. 7/13) U.S. PATENT NO. D460,782
©2013 The Reynolds and Reynolds Company TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

CUSTOMER/TRUTH IN LENDING COPY

**Exhibit A**