```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3                            —    —    —

 4   IN RE:  AUTOMOTIVE PARTS          Master File No. 12-02311
     ANTITRUST LITIGATION
 5   _____   Hon. Marianne O. Battani

 6

 7
                            FAIRNESS HEARING
 8
               BEFORE THE HONORABLE MARIANNE O. BATTANI
 9                   United States District Judge
                Theodore Levin United States Courthouse
10                    231 West Lafayette Boulevard
                           Detroit, Michigan
11                     Wednesday, May 11, 2016

12
     APPEARANCES:
13
     FOR THE PLAINTIFFS:    MARC M. SELTZER
14                          SUSMAN GODFREY, L.L.P
                            190 Avenue of the Stars, Suite 950
15                          Los Angeles, CA  90067
                            (310) 789-3102
16

17                          HOLLIS L. SALZMAN
                            ROBINS, KAPLAN, MILLER & CIRESI,
18                          L.L.P.
                            601 Lexington Avenue, Suite 3400
19                          New York, NY  10022
                            (212) 980-7405
20
                            STEVEN N. WILLIAMS
21                          COTCHETT, PITRE & McCARTHY, L.L.P.
                            840 Malcolm Road
22                          Burlingame, CA  94010
                            (650) 697-6000
23

24
             To obtain a copy of this official transcript, contact:
25                Robert L. Smith, Official Court Reporter
                  (313) 964-3303 • rob_smith@mied.uscourts.gov
```

```
 1   APPEARANCES:  (Continued)

 2   FOR THE DEFENDANTS:    JEFFREY L. KESSLER
                           WINSTON & STRAWN, L.L.P.
 3                         200 Park Avenue
                           New York, NY  10166
 4                         (212) 294-4655

 5
                           PETER L. SIMMONS
 6                         FRIED, FRANK, HARRIS, SHRIVER &
                           JACOBSON, L.L.P.
 7                         One New York Plaza
                           New York, NY  10004
 8                         (212) 859-8455

 9
     ON BEHALF OF THE      MARLA LINDERMAN
10   OBJECTORS:            LINDERMAN LAW, P.L.L.C.
                           9524 Portage Trail
11                         White Lake, MI 48286
                           (734) 368-1209
12

13                         GEORGE W. COCHRAN
                           LAW OFFICES OF GEORGE W. COCHRAN
14                         1385 Russell Drive
                           Streetsboro, OH 44241
15                         (330) 607-2187

16
                           N. ALBERT BACHARACH, JR.
17                         LAW OFFICE OF N. ALBERT BACHARACH, JR.
                           4128 NW 13th Street
18                         Gainesville, FL  32609-1807
                           (352) 378-9859
19

20
     OTHER APPEARANCES:    R. SCOTT PALMER
21                         OFFICE OF THE ATTORNEY GENERAL, STATE
                           OF FLORIDA
22                         The Capital, PL-01
                           Tallahassee, FL  32399
23                         (850) 414-3300

24   (Please note, appearances of attorneys listed are only those
               that presented argument before the Court.)
25
```

TABLE OF CONTENTS

                                                            Page

Fairness Hearing
by Mr. Seltzer.................................... 4

Objections by Objectors
by Ms. Linderman..................................38
by Mr. Cochran....................................52
by Mr. Bacharach..................................60

Reply by Mr. Seltzer..............................62

Ruling by the Court...............................67

1    Detroit, Michigan

2    Wednesday, May 11, 2016

3    at about 3:05 p.m.

4                        _    _    _

5              (Court and Counsel present.)

6              THE LAW CLERK:  Please rise.

7              The United States District Court for the Eastern

8    District of Michigan is now in session, the Honorable

9    Marianne O. Battani presiding.

10             You may be seated.

11             THE COURT:  Good afternoon.  All right.  This is

12   the end payor's motion for final approval of the settlement,

13   and it is the final hearing.  Who is going to proceed on

14   this?  Counsel.  And we do have objections so you let me

15   know -- I would like those listed by name so the record is

16   clear.

17             MR. SELTZER:  Yes, Your Honor.  Very well, Your

18   Honor.  Mark Seltzer on behalf of end payor plaintiffs.

19             If it please the Court, I would like to make the

20   presentation in support of the final approval of the

21   settlements that are now before the Court, as well as the fee

22   and cost application that class counsel have submitted.

23             Let me begin by saying that I think these

24   settlements represent a truly remarkable achievement for the

25   class.  They total about $225 million in cash plus other

 1    benefits.  They are actually separate settlements, each one

 2    stands on its own two feet, but that's what they total.  I

 3    think they are each fair, reasonable and adequate taken

 4    separately as well as collectively.

 5         These settlements were obtained after years of

 6    hard-fought litigation and arm's-length bargaining, and Your

 7    Honor knows full well having lived through this case how hard

 8    fought the issues have been that have brought us to this day.

 9         The settlements were negotiated over many months.

10    The agreements themselves are quite detailed in terms of what

11    they provide.  Each term was a subject of negotiation, so

12    this is something that was a product of hard bargaining.

13         Settlements are very carefully constructed.  In

14    addition to the cash benefits and those cash payments have

15    been deposited into interest-bearing escrow accounts for the

16    benefit of the class, they also provide for very elaborate

17    discovery cooperation provisions.  Those provisions have

18    already proved invaluable to us in the prosecution of our

19    case against some of the settling defendants as well as the

20    non-settling defendants as to whom the case now proceeds.

21         We have received proffers of evidence from

22    attorneys representing the settling defendants as well as

23    witnesses who have percipient knowledge of the conduct at

24    issue in this litigation, plus we have gotten valuable

25    documents as part of that process which will assist us and

1    have assisted us very greatly in terms of the prosecution of

2    the case.  I can't stress enough how valuable those non-cash

3    benefits are for the class.

4         Second, in terms of additional benefits, in terms

5    of cooperation, we have received transactional data regarding

6    sales and other information concerning the sales of the

7    products at issue which are highly useful, if not necessary,

8    for our experts to be able to evaluate issues relating to

9    common impact and damages in these cases, and that again has

10   been part of the process of these settlements, and each

11   settlement provides that the defendants will make that data

12   available to us and provides in great detail what is to be

13   provided.

14        In addition to that, Your Honor, the settlements

15   also provide and many of them do for injunctive relief, a

16   provision that requires the defendants to agree not to engage

17   in the conduct that gave rise to the complaints that were

18   filed against them for a period of two years.  That's also a

19   substantial benefit to the class.

20        With respect to the settlements, we were very

21   careful to negotiate the releases.  The releases carve out,

22   for example, claims based upon parts that were not part of

23   the settlement.  So if a defendant is liable for a different

24   part that's not covered by the settlement, the claim related

25   to that part is not released.

 1          And lastly, Your Honor, the settlements are partial

 2    and that's very important because the settlements provide

 3    that the sales of the settling defendants remain in the case

 4    as against the non-settling defendants.  Under the law the

 5    plaintiffs are entitled to pursue claims against the

 6    non-settling defendant on a joint and several basis for the

 7    same sales that resulted in the settlements as far as these

 8    defendants are concerned.  Under the law the way it works is

 9    that if we were to prevail against the non-settling

10    defendants, get a verdict, we are entitled to treble damages,

11    the amount of settlement is deducted after trebling, so we

12    have given up very little in terms of pursuing the claims

13    against the remaining defendants.

14          So when you look at the total amount that has been

15    paid, plus what is reserved, plus what has been carved out, I

16    think the settlements, as I said at the start, are truly a

17    remarkable achievement.

18          In negotiating the settlements we took in account a

19    great deal of information.  We, of course, had the benefit of

20    the governmental proceedings and what was the subject of

21    guilty pleas and other wrongdoing that was conceded as part

22    of the criminal proceedings.  We also had the volume of

23    commerce data that the government used in setting of criminal

24    fines under the sentencing guidelines, but we also had

25    independent information regarding volume of commerce which

1   was an important factor in terms of assessing the settlement

2   amounts.  As part of the settlement process we demanded and

3   received for most of the defendants, nearly all of them, a

4   volume of commerce information that was over and above what

5   we received from the government and from third-party sources,

6   and we also utilized third-party sources as well to get that

7   information to make a judgment what would be a fair result in

8   this case with respect to these defendants.

9        Now, in terms of the case obviously of a case -- of

10  a case first filed once, the Department of Justice

11  investigation and criminal proceedings came to light, but our

12  case is broader than the Department of Justice's case as Your

13  Honor knows.  We named parties who were never named in the

14  criminal proceedings by the government.  We also alleged

15  claims that were broader than those that were brought by the

16  government, and Your Honor knows from the motion practice

17  that took place before you the defendants argue that we

18  should be confined to the four corners of the guilty pleas

19  and no more, and Your Honor rejected those arguments and

20  allowed our claim to proceed on a broader basis, we think

21  quite rightly, but that was a fight that we had to win in

22  order to be able to prosecute those claims.

23       We also had sued regarding so-called indirect

24  foreign sales, by that I mean a sale of a product to a

25  company in Europe or Japan which found its way or was

 1    intended to be in a car sold in the United States.  Those

 2    claims again were the subject of motion practice before the

 3    Court and we prevailed on that issue as well.  That's another

 4    factor that lends support towards the approach that we have

 5    taken in arriving at these settlements, but it also

 6    demonstrates the kinds of things that we had to deal with

 7    over and above what the Department of Justice did.

 8          Now, with respect to the Department of Justice case

 9    there is a critical distinction, and I know Your Honor is

10    very well aware of it.  In our case as compared to the

11    government we are going to have to prove at trial that there

12    was class-wide impact from the conspiracy, that's not part of

13    the government's case.  We also have to come up with a method

14    of demonstrating damages.  We think we can do it on an

15    aggregate class-wide basis but undoubtedly that's going to be

16    a battle that the Court is going to hear a lot about when we

17    have the class certification motion practice before Your

18    Honor as well as at trial, but that's -- those are issues

19    that we confront, the government doesn't confront, and

20    involves a great deal of work on our behalf to make a

21    credible threat.  Simply having a guilty plea without being

22    able to prove those other elements of a private plaintiff's

23    case gives the private plaintiff nothing, so that's what we

24    have to do to prosecute the case and that's what we are

25    doing.

1       And on top of that, Your Honor, as you know, the

2   Department of Justice didn't obtain any recovery for the

3   class.  In fact, in the guilty plea proceedings it is made

4   very clear that restitution is not being ordered.  Why?

5   Because that's going to be something that would be the

6   subject of the private civil actions, namely us, to seek

7   resolution on behalf of the class.  The government didn't

8   obtain restitution for us.  That's why, for example, some of

9   the cases that one or two of the objectors cited by

10  discounting the results here because there was a governmental

11  proceeding, those are cases oftentimes where the government

12  obtained a recovery for the class and so the class may have

13  had some additional recovery over and above that but that

14  recovery was something that the government accomplished and

15  provided to the class.  Nothing is being provided to the

16  class in this case by the government.

17       And our case has been made difficult -- more

18  difficult than the usual case for a couple of reasons.  First

19  of all, I hate to date myself but I have been doing these

20  kinds of cases for nearly 40 years, anti-trust class action

21  cases and other complex class action cases.  This is the

22  single most complicated antitrust class action case I have

23  ever seen in terms of the number of separate parts that are

24  involved, the relationships between the defendants and the

25  conspiracy or conspiracies that are alleged.  As you know,

```
 1   Your Honor, you have before you the question of whether we

 2   should amend the complaint to allege a broader conspiracy,

 3   and the Court denied that motion.  So right now we are

 4   dealing with the complaints as they originally stand, which

 5   allege a conspiracy on a part-by-part basis basically,

 6   although there are some exceptions to that.

 7          We don't -- we haven't given up on going broader,

 8   Your Honor, but that's still the state of affairs as we stand

 9   right now which makes this case extraordinarily complicated.

10   The management skills that are required not just by the Court

11   but also by plaintiffs' counsel in managing this kind of

12   litigation has called upon us to devote enormous resources on

13   our part to litigate this case to get us this result.

14          So the other thing we have been doing of course is

15   part of materials we have submitted in support of the fee

16   award but as well as the settlement, we have been working

17   with economists and industry experts to assist us in

18   developing the case and getting the case in shape ready to be

19   tried, and that's something again that we have had to do on

20   our own to prosecute the litigation.

21          In short, Your Honor, I think I speak for all of my

22   colleagues to say that we are very proud of the result that

23   we have achieved thus far and we are not over, we have other

24   settlements in the winds that Your Honor will be told about,

25   and we are continuing to prosecute the case against the
```

1    non-settling defendants, so this is a partial settlement or a

2    series of partial settlements at this juncture of the case.

3         I would submit, Your Honor, by any test the

4    settlements are -- meet the test of fairness, reasonableness

5    and adequacy, and they meet all of the factors that any court

6    in the United States has ever applied to an antitrust class

7    action settlement.  I would respectfully submit that the

8    settlement should be approved by the Court.

9         Now, we have some objections and I will deal with

10   those to the settlements.  First of all, there was, contrary

11   to a suggestion and I think one of the objectors, an

12   extremely elaborate notice programs regarding these

13   settlements as laid out in the materials from Kinsella, a

14   nationally prominent expert on class action notice.  We

15   described that in our motion papers and also in the response

16   to the objections.  Literally millions and millions of views

17   were provided of the notice and advising class members about

18   the settlement.  In addition, there was direct notice by mail

19   to those people to whom we had mailing lists, this is all

20   laid out in the declaration and I'm not going to go through

21   all the detail but I will recite for the Court that so far as

22   of today 50,000 class members -- nearly 50,000 have

23   registered on the website, the settlement website for the

24   claims administrator, so that they could be kept apprised of

25   the litigation and to be advised when the claim forms will be

1    submitted as part of the claims process, and that's without

2    any claim form or any claims administration process even

3    beginning.  So I think that demonstrates a high degree of

4    interest in the case as well as the reaction of the class,

5    which is favorable to the settlements.

6            Out of millions of potential class members we had a

7    handful of objectors, many of them have made a career out of

8    objecting to class-action settlements.  They have objected to

9    a large number of settlements, some more than others, with

10   kind of a standard boilerplate objection.  They make

11   objections that really aren't related to the settlements

12   before them, it is irrespective of the merits, and they do it

13   because of the practice that has gone on in this kind of

14   litigation, which I regard as very unsavory, which is to make

15   an objection with the hope of getting paid off to go away

16   without doing anything that improves the settlements or does

17   anything for the benefit of the classes.  I have seen it

18   growing more and more.  It used to be there were two or three

19   people that did it years ago and now there is a whole group

20   of like flying circus of people that go around to settlements

21   after settlements around the country and do this.

22           Now, certain of the objectors have withdrawn their

23   objections and they should be deemed to have been withdrawn

24   and have no further rights because one of the things that

25   objectors do to try to extract a reward for themself

 1    separately is to take an appeal from the inevitable denial of

 2    the objections which only has the effect of delaying the

 3    effectiveness of settlements, which works against the

 4    interest of the class and against the interest of finality of

 5    the settlements.  Some of the -- Mr. Sciaroni is one of the

 6    ones who withdrew, Margaret Marasco withdrew, Charlene Cross

 7    and Albert Graham also withdrew.  They have tried to rescind

 8    their withdrawal, that's a move I have never seen before in

 9    my entire life, but that's what they have done but those four

10    should be deemed --

11            THE COURT:  The first name was?

12            MR. SELTZER:  Sciaroni, it is S-C-I-A-R-O-N-I,

13    James Sciaroni.

14            THE COURT:  These are the ones that withdrew their

15    objections?

16            MR. SELTZER:  Yes.

17            THE COURT:  The notice of objection.

18            MR. SELTZER:  The others were Charlene Cross,

19    Albert Graham, who have now disputed their withdrawal, and

20    Margaret Marasco, who does not dispute her withdrawal.

21            In addition, there are two objectors who lack

22    standing because they didn't buy new motor vehicles.  One is

23    William Thompson, now, that's disputed as to one of his

24    vehicles but the papers that were just submitted last night

25    demonstrate that I think all of his cars that he bought were

1  used cars.  If you didn't buy a new motor vehicle you can't

2  possibly be a class member, or unless you bought a

3  replacement part.  His contention is based upon buying

4  vehicles but all of them appear to be used vehicles.  There

5  is one dispute as to a 2004 Corolla, but the materials that

6  he submitted look like a report from Carfax which shows that

7  that vehicle was owned by two owners from the time it was

8  first sold in 2004 to the time it was traded in by

9  Mr. Thompson, so I don't know how he can claim that he's a --

10  not the purchaser of a used vehicle.  So that's the -- those

11  are the facts as to him, so he should be deemed to be someone

12  without standing and not a class member, and that's the order

13  we would want from the Court.

14         Next is Shawn Odweyer, that's O-D-W-E-Y-E-R.  He

15  also bought a used car but he says well, I bought a demo from

16  the dealer and therefore I should be deemed, quote, the first

17  indirect purchaser and therefore a member of the class.  That

18  doesn't hold water, Your Honor.  If you bought a used car you

19  didn't buy a new car.  Under the law if you buy a demo from

20  the dealer that's deemed to be a used car, whether you buy it

21  from the dealer or somebody else.  The dealer effectively

22  buys it from the manufacturer to be able to use on the lot as

23  a demo vehicle; the manager drives it, salespeople drive it,

24  it is a car that builds up miles on the odometer, it is a

25  used vehicle.  So that objector has no standing either.

```
 1            Now, one of the things about the objectors which I
 2   would note, Your Honor, and that is that some of them cross
 3   reference the objections that other objectors make.  That's
 4   an improper practice, Your Honor.  The settlement notice told
 5   the objectors that if you wanted to object, and this
 6   appears -- I will get the exact language, Your Honor, at
 7   page 13 of the long form notice, this is item number 20 on
 8   the list, and it says that in order to object in addition to
 9   providing documents that establish the fact that you bought a
10   new motor vehicle or a replacement part and details regarding
11   those purchases, that you have to state the reasons why you
12   object to the settlement along with any supporting material.
13   Simply to cross reference somebody else's objection
14   ostensibly sight unseen is not stating a reason, and that
15   exact practice, Your Honor, occurred in a case where I was
16   the lead counsel, it was In Re: Toyota unattended
17   acceleration litigation in Los Angeles, and there Judge Selna
18   struck those kind of cross references as being contrary to
19   what the obligation was to state a proper objection, so to
20   the extent that they cross reference other objections they
21   should be stricken.
22            Now, with respect to the substance of the
23   objections that they have made, let me take not by objector
24   name but by subject matter --
25            THE COURT:  Yes.
```

 1            MR. SELTZER:  -- what the issues are.

 2            The first one is an objection --

 3            THE COURT:  Let me go back before you go to that

 4    because I want to get the objectors' names and see if it

 5    corresponds with the list as I have it.

 6            Just summarize for me the names of the objectors

 7    that you believe have standing, in other words, haven't

 8    withdrawn, haven't bought used cars.

 9            MR. SELTZER:  Well, Your Honor, we haven't

10    identified which ones specifically that we -- all the ones we

11    object to because some say they promise that they are going

12    to send the material and they didn't send it, so we are not

13    quite there yet with taking a final position.

14            THE COURT:  Okay.  I didn't know that.

15            MR. SELTZER:  They just say stay tuned, we will get

16    you the materials, but it hasn't happened yet.

17            So what we would like to do after the hearing is we

18    can submit a list as to those whom we think as of today at

19    least has not provided an adequate showing that they are

20    members of the class and whose objections should be overruled

21    on that basis alone in addition to whatever basis the Court

22    will rule upon in the alternative.

23            Now, with respect to the first objection that has

24    to do to the ascertainability of the class.  Now, let me make

25    one basic point about this.  The legal standing for

1    ascertainability is one that most courts agree upon, and that

2    is a class definition, and I will quote from one court, this

3    was Judge Illston in the TFT LCD flat panel antitrust

4    litigation, and she said a class definition is sufficient if

5    it is, quote, definite enough so that it is administratively

6    feasible for the court to ascertain whether an individual is

7    a member, closed quote.

8         In other words, the class has to be defined by

9    objective criteria.  The kinds of class definitions that

10   don't meet that test are ones where there was some subjective

11   requirement required.  For example, and this is an example

12   that Judge Illston gave, if you had a class that was defined

13   as all individuals who consumed Diet Coke and who were

14   deceived in believing that fountain Diet Coke didn't contain

15   saccharin, close quote, then you have to inquire into the

16   state of the mind of the class member to see what the belief

17   was of that class member.  That's not an objective standard.

18   And the courts have said instead as long as you have an

19   objective standard that's all you need.

20        Here we have a very precise objective standard, it

21   is not subject to dispute once the evidence is in.  Did the

22   car contain a part that was manufactured by one of the

23   defendants and the car was bought during the class period

24   within the United States with respect to all of the class

25   members or within one of the Illinois repealer states and the

1    District of Columbia with respect to a class member asserting

2    a claim for damages.  That's a 100 percent objective

3    criteria.

4         The objectors say, well, the problem is that we

5    can't tell if our car has the part in question.  You look at

6    the outside of the vehicle and how do you know it has a wire

7    harness made by Yazaki or it has another part made by

8    somebody else although they all say by the way, we can tell,

9    we believe in our heart of hearts and we are fairly confident

10   we are class members, so there comes a contradiction in terms

11   of the position they are taking in that regard.

12        But the point about ascertainability is as long as

13   there is a method to make that determination ultimately the

14   class meets the test of ascertainability because it is

15   decided entirely by objective material.

16        THE COURT:  But does the individual potential class

17   member --

18        MR. SELTZER:  Yes.

19        THE COURT:  -- have to know what parts are in their

20   car in order to join the class?

21        MR. SELTZER:  Not at this time, no, Your Honor, not

22   at all.  It is not --

23        THE COURT:  Because that's one of the objections.

24        MR. SELTZER:  Right.

25        THE COURT:  In fact, the one fellow went to a

1    dealer and the dealer couldn't tell him what was in his car,

2    he had no parts --

3          MR. SELTZER:  And that objection is unsound

4    because, Your Honor, the issue is whether or not it can be

5    determined and it will be determined in this case from these

6    sources.  There really -- think about it as two sources of

7    information that would be married to each other.  One is the

8    information we are going to get and have gotten from the

9    defendants regarding what parts they manufactured and to whom

10   they sold them to, and second, information that we are trying

11   to get and are getting ultimately from the OEMs about what

12   vehicles contain the parts made by which manufacturer and

13   from third-party sources like IHS and other third-party

14   companies out there that provide information about who makes

15   which parts that find its way into which vehicles, and we

16   will have that information then that would enable somebody to

17   say if you bought a Toyota Corolla 2006 it has X part made by

18   this manufacturer.

19          Then the other side of the equation is what the

20   class member will submit on a claim form that says I bought

21   that car and if he has documentary proof he will be required

22   to provide that, most class members are expected to have

23   documentary proof of that, and that information would then be

24   married and then there will be an application of the

25   objective criteria for the classes applied to the facts of

1    the case.

2         THE COURT:  Okay.  I don't have any problem with

3    that.  It seems to me in this case it would be extremely

4    objective because of -- it is easy to say in the end once you

5    get this information, the car, the model, the year, and then

6    you know the parts in it.

7         MR. SELTZER:  Exactly, exactly.

8         THE COURT:  The question though that I have has to

9    do with the notice now as set forth.  Would anyone who bought

10   a car say I may very well be a member of this class because

11   that seems to be where it is going?

12        MR. SELTZER:  Yes, and that's all that he needs to

13   know or she needs to know for purposes of this notice and

14   this proceeding because that gives the class member enough

15   information to decide, gee, if I want to proceed separately I

16   better request exclusion otherwise I might be bound.  And

17   that's not that unusual in other cases because the shape of a

18   case can change over time, and class certification orders are

19   subject to amendment and revision as litigation goes on.  You

20   are on fair warning that you may be a class member, and if

21   you want to proceed independently and bring your own lawsuit

22   you are told enough to be able to do that now.  That's all

23   you need to know.  And with respect to the issue of

24   objection, you know enough -- you know you may be a class

25   member, you think the settlement amount is unfair, you have

1    enough information to come forward and argue against the

2    fairness of the settlement, which is exactly what these

3    objectors have done.

4            So for present purposes enough information has been

5    provided in the class notice.  And the cases are very clear

6    that the process of identifying class members, it can be

7    sometimes a cumbersome process, for example, there is a case

8    Dunnigan vs. Metropolitan Life, it is 214 F.R.D. 125, where

9    the court said even if the issue of class membership can only

10   be definitively decided through a, quote, slow and

11   burdensome, closed quote, manual review of files to be

12   performed in the future that didn't alter the fact the class

13   was ascertainable because it was identifiable and described

14   by entirely objective factors.

15           The other case is the MTBE case, that's 209 F.R.D.

16   at 337, and that said that class members need not be

17   ascertained prior to certification, or prior to a proceeding

18   like this one where we are dealing with approval of a

19   settlement, it is my gloss on that, so long as they are,

20   quote, ascertainable at some point in the case, closed quote.

21   And here there is no question they will be ascertainable at

22   some point in the case.

23           The objectors say, well, really it is impossible to

24   ever find that out because the defendants don't have the

25   records, that's what they say, but that's pure speculation on

```
 1    their part.  In fact, it is untrue.  We have records from the
 2    defendants, we will be filling in gaps in information from
 3    the OEMs and from other sources that get that information.
 4    Will it be 100 percent accurate to every last vehicle ever
 5    made in the United States, maybe not, but it is going to be
 6    very close.  It is close enough for a class action case in
 7    terms of having the definiteness that is required, but the
 8    key -- the critical legal point is that the class is defined
 9    by entirely objective terms.  That's the point.
10            Now, with respect to the other objections let me
11    take those up.  There is an argument that we have a, quote,
12    clear sailing provision regarding attorney fees and that
13    affects the fairness of the settlement.  Well, that's simply
14    a claim based on nothing.  The agreements don't have a clear
15    sailing provision.  What is a clear sailing provision?
16    Typically the term is used to apply to a settlement where you
17    have X amount agreed to be paid by the defendant to the class
18    and then on top of that Y is agreed to be paid by the
19    defendant separately as a legal fee and the defendant agrees
20    to make that payment subject to court approval.
21            That's not this case.  Here we have a common fund
22    where the attorneys are applying to be paid out of the fund.
23    In this situation the interest of the class counsel and the
24    class are entirely aligned.  The more we get for the class
25    the more we believe we are entitled to be paid for giving
```

     1    that result to the class.  So there is a complete alignment

     2    of interest in that situation as opposed to a situation where

     3    there is an argument well, maybe a lawyer traded off getting

     4    a fee for a lower amount that the class is going to get at

     5    the end, that's why those kind of settlements have been

     6    subject to some scrutiny, but by the way, there is nothing

     7    wrong with them in principle.  A settlement can be perfectly

     8    valid with that kind of agreement and many over the years

     9    have been approved by the courts as fair, reasonable and

    10    adequate.  There is no per se rule against that.  But in any

    11    event, the idea that there is such a clause here is

    12    completely wrong-headed.

    13          Now, what do they do, they cite -- one of them cite

    14    paragraph 29-D of the AutoLiv settlement agreement for the

    15    proposition there is a clear sailing agreement here.  What

    16    does that provision say?  It says that the defendant wouldn't

    17    be responsible to pay our fees separately from whatever is

    18    paid into the settlement fund, and it says he will have no

    19    interest in the payment or responsibility for the payment or

    20    interest in the fees that are paid out of the fund.  That's

    21    not a clear sailing provision.  It is a complete distortion

    22    of the agreement to say that that's what it is.

    23          Now, other objectors say, well the settlement is

    24    bad because it releases claims that would arise out of future

    25    conduct.  That's just false.  The releases in this case are

1   based upon the past conduct of the defendant.  The releases

2   very properly say that if you have a claim that arises now or

3   hereafter out of that past conduct that's being released, but

4   that's not a release of a claim for future conduct, and that

5   kind of release term is not only traditional, I venture to

6   say you would find it in thousands of class action

7   settlements which have been approved by the courts, and it is

8   a perfectly proper release.  Then they say well, the release

9   goes to different parts that are subject to the release,

10  future parts or unknown parts.  Well, they haven't read the

11  settlement agreement.  The settlement agreement carves out

12  specifically any claims for parts that are not specifically

13  released.  That's an expressed term of the release.  So,

14  again, either they haven't read or misunderstood the

15  settlement agreements which is, again, what happens with

16  these kind of objections from these serial objectors, they

17  make objections that have no relationship to the settlement.

18          The other objection is well, you need to know the

19  amount of the individual recovery to tell whether or not a

20  class settlement is fair or not.  That's just untrue.  Even

21  if we had a plan of allocation now and had a claims process

22  underway there is no way in the world you could tell an

23  individual class member what he will receive.  And why is

24  that?  Because class members are going to share on a pro-rata

25  basis in the net settlement fund based upon the total amount

 1  of allowed claims and their claim -- their allowed claim.

 2  There is a ratio between the two and that will set --

 3  establish a ratio of fraction which will then be applied

 4  against the net settlement fund.  Until you know the total

 5  amount of the allowed claims there is no way in the world you

 6  could tell what the individual claimant is going to receive,

 7  and that's also true in virtually every class action and

 8  every class action settlement.  So that objection is also

 9  completely unsound.

10          Then there is an objection that says, well, there

11  is a cy pres element to the settlement that has to get

12  decided now and you've got to have a proceeding regarding cy

13  pres recipients.  Well, let me explain to you what the notice

14  said, this is what they glommed onto, was that -- let me see

15  if I can find the right --

16          THE COURT:  Reference to charity not named --

17          MR. SELTZER:  Yes, you have to name the charities

18  and all of that, which you do have to do.  Here is the

19  portion of the notice that they glommed onto is at page 10,

20  it is section 11, which says that it is possible that any

21  money remaining after claims are paid will be distributed to

22  the charities, governmental entities or other beneficiaries

23  approved by the court, closed quote.  That's what the notice

24  says.  Let me explain to you why that's there and what that

25  means.

 1          The process we are going to have in this case will

 2     be one where class members submit claims, the claims will be

 3     administered by the claims administrator, they will make

 4     recommendations about which claims should be allowed or not

 5     allowed based upon the submissions that the class members

 6     make, and then ultimately that will be presented to the court

 7     for a decision and the court will determine the amount of the

 8     allowed claims and then distribution can go forward to those

 9     allowed claimants.  That's the way class action cases are

10     administered.

11          After the checks are mailed it sometimes happens

12     that there are unclaimed funds; a person doesn't cash his

13     check and the check goes stale after 90 days or 120 days, so

14     the money is still sitting in the fund.  If there is enough

15     money in the fund after those claims have been paid then what

16     we do is go back to the court or unless the court has

17     authorized it and do a second distribution to other -- to all

18     the claimants on a pro-rata basis of whatever is left in the

19     fund.  When you get to the stage where it doesn't make any

20     economic sense to do any further distribution of the

21     residual, then we come back to the court and say here is what

22     we would like to do; we suggest that the residual, and

23     oftentimes it is a very small amount, sometimes not, be

24     distributed to the following charities consistent with the

25     underlying claims and causes of action in the case, the court

1    then approves or does not approve that distribution of that

2    residual.  But the first people that get the settlement fund

3    are the class members, and they share and share alike in that

4    fund based on their allowed claims usually eats up almost all

5    of the fund, if not all of it, so it doesn't arise if there

6    isn't a residual but if there is a tiny residual that's what

7    that's for.

8              One of the objectors cites to the America Law

9    Institute's principles and aggregate of litigation which

10   quotes from that section dealing with cy pres distributions.

11   The process as described there is exactly what we are

12   planning on here.  In other words, you go through -- first

13   you distribute to the class, and then if there is enough left

14   over to have a further distribution to the class you do that,

15   maybe you do it three times, depends on how much is left, and

16   then when it is no longer economically sensible to do a

17   further distribution, you have too little money on hand,

18   that's when you have the cy pres distribution.  Or another

19   alternative which again is something we did in Toyota,

20   depending upon the facts at the time, the money escheats to

21   the state or the federal government as lost property, that's

22   another technique that the courts have used, and that goes

23   back many years as being an appropriate technique but there

24   is no need now to identify a cy pres recipient, we don't even

25   know if there is going to be any residuum or how much it will

1    be, and no court has required that.  One of the courts said

2    you have to identify the recipient is when you know going in

3    that all or a major portion of the fund won't be distributed

4    to the class, it is going to go to a third party instead,

5    that's when there has to be identification as to who the

6    recipients are.

7         For example, in the Vitamins case in California

8    state court there the entire settlement fund went to cy pres

9    recipients.  It was necessary at the start then to decide who

10   should get that money.  Now California has a special

11   statutory provision that says first and foremost on our list

12   legal service agencies for the poor, they should be first on

13   the list, but also others as well can be included, but that's

14   when you have to deal with the question of cy pres at the

15   start, not when you are talking about the tail end of the

16   administration process.

17             THE COURT:  Okay.

18             MR. SELTZER:  Okay.  Now, the other point that is

19   made is -- I guess those are the main points I saw going

20   through the papers.  There were some sub points that were

21   made that seemed to be just not worth talking about.  The

22   basic point I would make, Your Honor, again, is that the

23   objections are based upon misapprehension (sic) of the facts,

24   they are, and misapprehensions of the settlements in this

25   case.

1       If I may, Your Honor, I could turn to the fee

2   request unless you want me to -- why don't I deal with the

3   fee request if that's okay with Your Honor's permission.

4       We told the class in the notice that we were going

5   to apply for up to one-third of the settlement funds as

6   attorney fees plus fees and expenses, that's what the class

7   was told.  We didn't apply for that.  Instead of one-third we

8   applied for 30 percent.  We think the -- that request is

9   justified by all the factors, the Ramy (phonetic) factors

10  that we cited to Your Honor as well as all of the work and

11  labor that was done in this case.  There are many similar

12  awards where you had funds like our fund where an award of

13  that amount is made.  For example, in the Allapattah Services

14  case, that was a case where the court awarded a fee of

15  30 percent of the $1 billion settlement fund, and that

16  decision which is at 454 F Supp 2d 1185, it collects cases

17  where courts granted 30 percent of similarly very, very large

18  funds.  And here, Your Honor, a point I would make is we are

19  really talking about separate funds here so you could argue

20  that well, each fund here is -- no fund gets to $100 million,

21  the most is Yazaki around $72 million, in other words they

22  are smaller than that and you look at them separately, but

23  the litigation has been prosecuted as a common effort so

24  while that point is there it is a distinction though about

25  how you would apply any kind of a theory or an analysis of

1    mega funds.

2           In Linerboard, that was an antitrust class action

3    case, the fund in that case was $202 million and the court

4    awarded 30 percent.

5           In the Vitamins case, that's a case where my firm

6    was co-lead counsel with David Boies and Mike Hotsfeld's

7    firm, the court awarded 34.6 percent of a $365 million

8    settlement fund, that was -- that was the court's analysis of

9    how it computed the fund.

10           So the kind of fees we are asking for here have

11    precedent well supported by the case law in these kind of

12    litigation.

13           Now, the total hours --

14           THE COURT:  You understand what I said today what I

15    was going to do on fees, that I wanted to hear exactly what

16    you're saying.

17           MR. SELTZER:  Yes.

18           THE COURT:  But I want it in brief form and I want

19    to consider maximums.

20           MR. SELTZER:  Yes.  I was informed of that.  I was

21    not here this morning as I was actually getting ready for

22    this hearing so --

23           THE COURT:  Sorry.

24           MR. SELTZER:  But I was told about what Your Honor

25    said and I understand the Court has requested briefing and we

1    are very happy to supply that briefing to Your Honor.

2             THE COURT:  You have to understand, I want to make

3    sure you understand since you weren't here, I'm not saying --

4    well, we will get to it when we get to the settlement amount

5    but I'm not -- not settlement amount, excuse me, the attorney

6    fees.  I am not saying one way or the other what the final

7    attorney fees will be or won't be, I just want some input

8    before I make this decision.

9             MR. SELTZER:  Sure, Your Honor, I fully understand.

10   Let me make points about why we think the fee request is

11   reasonable.  First of all, we have asked and supplied

12   information to the Court, if the Court wants to do it, to

13   engage in a Loadstar cross check.  The total hours in the

14   case are 173,870 reported to date at least as of the time of

15   the submission.  By the way, that does not include any time

16   spent prior to our appointment by the court as co-lead

17   counsel, so there are additional hours not included in that

18   total.  The total Loadstar is $71,648,000 roughly.  The

19   amount that we have requested produces a negative multiplier

20   of about  .94 of that Loadstar.

21            THE COURT:  I have done those calculations and I

22   agree.

23            MR. SELTZER:  Yes.  That's a circumstance that we

24   think provides very strong support what we requested.  In

25   fact, you could look at it the 30 percent is almost like a

cap on the fees. Why do I say that? Because if you use the
Loadstar multiplier approach most courts would award a
multiplier of our time, so two times, two and-a-half times,
three times, so by asking for 30 percent we are effectively
capping what we are requesting rather than asking for that
kind of a multiplier. Why do courts award multipliers?
Well, first of all, they look at the results obtained, the
work that was done, but they look are the fact the lawyers
undertook the case entirely on a contingency. Unlike my
learned opponents here we don't get paid by the hour, we only
get paid out of the recoveries we obtain for the class so we
are entirely at risk for all the time and all the money that
we lay out for these cases, which is why the courts grant
multipliers of Loadstars.

        Let me turn to the question on this mega fund issue
which the Court mentioned this morning. First of all, as we
note in our papers in Southwestern Milk, the district court
there noted that 6th Circuit has not adopted any kind of a
rule or rule of thumb or meristic that says because you have
a large fund you scale back the fees. There the court
awarded one-third of a $158 million settlement fund, and he
talked about the doctrine. So it is clear that the
6th Circuit has not joined any course of courts that says you
have to really think hard about scaling back fee awards based
on mega funds, but I think it is important to stand back and

 1    look at the basic principles on a fee award.  The touchstone
 2    is reasonableness and fairness.  All of the guidance that
 3    courts look to is to come up with a fair and reasonable fee
 4    given all of the circumstances.  The mega fund cases don't
 5    announce a rule or a doctrine that says you must reduce based
 6    upon the size of the fund.  Instead, what they have done is
 7    engage in an empirical observation as to how some courts have
 8    treated some funds and some fee requests, but there is no
 9    rule that says that there should be scaling back, it is just
10    an observation that has been made and frankly there is some
11    courts that have said no, that observation is not correct in
12    terms of what the actual practice is of courts in dealing
13    with class action cases.
14         It is also important to recognize that you have --
15    when you look at the case law on attorney fees, the law has
16    undergone quite an evolution from the years from 1976 when
17    the amended Rule 23 was first enacted and we started having
18    these kind of class action cases.  At the start of the class
19    action cases, and this has been true for years, you go back
20    to 100 years, go back to Blum vs. Stenson, U.S. Supreme
21    Court, the approach that most courts took in awarding fees
22    was to award a percentage of the recovery, and the reason
23    they did that is that that aligned itself in interest with
24    the class counsel and the class, the more they achieve the
25    more they got paid, it incentivized them to achieve as much

1    as possible and it also seemed to be fair and reasonable.

2    There is also another reason why that was so, it mimicked the

3    practice in the private cases that are not class action cases

4    where clients agree to pay fees, and we will come back to

5    that in a moment.

6           Then beginning the late '70s, the 3rd Circuit and

7    2nd Circuit adopted a different approach.  They said these

8    percentage awards, they could result in a windfall so we are

9    going to instead require that fees be awarded on a Loadstar

10    multiplier basis, not using percentage approach at all, it

11    was basically outlawed by those two courts, maybe not

12    absolutely but pretty much.  Then what happened?  Courts

13    began to experience the process of having to review time

14    sheets, daily time sheets, to decide whether an hour was

15    reasonably spent or not reasonably spent.  It became like a

16    statutory fee shifting case where you have that kind of

17    analysis sometimes about the hours and whether they are

18    reasonably spent.

19           THE COURT:  I know of courts that hire CPAs to

20    review these.

21           MR. SELTZER:  They did, actually special masters

22    and then you have litigation within the litigation, you have

23    settlement litigation over whether or not the right numbers

24    were being used, it was very time consuming, tedious, boring

25    an ultimately to really no effect because you know what

1    happened, when they applied the Loadstar multiplier approach

2    they ended up giving awards that were pretty much the same as

3    using the percentage approach, it was like one methodology

4    led to the same result although some courts were tougher than

5    other courts, that was the general experience that happened.

6    So then the 3rd Circuit, which started this whole thing, had

7    a task force on attorney fees and said, you know what, this

8    whole idea of using the Loadstar multiplier was a big

9    mistake, we should go back to percentage method.  So that's

10   what the advisory panel and the task force recommended, and

11   that's what the 3rd Circuit did.  There then began to be a

12   cross-event (phonetic) state circuit court saying we are

13   going to use the percentage method again and not the Loadstar

14   multiplier method.  Then some courts said we have to look at

15   the Loadstar multiplier anyway but not the same way we do it

16   on a Loadstar multiplier check but it is a cross check, we

17   will award on a percentage basis but will use the Loadstar

18   multiplier as a crosscheck.

19           And that is kind of a majority or main view that

20   most courts follow today although there are some variation,

21   different circuits have different twists on it but that's

22   the --

23           THE COURT:  Counsel, you may submit a brief like

24   everybody else for the rest of this argument but I understand

25   what your argument is and I certainly understand what you are

1      seeking here today.

2            MR. SELTZER:  Well, I want to make one last point,

3      Your Honor, and I said I would come back to it on the market

4      test but what does the market actually do?  Judge Posner on

5      the 7th Circuit has written very widely on this subject, that

6      the way that courts ought to think about awarding fees in

7      class actions, they ought to look to see what happens in the

8      private marketplace when somebody is hiring a plaintiff

9      lawyer on a contingency basis.  As you know, the practice for

10     many, many years is a third contingency is pretty standard.

11     I can speak to experience from our firm, we represent many

12     sophisticated corporations and individuals in large-stake

13     classes, not class action cases, and our standard fee

14     agreement is 35 percent, 40 percent, 45 percent.  The

15     40 percent kicks in 60 days before the first trial setting,

16     the 45 percent kicks in at the end of the submission of the

17     evidence, that's where the client is paying the expenses.  If

18     we are paying the expenses the percentages are higher.

19     That's the marketplace, Your Honor.  So to say that this

20     application as the objectors do that it is unfair, whatever,

21     they are not really dealing with the real world and what

22     really happens in high-stake cases where cases are litigated

23     and lawyers are working on the contingency.

24            THE COURT:  Okay.

25            MR. SELTZER:  Thank you, Your Honor.

```
 1            THE COURT:  Thank you.  All right.  Let's hear from
 2   the objectors.  Do we have any objectors here?
 3            MS. LINDERMAN:  May I sit here?
 4            THE COURT:  Yes, but would you come to the podium
 5   to make your argument.
 6            MS. LINDERMAN:  I guess I'm going first.  I thought
 7   we were all going to come up here.  Marla Linderman appearing
 8   on behalf of Objector Feury, Thompson, Thompson, Odweyer,
 9   right now Marasco and Sarris.
10            Just a couple things I want to clear up.  Your
11   Honor, an order came out today about withdrawing, how people
12   can withdraw their objections.  I was aware already of the
13   court rule and I did file a motion to allow Ms. Marasco to
14   withdrew, but it is my understanding based on that order that
15   all of the attorneys who tried to withdraw their objections
16   did not do it correctly and they are still technically in the
17   case until the Court orders that they are allowed to
18   withdraw; is that correct?
19            THE COURT:  That they are allowed -- I'm sorry, I
20   didn't understand you.  To withdraw their objection --
21            MS. LINDERMAN:  Right.
22            THE COURT:  -- without a court order?
23            MS. LINDERMAN:  People have filed their notices,
24   they didn't come to you and say I did an objection under
25   23(e)(5), I would like to be let out.  You have to file a
```

 1   motion to be -- to withdraw your objection, and there was a

 2   court order today saying that objectors cannot withdraw their

 3   objections without the Court issuing an order.

 4         THE COURT:  I will allow any objector to withdraw

 5   their objection.

 6         MS. LINDERMAN:  I appreciate that, Your Honor, and

 7   I did file a motion as to Ms. Marasco and when that order is

 8   entered allowing me to do it then she will be withdrawn, but

 9   at this moment she is not.  It is my understanding that all

10   those other people who put in notices of withdrawal but did

11   not actually file a motion are still also technically in the

12   case unless they file a motion to get an order.  Am I right?

13         THE COURT:  No.  I am going to allow -- I'm going

14   to enter orders withdrawing the objections from people who

15   have submitted notices of withdrawing objections.

16         MS. LINDERMAN:  So the notice you're saying is

17   enough and the Court will enter an order as to that?

18         THE COURT:  Right.

19         MS. LINDERMAN:  Okay.  I'm just trying to make sure

20   I understood the Court's order.

21         THE COURT:  Because enough people didn't understand

22   what was going on, and I think that if once you file a notice

23   that you are withdrawing your objection I think the

24   commonsense thing is you are withdrawing your objection and

25   that's the end of it.

1    MS. LINDERMAN:  As to those people who are doing it

2  because of the depositions that --

3    THE COURT:  I don't care why they are doing it, if

4  they withdraw they withdraw.  I'm not making any exceptions

5  for the depositions, I mean, there was an order on the

6  depositions, not from me but from another judge.

7    MS. LINDERMAN:  Right -- well, my question is there

8  are some people who withdrew because they were given

9  subpoenas for the depositions.  Now, if they are not going to

10  be deposed, if that's not going to happen, are they going to

11  be allowed to withdraw their --

12    THE COURT:  Who are you representing?  Did that

13  happen to any of your clients?

14    MS. LINDERMAN:  No.  Your Honor, I was the one who

15  did the motion, I was here, they brought up Ms. Marasco had

16  already withdrawn and now I'm confused, so I just want to

17  make sure I understand.

18    THE COURT:  I'm confused too because I don't know

19  what we are talking about.

20    MS. LINDERMAN:  I just want to make sure I

21  understand what is going on, Your Honor, about that because

22  obviously they said --

23    THE COURT:  Who are your clients -- you gave me a

24  list of your clients.

25    MS. LINDERMAN:  Yes, I have Mr. Feury.

1          THE COURT:  Did he file a motion to withdraw?

2          MS. LINDERMAN:  No.  The only person that I have on

3   my side that did the motion to withdraw is Ms. Marasco.

4          THE COURT:  Okay.  So you may go ahead and argue

5   your objections.

6          MS. LINDERMAN:  Okay.  Thank you, Your Honor.  I

7   appreciate that.

8          There are obviously many issues.

9          THE COURT:  You have no idea.

10         MS. LINDERMAN:  You're right, Your Honor.  I get

11  that, I absolutely do get that.

12         I broke it down in my argument as to really four.

13  Was notice given?  Was it sufficient?  Is the settlement

14  fair, equitable and reasonable?  The attorney fee.

15         I am concerned about how this notice went out to

16  people because it does say to everyone that you are part of

17  the class if you bought a car or leased a car new from 1998

18  to 2015, but that's really not true, it just is not.  Not

19  every one in that definition is going to be part of the class

20  because, as I said -- during the argument said the real

21  definition is where your car had a part that was price fixed

22  and was newly bought or leased during that time period.

23         THE COURT:  Right.  We don't -- we can't ascertain

24  at this point until we have all of that information.

25         MS. LINDERMAN:  Right, I appreciate that, but

1     neither can the people who were supposed to be put on notice

2     about whether they are actually part of the class.

3           THE COURT:  But they don't have to ascertain.  It

4     says if you bought a car you're probably in this class, so if

5     you want to get out of it you have to do something to get out

6     of it.

7           MS. LINDERMAN:  I do believe it is overbroad and

8     ambiguous, and I think because it is such a broad thing

9     people are like will this really be me, and they are

10     concerned about that.

11           I am also concerned about how the notice went out.

12     In the omnibus response to objections there were claims that

13     it was in Sports Illustrated, went to U.S.A. Today and all of

14     these people.  So I went online and I went to Detroit News,

15     right, Motor City, if it happens to cars we care about it, no

16     story.  Free Press, no story.  I have a cousin who works at

17     Channel 7, I called him yesterday and said has anyone ever

18     heard of the story?  No.  How is that possible?  I went to

19     the Michigan Association of Justice listserv, right, the

20     plaintiffs' bar, you know, if you are going to say people who

21     care about litigation that's us, no one knew.  I got tons and

22     tons of people saying what are you talking about when I put

23     it out there.  And I think that's exactly the problem here

24     because they say they have 50,000 people who registered but

25     there are 500,000 hits, so less than ten percent of the

```
 1    people who found out about it, even though you would think
 2    there would be millions and millions of people here at issue,
 3    we only have 50,000 people.  I looked at for 2007 how many
 4    cars were sold in the U.S., so these are new cars,
 5    16 million.  We are talking about 18 years.  That's like
 6    300 million people -- or cars we are talking about, and we
 7    have 50,000.  That's like .02 percent.  That's a problem
 8    because I would hope, knowing the Court the way I do, that
 9    the thing that is most important is the people who are
10    wronged get paid, more than the attorneys, and for once since
11    I'm not in the plaintiffs' bar, which you know I am, I can
12    say that.  Okay.  I think the notice did not go out to the
13    people who need to know.
14            And they said something about -- I thought this was
15    a final hearing, right, you are going to approve it, but they
16    talked today about that they may amend the notice of the
17    class later on in the future.  That's confused me.  Either it
18    is final or it is not.
19            THE COURT:  Well, there will be further notices --
20            MS. LINDERMAN:  Right.
21            THE COURT:  -- in this case.
22            MS. LINDERMAN:  But if they are only going to go to
23    the 50,000 people who got it the first time --
24            THE COURT:  No, they will go to everybody again.
25            MS. LINDERMAN:  Okay.  In the future, I mean, I
```

1    don't know why there wouldn't be specific -- again, I'm not

2    saying I'm a press person, but how difficult would it to be

3    have a press release to all the major news outlets in the 30

4    states that we are dealing with?  You know, you send

5    something to Channel 7, Channel 2, Channel 4, you know, just

6    so they know and then they come to you and say here, we can

7    show you we did it.  I would feel better about that.  I think

8    that makes it more likely to get a broad spectrum of people

9    who would be involved.

10            And from what you're saying, if I don't register

11   today, for example, if I bought a car, but like if a new

12   notice comes out three years from now I can still join the

13   class then or is it now?

14            THE COURT:  No.  We will have a response and you

15   will get all of your answers.

16            MS. LINDERMAN:  Okay.

17            THE COURT:  I shouldn't be answering them.  I'm

18   sorry.

19            MS. LINDERMAN:  I'm just going through my

20   arguments.  And I think it is difficult to identify.  I can't

21   go to -- let's say I had a car in 2004, I have no idea where

22   that car is, I don't know what the parts are, I don't even

23   know how I show that I bought a car in 2004?  What if my

24   dealership didn't keep the records?  I didn't keep things for

25   15 years.  So then you have these people who should be

1    getting paid and they have no way to show that they did it.

2         And that brings me to the two people that I

3    represent that there have been issues.  Mr. Odweyer, without

4    a doubt, he's the first indirect party, and it was a demo car

5    without a doubt.

6         THE COURT:  But it was whether -- again, I'm sorry,

7    I will let the plaintiffs argue this.

8         MS. LINDERMAN:  Right.

9         THE COURT:  Go ahead.

10        MS. LINDERMAN:  I understand if this Court rules

11   that that person would not be included in it because for some

12   reason it has 2,000 miles or 4,000 miles or 5,000 miles --

13   actually in this case I think it was 12,000 if I have the

14   number right -- when it was purchased.

15        THE COURT:  12,000 miles?

16        MS. LINDERMAN:  I think it is 12,000 miles in this

17   one, it is around there.

18        THE COURT:  Okay.

19        MS. LINDERMAN:  The question is when does that

20   matter?  Like is it a point because no one buys a car with

21   zero miles, it doesn't happen.  It will usually have 500, I

22   have had some with 2,500 even new so, you know, there is that

23   ambiguity that is of concern but I think it is at least an

24   issue that should be considered because if the point is the

25   first indirect buyer is the one that is supposed to be

 1    represented then Mr. Odweyer would be there.  If it is not at

 2    least we need clarification.

 3             As far as Mr. Thompson, it is my understanding, and

 4    the Carfax was given, he is the first purchaser.  He was the

 5    2004 so -- but I think that shows that we are talking about a

 6    whole bunch of mini trials; does this person fit in the

 7    class, doesn't fit in the class?

 8             THE COURT:  I don't think there's going to be any

 9    mini trials.  This case does not at all come into the mini

10    trial for class actions.

11             MS. LINDERMAN:  I'm just saying that's what we are

12    worried about.  There is also the fact that the attorneys

13    want to get paid before there is a distribution or allocation

14    plan, and they are different.  When I read things it seemed

15    like they were conflating them.  You know, the allocation is

16    how much do people get, and disbursement is how do we get it

17    to them.  So there is definitely a difference.  And often in

18    these cases before the attorneys get paid there is -- those

19    plans are in place and people are actually getting paid.  I

20    think it is In Re: D-RAM.

21             THE COURT:  This isn't a personal injury case

22    though.  There is nobody here who is -- I mean, you are hurt

23    financially if this is proved, but most people don't even

24    know this so I don't have a problem with that part yet I have

25    attorneys who have been here working for years and I think

1   they need to be paid something.

2           MS. LINDERMAN:  And I appreciate that they should

3   be paid something but the question is all now?  Should there

4   be incentives so that as things get done they get paid?

5   There is a case, I think it is In Re: Cargo -- Air Cargo that

6   was mentioned.  Well, I looked it up and the attorneys got

7   paid like nine years ago and now people are finally getting

8   paid.

9           THE COURT:  Yes.

10          MS LINDERMAN:  And that's something I would like

11   the Court -- when we were here last time and you said wait,

12   if these objectors have these problems I'm going to put this

13   order in, great, that was wonderful, I thought it was

14   brilliant.  I think you need to do the same thing on the

15   other side.  You need to have some protection to make sure

16   there is a real quick -- as quickly as feasible ability for

17   people who should get paid to get paid.

18          THE COURT:  Okay.  Thank you.

19          MS. LINDERMAN:  You know, we are talking about a

20   big time period.  I was 27 in 1998.  I know...people always

21   think I am younger than I am.  So if I had cars -- we are

22   talking about if we went another nine years I would be almost

23   55, right.  That means the people who were 50 are dead.

24          THE COURT:  I hope not.

25          MS. LINDERMAN:  The average lifespan is 78, so I

1    apologize.  Please, God, no, but --

2            THE COURT:  I appreciate that.  The Court certainly

3    is trying to resolve this as quickly as can be but I can tell

4    you it is not going to be tomorrow.

5            MS. LINDERMAN:  So we have concerns about that.

6            Now, as far as the fees, you know, one, there is

7    concerns about how --

8            THE COURT:  I am going to deal with the fees.  You

9    know, were you here this morning?

10           MS. LINDERMAN:  No.  I was told I was not supposed

11   to be here this morning so I don't know, but I do have a

12   couple things I would like to tell the Court.  I will try to

13   be quick, I swear.

14           THE COURT:  Okay.

15           MS. LINDERMAN:  One, there was a concern about how

16   did they allocate each settlement to each part and, you know,

17   I think that's confusing.  But one of the things I also

18   thought was interesting -- there are two.  First, they say

19   there's 173,000 hours so that it would be a negative load

20   value, but the problem is the documents I saw I couldn't tell

21   how much of that 173,000 went to what settled versus what is

22   still going because they shouldn't be able to use the hours

23   that go towards the case that's still going for this part.

24   Does that make sense?

25           THE COURT:  Yes.

```
 1        MS. LINDERMAN:  Right.  So that I think is
 2   objectionable.
 3        THE COURT:  That is the problem with Loadstar in
 4   this case.
 5        MS. LINDERMAN:  Okay.
 6        THE COURT:  It could be a very big problem.
 7        MS. LINDERMAN:  Right, so I don't think it is a
 8   negative Loadstar in that aspect, I think there has to be an
 9   allocation there.  So that was one of my big concerns.
10        And then -- I know this Court is knowledgeable and
11   does their homework, but there is a lot of cases out there in
12   our district even where they don't get 30 percent and they
13   don't get one-third, where they get six percent or ten
14   percent, and there's cases across the board that talk about
15   this, you know.
16        THE COURT:  Counsel, I'm very, very aware of that.
17   I don't mean to cut off your argument but that's why I want
18   to hear from the attorneys about these percentages.  I am
19   well aware that these cases go all over the place including
20   way down.
21        MS. LINDERMAN:  Way down, yes.  I mentioned the
22   In Re: Vitamins case, and I looked that up in the
23   9th Circuit.  All of these people keep talking about the
24   district court opinion but there is a 9th Circuit opinion
25   that said no, that's -- we are not going to let that happen,
```

```
 1   that's too much.  So I don't know why that's not mentioned
 2   but I think the 9th Circuit trumps the lower courts.  So I
 3   just wanted to point that out because I think it is really
 4   important that the information you are getting is accurate
 5   but it sounds like you are on top of that, which is good, I
 6   would think nothing less of you.
 7            You know, but if you go through their cases and the
 8   judges say why they paid more versus less I think that all of
 9   those reasons are relevant here, you know.
10            THE COURT:  Yes, I will go through them, I'm
11   telling you, I definitely will -- these attorneys I can say
12   without a doubt on both sides are excellent, and I know that
13   they will submit to me very knowledgeable briefs that will
14   give me all of the information -- I just hope I'm bright
15   enough to digest it, but they will give it to me.
16            MS. LINDERMAN:  Will objectors have a chance to
17   respond to that?
18            THE COURT:  No.
19            MS. LINDERMAN:  Okay.  I appreciate the
20   instruction.  I just ask, I would rather somebody tell me
21   that.
22            I'm worried about the $11 million to be set aside
23   for future costs.  One of the things that really struck me
24   was that they said each one of these settlements can stand on
25   its own two feet.  If that's the case -- let's say I had a
```

1    Mitsubishi and I only have one part that was involved and it

2    just happens that we have already settled that part, now I'm

3    going to have to wait until everything else is done before I

4    get paid and the money that was towards my settlement is

5    being used for someone else's case, someone else's --

6            THE COURT:  But you are not Mitsubishi.  Wait a

7    minute, just stick to your clients because this could get

8    very confusing.

9            MS. LINDERMAN:  I'm saying for my clients too

10   because my clients may be the ones who get paid, so if it was

11   the Nissan or Toyota, let's say my client's car is only

12   affected by the people who settled now then they still have

13   to wait for everyone else to settle and that money is being

14   used to help the rest of the case but they are done and they

15   are not getting paid.  If they can all stand on its own two

16   feet then they should be able to be distributed now as to

17   those because those people can go and say these are our

18   parts, this is where it went, and we could start that string

19   of determining who should be paid and how they should be

20   paid.

21           I'm very close to being done.  I think that's it

22   actually.

23           THE COURT:  Thank you.

24           MS. LINDERMAN:  Thank you, Your Honor.

25           THE COURT:  Counsel?

```
 1              MR. SELTZER:  Your Honor --
 2              THE COURT:  Wait a minute.  Let's hear all of the
 3    objections because you will have a lot of response.
 4              MR. SELTZER:  Very good.
 5              MS. LINDERMAN:  I will go sit back in the --
 6              THE COURT:  You can sit there, that's fine.
 7              MS. LINDERMAN:  Thank you.
 8              THE COURT:  May I have your appearance, please?
 9              MR. COCHRAN:  Yes, Your Honor.  It is
10    George Cochran representing the York objectors, Amy, Olen and
11    Nancy.  I think you mentioned our objection by reference a
12    little while ago.
13              MR. SELTZER:  Excuse me.  Is Mr. Cochran admitted
14    to practice before this Court?
15              MR. COCHRAN:  Yes, it is an MDL.
16              THE COURT:  Are you admitted before our Court?
17              MR. COCHRAN:  I'm admitted, yes, under the MDL
18    rule.
19              MR. SELTZER:  No, you are not.
20              MR. COCHRAN:  I was given notice by the clerk that
21    I am.
22              MR. SELTZER:  You have to be admitted to this
23    District to practice here, all of this --
24              MR. COCHRAN:  I was told by the clerk that I'm
25    admitted, it is on record because it is an MDL.
```

 1          THE COURT:  No, everybody has to be admitted

 2   individually here.

 3          MR. COCHRAN:  Your Honor, according to the MDL

 4   rules that is the exception that supersedes all local rules,

 5   that because it is an MDL and in the spirit of the purpose of

 6   an MDL congregating various district cases for it to actually

 7   work you have to allow attorneys to waive the local

 8   membership requirement.  I did -- I called and asked about

 9   that with the Clerk's Office and also there was one other

10   office that got involved, and they instructed me what to do

11   step by step and I did that.  There is an actual category in

12   the ECF filing system with this Court called MDL specially

13   admitted, and that's what I got verification of before I

14   came, which was a three-hour drive to get here.  I would like

15   to take a couple minutes if I could --

16          THE COURT:  I'm going to let you argue but I need

17   to resolve this issue because it is important.  I have had

18   other people here because that's what we were told that paid

19   fees.

20          MR. COCHRAN:  It is easily resolved.

21          THE COURT:  If it is wrong they deserve their fees.

22          MR. COCHRAN:  You can strike my comments I guess

23   but it is easily resolved because I can submit the papers.

24          THE COURT:  Yes, but while we are here, we can't

25   afford the time to have you come back and so let's hear your

1    argument.

2              MR. COCHRAN:  Thank you for that grace, Your Honor.

3              Your Honor, what you have here for all practical

4    purposes is a claims made -- there are claims made

5    settlements where very few claims are going to actually be

6    made.  First of all, I disagree with the suggestion of class

7    counsel that you can be a class member without proving that

8    you have an eligible part.  You go to the notice and it

9    directs you on that point to each settlement.  You go to the

10   settlements and each one says the definition of the class

11   member is that you have a qualifying vehicle from an eligible

12   state and you have our part, the defendants' part.  I just

13   wanted to clarify that for the record.

14             Not only that, the notice goes on to say that you

15   cannot object unless you can prove that you have an eligible

16   part, not an eligible car.  And, in fact, I believe a thrust

17   of the discovery attempt by class counsel was to try to weed

18   out legitimate objectors hoping that they could not be able

19   to prove a part in time for their deposition and a few of

20   them were scared off.  That is a very important defect with

21   this settlement.

22             Rule 23 says a potential class member has three

23   rights; you do nothing, you can opt out, but you can also

24   register objections.  The role of objection is very important

25   in the fairness of the overall settlement and for the fee

```
 1   request.  Second, there is an unreasonable barrier to the
 2   claims.  The fact is you can't get a dime unless you can
 3   prove your car contains an eligible part, period.  Now, the
 4   class notice makes that sound easy but as I just said, when
 5   you go to the level of the settlement agreements you find
 6   that you must prove the part.
 7           What we have found, and Your Honor has briefly
 8   referred to this, it is virtually impossible, we spent hours
 9   on end trying to connect the dots to no avail.  Quickly, we
10   looked at the class notice, the settlements, the settlement
11   websites, the complaints, nothing helped us.  We even called
12   the settlement hot line, we wrote to the settlement
13   administrator, we reviewed manufacturer recalls, we ran VIN
14   reports, we conducted Internet research, we even contacted
15   Ford as one of the major manufacturers -- two of our vehicles
16   are Fords, and even tried to contact class counsel in the
17   dealership litigation, which is separate, as you know, a
18   separate group of litigation, and we couldn't get any help
19   from any of those sources.  As a last straw, and Your Honor
20   mentioned this, Olen York contacted his local Ford dealer who
21   said our only option is to tear out part by part and for a
22   fee they will look at it and try to determine if there is an
23   eligible part because they only go by Ford part numbers, you
24   can't do it short of that.
25           Now, another clarification I want to make is due
```

1    process.

2           THE COURT:  Who was that that went to the Ford

3    dealer?

4           MR. COCHRAN:  Olen York, one of our objectors.

5           THE COURT:  But he did, in fact, object through

6    you --

7           MR. COCHRAN:  Yes.

8           THE COURT:  -- without knowing -- I mean, he didn't

9    tear his car apart I take it?

10          MR. COCHRAN:  Well, they tried to have him and his

11   mother and his wife, those are the three York objectors from

12   West Virginia, deposed and then when this order came out

13   saying there was no need for depositions at this time, we

14   were prepared to go forward.  We do have a good-faith belief

15   that at least one part, the AutoLiv part, is in at least one

16   of the Fords.  I won't waste time right now giving you the

17   basis for that but we are prepared to explain that at a

18   deposition if necessary.

19          Back to my due process point.  I think it is very

20   clear, a potential member must be able to determine if he's a

21   member of the class at the time of the notice.  Now, just

22   today I'm hearing from class counsel I guess some future

23   promise to be able to come up with some source to connect

24   parts to cars but that's too late.  It is our position that

25   this notice went out prematurely then, they should have

```
 1    waited until that source was available so that there could be
 2    at least a link either at the settlement website or from the
 3    notice to be able to determine if you are a class member.
 4    That goes all the way back to Mullane vs. Central Hanover
 5    Bank in 1950, you can't ask somebody to release their rights
 6    without knowing if they are a class member.  I understand
 7    there has been other settlements, there are going to be more,
 8    but what we are here today about is there are two groups of
 9    people, releasors and releasees, that's it.  This is going to
10    be releases on behalf of these defendants' claims where they
11    don't even know if they are class members yet, there is no
12    reasonable way to determine that after diligent effort, and
13    as a matter of fact they can't even object because you have
14    to prove that you have a part.
15            Now, we submit that these motions should be denied,
16    remanded back with instructions to -- sorry, not remanded but
17    with instructions to at least have some minimal benefit based
18    on being an owner of -- a purchaser of a new car in an
19    eligible state and so forth during the class period.
20            THE COURT:  What do you mean --
21            MR. COCHRAN:  It is very common in class actions --
22            THE COURT:  Excuse me.  What do you mean, have a
23    minimal benefit for being an owner?
24            MR. COCHRAN:  It is very common in this type of
25    class action to have what I would call a two-tiered award
```

```
 1    plan.  First is the minimal award that you are guaranteed
 2    just by showing you own a vehicle that qualifies from a state
 3    purchased within the period and you have papers to prove it.
 4    Say you get $150, everybody that does that up to the limit,
 5    and then it is shared pro rata reduction, but assuming that
 6    doesn't exhaust the funds then you can submit claims based
 7    upon actual parts and you can get more than 150, so there is
 8    a guaranteed minimum that relieves this unrealistic
 9    obligation to prove parts, which nobody can do.  If there is
10    something in the future, fine, but that's future, today is
11    the fairness hearing for this particular group of releases.
12            Now, the only thing I want to mention about the fee
13    because I know that -- I hear what you're saying, is that
14    class counsel's failure to detect this fundamental problem or
15    the way to correct it spills over onto the fee itself.
16    Agreeing to a settlement mechanism that yields a low claim
17    rate has been held to be reason enough to cut the fee.  Our
18    objection cites Vanhorne and several other cases.  Vanhorne
19    is a 6th Circuit case 2011.
20            THE COURT:  What are you saying, a low claims rate?
21            MR. COCHRAN:  We --
22            THE COURT:  What's low about this?
23            MR. COCHRAN:  Low -- the studies show that a
24    typical claims rate might be 10, 15, 20 percent of all
25    potential claims but since right now it is impossible to be
```

1    able, without tearing your car apart, to be able to identify

2    what parts you have it is probably going to be something that

3    we predict less than one percent participation rate, that's

4    what I define as a low claims participation rate, and

5    Vanhorne it was much higher than that but it was still

6    considered low to the point where it influences your

7    consideration of the fairness and reasonableness of the fee,

8    it actually cut the fee down.  So one option could be wait to

9    see what the actual claims participation rate is before you

10   consider the fee petitions.  It is interesting to me that in

11   the dealership group of cases the deadline for that is not

12   for another four days.  I tried to find out -- I'm curious,

13   what is the claims participation rate from professionals,

14   which is the dealerships.  Several that we called not one

15   heard of the settlement, the dealership settlement, which is

16   already done.  Like I say, the deadline is only four days

17   away to make a claim.  I would be very curious, and perhaps

18   this Court would be also, to find out what is the

19   participation rate at the professional level, distribution

20   level, much less the consumer level.

21          So for all of those reasons we feel the settlements

22   and the fee -- the settlements should be rejected in waiting

23   until there is an actual way to -- you know, objective

24   criteria is one thing but the cases make clear those

25   objective criteria have to be sufficient to enable a class

```
 1   member -- a potential class member to determine am I a class
 2   member or not at the time of the notice or at least at the
 3   deadline for exclusion and be able to object.  Here very few
 4   objections, not surprisingly because no one can tell whether
 5   they are class members.  Thank you, Your Honor.
 6           THE COURT:  Thank you, Mr. Cochran.  Okay.
 7   Response?
 8           MS. SALZMAN:  Excuse me, Your Honor.
 9   Hollis Salzman.  I'm sorry to interrupt the objectors.
10           Scott Palmer from the Florida AG's office needs to
11   leave and he would just like to make a brief comment to the
12   Court.
13           THE COURT:  All right.
14           MS. SALZMAN:  Thank you.
15           MR. PALMER:  Your Honor, my name is Scott Palmer,
16   and I represent the State of Florida.
17           I just wanted to let the Court know that we have
18   vetted these settlements under the CAFA regulations and found
19   them nothing other than being fair, adequate and reasonable,
20   Your Honor.
21           THE COURT:  Thank you.  Somebody else was -- oh,
22   there you are.  Okay.  Your appearance, sir?
23           MR. BACHARACH:  Good afternoon, Your Honor.  My
24   name is Albert Bacharach.  I am a member of this court and
25   have been for a number of years.  I practice law in
```

1  Gainesville, Florida.

2          I would like to speak to the Court today about the

3  objections that I filed, I withdrew, and I refiled, but I'm

4  unclear as to whether or not that's going to subject my

5  clients and me to invasive depositions by class counsel.  So

6  I wasn't part of Ms. Linderman's motion for a protective

7  order last Thursday, but I was under the impression that this

8  Court has no real interest in having me or my clients

9  deposed.

10          THE COURT:  I have no interest but there was an

11  order out of Florida and I am not interfering with another

12  judge's order or a magistrate judge -- I mean, nobody brought

13  that up to me.  I have not reviewed that magistrate judge

14  order -- I mean, they order depositions so you have to do

15  whatever this judge said.

16          MR. BACHARACH:  Yes, Your Honor.  In that case we

17  will have to stay with the withdrawn objections and we would

18  move the Court to turn that into an actual order pursuant to

19  the rule under subsection --

20          THE COURT:  An order withdrawing your objections?

21          MR. BACHARACH:  Allowing us to withdraw our

22  objection.

23          THE COURT:  I will allow you to withdraw your

24  objections.

25          MR. BACHARACH:  Thank you, Your Honor.

1          THE COURT:  Thank you.

2          MR. SELTZER:  Your Honor, let me respond very

3    briefly to the points that were raised.  First of all, on the

4    adequacy of the notice --

5          THE COURT:  Could you speak up a little bit?

6          MR. SELTZER:  Yes, Your Honor.  Let me raise the

7    microphone.

8          On the adequacy of the notice we laid out in great

9    detail the notice plan that was extremely extensive, that was

10   designed by a preeminent class notice expert involved in

11   multiple different methodology for notice, and I submit that

12   plan was very, very comprehensive and there is nothing

13   inadequate --

14         THE COURT:  Not using local newspapers here in

15   Michigan or any of the other states?

16         MR. SELTZER:  This is a national case, Your Honor.

17   The notice plan was designed to reach a national audience and

18   the plan was designed so you have the maximum potential

19   number of people hear about this case.  It used print media,

20   national print media, it used Internet, it used websites, it

21   used earned media where it was the subject of publicity in

22   the national publicity media, all of this is laid out in

23   detail in the consolidated declaration and it is summarized

24   in our response to the objections.  I think frankly it is a

25   silly objection.

```
 1              Apropos of what Mr. Palmer just said for the State
 2      of Florida as Deputy Attorney General, the notice was given
 3      to all 50 Attorney Generals of the settlement as well as the
 4      Attorney General of the United States, and not a single
 5      objection was received from any of the Attorney Generals
 6      regarding this settlement.  And, in fact, what you heard from
 7      Mr. Palmer who knows a great deal about this case because his
 8      state filed a lawsuit which is part of this litigation and
 9      knows about what has been going on in the case, knows about
10      the settlement, knows about the progress of the cases, he's
11      telling you from the State of Florida's point of view these
12      settlements are fair, reasonable and adequate.
13              The argument about the claims that will be
14      submitted in this case, a low turnout, a high turnout,
15      completely misses the point.  This is not a claims-made
16      settlement.  This is not an opt-in settlement.  Class members
17      will have a chance to make claims as part of the claims
18      administrative process and whatever claims will be paid, so
19      all of the claims made net of whatever the Court awards as
20      fees and expenses will be distributed to everyone claiming
21      class member on a pro-rata basis.  There is not going to be a
22      low turnout in the sense of money not being sent to
23      claimants, it is going to be used up by class members who
24      assert claims, that's -- the kind of case he's talking about
25      or others are talking about are ones where you have a
```

1   claims-made settlement, only people who claim get paid on

2   their claim, there is no class fund.  That's not this case,

3   it is a different kind of case.

4           With respect to Odweyer, the person who bought the

5   demo, it is a used car, the argument that it is not a used

6   car is ridiculous.

7           As to whether or not you have to have a mini trial

8   to determine class membership, part of every claims

9   administration process is a class member submitting some

10  evidence or some affidavit or proof that they are a qualified

11  member of the class.  That's not a mini trial, that's part of

12  the claims administration, and that happens in every case.

13          The Vitamins case that is referred to by counsel in

14  the 9th Circuit, I don't know what she is talking about.  The

15  case we cited and the case I was co-counsel on was the

16  District of Columbia before Chief Judge Tom Hogan, that's

17  where that case was.  I don't know any 9th Circuit Vitamins

18  case.

19          There is an argument made regarding the fact that

20  class members don't know enough to object.  Well, class

21  members were told in the notice that a class member -- if you

22  bought a new vehicle during this time period then you may be

23  a class member, and that's enough to put them on notice and

24  if they wanted to object they should object.  The notice

25  didn't require a class member to prove or provide evidence

1    that they bought an offending part.  It just said did you buy

2    a new motor vehicle, and if so give us the documentation

3    regarding that if you have it for this new motor vehicle.

4    That's all that was required.  So this argument that you have

5    to tear the car apart to know whether or not you are in the

6    class or not is nonsense.  The class members are put on

7    notice they may be in the class and subsequently down the

8    road when we get the data in the defendants and the OEMs and

9    third parties, have the claims process, then there will be a

10   determination of whether somebody who makes a claim is or is

11   not a member of the class.  That's a perfectly normal

12   process.

13          The cases we cited made it very clear you have to

14   know that answer at the time of class certification or class

15   notice or at the time of settlement approval.

16          The argument regarding the plan of allocation.  The

17   plan of allocation in the settlement funds is, as we said in

18   the class notice, going to be the subject of a proposal to

19   the Court for a reasonable plan and a further notice of a

20   class, class members will have a chance to object to whatever

21   plan of allocation to be heard, to whatever plan of

22   allocation --

23          THE COURT:  Nobody according to the notice at this

24   point has to register or be or say I owned a car or anything

25   like that, at this point they basically were told you are a

1    member of -- or you may be a -- excuse me, a member of the

2    class?

3            MR. SELTZER:  Right.

4            THE COURT:  And so that would give them an

5    opportunity here, it is different, they have to opt out as

6    opposed to opting in to file a claim.

7            MR. SELTZER:  If they opt out then they are out of

8    class, but if they don't opt out of the class then if they

9    meet the criteria for class membership they are in the class.

10   Registration is a voluntary act just so we basically have a

11   way of keeping tabs on people who have expressed at this

12   stage of the game before there's any claims process an

13   interest in being notified of further developments in the

14   case.  It is totally voluntary, it is not a restriction of

15   who can claim in the future.  In fact, when the notice goes

16   out about the plan of allocation hopefully when we have more

17   settlements it will be part of that plan then class members

18   will be told how to file a claim and that's when the claims

19   will come in but, again, whether a lot of claims are

20   submitted or not a lot, we hope a lot, but regardless whoever

21   claimed they are going to share pro rata in the net

22   settlement fund, that's the critical point.  And no case has

23   criticized that as a methodology for distributing class

24   funds.

25            I think those are the main points that were made.

```
 1    Unless you have any questions I will be glad to -- or I will
 2    be glad to answer any questions the Court has?
 3              THE COURT:  No.
 4              MR. SELTZER:  Okay.  Thank you, Your Honor.
 5              THE COURT:  Thank you.  Mr. Cochran, I know you
 6    want to speak but I can't let you.  I sent a notice for the
 7    clerk and it says -- let me just say with MDL not admitted,
 8    the rule is multi-district cases often involve many attorneys
 9    from out of state.  Most of these attorneys will never appear
10    in person on the case, therefore the Court will grant these
11    attorneys limited admission.  This means they can register to
12    receive a log-in and password for e-filing upon providing the
13    Clerk's Office with a letter requesting e-file status for
14    their MDL case only.  If the attorney needs to appear before
15    the judge on this case, or needs to represent a client in
16    another case that is not MDL, he or she must go through the
17    general admission process.  So that's --
18              MR. COCHRAN:  So I'm covered?
19              THE COURT:  No, you are not covered.  You can't
20    appear in court --
21              MR. COCHRAN:  This is an MDL court.
22              THE COURT:  You can't appear in court.  You can --
23              MR. COCHRAN:  It says if it is not an MDL case,
24    right, in the other case --
25              THE COURT:  It says MDL not admitted, that's the
```

1   heading, meaning you are not --

2         MR. COCHRAN:  The last phrase, Your Honor, says or

3   other case then I have to be admitted in the --

4         MS. SWANSON:  Or if you appear in court.

5         THE COURT:  It says here if the attorney needs to

6   appear before the judge on this case, the MDL, or needs to

7   represent a client in another case that is not MDL, he or she

8   must go through the general admission process.

9         MR. COCHRAN:  That would then contradict the

10  judicial rule for MDLs, which the rule has been held --

11        THE COURT:  Well, I can only give you the rule that

12  I have now.  I haven't researched this, it has been in effect

13  for years.

14        MR. COCHRAN:  Your Honor, as an officer of the

15  court I have to straighten out one thing.  It is absolutely

16  false that class notice says you must prove that you have an

17  eligible part to be an objector, period.  If you want to get

18  out of the class --

19        MR. SELTZER:  Your Honor, I object to this further

20  presentation by this lawyer who is not admitted to practice.

21        MR. COCHRAN:  As an officer of the court I want to

22  make sure the Court has correct information.  Secondly, it is

23  not a pro rata class notice, it says you can be adjusted

24  upward or downward depending on factors but it never stated

25  there was a pro rata settlement fund.

 1          THE COURT:  Okay.  Thank you.

 2          MR. COCHRAN:  Thank you.

 3          MR. SELTZER:  I object and I ask that his remarks

 4  be stricken, Your Honor.

 5          THE COURT:  No, it is on the record.

 6          MR. KESSLER:  Your Honor, just as a point of

 7  information, most of the cases here never went through the

 8  MDL process, including a number of the settlements here, so

 9  they are clearly non-MDL cases here.  The only one that went

10  through the MDL process I believe was the original wire

11  harness and a couple of other cases.

12          THE COURT:  You are right.  I'm sorry, I forgot

13  that, but that's true.  Actually the majority of these cases

14  are non-MDL cases, they were filed directly here.

15          MR. KESSLER:  Just for your information, Your

16  Honor.

17          THE COURT:  Thank you.  All right.  In terms of the

18  settlement here, this is -- it is an interesting case.  There

19  are -- in this particular group of settlements there are I

20  think it is like 25 settlement classes that are involved in

21  this with 9 defendants and their affiliates.

22          MR. SELTZER:  I think it is 19, Your Honor.

23          THE COURT:  It might be more?

24          MR. SELTZER:  No, 19 I believe.

25          THE COURT:  Pardon me?

```
 1        MR. SELTZER:  I think there are 19 settlement
 2   classes if I have the number right.
 3        THE COURT:  There are a large number involved here,
 4   and the settlement amount is significant, and it involves two
 5   different parts as I recall.  The settlement, the amount of
 6   money, the cash itself, which is 2 -- approximately
 7   $225 million, and it includes cooperation which has been
 8   extremely significant in this case.  There is not a way to
 9   put a money figure on that cooperation but the Court is well
10   aware of the benefits and how the cooperation has result --
11   has, in fact, helped to result in these and other
12   settlements.  There is also the discovery that has been
13   cooperatively given along with the transactional data.
14        The other non-cash is the injunctive relief and I
15   think there was an objection by somebody, was it talked about
16   today, about the two-year period for the injunctive relief,
17   and the Court finds that -- the Court will grant the
18   injunctive relief, and I find that's a valuable thing.  The
19   two years is almost -- to me is almost meaningless because
20   this is an illegal activity so you can't really give
21   permission to somebody after two years to continue illegal
22   activity, so I don't find that objection with any merit.
23        The releases here are extremely specific and to
24   each -- regarding each part and each claim, and there was a
25   discussion about releasing future claims, and if it is read
```

1    very closely there is nothing here about any future claims

2    about these particular defendants, and the defendants remain

3    in the case with the other co-defendants for the future

4    litigation.

5         All right.  There has been discussion here about

6    the fact that the DOJ has done a lot of work and we know that

7    the DOJ gave to -- I mean, they get the information from the

8    defendants and ultimately they gave it to the plaintiffs but

9    that was only -- that's the starting point.  You know, the

10   DOJ was like the notice giver, hey, there is wire harnesses

11   that are involved in antitrust and every part just started

12   from the DOJ, and these plaintiffs would not have had any

13   opportunity from the best I could tell to show that there was

14   any antitrust actions going on or these allocations amongst

15   these defendants without this investigation by the district

16   court, but once they got that it expanded greatly into other

17   parts, other defendants, defendants who were not even named

18   in the -- by the DOJ, very much a broader thing.

19        And I think also importantly enough in regards to

20   the work that they had to do is that these partial

21   settlements here they had to look at the volume of commerce,

22   they had to look at many different factors including

23   involving experts to determine what the damages might be so

24   that they could come up with an educated -- I don't want to

25   say an educated guess, an educated figure that would be a

1    reasonable settlement, and I believe that they had to put in

2    much time and much effort well beyond the work of the DOJ to

3    proceed.  And I'm thankful for the work of the DOJ or this

4    case would go on for another 20 years.  I think it cut out a

5    lot of time in the case.  They dealt with the Japanese, they

6    dealt with the European Union, it is just so far reaching.

7            Okay.  In terms of the difficulty of the case,

8    certainly it has been referred to as extraordinary.  I mean,

9    I guess I don't -- I would accept that, it seems to be

10   extraordinary, I haven't done another antitrust MDL so this

11   is my norm, but I have to say from the work that has gone on

12   this, from the issues that have been presented, from the

13   numbers of classes and the class management, that I agree the

14   attorneys have to be managers in order to organize this to

15   proceed and if you don't have it organized it is never going

16   to come to a final conclusion.  And the fact that we have

17   these settlements shows me that there is, in fact, great

18   skill of counsel, great organization.  And counsel indicated

19   they were proud of their work and I think you should be proud

20   of your work, it is a resolution that this Court finds to be

21   fair, reasonable, adequate.

22           I did a preliminary finding of it and I want to

23   simply incorporate all of that into this decision that courts

24   consider a number of factors in determining whether a

25   settlement is fair, reasonable and adequate, and I did that

1   in the preliminary hearing and I will briefly cite them

2   today.  Certainly the likelihood of success on the merits.

3   This is an end payor case, I think this is the difficult --

4   maybe the most difficult class, the end payors because, you

5   know, they don't just get damages unless there's some state

6   -- and how many states do we have involved here?  I have lost

7   count.

8           MR. SELTZER:  Your Honor, it is 30 states and the

9   District of Columbia.

10          THE COURT:  30 states and the District of Columbia

11  and all of those states' laws had to be looked at.  And I

12  think also in terms of the settlement you have to consider in

13  the likelihood of success this damage issue of the

14  passthrough, I think that's very critical particularly with

15  the end payors and being able to prove that, so that along

16  with the complexity and the expense and the duration of this

17  case makes this a fair and reasonable settlement.

18          The Court has listened to the opinions of class

19  counsel on this, class reps, and today to the objectors,

20  which I think they raise some points that the Court has, in

21  fact, considered, and I think that that, you know, you have

22  to look at the balance of all of these things and I think

23  that overall I agree with plaintiffs' counsel that they think

24  this is a fair settlement.  They are experienced, I don't

25  think we have addressed that today, but obviously they are

1    experienced in this type of litigation, I think it was done

2    at arm's length after much discovery. I think that with

3    that -- with all of those factors, without going into anymore

4    detail, makes this a fair, reasonable settlement -- fair,

5    reasonable and adequate is the other word.

6         Okay. The Court -- oh, I did not address the cy

7    pres issues of the objectors and I would like to address

8    that. There is no need for -- I mean, there may be no need

9    at all for cy pres here but certainly naming the cy pres, I

10   mean, in any of the cases I have been involved with at this

11   stage is just not necessary. Hopefully we won't have cy pres

12   but there is always going to be somebody who doesn't cash a

13   check, what that amount turns out to be we don't know but it

14   is just about guaranteed that there will be some of those but

15   I don't think that in any way makes the notice deficient.

16        I also find that the notice -- of course, notice

17   has to be given and was adequate in this case. In fact, I

18   mean, they use a national company to send out these notices,

19   lots of magazines. I keep thinking did they say Sports

20   Illustrated, I can't help but think of the -- never mind.

21   When I read that I went really. But the Wall Street Journal

22   and others, New York Times I think was mentioned in one,

23   there certainly appears to be an extraordinary number of

24   ways. It wasn't used -- they didn't use the local press and

25   I think that was a good point that counsel made, but this is

1    a national case and so I could see that it is an effort to

2    reach the most people in the nation and I think that that's

3    been satisfied.

4        In terms of the ascertainability of the class, the

5    Court finds that the class is able to be defined, and I think

6    the notice was good in terms of giving you a telephone number

7    and, you know, another site to go to see the different class

8    settlements, and I think it is definite enough for any court

9    to determine whether or not a person is a member.  I think it

10   is ludicrous to think that a person would know specifically

11   that I have a car with a part made by Denso.  I mean, maybe I

12   shouldn't use Denso because they are so big, I think they are

13   in lots of cars, but, I mean, who knows who manufactured a

14   part in their car, I think that's ridiculous, but you know

15   you bought a new car.

16       The Court does want to address the issue about the

17   used car and the demo car.  I mean, demo cars the Court will

18   rule are used cars.  I mean, they are.  12,000 miles is

19   probably more than most miles people put on their lease cars.

20   Isn't that kind of the average yearly amount for a lease, I

21   think?  So I feel fairly confident in ruling that that car

22   is, in fact, a demo and a used car.

23       So my ruling is that the objections are noted for

24   the record but I think that by far they do not bar this

25   settlement.  I think they all have -- are mitigated for all

```
 1    of the reasons that have been mentioned both by the Court and
 2    by counsel in its argument.
 3            Okay.  The Court, of course, in defining a class,
 4    and I'm going to briefly, we did this again in the fairness
 5    hearing.  There's certainly numerosity, there is no issue
 6    here about the numbers of people involved.  There is
 7    commonality in this antitrust action, the issue is the same
 8    for each.  There is typicality, the class representatives
 9    are -- the claims are typical of the claims of the class.
10    And the adequacy of representation, the Court has already
11    addressed that, I find that the attorneys are well able to
12    represent the classes and that the individual named
13    plaintiffs are able to represent the classes.
14            All right.  Common questions clearly predominate
15    over any question.  I see here really no mini trials at all.
16    I think it is very common questions.
17            The Court does need to appoint settlement counsel
18    in this case and the firm Cotchett, Pitre & McCarthy, L.L.P.,
19    Robins Kaplan, L.L.P, Susman Godfrey, L.L.P. have represented
20    the end payors throughout this litigation and I'm going to
21    appoint them as the class counsel in this case.
22            The last issue I believe to be determined is the
23    attorney fees and costs and the reserve for future
24    litigation.  The Court has looked at the costs, they are
25    considerable, but I have no way of saying no, you spent too
```

 1    much money or this or you didn't spend enough -- I don't

 2    know, there is -- just in reality there is no way for this

 3    Court to delete any items or to question any items, so I am

 4    going to, based on the representations in the affidavits that

 5    have been submitted regarding the costs, and what the

 6    individual firms have incurred, the Court is going to grant

 7    the costs.  The costs are to come out of the total sum of

 8    money before there is any discussion of attorney fees.

 9         The Court will also grant the future litigation --

10    I'm sorry, I forgot to write that amount down, I think it was

11    $12 million, is that right, $11 million?

12         MR. SELTZER:  I believe it is $11,250,000, Your

13    Honor.

14         THE COURT:  The Court will grant that, which if

15    that's not spent of course will then become part of the total

16    award which goes to the claimants.

17         The Court then will consider the attorney fee, and

18    there are many factors that the Court considers in an

19    attorney fee, and I think here -- let me just find that.  The

20    Court has to make a determination of whether these attorney

21    fees are reasonable and not excessive, and there are any

22    number of factors which the Court has looked at before and

23    they go to the complexity of the case, the experience of the

24    attorneys, the amount of time spent in discovery, et cetera,

25    et cetera, and the Court finds that these attorneys are

```
 1   certainly deserving of a reasonable fee.  The difficulty that
 2   I'm having isn't necessarily with this settlement, it is what
 3   is going to happen in the future.  And I have this morning
 4   asked that counsel submit briefs so I'm going to wait on the
 5   attorney fee -- I'm going to give a partial attorney fee
 6   right now but as to the whole attorney fees the Court is
 7   going to wait until after I receive your briefs.
 8            At this point the Court is going to award a partial
 9   attorney fee of ten percent, whatever that is, and this is
10   not meant to be the minimum at all in this case but I want to
11   have the briefing before I make a final determination of the
12   total attorney fee, but I will ask you to put in the order
13   that there is this partial payment of ten percent and you can
14   make that ten percent of the whole settlement, of the $225
15   million, which may be paid forthwith.  Okay.  And the Court
16   will then, considering this a partial -- I believe a partial,
17   I don't know, it could be a final, but I think partial, and I
18   will consider your briefs and then make a determination as to
19   what the actual attorney fee should be.
20            Are there other questions?
21            MS. LINDERMAN:  Your Honor, I just have a quick
22   question.  You said you were granting all the costs, just
23   like with the 173,000 hours that goes through the entire
24   case, I would assume some of those costs are to part of the
25   case that hasn't settled, but are you going to grant all of
```

1     the costs?

2               THE COURT:  I'm going to grant the costs that have

3     been asked for to date because they were by affidavit

4     determined to be the cost associated with this resolution,

5     these parts.

6               MS. LINDERMAN:  Okay.

7               MR. SIMMONS:  Your Honor, Peter Simmons from

8     Fried Frank on behalf of the T. Rad defendants.

9               Under our settlement, and I believe all the

10    defendants' settlements, our settlements are not in any way

11    contingent on the plaintiffs' counsel fee award --

12              THE COURT:  No.

13              MR. SIMMONS:  So I would request that the Court go

14    ahead and enter the 54-B partial final judgment as to all of

15    these defendants now and the plaintiffs do have forms that

16    I'm assuming they will submit to your chambers.

17              THE COURT:  Thank you, Counsel.

18              MR. SELTZER:  Your Honor, we join in that request

19    and I believe forms of judgment have been submitted to the

20    Court for each of the settling defendants.

21              THE COURT:  Absolutely.  Orders have already been

22    submitted to the Court and I will definitely do that.

23              MR. SIMMONS:  Thank you, Your Honor.

24              THE COURT:  I want to address the Loadstar just

25    briefly.  I did calculate your hours.  I do a number of

 1    things.  I look at attorneys working an average 1,500 hours a

 2    year, dividing that by the number of hours you worked, how

 3    many attorneys worked full time, I looked at all of that, and

 4    I know what your Loadstar is, which is a negative number,

 5    which is good that it is negative, I mean, certainly if you

 6    were to be paid by the hour it would be a larger fee -- well,

 7    certainly larger than this partial but it would be larger

 8    than what you asked for, and the Court is well aware of that,

 9    but I do think -- I do think that's an interesting cross

10    check but I do not intend in this case so when you do your

11    briefs don't bother with the hourly rate, you know, because

12    I'm not doing that.  That is not -- that's not a way to do it

13    because then I would have to study very -- much more closely

14    your hours and what you are doing, and I don't intend to

15    second guess what you are doing, I will accept your hours and

16    do the Loadstar based on the hours that you submit.  Okay.

17    Anything else?

18              MR. SELTZER:  I don't think so, Your Honor.

19              THE COURT:  All right.  Thank you very much.  Then

20    we'll see you in September but then remember --

21              MR. WILLIAMS:  Some of us sooner than that.

22              THE COURT:  Some of you very soon, yes, but then

23    remember we are going to go on two months.  Thank you.

24              MR. SELTZER:  Thank you, Your Honor.

25              THE LAW CLERK:  All rise.  Court is adjourned.

1          (Proceedings concluded at 4:57 p.m.)

2                    _      _      _

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*CERTIFICATION*

I, Robert L. Smith, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages comprise a full, true and correct transcript taken in the matter of In Re: Automotive Parts Antitrust Litigation, Case No. 12-02311, on Wednesday, May 11, 2016.


*s/Robert L. Smith*
Robert L. Smith, RPR, CSR 5098
Federal Official Court Reporter
United States District Court
Eastern District of Michigan


Date:  05/19/2016

Detroit, Michigan