UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 12-MD-02311 HON. MARIANNE O. BATTANI |
| THIS RELATES TO: ALL DIRECT PURCHASER ACTIONS | |

## DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW REGARDING ATTORNEYS' FEES

David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
38500 Woodward Avenue, Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
    & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone:  (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone:  (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
    & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone:  (207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
SPECTOR ROSEMAN KODROFF
    & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF THE LAW AND THE DIRECT PURCHASERS' POSITION ..................................................................................................................1

   A.   Introduction ................................................................................................1

   B.   Direct Purchaser Plaintiffs' Suggested Methodology ...............................2

   C.   Summary of the Law ..................................................................................3

II.  BACKGROUND ...................................................................................................5

III. REASONABLE AND FAIR ATTORNEYS' FEES UNDER APPLICABLE LAW .............5

   A.   The Percentage Of The Recovery Method Is The Preferred Method In The Sixth Circuit, Has Already Been Used By The Court, And Should Continue To Be Used In The Other Automotive Parts Cases ....................................................6

   B.   What Constitutes A Fair and Reasonable Percentage Of The Settlement Fund ....10

      1.   Extensive Surveys Of Class Action Fee Awards Demonstrate That the Average Fee Award Is Approximately 30% ...............................................10

      2.   Recent Awards In Antitrust Cases ...........................................................12

      3.   Even in So-Called "Mega Fund" Cases, Courts Award Fees of Thirty Percent and Above .....................................................................................13

   C.   The Factors Identified By The Sixth Circuit For the Court to Consider When Awarding Fees ..........................................................................................14

      1.   Result Achieved ........................................................................................15

      2.   The Lodestar And The Lodestar Crosscheck .............................................15

      3.   The Real Risk That Plaintiffs' Counsel Could Receive No Compensation for Their Efforts if They Are Not Successful Supports Attorneys' Fees of Thirty Percent or Above and Above the Lodestar ....................................16

      4.   Society Has An Important Stake In These Lawsuits ..................................18

      5.   The Complexity Of The Cases ...................................................................18

      6.   Skill And Experience Of Counsel .............................................................19

   IV. CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988)..............................17

*Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972 (W.D. Mich. Oct. 16, 2007) ..............11

*Blum v. Stenson*, 465 U.S. 886 (1984) .........................................................7

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).............................................6

*Bowling v. Pfizer, Inc.*,102 F.3d 777 (6th Cir. 1996)........................................15

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988) ..................................9

*Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991).............................9

*Evans v. Jeff D.*, 475 U.S. 717 (1986).........................................................8

*Godshall v. Franklin Mint Co.*, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ................................13

*Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000)..........................9

*Heekin v. Anthem, Inc.*, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)...........................12

*Ikon Office Solutions, Inc. Sec. Litig,*, 194 F.R.D 166 (E.D. Pa. 2000)..........................13

*In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C. 1981) .............................11

*In re AremisSoft Corp., Sec. Litig.,* 210 F.R.D. 109 (D.N.J. 2002) .............................13

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) .....................passim

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003) ...............................10, 18

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) .................................11

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) .......................................11

*In re Credit Default Swaps Antitrust Litig.,* 2016 WL 2731524 (S.D.N.Y. April 26, 2016).........16

*In re Delphi Corp. Sec., Derivative & ERISA Litig.,* 248 F.R.D. 483 (E.D. Mich. 2008)......passim

*In re Enron Corp.,* 586 F. Supp. 2d 732 (S.D. Tex. 2008) ........................................16

*In re FAO Inc. Sec. Litig.*, 2005 WL 3801469 (E.D. Pa. May 20, 2005) ......................13

*In re Fasteners Antitrust Litig.*, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014) .........................12

*In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739 (E.D. Pa. 2013) ............................13

*In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245 (N.D. Ill. 1979) .........................18

*In re Foundry Resins Antitrust Litig.,* Case No. 2:04-md-1638 (S.D. Ohio Mar. 31, 2008) ... 10, 12

*In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) .......................13

*In re General Motors Corp., Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995) .........................................................................9

*In re Linerboard Antitrust Litig.,* 2004 WL 1221350 (E.D. Pa. June 2, 2004)......................13, 19

*In re National Century Financial Enterprises, Inc. Investment Litig.,* 2009 WL 1473975 (S.D. Ohio May 27, 2009) ................................................................................................ 11

*In re Neurontin Antitrust Litig.,* C.A. No. 02-1830 (D.N.J. Aug. 6, 2014) ................................. 13

*In re OSB Antitrust Litig.,* Master File No. 06-826 (E.D. Pa.) ...................................................... 13

*In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ............ passim

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666 (N.D. Ill. Jan. 22, 2014) ................................................................................................................................. 12

*In re Polyurethane Foam Antitrust Litig.,* 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015)12, 13, 19

*In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) . 4, 12, 16

*In re Ready-Mixed Concrete Antitrust Litig.,* 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) ... 7, 12

*In re Refrigerant Compressors Antitrust Litig.,* Case No. 2:09-md-02042 (E.D. Mich. June 16, 2014) .................................................................................................................................. 12

*In re Remeron Direct Purchaser Antitrust Litig.,* 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ......... 7

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................ 10

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294 (3d Cir. 2003) ....................................................... 14

*In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014) .. 9, 12

*In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ........... 12

*In re Synthroid Marketing Litig.,* 264 F.3d 712 (7th Cir. 2001) ..................................................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2013 WL 1365900 (N.D. Cal. April 3, 2013) ........ 14

*In re TFT-LCD Antitrust Litig.,* 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ........................... 14

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) ......................................................................................................................... 7, 9

*In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029 (D. Md. Dec. 13, 2013) ................. 13

*In re Trans Union Corp. Privacy Litig.*, 629 F. 3d 741 (7th Cir. 2011) ....................................... 17

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) ............................................................ 11

*In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. July 16, 2001) .............................. 11

*Int'l Woodworkers of Am. AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986) ........................................................................................................... 17

*Isabel v. City of Memphis*, 404 F.3d 404 (6th Cir. 2005) ............................................................ 15

*Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241 (8th Cir. 1996) ................................................. 9

*Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981) ....................................................................... 17

*Klein v. PDG Remediation, Inc.,* 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) .............................. 13

*Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144 (S.D. Ohio May 30, 2012) ..................... 17

*Lewis v. Wal-Mart Stores, Inc.,* 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006) ............................ 12

*Matter of Continental Illinois Sec.Litig.,* 962 F.2d 566 (7th Cir. 1992) ......................................... 9

*Moore v. United States,* 63 Fed. Cl. 781 (2005) ............................................................................ 13

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,* 234 F.R.D. 627 (W.D. Ky. 2006) .......................................................................................................................... 13

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711 (1987) ........... 15

*Rawlings v Prudential-Bache Properties, Inc.,* 9 F.3d 513 (6th Cir. 1993) ........................ 2, 4, 8, 9

*Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990) ................... 9

*Standard Iron Works v. Arcelormittal,* 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ......... 7, 12, 13

*Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261 (D.C. Cir. 1993) ..................................................... 9

*Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d, 521 (E.D. Ky. 2010) ................... 10

*Waters v. Intern. Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) ................................... 11

*Williams v. Sprint/United Mgmt. Co,* 2007 WL 2694029 (D. Kan. Sept. 11, 2007) .................... 12

## Other Authorities

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ................................. 11

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study,* 1 J Empirical Legal Stud. 27 (2004) ...................................................................................................... 7

*Report of the Third Circuit Task Force on the Selection of Class Counsel,* 208 F.R.D. 340 (2002) ......................................................................................................................... 3, 8, 16

*Report of the Third Circuit Task Force,* 108 F.R.D. 237 (1986) ............................................... 6, 8

## Rules

Fed. R. Civ. P. 23(g) ..................................................................................................................... 19

Fed. R. Civ. P. 23(h) ....................................................................................................................... 6

I.       INTRODUCTION AND SUMMARY OF THE LAW AND THE DIRECT
         PURCHASERS' POSITION

Direct purchasers of various motor vehicle parts[1] respectfully submit this memorandum

of law regarding the standards for awards of attorneys' fees, as requested by the Court at the May

11, 2016 status conference.

         A.       Introduction

The *Automobile Parts Antitrust Litigation* began in 2011 with the filing of the *Wire*

*Harness* cases, and has grown to encompass dozens of additional cases - from alternators to

windshield washer systems.  The various class action cases have been brought by and on behalf

of direct purchasers of motor vehicle parts (the "DPPs") from one or more of the defendants, and

by and on behalf of indirect purchasers of those parts, motor vehicle buyers from automobile

dealers (the "end-payors") as well as the automobile dealers from whom the end-payers

purchased their vehicles.[2]  The latter two groups purchased a vehicle containing bid-rigged and

price-fixed parts from a non-defendant.

Because of the varying positions the direct and indirect purchasers inhabit in the chain of

distribution of motor vehicle parts, the composition of the classes is quite different.  The end-

payors and automobile dealers are suing defendants that colluded regarding each price-fixed part

installed in automobiles.  Therefore, all of the indirect purchaser cases (regardless of the part at

issue) are brought on behalf of essentially the same class of purchasers, and the recoveries will

---

[1] Direct Purchasers have filed class actions in the following separate cases: *Wire Harness, Instrument Panel Clusters, Heater Control Panels, Fuel Senders, Occupant Safety Systems, Starters, Alternators, Oxygen Sensors, Spark Plugs, Power Window Motors, Ignition Coils, Windshield Wipers, Fuel Injection Systems, Air Conditioning Systems, Windshield Washer Systems, Automotive Hoses, Electric Powered Steering Assemblies*, *Bearings* and *Small Bearings*.
[2] There is also an indirect truck and equipment dealer class case, and an individual case brought by Ford Motor Company against Fujikura.

1

also be by the same class.  In contrast, the direct purchaser classes are not homogeneous.  This is illustrated by the fact that there were significantly different numbers of potential class members in the three cases in which there have been settlements on behalf of direct purchasers - 204 in the *Instrument Panel Clusters* case, 3,535 in *Wire Harness,* and 1,342 in *Occupant Safety Systems.*

This is an important distinction.  The direct purchaser cases cannot be considered one case on behalf of the same class when addressing the attorneys' fee issue. Because the different direct purchaser cases should not be combined, the specific circumstances of each one of these cases should be evaluated when addressing attorneys' fee requests.

### B.    Direct Purchaser Plaintiffs' Suggested Methodology

While each case must be evaluated separately, DPPs suggest that the Court establish a standard baseline percentage fee of 30% of the gross settlement fund. This percentage is commonly used in antitrust class action cases, including those with very large recoveries. The Court would, of course, consider whether to adjust the standard fee up or down based on the relevant facts and circumstances of a particular case when the fee petition is being considered. At that time, the Court will be in the best position to evaluate the relevant factors identified by the Sixth Circuit in light of the circumstances of each case. *See Rawlings v Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515 (6th Cir. 1993).

DPPs have from the outset assumed that every case could go to a jury trial, and have litigated the cases with that in mind. Even so, as the cases unfold differently, it follows that the circumstances of each fee application will differ from part to part. For example in the DPPs' settlements with Autoliv and TRW in *Occupant Safety Systems*, counsel achieved the recovery relatively early in the case (which is encouraged), and the lodestar of DPPs' attorneys was relatively small. In contrast, in *Wire Harness* the DPPs have been litigating vigorously for nearly

five years and their lodestar is more substantial. When DPPs' counsel move for an award of attorneys' fees in *Wire Harness,* the facts relating to the amount of work expended relative to the recovery obtained will be far different than those that existed at the time of the initial attorneys' fee petition in *Occupant Safety Systems.*

Because each direct purchaser case is not on behalf of exactly the same class and the circumstances may vary greatly from case to case, it would be appropriate to decide the specific fee on the record before the Court in each action. In some cases, recoveries may be large sums; in others, they may be more modest. As discussed herein, simply applying a sliding scale to DPPs' attorneys' fees by aggregating recoveries achieved for different classes of direct purchasers of different parts would not be appropriate. DPPs respectfully suggest that using a baseline fee of 30%, while retaining the flexibility to address unique circumstances of particular actions and to make adjustments, follows Sixth Circuit law, promotes consistency, and permits the Court to tailor the fees as appropriate for each unique case.

## C.   Summary of the Law

Due to the "uncertainty of class action litigation and given the Rule 23 requirement that the court review a fee award for reasonableness at the end of the case, it is not possible to set a precise fee at a preliminary stage of the proceedings." *Third Circuit Task Force on Selection of Class Counsel*, 208 F.R.D. 340, 420 (2002). However, as the Third Circuit Task Force also observed, the "potential fees might be established within ranges, with the court making it clear to the parties that the fee remains open for further review for reasonableness." *Id*. at 421. The following three points summarize the state of law.

1.   Under Sixth Circuit law, district courts have discretion to award attorneys' fees using one of two established methods, either the "percentage of the fund method" or the

"lodestar-multiplier method." The clear trend in the law over the last several decades has been to utilize the percentage of the fund method, which the Court recognized in connection with awarding fees in the *Occupant Safety Systems* case. DPPs believe that it remains the most appropriate method for the Court to use in the other cases that make up the *Automotive Parts Antitrust Litigation. See, e.g., Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

2.      Percentage of the fund awards of one-third are commonly made by courts in this and other Circuits. *See, e.g., In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (33⅓%); *In re Automotive Parts Antitrust Litig.,* Master File No. 12-md-02311 and 2:12-cv-00602-MOB-MKM (All Dealership Actions) (E.D. Mich. Dec. 12, 2015) (one-third of the net funds from partial settlements in 18 cases).

3.      Courts using the lodestar-multiplier method (or using it as a "cross-check" against the percentage) have awarded attorneys' fees based on multipliers up to 6 times the lodestar. *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767-68 (S.D. Ohio 2007) (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Prandin,* 2015 WL 1396473, at *4 (3.01 multiplier).

DPPs respectfully suggest that, for each direct purchaser case, the Court use the percentage of the fund method. Further, DPPs respectfully suggest that a reasonable standard baseline percentage should be 30%. Because each direct purchaser case is separate and unique, however, any baseline fee would be subject to adjustment based on the Court's *ex post* evaluation of the criteria the Sixth Circuit has identified as relevant to determining a fair and reasonable attorney's fee. If there is more than one fee petition made in a case, the Court will be

in a position to consider the amount of the settlements, the lodestar, and the fees awarded up to that point when addressing the later request.

*          *          *

In the remainder of this memorandum, DPPs discuss and analyze the Sixth Circuit and other precedent concerning attorneys' fee awards; the law supporting use of the percentage of the fund method; cases using the percentage of the fund method and the percentages awarded; the use of the lodestar "cross-check" in connection with use of the percentage of the fund method; and the various factors identified by the Sixth Circuit for courts to consider in evaluating a fee petition.

## II.     BACKGROUND

At the May 11, 2016 status conference, the Court requested input on methods for determining a reasonable attorney's fee. The Court has previously awarded fees to DPPs' counsel of 25% of the Autoliv and TRW settlements in *In re Occupant Safety Systems,* 12-cv-00601-MOB-MKM (E.D. Mich. July 15, 2015) (Doc. #128), and noted that the fee equaled a lodestar multiple of about 2.09. While the notice to Class members in *In re Occupant Safety Systems* stated that the request for attorneys' fees would be no greater than 30% of the settlement funds, DPPs' counsel eventually requested an attorneys' fee award of 28.5%. Not one direct purchaser class member (out of a class composed of mostly large, sophisticated companies) objected to the requested fee.

Recently, the Court awarded one-third of the fund (after deduction of notice costs and $2.9 million for future litigation expenses) from partial settlements in 18 cases to the automobile dealers, which resulted in a fee less than their lodestar. *In re Automobile Parts Antitrust Litig.,* *supra.*

## III.     REASONABLE AND FAIR ATTORNEYS' FEES UNDER APPLICABLE LAW

5

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized … by law…." As the Advisory Committee Notes to Rule 23(h) explain, "[f]ee awards are a powerful influence on the way attorneys initiate, develop, and conclude class actions." It is for the Court to determine what constitutes a reasonable attorneys' fee authorized by law under the facts and circumstances of each case.

### A. The Percentage Of The Recovery Method Is The Preferred Method In The Sixth Circuit, Has Already Been Used By The Court, And Should Continue To Be Used In The Other *Automotive Parts* Cases

The Supreme Court has held that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Delphi Corp. Sec., Derivative & ERISA Litig.,* 248 F.R.D. 483, 502 (E.D. Mich. 2008). As explained in *Court Awarded Attorneys' Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 241 (1986), "the common fund doctrine…allows a person who maintains a lawsuit that results in the creation, preservation, or increase of a fund in which others have a common interest, to be reimbursed from that fund for litigation expenses incurred."

Courts have used two methods to calculate reasonable attorneys' fees in common fund cases. *Report of the Third Circuit Task Force*, *supra.* One approach is the percentage of the fund method, pursuant to which the court awards a percentage of the fund created by the attorneys' efforts as their reasonable fee. It is consistent with traditional contingent fee arrangements in personal injury and other non-class litigation. The other approach, the lodestar method, multiplies the number of hours the attorneys have expended by their hourly rates to create a "lodestar" figure, which may be adjusted up or down by the court to account for factors such as

6

the challenges presented by the case, the quality of work performed, and the risk of nonpayment.[3]

Prior to 1973, most courts relied on the percentage of the fund method in awarding counsel a reasonable fee. As the First Circuit has observed, "it is the lodestar method, not the POF [percentage of the fund] method, that breaks from precedent. Traditionally, counsel fees in common fund cases were computed as a percentage of the fund, subject, of course, to considerations of reasonableness." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). "It was not until the mid-1970s that judicial infatuation with the lodestar method started to spread." *Id.*

Many courts – including courts in the Sixth Circuit – have returned to the percentage of recovery method. This trend began with the Supreme Court's decision in *Blum v. Stenson*, 465 U.S. 886 (1984), which dealt with fee awards in class actions. The Supreme Court observed that in calculating attorneys' fees under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Id.*, 465 U.S. at 900 n. 16.

---

[3] The Seventh Circuit has concluded that a market based approach is appropriate when awarding fees in common fund cases. *In re Synthroid Marketing Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) ("courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time…We have never suggested that a 'megafund rule' trumps these market rates…."). Many courts and commentators have observed that the market rate for contingent fee contracts is 30% or more of the recovery. *E.g., In re Remeron Direct Purchaser Antitrust Litig.,* 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005); *In re Ready-Mixed Concrete Antitrust Litig.,* 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) ("The market price for legal services, in light of the risk of non-payment and the normal rate of compensation in the market at the time is a contingent fee in the amount of one-third (1/3) of the common fund recovered."); *Standard Iron Works v. Arcelormittal,* 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) ($163.9 million settlement; one-third fee found to be the prevailing market rate for similar legal services in similar cases). Apart from class cases, according to one study "[s]ubstantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases." Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study,* 1 J Empirical Legal Stud. 27 (2004), at 35.

In 1985, the Third Circuit Task Force joined the rising chorus of courts and commentators criticizing reliance on the lodestar approach in common fund cases. The Task Force concluded that in common fund cases, courts should *not* employ the lodestar method, but instead should award fees on a simplified, percentage of the fund basis. *Report of the Third Circuit Task Force*, 108 F.R.D. at 237, 255; *Manual for Complex Litigation* (Third) § 24.12, at 189 (West 1995) ("In practice, the lodestar method proved difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation to reach a predetermined result."). The Supreme Court has favorably cited the *Report of the Third Circuit Task Force*. *See Evans v. Jeff D.*, 475 U.S. 717, 736 n. 28 (1986). A second Third Circuit Task Force on Selection of Class Counsel, convened in 2001, reaffirmed the 1985 Task Force's conclusion endorsing use of the percentage of the fund method. One of the conclusions (and recommendations) of the 2001 Task Force is that "[a] percentage fee, tailored to the realities of the particular case, remains superior to any other means of determining a reasonable fee for class counsel." *Third Circuit Task Force on Selection of Class Counsel*, 208 F.R.D. at 355.[4]

The Sixth Circuit has expressly approved use of the percentage of the fund approach, but still permits district courts to use either method to calculate a reasonable fee. *Rawlings*, 9 F.3d at 515-17 (discussing percentage-of-fund and lodestar approaches and declaring: "we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *16 (E.D. Mich. Dec. 13, 2011). [5]

---

[4] The Task Force was composed of federal judges, law professors, and attorneys in private practice. In the interest of full disclosure, Joseph Kohn, one of the Interim Lead Counsel, was a member of the Task Force.

[5] The percentage of the fund approach has also been endorsed in the First, Second, Third, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia Circuits. *In re Thirteen*

The percentage method is the best method to award fees from a common fund. As the Sixth Circuit has observed, "[t]he percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings*, 9 F.3d at 516.  *E.g. Delphi*, 248 F.R.D. at 502; *Cardinal,* 528 F.Supp.2d at 762 (The Sixth Circuit has "explicitly approved the percentage approach in common fund cases."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) ("The percentage-of-the-fund method is the proper method to compensate Class Counsel" because "the lodestar method is cumbersome; the percentage-of-the-fund approach more accurately reflects the result achieved; and the percentage-of-the-fund approach has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases.") (citations omitted).

The lodestar method, on the other hand, "has been criticized for being too time-consuming of scarce judicial resources," as it requires that courts "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier." *Id.* at 516-17. Moreover, "[w]ith the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id.* at 517; *see also Manual for Complex Litigation* (Third) § 24.12 at 189. Thus, there has been a "'trend towards adoption of a percentage of the

---

*Appeals,* 56 F.3d at 307; *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000); *In re General Motors Corp., Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995); *Matter of  Continental Illinois Sec.Litig.,* 962 F.2d 566, 567 (7th Cir. 1992) (as amended on denial of motions for rehearing and clarification); *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 244-46 (8th Cir. 1996); *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 456 (10th Cir. 1988); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991).

fund method in [common fund] cases.'" *Delphi*, 248 F.R.D. at 502 (quoting *Rawlings*, 9 F.3d at

516-517).

### B. What Constitutes A Fair and Reasonable Percentage Of The Settlement Fund

First, surveys of class action fee awards nationally place the average attorneys' fees

award in the 30% to 33⅓% range. Second, numerous fee awards in antitrust class actions

involving similar allegations of price fixing and market allocation have been in the 30% to

33⅓% range. Third, even in so-called "mega fund cases," fee awards of 30% and greater have

been granted.[6]

### 1. Extensive Surveys Of Class Action Fee Awards Demonstrate That the Average Fee Award Is Approximately Thirty Percent

A study of class action attorneys' fees, which examined 289 class action settlements of

up to $50 million, determined that the average attorneys' fee award was 31.7%. *See In re Rite*

*Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (citing study by Professor John

C. Coffee, Jr., of Columbia University Law School). Courts in this Circuit have made similar

observations. *See, e.g., Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d, 521, 528

(E.D. Ky. 2010). The leading treatise on class action litigation has put the average fee at one

---

[6] It should also be noted that there is ample precedent for application of the selected percentage to the settlement fund before the separate award of litigation costs and expenses from the fund. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *17; *In re Foundry Resins Antitrust Litig.*, Case No. 2:04-md-1638 (S.D. Ohio Mar. 31, 2008); *Delphi*, 248 F.R.D. at 505 (attorneys' fees awarded on gross settlement fund); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531-535 (E.D. Mich. 2003) (awarding costs in addition to percentage of the fund fee); *In re ATI Tech., Inc. Sec. Litig.*, 2003 WL 1962400, at *6 (E.D. Pa. 2003) (awarding fee of 30% of gross settlement fund). The reason for calculating attorneys' fees based on the gross amount of the settlement fund, including that portion of the fund that goes to pay litigation costs, is straightforward: the costs for which plaintiffs' counsel seek reimbursement were incurred for the benefit of the class to secure the settlement fund. Because the litigation costs were incurred in pursuit of the settlement fund itself, and were necessary to its creation, the recovery of those costs pursuant to the settlement is a benefit to the class that should be counted in valuing the settlement fund for the purpose of calculating attorneys' fees.

third. *See* Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002), §14:6 at 551 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *Bessey v. Packerland Plainwell, Inc*., 2007 WL 3173972, at *4 (W.D. Mich. Oct. 16, 2007) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery")(internal quotation marks omitted); *Delphi*, 248 F.R.D. at 502-03; *In re National Century Financial Enterprises, Inc. Investment Litig.,* 2009 WL 1473975 (S.D. Ohio May 27, 2009).

Fee awards in the neighborhood of one third or above in connection with class action settlements are not new and have become routine. *See, e.g., In re Combustion, Inc*., 968 F. Supp. 1116, 1133, 1142 (W.D. La. 1997) ("50 percent of the fund is the upper limit on a reasonable fee award from a common fund . . . . [D]istrict courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee") (awarding fee of 36% of $127 million recovery); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (fee of 36% of $3.5 million recovery); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001) (noting that one district court had estimated the range to be 19% to 45%, while another had fixed it at 20% to 33.33%); *Waters v. Intern. Precious Metals Corp.,* 190 F.3d 1291, 1292-94 (11th Cir. 1999) (fee of 33.3% of $40 million recovery); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding fee of approximately one third of $359 million antitrust recovery, which is "within the fifteen to forty-five percent range established in other cases."); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (Awarding fee of 45% of $7.3 million settlement fund and noting: "[t]here have been several [antitrust] cases where courts have awarded more than 40% of the settlement fund for fees and expenses").

## 2.     Recent Awards In Antitrust Cases

District courts in the Sixth Circuit (and elsewhere) have recently awarded 30% or more of

settlement funds as reasonable attorneys' fees. For example, in *Prandin, supra,* the court

awarded one-third of a $19 million settlement fund. In *Skelaxin,* 2014 WL 2946459, at *1, the

court awarded one-third of a $73 million settlement fund, finding that a "counsel fee of one third

is fair and reasonable and fully justified" and "within the range of fees ordinarily awarded." In *In*

*re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013), the

court found that a one-third fee from settlements totaling $158.6 million was reasonable. Other

examples are *In re Polyurethane Foam Antitrust Litig.,* 2015 WL 1639269, at *7 (N.D. Ohio

Feb. 26, 2015), where plaintiffs' counsel were awarded 30% of a $148.7 million settlement fund,

*In re Refrigerant Compressors Antitrust Litig.,* Case No. 2:09-md-02042 (E.D. Mich. June 16,

2014), where the court awarded 30% of a $30 million settlement fund as attorneys' fees, *In re*

*Foundry Resins Antitrust Litig.,* Case No. 2:04-md-1638 (S.D. Ohio Mar. 31, 2008) (attorneys'

fees of one-third of a settlement fund of $14.1 million awarded). Additional decisions in

antitrust, securities and other areas in which fees of 30% or more of the settlement funds were

awarded abound, and are collected below.[7]

---

[7] *See, e.g., In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666 (N.D. Ill.
Jan. 22, 2014) (awarding one-third interim fee from initial settlement in multi-defendant case);
*Standard Iron Works v. Arcelormittal,* 2014 WL 77815572, at *1 (N.D. Ill. Oct. 22, 2014)
(attorneys' fee award of one-third of $163.9 million settlement); *In re Fasteners Antitrust Litig.*,
2014 WL 296954, *7 (E.D. Pa. Jan. 27, 2014) ("Co–Lead Counsel's request for one third of the
settlement fund is consistent with other direct purchaser antitrust actions."); *Heekin v. Anthem,*
*Inc.*, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) (awarding one-third fee from $90 million
settlement fund); *In re Ready-Mixed Concrete Antitrust Litig.*, 2010 WL 3282591, at *3 (S.D.
Ind. Aug. 17, 2010) (approving one-third fee); *Williams v. Sprint/United Mgmt. Co,* 2007 WL
2694029, at *6 (D. Kan. Sept. 11, 2007) (awarding fees equal to 35% of $57 million common
fund); *Lewis v. Wal-Mart Stores, Inc.,* 2006 WL 3505851, at *1 (N.D. Okla. Dec. 4, 2006)
(awarding one-third of the settlement fund and noting that a "one-third [fee] is relatively standard
in lawsuits that settle before trial."); *New England Health Care Employees Pension Fund v. Fruit*

3.     **Even in So-Called "Mega Fund" Cases, Courts Award Fees of Thirty Percent and Above**

Fee awards in cases resulting in settlements of $100 million or more – so-called "mega fund" cases – provide further support to DPPs' position  It is sometimes argued that as the amount of the recovery increases, the percentage of the fee should decrease, to prevent windfalls to counsel. But in fact, there are numerous instances in which fees of 30% or more have been awarded by courts to the plaintiffs' attorneys in large recovery cases. *See, e.g., Polyurethane Foam, supra* (30%); *Standard Iron Works, supra* (one-third); *In re Neurontin Antitrust Litig.,* C.A. No. 02-1830 (D.N.J. Aug. 6, 2014) (one-third of $190,416,438 million settlement); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (one-third fee from $163.5 million fund); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013) (noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees" and awarding one-third fee from $150 million fund); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350 (E.D. Pa. June 2, 2004) (30% of $202 million awarded); *In re OSB Antitrust Litig.,* Master File No. 06-826 (E.D. Pa.) (fee of one-third of $120 million in settlement funds); *Ikon Office Solutions, Inc. Sec. Litig,*, 194 F.R.D 166 (E.D. Pa. 2000) (fee of 30% of settlement of $109 million).

---

*of the Loom, Inc.,* 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("[A] one-third fee from a  common fund case has been found to be typical by several courts.") (citations omitted), *aff'd*, 534 F.3d 508 (6th Cir. 2008); *In re AremisSoft Corp., Sec. Litig.,* 210 F.R.D. 109, 134 (D.N.J. 2002) ("Scores of cases exist where fees were awarded in the one-third to one-half of the settlement fund.") (citations omitted); *Klein v. PDG Remediation, Inc.,* 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999) ("33% of the settlement fund…is within the range of reasonable attorney fees awarded in the Second Circuit"); *Moore v. United States,* 63 Fed. Cl. 781, 787 (2005) ("one-third is a typical recovery"); *In re FAO Inc. Sec. Litig.*, 2005 WL 3801469, at * 2 (E.D. Pa. May 20, 2005) (awarding fees of 30% and 33%); *Godshall v. Franklin Mint Co.*, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (awarding a 33% fee and noting that "[t]he requested percentage is in line with percentages awarded in other cases"); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-44 (E.D. Pa. 2001) (awarding one-third of a $48 million settlement fund).

The Third Circuit has observed that "[t]here is no rule that a district court must apply a declining percentage reduction in every settlement involving a sizeable fund." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 302-03 (3d Cir. 2003). Indeed, use of the percentage method aligns the interests of the class members and class counsel by basing the attorneys' fee on the amount recovered for the class instead of the number of hours the attorneys' bill. Based upon the number of fee awards of 30% or more in large recovery cases it is apparent that courts frequently do not apply a sliding scale, but instead award fees to class counsel in amounts that those counts concluded were appropriate under the circumstances. For example, in *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2013 WL 1365900, at *7 (N.D. Cal. April 3, 2013), the court awarded class counsel a 30% fee on a settlement amount of over $1 billion, observing the "not-insignificant risk involved in litigating the claims at issue [for 6 years]…[in a case where] "some risk was lessened on account of parallel criminal price-fixing charges and guilty pleas." The direct purchasers' counsel were awarded 30% of a $405 million settlement. *In re TFT-LCD Antitrust Litig.,* 2011 WL 7575003, at *1 (N.D. Cal. Dec. 27, 2011). Here DPPs are pursuing cases broader in scope than the guilty pleas, including against defendants that were not charged by the government, which adds to the risks involved in these cases.

### C. The Factors Identified By The Sixth Circuit For the Court to Consider When Awarding Fees

Once the Court has selected a method for awarding attorneys' fees, the Sixth Circuit has identified six factors to guide courts in weighing a fee request in a common fund case: 1) the value of the benefit rendered to the class; 2) the value of the services on an hourly basis; 3) whether the services were undertaken on a contingent fee basis; 4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; 5) the complexity of the litigation; and 6) the professional skill and standing of counsel involved on

both sides. *E.g., Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996). The Sixth Circuit's identification of these factors illustrates that it believes that an appropriate fee should be based on an evaluation of the facts and circumstances of each case.

### 1.    Result Achieved

The result achieved for the class is the principal consideration. *E.g., Delphi,* 248 F.R.D. at 503.

### 2.    The Lodestar And The Lodestar Crosscheck

To calculate a reasonable fee under the lodestar method, a court must first determine the base amount of the fee by multiplying the number of hours counsel reasonably expended on the case by their reasonable hourly rate. *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).[8]

Some courts have considered the lodestar as a "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *See Cardinal,* 528 F. Supp. 2d at 764; *In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *18. Use of a lodestar cross-check is, however, optional, and, because it is only a check, the court is not required to engage in detailed scrutiny of time records. *Cardinal*, 528 F. Supp. 2d at 767. The rationale behind the cross-check is to make sure that the fee requested is well "aligned with the amount of work the attorneys contributed" to the recovery, and does not constitute a "windfall." *See id.* As noted above,

---

[8] The United States Supreme Court has held that the use of current rates, as opposed to historical rates, is appropriate to compensate counsel for inflation and the delay in receipt of the funds. *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987). DPPs' counsel have in the past submitted their lodestar information at their lower historical rates, rather than at their current (higher) rates. Further, DPPs' Interim Lead Counsel monitor the lodestar and review the attorneys' time records prior to a submission to the Court as part of any motion for attorneys' fees.

however, courts have observed that the market rate for contingent fee legal services is around one-third, without enhancement or reduction based on lodestar. This is the essence of the bargain struck when a contingent fee contract is entered into in the marketplace.

Multipliers vary, but in the Sixth Circuit have been as high as 6. *Cardinal*, 528 F. Supp. 2d at 767-68 (rejecting multiplier of 7.89, but approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" in a large class action "ranges from 1.3 to 4.5."). In *Prandin,* 2015 WL 1396473, at *4, the fee award constituted a 3.01 multiplier. In *In re Enron Corp.,* 586 F. Supp. 2d 732, 799-803 (S.D. Tex. 2008), the fee awarded on a $688 million settlement constituted a 5.2 multiplier on class counsel's lodestar. Recently, in *In re Credit Default Swaps Antitrust Litig.,* 2016 WL 2731524, at *17 (S.D.N.Y. April 26, 2016), the court awarded a $253 million fee, in a case that settled before class certification, which constituted a multiplier "just over 6."

The Third Circuit Task Force, however, expressed skepticism "about the use of the lodestar even as a cross-check when awarding a percentage of the common fund" given the "substantial problems with the lodestar approach generally." *Report of the Third Circuit Task Force on the Selection of Class Counsel*, 208 F.R.D. at 422. According to the Task Force, the "lodestar is at most a relevant factor if it is to be used at all, and it should not receive exaggerated importance when assessing an appropriate fee." *Id*.

### 3. The Real Risk That Plaintiffs' Counsel Could Receive No Compensation for Their Efforts if They Are Not Successful Supports Attorneys' Fees of Thirty Percent or Above and Above the Lodestar

As noted in footnote 3, above, the risk factor involved in contingency fee cases is the basis for courts concluding that the market rate for legal services rendered on a contingent basis is 30%, or higher. It is common in contingent fee cases for attorneys representing the class to

receive fees in excess of their normal hourly rates. The rationale for this is straightforward: "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds*, *Int'l Woodworkers of Am. AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). "If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988). *See In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (risk of non-payment a factor supporting the requested fee). In these cases DPPs' counsel are proceeding on a contingent fee basis and have advanced significant funds and time in pursuit of the cases, risking not receiving payment for the value of their time and reimbursement of out-of-pocket cost and expenses if they were unsuccessful. *See, e.g., Delphi*, 248 F.R.D. at 503-54.

The contingency factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *Cardinal*, 528 F. Supp. 2d at 766. Indeed, "some courts consider the 'risk of non-recovery' as 'the most important factor in fee determination.'" *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (quoting *Cardinal,* 528 F. Supp. 2d at 766). "[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F. 3d 741, 746 (7th Cir. 2011).

Here, for example, DPPs' counsel have been litigating the *Wire Harness* case for five years without compensation. Millions of pages of documents have been reviewed, scores of depositions have been taken, and large amounts of time have been spent on discovery requests,

17

motions, and the other requirements of complex class action litigation. In addition, DPPs' counsel have expended a considerable sum of money out-of-pocket in the pursuit of the case. This is just one of the many cases DPPs' counsel have pending, which militates in favor of using 30% as a standard fee, subject to adjustment based on the circumstances of each case.

### 4. Society Has An Important Stake In These Lawsuits

It is well established that there is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (e.g., the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979). Courts in the Sixth Circuit weigh "society's stake in rewarding attorneys who [win favorable outcomes in antitrust class actions] in order to maintain an incentive to others . . . Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee . . .  Society also benefits from the prosecution and settlement of private antitrust litigation." *In re Cardizem*, 218 F.R.D. at 534 (internal quotation marks omitted). *Accord, Delphi,* 248 F.R.D. at 504.

Here, in the related criminal cases, the Department of Justice has not sought restitution from any defendant. Obtaining monetary recoveries for those affected by the various parts conspiracies has been left to private attorneys. Further, society as a whole – to the extent that an economy composed of competitive markets is superior to one in which free competition is stifled by collusion – stands to benefit from the work Plaintiffs' counsel have performed and will perform going forward.

### 5. The Complexity Of The Cases

As the Court is aware, "[a]antitrust class actions are inherently complex . . . ." *In re Cardizem,*, 218 F.R.D. at 533. S*ee also In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at

*19; *In re Linerboard Antitrust Litig.,* 292 F.Supp.2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.") (citations and internal quotation marks omitted). The constituent cases in the *Automotive Parts Antitrust Litigation* are no exception. The work of DPPs' counsel in the direct purchaser cases that has been done and which awaits includes *inter alia*, investigating the market, drafting complaints, briefing and arguing motions to dismiss, undertaking document review, taking depositions, and briefing and arguing motions for class certification and summary judgment, as well as trials and appeals. In addition, many of the documents are in Japanese and a number of them may also be in German, French, Korean or Swedish. A large number of the witnesses are not English speakers, adding additional complexity (and cost) to the cases.

### 6.     Skill And Experience Of Counsel

The skill and experience of counsel on both sides of the "v" is a factor courts may consider in determining a reasonable fee award. *E.g., Polyurethane Foam,* 2015 WL 1639269 at * 7; *In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *19. The Court, in appointing Fink + Associates Law, Freed, Kanner, London & Millen, L.L.C., Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios, L.L.P., and Spector, Roseman, Kodroff & Willis, P.C., as Interim Lead and Liaison Counsel (and later as Class Counsel for the Autoliv, TRW, Nippon Seiki and Lear Settlement Classes), recognized that these firms have the requisite skill and experience in class action and antitrust litigation to serve effectively in their roles. *See* Fed. R. Civ. P. 23(g). In assessing this factor, courts also may look to the qualifications of the defense counsel opposing the class. Here, the quality of defense counsel, who hail from the finest antitrust firms in the country, is top notch. All of the firms representing defendants have earned excellent reputations

and have extensive resources at their disposal.

## IV.   CONCLUSION

For the foregoing reasons, DPPs respectfully suggest that, for each direct purchaser case: 1) the Court use the percentage of the fund method; and 2) that a standard baseline percentage award should be 30% of the recovery, subject to adjustment based on the Court's evaluation of the circumstances of each case in light of the criteria relevant to the determination of a fair and reasonable fee.

DATED: June 14, 2016

Respectfully submitted,

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone:  (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone:  (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone:  (207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
SPECTOR ROSEMAN KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300

*Interim Lead and Liaison Counsel for the Direct Purchaser Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2016, I electronically filed the foregoing paper with the

Clerk of the court using the ECF system, which will send notification of such filing to all counsel

of record registered for electronic filing.

/s/ Darryl Bressack
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500