## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | 2:12-md-02311 Honorable Marianne O. Battani Special Master Gene J. Esshaki |
| In Re: All Auto Parts Cases | |
| THIS RELATES TO: ALL AUTO PARTS CASES | **ORAL ARGUMENT REQUESTED** |

**CERTAIN DEFENDANTS' OBJECTION TO THE SPECIAL MASTER'S DECEMBER 29, 2016 ORDER REGARDING THE PRODUCTION OF CERTAIN VEHICLE PRICING INFORMATION FROM CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS AND THEIR AFFILIATED ENTITIES**

## **QUESTION PRESENTED**

Whether the Special Master erred and denied certain defendants their constitutional due process rights by limiting their counsel's access to certain vehicle pricing documents to in-person review in the offices of, for each Lead Case, only one designated "custodian firm," thereby imposing significant costs and impractical limitations on counsel's ability to access information critical to their clients' defense?

Answer:        Yes

## STATEMENT OF CONTROLLING AND MOST APPROPRIATE AUTHORITY

*Cherdak v. Koko Fitclub, LLC*,
    No. 14-10371-IT, 2015 U.S. Dist. LEXIS 54621 (D. Mass. Apr. 27, 2015)    9

*In re Ohio Execution Protocol Litig.*,
    __ F.3d __, 2016 WL 749863 (6th Cir. Dec. 30, 2016)    8

*Pause Tech., Inc. v. Tivo Inc.*,
    No. 01-11657-PBS, 2003 U.S. Dist. LEXIS 27253 (D. Mass. June 18, 2003)    9

*Pragmatus AV, LLC v. Citrix Sys., Inc.*,
    No. 11-62484-CIV, 2012 U.S. Dist. LEXIS 190856 (S.D. Fla. Jul. 18, 2012)    9

## TABLE OF AUTHORITIES

### Cases

*In re Automotive Parts Antitrust Litig.*,
    No. 2:12-md-2311, Order Appointing a Master at ¶ I.C................................................11

*In re Automotive Parts Antitrust Litig. (Wire Harness Sys.)*,
    No. 2:12-cv-102, Opinion and Order Granting in Part and Denying in Part
    Collective Defendants' Motion to Dismiss Indirect Purchaser Actions (E.D.
    Mich. June 6, 2013) ................................................................................................5

*Cherdak v. Koko Fitclub, LLC*,
    No. 14-10371-IT, 2015 U.S. Dist. LEXIS 54621 (D. Mass. Apr. 27, 2015)............................9

*In re Consumers Power Co. Sec. Litig.*,
    109 F.R.D. 45 (E.D. Mich. 1985) ........................................................................10

*Hickman v. Taylor*,
    329 U.S. 495 (1947)..............................................................................................10

*Illinois Brick v. Illinois*,
    431 U.S. 720 (1977)................................................................................................4

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*,
    294 F.R.D. 87 (S.D. Ohio 2013) ............................................................................8

*Nucorp, Inc. v. Does 1-24*,
    No. 2:11-cv-15222, 2012 U.S. Dist. LEXIS 187547 (E.D. Mich. Oct. 18,
    2012) ......................................................................................................................8

*In re Ohio Execution Protocol Litig.*,
    __ F.3d __, 2016 WL 749863 (6th Cir. Dec. 30, 2016)............................................8

*Pause Tech., Inc. v. Tivo Inc.*,
    No. 01-11657-PBS, 2003 U.S. Dist. LEXIS 27253 (D. Mass. June 18, 2003) ........................9

*Pragmatus AV, LLC v. Citrix Sys., Inc.*,
    No. 11-62484-CIV, 2012 U.S. Dist. LEXIS 190856 (S.D. Fla. Jul. 18, 2012) ........................9

### Rules

Fed. R. Civ. P. 26(c)(1)(G) ....................................................................................8

Fed. R. Civ. P. 53(f)................................................................................................9

**Other Authorities**

Advisory Committee Notes to FRCP Rule 26(b), 1946 Amendment...........................................10

## TABLE OF CONTENTS

Page

THE SPECIAL MASTER'S ORDER ........................................................................ 1

ARGUMENT ........................................................................................................... 2

I.   The Special Master's Order Unreasonably Burdens the Majority of Defendants' Access to Crucial Evidence in the *Auto Parts* Cases ......................................... 4

II.  The Special Master's Order Goes Beyond Protections Necessary to Safeguard Sensitive Business Information ........................................................................ 8

III. The Special Master Ruled on this Issue Without Any Party Being Fully Heard .................. 10

CONCLUSION ........................................................................................................ 12

## INTRODUCTION

Objectors[1] appeal a portion of the SPECIAL MASTER'S ORDER REGARDING THE PRODUCTION OF CERTAIN VEHICLE PRICING INFORMATION OF CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS AND THEIR AFFILIATED ENTITIES (ECF No. 1579, the "Order") that severely limits their access to some of the most significant documents to be produced by the OEMs: documents that explain the methodology by which the OEMs price their vehicles and that reflect the OEMs' pricing decisions with respect to vehicles at issue in these cases. These documents are critical to the indirect purchaser cases, where plaintiffs must show that any overcharges caused by the alleged conspiracies at issue in these cases were in fact passed on to them in the form of a higher prices on the vehicles they purchased. Limiting and imposing significant costs and burdens on access to this information frustrates the ability of the majority of defense counsel in these cases to provide their clients with effective representation. Objectors respectfully ask the Court to modify the Special Master's Order to eliminate the restriction that vehicle pricing documents may be stored and accessed at the offices of only one defense law firm for each set of Lead Cases.

## THE SPECIAL MASTER'S ORDER

The Special Master imposed significant, burdensome limitations on the parties' access to OEM Vehicle Pricing Documents – limitations that go far beyond those already in place under the Protective Orders in these cases, and that are highly unusual in cases of this nature. It orders that, for each Lead Case, document productions by OEMs of Vehicle Pricing Documents:

- must be maintained at only *one* "custodian firm" out of all the defendants' law firms in a given Lead Case. Order ¶ 2.C.1;

---

[1] Defendants joining this objection are listed on the signature pages.

1

- can be viewed *only* inside that one law firm on a stand-alone computer not connected to the internet.  Order ¶¶ 2.C. 3, 4.;

- may not even reside at all in that one defense firm allowed in each Lead Case until "after entry of a class certification schedule" for those cases, *Id.,* n. 9, potentially deferring some defendants' access to these critical documents for years while giving Plaintiffs immediate access to the documents for use in preparing *any* of the cases in this MDL;

- may not be transferred to another defense firm if the "custodian firm" settles or is otherwise dismissed from the *Auto Parts* litigation without notice to and consent from the OEMs. Order ¶ C.3;

- may, if used in court filings, be filed only *in camera* and not included in any filings made through an electronic filing system. Order ¶ C.5;

- may only be used, quoted, or referred to in court filings after giving seven days' notice to the producing OEM. Order ¶ C.6; and,

- must have all copies logged, including information about "how the copy will be maintained, stored, and transferred."  Order ¶ D.1.

## ARGUMENT

The Special Master's Order is flawed in three significant ways.  First, it imposes limitations that far exceed the protections required for these kinds of documents, and does so where the OEMs have entirely failed to show – rather than merely assert – that supplemental protections beyond those in the existing Protective Orders are required.

Second, the manner in which this relief was imposed was procedurally improper because, as with the April 20, 2016 Order of the Special Master ordering OEM depositions (Docket

1294), the Special Master has imposed relief that no party requested and on which none of the parties had the opportunity to be heard, save for a scant few minutes at the December 9, 2016 hearing.

Third, even if extra protections were required for OEM Vehicle Pricing Documents, the Order severely limits the ability of some parties to access information critical to their defense. Under the Order, lawyers representing certain defendants would have to travel long distances and set up camp in other law firms just to look at these critical documents.  Thus, if those lawyers want to prepare for a deposition or cite to a document in a motion or brief, they would need to return to those law firms again and again just to undertake ordinary litigation tasks.  This extra burden is simply untenable and threatens the effectiveness of counsels' representation of their respective clients.  The situation is rendered even more dire by the importance of these documents to the litigation of these cases: they are perhaps the most vital evidence of impact and damages in the indirect purchaser actions.  They are expected to show that, as the OEMs have repeatedly stated under oath, the OEMs' pricing decisions did not reflect price fluctuations of individual component parts, but were based instead on competitive marketplace factors *independent* of component costs or cost increases.

Although Objectors believe that the entirety of the additional strictures ordered by the Special Master are unwarranted and improper, in the interest of moving forward with OEM discovery as expeditiously as possible, we limit our objection to the requirements that OEM Vehicle Pricing Documents be maintained at only one "custodian firm" out of all the defendants' law firms in a given product track and that even the one firm may not receive the documents until "after entry of a class certification schedule" for that case . Order ¶ 2.C.1 and n. 9.

Fortunately, the Order can easily be modified to remedy the hardships that it imposes, simply by eliminating the restrictions that only one firm for one defendant in each set of product cases may receive the vehicle pricing documents and that the documents may be not be maintained by a defendant firm until after a class certification schedule has been set in that defendant's case.  Instead, the Order should instruct all counsel to maintain the vehicle pricing documents according to the other strictures of the Order (e.g., after having received the documents in encrypted, password-protected media, maintaining them on a computer not connected to the internet).  Such a resolution would provide the OEMs' with their desired extra measures of security without impairing the ability of defense counsel to represent their clients in these cases and creating unfairness by giving plaintiffs and certain defendants preferential access to critical discovery in these actions.

## I.  The Special Master's Order Unreasonably Burdens the Majority of Defendants' Access to Crucial Evidence in the *Auto Parts* Cases

The Special Master's ruling that OEM Vehicle Pricing Documents are relevant and must be produced was clearly correct.  There are now several dozen indirect-purchaser actions before the Court, all of which allege the existence of an illegal conspiracy in violation of the Sherman Act and equivalent state laws.[2]  If plaintiffs prove in any case the existence of an illegal cartel and an overcharge to OEMs caused by the illegal conduct, they still must prove that they were

---

[2] One of the basic rules laid down by the Supreme Court many years ago in *Illinois Brick v. Illinois*, 431 U.S. 720, 732 (1977), is that indirect purchasers cannot recover damages under the Sherman and Clayton Acts because the very issue of pass-on was so central and yet so complex that tracking the impact of damages had to stop with the first line of purchasers of the price-fixed product, the "direct purchasers." Thus, indirect purchaser actions may not be brought under federal law because of the "evidentiary complexities and uncertainties" inherent in adjudicating whether overcharges were passed-on from direct to indirect purchasers, as well as because of the risk of multiple repetitive treble-damage recoveries that such actions would create.  *Id. at 732*. It is those evidentiary complexities and uncertainties that this Court confronts in these indirect purchaser actions. The courts do not assume that overcharges were passed on, because a close look at the facts may show such not to be the case, as defendants expect to show in this litigation.

harmed, that the overcharge was passed along to them, in whole or in part, from the OEM to downstream purchasers – first to Auto Dealers and then from Auto Dealers to End-Purchasers. As this Court has repeatedly acknowledged, pass-on of any overcharges is a question of fact, and plaintiffs bear the "difficult challenge" of proving "that every reseller in the chain passed on some or all of the alleged overcharge." *In re Automotive Parts Antitrust Litig. (Wire Harness Sys.)*, No. 2:12-cv-102, Opinion and Order Granting in Part and Denying in Part Collective Defendants' Motion to Dismiss Indirect Purchaser Actions (E.D. Mich. June 6, 2013), at 15.

The OEMs have consistently maintained that the cost of individual car parts – or overcharges on those parts – have nothing to do with their decisions about how to price their cars.[3]  The OEMs have also consistently argued that documents explaining the methodology by which they price their cars are very valuable and confidential, and for those two reasons, argued to the Special Master that they should not have to be produced.  The Special Master, however, rightly ordered the production of OEM Vehicle Pricing Documents, finding that the OEMs had not shown that the burden of producing this information substantially outweighed their relevance and importance to these cases.  Those documents will provide powerful contemporaneous evidence demonstrating whether or not parts prices had any effect on vehicle pricing.  Absent evidence that parts prices (or overcharges) factored into decisions about the pricing of cars, pass-on of alleged overcharges cannot be proven.

As with any other evidence crucial to a piece of litigation, the parties to this litigation require, and are entitled to, reasonable access to it.  But the Order does not provide for

---

[3] *See, e.g.*, Declaration in Support of specific OEM's Separate Statement Regarding Objections to the Special Master's Order Regarding the Parties' Motion to Compel Discovery from Non-Party OEMs (ECF No. 1330), ¶ 5; Specified Subpoena Entities' Joint Opposition to the Parties' Motion to Compel  (ECF No. 1221), Exhibit 30, (Declaration at ¶ 6); Exhibit 25 (Declaration at ¶ 5); Exhibit 55 (Declaration at ¶ 4); Exhibit 66 (Affidavit at ¶ 4).

reasonable access to the OEM Vehicle Pricing Documents. Having the OEM Vehicle Pricing

Documents located in only one firm for each of the few cases where a class certification schedule

has been set[4], when most defense counsel in the numerous other cases are in many cities across

the country,[5] creates a heavy burden for defendants whose counsel do not reside in a "custodial

firm's" city. Even being in the same city as a custodial firm will not eliminate the unusual

burden of having to view the documents on the premises of, and consistent with the independent

needs of, another firm.

      These documents are expected to be voluminous, and defense counsel need ready access

to them when they are first produced. Having to travel to another firm (even in the same city) --

and potentially another firm across the country -- where the documents are available to make use

of one or more of that firm's computers is simply untenable in vigorously litigated, complex

cases like these. The hardships and uneven distribution of burden can easily be seen in the effort

to prepare or respond to a single factual motion: responsible attorneys and paralegals troop off to

a custodial firm in another city, stay in hotels and line up to use the custodial firm's special, non-

networked computer. Only necessary copies may be made, but they must be carefully logged

first. The selection process is always a multistep, iterative process, involving decisions on

relevance and strategy, with repetitive trips to the special computers at the custodial firm, during

the drafting process. Second drafts and cite-checking require more visits to the custodial firm,

and the entire process would have to be repeated for a response or reply. Deposition preparation

---

[4] The cases in the first "tranche" are the following five cases for which class certification schedules have been set: *Instrument Panel Clusters* (No. 2:12-cv-00200), *Heater Control Panels* (No. 2:12-cv-0400), *Bearings* (No. 2:12-cv-0500), *Occupant Safety Systems* (No. 2:12-cv-0600), and *Anti-vibrational Rubber Parts* (No. 2:12-cv-0800).

[5] A brief review of the docket in this matter reveals that defense counsel are located in at least 20 cities, including such places as San Francisco and Los Angeles, California, and Austin, Texas, where there are no defendant firms involved in the first tranche cases.

would be a nightmare of trying to decide on the fly at the custodial firm what documents will be "necessary" at the deposition and then taking only those to the deposition, only to learn the documents must be reviewed again urgently for use during the deposition. The Court may need to allow all depositions to be recessed when a party needs to check or find a document. An associate may be required to "camp out" at the custodial firm to be ready to quickly search for a key document that becomes relevant to testimony given in the deposition. Nor is it clear that copies may even be made and distributed to the court reporter at a deposition or others attending who are from "non-custodial" firms, or where such a deposition could be held consistent with the Order's restrictions. The process and problems go on and on, as one imagines the various litigation events requiring quick access to vital discovery materials. A custodial firm is not so hamstrung, of course, but under the Order there can be only a few of these.

The hardship here is most significantly visited on defendants in the vast majority of cases in this MDL for which no class certification schedule has been established. Discovery and mediations are or will soon be going forward in those cases, yet defendants in those cases could not have custody of the documents, and may not have access to them at any custodial firm if the documents are in heavy demand and access must be rationed due to such demand. These defendants would, under the Order, be forced to wait for a class cert schedule to be entered to even operate on equal footing with non-custodial firms in cases in which a custodial firm has been chosen. Again, the Order does not contain a justification for this un-equal treatment of defendants.

This is plainly untenable. Defendants' counsel will be placed at an extreme disadvantage in trying to simply represent their clients if the Order stands, and these burdens are placed on them. Moreover, there is no good reason for imposing such inconveniences and costs on

defendants. Counsel in these cases have so far labored under the strictures of the existing strong

protective orders, with no complaints or claims that there has been improper disclosure or use of

"HIGHLY CONFIDENTIAL" information, nor does anyone claim here that counsel in these

matters are untrustworthy.

## II. The Special Master's Order Goes Beyond Protections Necessary to Safeguard Sensitive Business Information

While Courts are rightly provided with broad authority to fashion protective orders, the

Special Master here has fashioned relief that imposes an unfair and uneven burden on defendants

without justification, and he has done so without a showing of good cause from the OEMs that

the additional provisions here are warranted.

Courts routinely order the production of highly sensitive information relevant to litigation

with a protective order to safeguard the sensitive nature of the information. *Nucorp, Inc. v. Does*

*1-24*, No. 2:11-cv-15222, 2012 U.S. Dist. LEXIS 187547, at *19-20 (E.D. Mich. Oct. 18, 2012).

Protective Orders, such as the one in place here, with "HIGHLY CONFIDENTIAL - OUTSIDE

ATTORNEYS' EYES ONLY" protections, are particularly powerful means of protecting the

sensitive nature of that information. *See, e.g., Med. Ctr. at Elizabeth Place, LLC v. Premier*

*Health Partners,* 294 F.R.D. 87, 96-97 (S.D. Ohio 2013). In order to implement even that level

of protection, however, the law requires more than was shown here by the OEMs or found by the

Special Master. *See* Fed. R. Civ. P. 26(c)(1)(G) ("The court may, for *good cause*, issue an order

to protect a party or person [b] . . . requiring that a trade secret or other confidential research,

development, or commercial information . . . be revealed only in a specified way."); *In re Ohio*

*Execution Protocol Litig.*, ___ F.3d ___, 2016 WL 749863, at *4 (6th Cir. Dec. 30, 2016).

It is the burden of the person seeking protection to show good cause for a protective

order. *In re Ohio Execution Protocol Litig.*, 2016 WL 749863, at *4. "Good cause" must be

shown "with a particular and specific demonstration of fact," and exists if "*specific* prejudice or

harm will result" in absence of protection. *Id.* (emphasis added).   The OEMs' bald, vague

assertions of potential competitive harm will not do to satisfy this requirement. *See, e.g.,*

Specified Subpoenaed Entities' Joint Opposition To The Parties' Motions To Compel (ECF No.

1227), at 40. The Special Master accordingly did not make any express or implied finding that

the additional burdensome protective measures were warranted for good cause. *See* Order, ECF

No. 1579.  Absent such a finding, the Special Master's imposition of additional protection

amounts to an abuse of discretion, *In re Ohio Execution Protocol Litig.*, 2016 WL 749863, at *2,

and should be reconsidered *de novo* by this Court.  *See* Fed. R. Civ. P. 53(f).

 And indeed, there is no good cause for the obstacles imposed by the Special Master in

this case because the existing protective order is sufficient to adequately protect the OEM's

sensitive information from disclosure.  Indeed, it is the very rare case in which protections

beyond those already available in this case are ordered.  The common element in such cases

(virtually all of which involve computer source code), is that courts are careful to provide for

reasonable access to the highly-protected materials. *See Pause Tech., Inc. v. Tivo Inc.*, No. 01-

11657-PBS, 2003 U.S. Dist. LEXIS 27253, at *2 (D. Mass. June 18, 2003) (source code may be

kept in locked room by counsel requesting it in discovery)*; Cherdak v. Koko Fitclub, LLC*, No.

14-10371-IT, 2015 U.S. Dist. LEXIS 54621, at *9 (D. Mass. Apr. 27, 2015) (outside counsel and

experts permitted to see source code which will be provided to outside counsel, *at the office

closest to plaintiffs' business*); *Pragmatus AV, LLC v. Citrix Sys., Inc.*, No. 11-62484-CIV, 2012

U.S. Dist. LEXIS 190856, at *14 (S.D. Fla. Jul. 18, 2012) (source code afforded heightened

protection, but available to opposing counsel and experts via server accessible online).  The same

should be the rule here – defendants in all the cases should be afforded ready access to the OEM

Vehicle Pricing Documents as soon as plaintiffs' counsel is provided access.

Even if some further protection of the OEM Vehicle Pricing Documents might be

appropriate, the Order goes far beyond any conceivable need to provide special protection for

OEM Vehicle Pricing Documents and places unique obstacles to access to OEM Vehicle Pricing

Documents on only certain of the defendants. These obstacles were not even the subject of

briefing before the Special Master, and work to the severe disadvantage of those defendants,

including those whose lawyers are not chosen to be one of the firms that may have custody of the

Vehicle Pricing Documents. Plaintiffs' lead counsel are the same in each case, so their litigating

counsel in each case starts out with immediate access to all discovery, including any OEM

Vehicle Pricing Documents when produced and well before defense counsel in all but the first

tranche of cases would have access to these critical documents. This regimen violates the basic

design of our discovery system, which is to provide for a "broad search for facts" relevant to

disputed issues in litigation. *See* Advisory Committee Notes to FRCP Rule 26(b), 1946

Amendment; *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all

the relevant facts gathered by both parties is essential to proper litigation."); *In re Consumers*

*Power Co. Sec. Litig.,* 109 F.R.D. 45, 54 (E.D. Mich. 1985) (court upheld protective order as

against challenge to it by journalists, holding that the purpose of the protective order is to

provide to the *parties* unrestricted access to relevant evidence without costly motion practice, in

order to further cooperation among the parties and to limit the costs of litigation).

## III. The Special Master Ruled on this Issue Without Any Party Being Fully Heard

Without a doubt, the Special Master faced a difficult task trying to consider and resolve a

multitude of objections by numerous parties on numerous issues raised by the Serving Parties'

10

subpoenas to the OEMs.  Overall, the Special Master did an admirable (indeed, impressive) job, using successive mediation sessions to assist the Serving Parties and the OEMs in resolving many of their disputes by agreement, and then working through the remaining issues in a series of general and OEM-specific orders.  Unfortunately, in responding to the OEMs' expressed concerns over the confidentiality of their vehicle pricing documents, the Special Master, *sua sponte,* fashioned relief during the hearing that no party had asked for or had briefed.

By restricting Defendants' access to critical information without a request or motion from the parties, the Special Master has exceeded his authority to resolve discovery disputes in this matter.  To be clear, Defendants do not contend that the parties are jurisdictionally barred from seeking a protective order to safeguard sensitive information — just that the Special Master had no authority to broaden the scope of such protections *sua sponte*.  The Special Master's role is confined to "schedul[ing] and coordinat[ing] discovery" and "determin[ing] pretrial discovery motions." *See In re Automotive Parts Antitrust Litig.*, No. 2:12-md-2311, Order Appointing a Master at ¶ I.C. (ECF No. 792).  Absent a pending discovery dispute, the Special Master lacked authority to issue an order that went beyond coordinating discovery and will directly impact Defendants' ability to litigate effectively.  Moreover, the OEMs did not seek the relief the Special Master ultimately implemented in any of the voluminous briefing filed on these motions to compel, nor was it suggested in any briefing by the Serving Parties, or heard in any way before the Special Master ruled at the December 9, 2016 hearing.   The only issue before the Special Master concerned whether, and to what extent, production of certain categories of documents and data responsive to the OEM subpoena and sought by the Serving Parties in the Renewed Motion to Compel could be compelled.  It was therefore improper for the Special Master to impose additional burdens on discovery based on unsubstantiated assertions about the

sensitivity of OEM Vehicle Pricing Documents – and about the practicality of implementing such additional restrictions.

## CONCLUSION

The Objectors appreciate both the sensitivity of the Vehicle Pricing Documents to the OEMs, and the Special Master's efforts to address that sensitivity, even though we believe both are misplaced.  Fortunately, we believe the Order can be amended to accommodate those concerns without unfairly burdening defendants.   Objectors respectfully request that this Court modify the Order so *all* firms of record have access under the restricted procedures set forth in the Order (use of non-networked computers for storage, encrypted and password-protected media, detailed logging procedures for any necessary copying of materials, and filing such materials only by *in camera* procedures (not even under seal)).

Dated: January 12, 2017

**FARMER BROWNSTEIN JAEGER LLP**


By: /s/  William S. Farmer

WILLIAM S. FARMER
DAVID BROWNSTEIN
**FARMER BROWNSTEIN JAEGER LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone (415) 962-2876
wfarmer@fbj-law.com/
dbrownstein@fbj-law.com

MICHAEL R. DEZSI (P64530)
Dettmer & Dezsi, PLLC
615 Griswold Street, Ste. 1600
Detroit, Michigan 48226
(313) 281-8090
mdezsi@dezsilaw.com
*Attorneys for Defendants*
*Mitsuba Corporation and American Mitsuba Corp.*


**DUBOIS, BRYANT & CAMPBELL, LLP**
J. David Rowe
Millicent Lundburg
Colorado Tower
303 Colorado, Suite 2300
Austin, Texas 78701
(512) 457-8000
(512) 457-8008 (fax)
drowe@dbcllp.com
mlundburg@dbcllp.com


By: /s/ J. David Rowe (w/consent)

**DUGGINS WREN MANN & ROMERO, LLP**
Robert E. Linkin
600 Congress Avenue, Ste. 1900
P. O. Box 1149
Austin, Texas 78767-1149
512-744-9300 tel.
512-744-9399 fax. rlinkin@dwmrlaw.com

**HERTZ SCHRAM PC**
Bradley J. Schram (P26337)
Matthew J. Turchyn (P76482)
1760 South Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000
bschram@hertzschram.com
mturchyn@hertzschram.com


*Attorney for Defendant Sanden International (USA),*
*Inc.*

**WINSTON & STRAWN LLP**

*/s/ Jeffrey L. Kessler (w/consent)*
Jeffrey L. Kessler
A. Paul Victor
Molly M. Donovan
Jeffrey J. Amato

**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
jamato@winston.com

**KERR, RUSSELL AND WEBER, PLC**
Fred K. Herrmann
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Counsel for NTN Corporation and*
*NTN USA Corporation*

**BAKER & MILLER PLLC**

*/s/ W. Todd Miller (w/consent)*
W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Avenue,
NW, Suite 300
Washington, DC 20037
Telephone: (202) 663-7820
Fax: (202) 663-7849
(facsimile)
TMiller@bakerandmiller.com

*Attorneys for Defendants*
*TRAM, Inc. and Tokai Rika*
*Co., Ltd.*

14

**BUTZEL LONG**

*/s/Sheldon Klein (w/consent)*
David F. DuMouchel
Sheldon Klein
BUTZEL LONG
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Telephone:  (313) 225-7000
Fax:  (313) 225-7080
dumouchd@butzel.com
klein@butzel.com

*Attorneys for Defendants*
*TRAM, Inc. and Tokai Rika*
*Co., Ltd.*

*/s/ Jeffrey L. Kessler (w/consent)*
Jeffrey L. Kessler
A. Paul Victor
Eva W. Cole
Jeffrey J. Amato
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700 (t)
(212) 294-4700  (f)
JKessler@winston.com
PVictor@winston.com
EWCole@winston.com
JAmato@winston.com

Brandon Duke
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002
(713) 651-2636 (t)
(713) 651-2700 (f)
BDuke@winston.com

*Counsel for Defendants Panasonic Corporation and*
*Panasonic Corporation of North America*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to ECF-registered counsel in this matter.

By: /s/ _____

WILLIAM S. FARMER (SBN 46694)
DAVID BROWNSTEIN (SBN 141929)
**FARMER BROWNSTEIN JAEGER LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone (415) 962-2876
E-mail:(wfarmer@fbj-law.com)
          (dbrownstein@fbj-law.com)

*Attorneys for Defendants*
*Mitsuba Corporation and American Mitsuba Corp.*