# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF
# MICHIGAN SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No.: 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: All Auto Parts Cases | 2:12-MD-02311-MOB-MKM |
| THIS DOCUMENT RELATES TO:<br>ALL AUTO PARTS CASES | **Oral Argument Requested** |

**NISSAN NORTH AMERICA'S FURTHER BRIEF IN SUPPORT OF CERTAIN OEM'S OBJECTION TO THE SPECIAL MASTER'S ORDER GRANTING IN PART CERTAIN SERVING PARTIES' MOTION TO COMPEL PRODUCTION IN RESPONSE TO REQUEST NO. 31**

## ISSUES PRESENTED

1. Whether the Special Master erred in ordering Nissan to produce its final settlement agreements with its suppliers even though these agreements are not relevant to the underlying litigation?

   Answer: Yes

2. Even if the final settlement agreements are minimally relevant, did the Special Master err in ordering their production because such relevance is outweighed by the prejudice to Nissan?

   Answer: Yes

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Page(s)**

**Cases**

*Goodyear Tire & Rubber Co., v. Chiles Power Supply, Inc*,
  332 F.3d 976 ..................................................................................................................2

*Wagner v. Circle W Mastiffs*,
  No. 2:08-CV-431, 2013 WL 2096655 (S.D. Ohio May 14, 2013)...................................2, 3, 4

*In re Flat Glass Antitrust Litig.*,
  No. 11-658, 2013 WL 1703864 (W.D. Pa. Apr. 19, 2013)....................................................3, 4

## **TABLE OF CONTENTS**

                                                                    **Page**

I. INTRODUCTION ................................................................................................... 1

II. FACTS PERTAINING TO NISSAN ....................................................................... 1

III. ARGUMENT ........................................................................................................... 2

IV. CONCLUSION ........................................................................................................ 5

# FULL TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berryman v. SuperValu Holdings*, *Inc.*,
  No. 3:05CV169, 2008 WL 4934007 (S.D. Ohio Nov. 18, 2008) ..............................................3

*In re Flat Glass Antitrust Litig.*,
  No. 11-658, 2013 WL 1703864 (W.D. Pa. Apr. 19, 2013)...................................................3, 4

*Goodyear Tire & Rubber Co., v. Chiles Power Supply, Inc*,
  332 F.3d 976 (6th Cir. 2003) ...............................................................................................2

*Snap-On Business Solutions, Inc. v. Hyundai Motor America*,
  2011 WL 6957594 (N.D. Ohio Feb. 3, 2011).........................................................................2

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
  No. 07 CIV 8488 RJH DFE, 2009 WL 1026005 (S.D.N.Y. Apr. 9, 2009) ..........................3, 4

*Stockman v. Oakcrest Dental Ctr., P.C.*,
  480 F.3d 791 (6th Cir. 2007) ................................................................................................2

*Wagner v. Circle W Mastiffs*,
  No. 2:08-CV-431, 2013 WL 2096655 (S.D. Ohio May 14, 2013)...................................2, 3, 4

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)................................................................................................................4

**I.     INTRODUCTION**

Nissan has joined in Certain Non-Party Original Equipment Manufacturers' Objection to the Special Master's Order Granting in Part Certain Serving Parties' Motion to Compel Production in Response to Request No. 31 in the Service Parties' OEM Subpoena, but writes separately to explain the chilling effect of the Special Master's Order on Nissan's ongoing settlement negotiations with its auto parts suppliers.

**II.    FACTS PERTAINING TO NISSAN**

According to the United States Justice Department and antitrust enforcement agencies in other countries, an international cartel of auto parts suppliers has repeatedly victimized Nissan. After learning from law enforcement agencies or other sources that it has been victimized, Nissan contacts the implicated parts suppliers and negotiates a settlement. Over the last several years, Nissan has successfully, but confidentially, resolved its claims against many of the implicated parts suppliers without filing a lawsuit. Although many settlements have been reached, other Nissan suppliers remain in settlement discussions with Nissan. Nissan's settlements with its suppliers often are preceded by months of extensive negotiation and meetings (all expressly with the understanding that the information is being exchange for purposes of discussing settlement and covered by written confidentiality agreements) during which Nissan and its suppliers exchange confidential information. These successful and confidential resolutions allow Nissan to maintain its critical parts supply chain and allow the settling parts suppliers to continue doing business with Nissan as an approved supplier. These successful and confidential resolutions also allow the parties to avoid the expense of litigation. Nissan's successful multi-year course of amicable resolutions with its supply chain is now in grave jeopardy as a result of the Special Master's Order.

The Special Master's Order has already substantially chilled the ability of Nissan and its suppliers to negotiate and memorialize settlements for fear of disclosure to third parties, and counsel for third parties.  Already Nissan has been confronted with suppliers who are now reluctant to candidly share information about their conduct and their finances because of the Special Master's pronouncement.  Similarly, Nissan is reluctant to memorialize individual supplier settlement terms for fear that they will become known to non-settling parties and used against Nissan's economic interests.  This Court should not jeopardize Nissan's supply chain, its ability to amicably resolve disputes with its suppliers, and its competitive position just because the Serving Parties apparently want to meddle in Nissan's business.

Because Nissan has settled with dozens of its parts suppliers, it is unlikely that Nissan will participate in any class litigation trial before this Court.  Indeed, Nissan likely will opt out of any certified class of original equipment manufacturers.  The reason is that Nissan, as evidenced by its successful settlement with dozens of parts suppliers, prefers to control its own destiny.  Therefore, no Nissan witnesses likely will testify in an automotive parts class action trial before this Court.

**III.   ARGUMENT**

The Sixth Circuit has recognized the need for secrecy in the settlement negotiations because of, among other things, the potential chilling effect of those negotiations if third parties are granted access.  *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) ("This court has always recognized the need for, and the constitutionality of, secrecy in settlement proceedings … whether done under the auspices of the court or informally between the parties.").  That is why the Sixth Circuit has held that settlement offers are not admissible unless the probative value is substantially outweighed by the danger of unfair prejudice.  *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 799 (6th Cir. 2007) (settlement

2

offer is not admissible where probative value of offer was substantially outweighed by danger of unfair prejudice).

Following this lead, district courts in this Circuit do not order production of settlement agreements absent a showing of relevancy that substantially outweighs the prejudice to the producing party. *See*, *e.g.*, *Snap-On Business Solutions, Inc. v. Hyundai Motor America*, 2011 WL 6957594, *1 n. 2 (N.D. Ohio Feb. 3, 2011) (settlement negotiations protected from discovery "whether done under the auspices of the court or informally between the parties."); *Wagner v. Circle W Mastiffs*, No. 2:08-CV-431, 2013 WL 2096655, at *6 (S.D. Ohio May 14, 2013) ("a confidential settlement agreement [is not] relevant to the issue of bias or credibility where there is … no indication that particular witness will testify"); *Berryman v. SuperValu Holdings*, *Inc.*, No. 3:05CV169, 2008 WL 4934007, at *10 (S.D. Ohio Nov. 18, 2008) (denying motion to compel documents related to settlement because plaintiffs failed to establish relevance and offered nothing that would allow the court to conclude that the plaintiffs' need for such information outweighed the defendants' interest in maintaining its confidentiality).

The Serving Parties have not identified any Nissan witness whose testimony they believe will be relevant to any claim or defense at trial. Nor is it at all likely, for the reasons explained above, that any Nissan witness will testify at an auto parts trial before this Court. In the unlikely event that a Nissan witness is called to testify, this Court can revisit the relevancy of the requested information at that time. No court to our knowledge has ordered the production of settlement documents based on the mere speculation that such documents might possibly be relevant at a trial.

Similarly, Nissan's settlement agreements are not relevant to the issue of setoff. This Court is a long way from addressing post-judgment setoff issues. No class has been certified and

3

one may never be certified.  No judgment has been entered and one may never be entered.  The Court can address the issue of setoff at an appropriate time without swinging a wrecking ball at Nissan's ongoing settlement negotiations with its suppliers.  In the class action context, settlement agreements become relevant and should be produced for setoff analysis only after a class has been certified and a verdict has been rendered.  *See In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, No. 07 CIV 8488 RJH DFE, 2009 WL 1026005, at *2 (S.D.N.Y. Apr. 9, 2009); *In re Flat Glass Antitrust Litig.*, No. 11-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013) (courts "have refused to permit discovery of confidential agreements on grounds that the amount will result in a set-off of damages, because set-off may be addressed after a verdict has been entered").

Furthermore, Serving Parties' apparent desire to monitor Nissan's ongoing settlement activities is of no import.  They simply are not entitled to audit or meddle with Nissan's settlement process.  *See In re State St.*, 2009 WL 1026005, at *2 ("The lead Plaintiffs have shown no reason entitling them to monitor [Defendant's] efforts to reach settlements with other members of the putative class, who appear to be sophisticated institutional investors and to be well aware of this multi-district lawsuit and of the investigations by state and federal regulators").  Rule 26(b)(1), Federal Rules of Civil Procedure, requires Serving Parties to show that their requested discovery is relevant to the merits of their claims and defenses.  It is not sufficient to merely argue that their requested discovery will create potential leverage in settlement negotiations.  *See*, *e.g.*, *Wagner*, 2013 WL 2096655, at *8 ("access to a settlement agreement for purposes of evaluation of settlement or negotiation strategy is not an issue directed to relevance"); *In re Flat Glass*, 2013 WL 1703864, at *1 ("Although the extent of Defendant's

4

liability is certainly relevant to potential settlement, relevance to settlement negotiations is not relevant to the subject matter of the action, as contemplated by applicable rules and standards").

**IV.  CONCLUSION**

This Court should deny the Serving Parties' request for Nissan's settlement agreements because the Serving Parties have failed their burden of demonstrating some relevance that outweighs the prejudice to Nissan.  Serving Parties have demonstrated no compelling reason to interfere with Nissan's management of its supply chain and its successful practice of settling claims confidentially.

Further, Nissan respectfully requests that this Court deny Serving Parties' request for production of documents pertaining to Nissan's settlement discussions with its suppliers, including but not limited to all documents exchanged during settlement negotiations pursuant to confidentiality agreements. This Court should not chill Nissan's successful course of amicably resolving claims with its parts suppliers.  And, if anything is clear, this Court should be very reluctant to foster more litigation involving collusion by auto parts suppliers.

DATED: February 8, 2017                    Respectfully submitted,

NISSAN NORTH AMERICA, INC.

By: */s/E. Paul Cauley, Jr.*

DRINKER BIDDLE & REATH LLP
E. Paul Cauley, Jr.
paul.cauley@dbr.com
1717 Main Street
Suite 5400
Dallas, TX 75201
Telephone: (469) 357-2503
Facsimile: (469) 327-0860

SEDGWICK LLP
Anthony Anscombe
anthony.anscombe@sedgwicklaw.com
One North Wacker Drive, Suite 4200
Chicago, IL 60606-2841
Telephone: (312) 641-9050

## **CERTIFICATE OF SERVICE**

I certify that on February 8, 2017, I caused a copy of the foregoing document, Nissan North America's Further Brief in Support of Certain OEM's Objection to the Special Master's Order Granting in Part Certain Serving Parties' Motion to Compel Production in Response to Request No. 31, to be electronically filed via the Court's ECF system, which will serve notification of such filing to all counsel of record for the Parties.

     */s/ E. Paul Cauley, Jr.*
    E. Paul Cauley, Jr.

6