UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | |
| ALL PARTS | 12-md-02311<br>Honorable Marianne O. Battani |
| THIS RELATES TO: ALL CASES | |

**OBJECTION OF INTERESTED NON-PARTY FORD MOTOR COMPANY TO THE ORDER OF THE SPECIAL MASTER GRANTING IN PART AND DENYING IN PART CERTAIN SERVING PARTIES' MOTION TO COMPEL PRODUCTION IN RESPONSE TO REQUEST NO. 31 IN THE SERVING PARTIES' OEM SUBPOENA**

**STATEMENT OF THE ISSUES PRESENTED**

1. Whether the Special Master erred in ordering certain OEMs to produce, before any determination of class certification or definition of the class members, settlement agreements between OEMs and automotive parts suppliers where such agreements are not relevant to the plaintiffs' claims and the required production of such highly confidential agreements would discourage settlement.

**Answer**: Yes.

2. Whether the Special Master erred in ordering certain OEMs to produce documents concerning communications between OEMs and automotive parts suppliers at "initial meetings" concerning the automotive parts conspiracy where such communications are protected by the settlement privilege established in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003).

**Answer**: Yes.

**STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550 (S.D. Ind. 1999)

*Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438 (6th Cir. 2010)

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)

*Wagner v. Circle W Mastiffs*, No. 08-cv-431, 2013 WL 2096655 (S.D. Ohio May 14, 2013)

Fed. R. Civ. P. 26(b)(1)

Fed. R. Evid. 408

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ............................................................................. i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................... ii

TABLE OF AUTHORITIES ...................................................................................................... iv

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL STANDARD ................................................................................................................. 4

ARGUMENT ............................................................................................................................... 5

I.    THE SPECIAL MASTER ERRED IN ORDERING
PRODUCTION OF SETTLEMENT AGREEMENTS ...................................................... 5

    A.    The Settlement Agreements Are Not
Relevant To The Serving Parties' Claims ............................................................... 5

        i.    The Settlement Agreements Are Not Relevant To Potential Damages .............. 6

        ii.    The Settlement Agreements Are Not
Relevant To Potential Witness Bias ................................................................... 8

    B.    Production Of The Settlement Agreements
Is Not Proportional To The Needs Of This Case ..................................................... 9

II.    THE SPECIAL MASTER ERRED IN ORDERING
PRODUCTION OF SETTLEMENT COMMUNICATIONS ........................................ 10

    A.    The Settlement Communications Are Protected By The Settlement Privilege ....... 10

    B.    Production Of The Settlement Communications
Is Not Proportional To The Needs Of This Case .................................................. 12

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bottaro v. Hatton Assocs.*,
  96 F.R.D. 158 (E.D.N.Y. 1982) ..................................................................................6

*Centillion Data Sys., Inc. v. Ameritech Corp.*,
  193 F.R.D. 550 (S.D. Ind. 1999) ............................................................................6, 8

*Doctor's Assocs., Inc. v. QIP Holders LLC*,
  No. 06-cv-01710, 2009 WL 1668573 (D. Conn. June 15, 2009) .............................4

*Eid v. Saint-Gobain Abrasives, Inc.*,
  377 F. App'x 438 (6th Cir. 2010) ....................................................................... 10-11

*In re Flat Glass Antitrust Litig.*,
  No. 11-cv-658, 2013 WL 1703864 (W.D. Pa. Apr. 19, 2013) ............................. 5-6, 8

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
  332 F.3d 976 (6th Cir. 2003) ................................................................................3, 10

*High Point SARL v. Sprint Nextel Corp.*,
  No. 09-cv-2269, 2012 WL 5306268 (D. Kan. Oct. 29, 2012) .................................4

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
  No. 12-cv-11500, 2014 WL 10294813 (E.D. Mich. Apr. 24, 2014) .......................8

*In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
  No. 07-cv-8488, 2009 WL 1026005 (S.D.N.Y. Apr. 9, 2009) .................................7

*Transweb, LLC v. 3M Innovative Props. Co.*,
  No. 10-cv-4413, 2012 WL 2878075 (D.N.J. July 13, 2012) ....................................4

*United States v. Doxie*,
  No. 13-cr-101, 2014 WL 3845699 (N.D. Ga. Aug. 5, 2014) ..................................11

*Wagner v. Circle W Mastiffs*,
  No. 08-cv-431, 2013 WL 2096655 (S.D. Ohio May 14, 2013) ...............................8

*Westlake Vinyls, Inc. v. Goodrich Corp.*,
  No. 03-cv-00240, 2007 WL 1959168 (W.D. Ky. June 29, 2007) .........................12

*Xmission, L.C. v. Adknowledge, Inc.*,
  No. 15-cv-00277, 2016 WL 3746528 (D. Utah July 8, 2016) .................................9

**RULES**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................. 9, 12

Fed. R. Civ. P. 53(f) ............................................................................................................................ 4

Fed. R. Evid. 408 ............................................................................................................................. 10

Interested non-party Ford Motor Company ("Ford") respectfully submits this objection to the Order of the Special Master Granting in Part and Denying in Part Certain Serving Parties' Motion to Compel Production in Response to Request No. 31 in the Serving Parties' OEM Subpoena, Case No. 12-md-2311, Doc. 1622, Jan. 25, 2017 (the "Order").[1]  Ford submits this objection as an interested non-party because, although Ford was not subject to either the motion to compel or the Order, Ford was served with a subpoena identical to that at issue in the Order and the Serving Parties continue to seek from Ford production of documents in response to Request No. 31.[2]

**PRELIMINARY STATEMENT**

Ford is compelled to submit this objection because the Order impermissibly requires certain original equipment manufacturers ("OEMs") to produce: (1) settlement agreements between OEMs and automotive parts suppliers (the "Settlement Agreements"); and (2) "[d]ocuments evidencing discussions or exchanged between OEMs and automotive parts suppliers at initial meetings concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent, as well as descriptions of parts involved and of the wrongful acts of the conspirators" (the "Settlement Communications").  Order, ¶¶ 2, 3.  If Ford were similarly compelled to produce such extremely sensitive documents, Ford would suffer substantial harm because such production would reveal highly confidential private negotiations undertaken by Ford in an effort to restore the business relationship between Ford and its suppliers, avoid involvement in any prolonged and protracted litigation, and obtain peace with

---

[1]  The "Serving Parties" seeking production of documents responsive to Request No. 31 are the Automobile Dealer Plaintiffs, End-Payor Plaintiffs, Truck and Equipment Dealer Plaintiffs, The State of Florida, and The State of Indiana.

[2]  In submitting this Objection, Ford explicitly reserves and does not waive its rights to separately address these issues if Ford and the Serving Parties are not able to reach agreement on the scope of Ford's production in response to Request No. 31.

respect to the anti-competitive conduct of which it has been a victim. This would have a chilling effect on future settlement discussions between Ford and its suppliers for fear that any settlement could or would be produced in this litigation, thus increasing the likelihood of additional individual lawsuits by Ford and the consequent burden on this Court.

Further, any such production likely would negatively impact the important business relationships between Ford and its suppliers. Indeed, such Settlement Agreements and Settlement Communications reflect a balancing of interests between business partners, and the future negotiation of such agreements would be unduly hindered by such an order. As a victim of unprecedented industry-wide anti-competitive conduct, Ford seeks to restore its relationships as quickly and effectively as possible, with minimal disruption to its business, and the Order is directly contrary to those efforts. Specifically, paragraphs 2 and 3 of the Order should be reversed for two reasons.

*First*, the Special Master erred in ordering the production of the Settlement Agreements because the Serving Parties did not even attempt to demonstrate how they are relevant and the Special Master made no finding of relevance. Any Settlement Agreements involving Ford would have been entered into between Ford and its automotive parts suppliers in connection with Ford's *direct* purchases of automotive parts that were impacted by the suppliers' anti-competitive conduct. The terms of those Settlement Agreements are entirely unrelated to the Serving Parties' claims arising from their *indirect* purchases of automotive parts, which would have been installed in vehicles sold by Ford to its automotive dealers, which in turn sold the vehicles to consumers.

Moreover, the Serving Parties cannot demonstrate the relevance of any Settlement Agreements to their claims at this stage of the litigation (and quite possibly at any stage of the

litigation) because the issue of class certification has not been briefed, let alone decided, no trial witnesses have been identified and no trial date has been set. At this juncture, uncertainty exists as to whether the putative classes will ever be certified and how any certified class will be defined. If the certified classes are not defined to include purchasers of vehicles from Ford, for example, any Settlement Agreements executed by Ford would be entirely irrelevant because the automotive parts purchases made by Ford would have no relationship to class plaintiffs' claims.

In addition, it is impossible at this stage of the proceedings to know whether any Ford or other OEM witness will be properly called to testify at trial, such that the production of the Settlement Agreements could be relevant to the issue of witness bias. Given the uncertainty concerning the scope of the Serving Parties' claims, the Serving Parties cannot establish that the Settlement Agreements are relevant to those claims.

*Second*, the Special Master erred in ordering the production of the Settlement Communications because such Communications are protected by the settlement privilege established in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). Because the settlement privilege serves an important public interest, the Sixth Circuit held in *Goodyear* that all communications made in furtherance of settlement of a legal dispute are protected. *Id*. at 981, 983. *Goodyear* did not distinguish between factual communications during the inception of settlement negotiations and other types of settlement communications. In requiring the OEMs to produce the Settlement Communications, which indisputably are in furtherance of settlement, the Order relies on an artificial and arbitrary distinction entirely unsupported by *Goodyear*.

Because of the highly confidential nature of the Settlement Agreements and Settlement Communications and the strong and well-established public policy favoring the confidentiality of

3

settlements, no OEM should be compelled to produce such sensitive and confidential documents. That conclusion is all the more compelling here because of the complete absence of any showing or finding that the proposed invasion of confidentiality interests of the OEMs and suppliers is proportional to the needs of the case. To the contrary, the burden imposed upon the OEMs, and the potential detrimental impact to further negotiated resolutions weigh heavily against production.

Paragraphs 2 and 3 of the Order should be reversed and the OEMs should not be required to produce any Settlement Agreements or Settlement Communications.

## LEGAL STANDARD

Federal Rule of Civil Procedure 53(f) provides that this Court shall decide *de novo* all objections to the Special Master's findings of fact, unless the parties otherwise stipulate, and shall also decide *de novo* objections to the Special Master's conclusions of law. *See* Fed. R. Civ. P. 53(f)(3), (4); *see also* Order Appointing a Master, Master File No. 12-md-2311, Doc. 792, Aug. 29, 2014 at II.C. Objections to the Special Master's ruling on procedural matters may be set aside only for abuse of discretion. Fed. R. Civ. P. 53(f)(5). The Order's requirements regarding Settlement Agreements and Settlement Communications, however, concern issues of law and/or mixed questions of law and fact and thus should be reviewed *de novo*. *See, e.g.*, *High Point SARL v. Sprint Nextel Corp.*, No. 09-cv-2269, 2012 WL 5306268, at *3 (D. Kan. Oct. 29, 2012) (special master's decision on whether documents were protected by attorney-client privilege reviewed *de novo*); *see also Transweb, LLC v. 3M Innovative Props. Co.*, No. 10-cv-4413, 2012 WL 2878075, at *1 (D.N.J. July 13, 2012); *Doctor's Assocs., Inc. v. QIP Holders LLC*, No. 06-cv-01710, 2009 WL 1668573, at *2 (D. Conn. June 15, 2009).

**ARGUMENT**

I.   **THE SPECIAL MASTER ERRED IN ORDERING PRODUCTION OF SETTLEMENT AGREEMENTS**

   A.   **The Settlement Agreements Are Not Relevant To The Serving Parties' Claims**

In the original briefing on the motion to compel, the Serving Parties did not argue that Settlement Agreements should be produced, and Request No. 31 did not even seek the production of Settlement Agreements.[3] The Serving Parties argued only that they were seeking communications between the OEMs and automotive parts suppliers regarding the conspiracy because

> That information will assist Plaintiffs in conducting an analysis of the scope and the impact of the alleged conspiracy. That information will also allow Plaintiffs to understand how the direct victims evaluated the conspiracy's impact on them, how the conspirators themselves described their wrongful conduct, and how the conspirators reacted to complaints from their major customers after the conspiracy was revealed.

Certain Serving Parties' Motion to Compel Discovery From Non-Party Original Equipment Manufacturers, Master File No. 12-md-2311, Doc. 1188, Jan. 19, 2016, at 11. Nevertheless, the Special Master, *sua sponte*, raised the issue of the Settlement Agreements during oral argument. The Special Master made no finding, and the Serving Parties have offered no explanation, regarding how the Settlement Agreements would be relevant to any of the Serving Parties' claims.[4]

---

[3]   Request No. 31 seeks: "All Documents relating to Your or other OEMs' negotiations or Communications with any of the Defendants or other Components or Assemblies suppliers in connection with Defendants' and other Components or Assemblies suppliers' conduct at issue in MDL No. 2311 and Documents Defendants or other Components or Assemblies suppliers provided to You or other OEMs, in connection with the facts described in any Plaintiffs' Complaints."

[4]   Although the Sixth Circuit has not opined on the issue, some courts have imposed a heightened burden on parties seeking discovery of confidential settlement agreements. "Because public policy favors the settlement of disputes, courts have imposed on the party seeking discovery of a confidential settlement agreement the burden 'to make a particularized showing 'that the documents relating to the settlement negotiations are relevant and likely to

5

Although some courts have found that settlement agreements might, under certain circumstances, be relevant to potential damages and issues of potential witness bias, none of those circumstances are present here.

### i. The Settlement Agreements Are Not Relevant To Potential Damages

Any Settlement Agreements involving Ford would not be relevant to the Serving Parties' analysis of potential damages because they would be negotiated resolutions between business partners arising from *direct* purchases of impacted automotive parts from suppliers. The terms of any such Agreements would bear no relationship to the damages that the Serving Parties' might claim arise from their *indirect* purchases of those same parts. As such, the Settlement Agreements would have no bearing on potential setoff of the indirect purchaser plaintiffs' damages at trial. Any purported relevance of the Settlement Agreements is even more remote at this stage of the litigation, because it is impossible to determine which indirect purchaser claims will survive and the scope of any such claims at trial, because no class has been certified.

In addition, the Serving Parties cannot demonstrate that the Settlement Agreements are relevant because such agreements would represent a negotiated resolution and because OEMs and their suppliers might settle disputes for many reasons that are unrelated to the issues of liability and damages present in the Serving Parties' cases. *See Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 (S.D. Ind. 1999) ("Because opposing parties might settle cases for various and not necessarily mutual reasons, it can not be assumed that terms of settlement would be relevant to the issues of liability or damages."). Further, the scope of Settlement Agreements between global business partners would likely be substantially broader

---

lead to the discovery of admissible evidence.'" *In re Flat Glass Antitrust Litig.*, No. 11-cv-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013) (quoting *Key Pharms., Inc. v. ESI-Lederle, Inc.*, No. 96-cv-1219, 1997 WL 560131, at *2 (E.D. Pa. Aug. 29, 1997)); *see also Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982).

than the Serving Parties' claims in this litigation. The Settlement Agreements may involve multiple automotive parts, including parts no longer at issue in this litigation. The Settlement Agreements could also relate to claims arising from purchases made or conduct outside of the United States that – unlike the Serving Parties' claims – have no relationship to United States commerce. The Serving Parties cannot explain how a Settlement Agreement between an OEM and an automotive parts supplier where the supplier agreed to make a settlement payment in exchange for the OEM's release of any and all claims globally, could possibly be relevant to the Serving Parties' indirect purchaser claims against that supplier in the United States.

The court in a class action case under similar circumstances denied production of settlement agreements. *See In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig.*, No. 07-cv-8488, 2009 WL 1026005 (S.D.N.Y. Apr. 9, 2009). In *State Street*, the court denied putative class plaintiffs' motion to compel production of settlement agreements between defendants and members of the putative class because they were not relevant to the plaintiffs' action or reasonably likely to lead to the discovery of relevant evidence. *See id.* at *1-2. As the court explained, "[t]he lead Plaintiffs have shown no reason entitling them to monitor [defendants'] efforts to reach settlements with other members of the putative class, who appear to be sophisticated institutional investors and to be well aware of this multi-district lawsuit and of the investigations by state and federal regulators." *Id.* at *2. Here, where the OEMs are not even members of the Serving Parties' putative indirect purchaser classes, the Settlement Agreements have even less relevance than the agreements at issue in *State Street*.

Moreover, to the extent the Serving Parties seek to obtain the Settlement Agreements in an effort to further any settlement negotiations with defendants, the fact that Serving Parties would like to use any such Agreements in their negotiations does not make the Settlement

Agreements relevant under Rule 26(b)(1). *See Wagner v. Circle W Mastiffs*, No. 08-cv-431, 2013 WL 2096655, at *8 (S.D. Ohio May 14, 2013) (denying motion to compel production of settlement agreement in part because "access to a settlement agreement for purposes of evaluation of settlement or negotiation strategy is not an issue directed to relevance"); *In re Flat Glass*, 2013 WL 1703864, at *1 ("Although the extent of Defendant's liability is certainly relevant to potential settlement, relevance to settlement negotiations is not relevant to the subject matter of the action, as contemplated by applicable rules and standards."); *Centillion*, 193 F.R.D. at 552 ("[I]nformation is not relevant or discoverable under Rule 26(b) because it might assist a party's evaluation of whether to settle or try a case or help a party prepare negotiating strategies.").

        ii.        **The Settlement Agreements Are Not Relevant To Potential Witness Bias**

Nor is there any basis for any contention that the Settlement Agreements are relevant to potential witness bias. Confidential settlement agreements are not relevant to the issue of bias or credibility where there is no indication that a particular witness will testify. *See Wagner*, 2013 WL 2096655, at *2, 6-7 (denying motion to compel where it was not clear that the specific key settling witness would be able to testify at trial due to health concerns); *see also State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2014 WL 10294813, at *2 (E.D. Mich. Apr. 24, 2014). Here, the Serving Parties have not identified any specific OEM witnesses who may be called to testify in their actions.

No specific witnesses can be identified where the Serving Parties do not currently know the scope of their claims at trial because no class has been certified, no class has been defined and no trial witnesses have been identified. In short, the Settlement Agreements are not relevant to the issue of potential witness bias and it would be highly inappropriate and counter-productive

8

to invade the confidentiality of *all* OEM settlements with *any* automotive parts suppliers where it is not clear which OEMs, if any, will be relevant to the Serving Parties' claims at trial.

### B. Production Of The Settlement Agreements Is Not Proportional To The Needs Of This Case

Even assuming *arguendo* that the Serving Parties can articulate some minimal and tangential relevance of the Settlement Agreements to their claims, the contemplated invasion of the OEMs' confidential settlement negotiations and the attendant frustration of the judicial system's interest in promoting settlement is not proportional to the Serving Parties' needs where such production is unlikely to resolve any of the pertinent issues in this litigation. *See* Fed. R. Civ. P. 26(b)(1); *see also Xmission, L.C. v. Adknowledge, Inc.*, No. 15-cv-00277, 2016 WL 3746528, at *3-4 (D. Utah July 8, 2016) (denying motion to compel production of settlement agreements, holding that such production was disproportionate to the needs of the case, particularly in view of the questionable relevance of the material sought).

Here, the production of the Settlement Agreements is likely to negatively impact important business relationships, have a chilling effect upon future settlement negotiations and may have detrimental impacts on an industry-wide basis. Given the unique importance here of encouraging OEMs to enter into global resolutions with their necessary business partners, the scales tip heavily in favor of maintaining confidentiality. These Settlement Agreements reflect a myriad of highly sensitive business considerations which should remain confidential between the negotiating parties. Ordering production of these heavily negotiated agreements would only serve to discourage such settlement in the future, prolonging the negative effects of the global anti-competitive conduct which companies such as Ford have already sustained.

## II. THE SPECIAL MASTER ERRED IN ORDERING PRODUCTION OF SETTLEMENT COMMUNICATIONS

### A. The Settlement Communications Are Protected By The Settlement Privilege

The Special Master erred in requiring the production of Settlement Communications because such Communications are protected by the settlement privilege and not discoverable under the Sixth Circuit's ruling in *Goodyear*.

There is a strong public policy favoring the confidentiality of settlement negotiations, as illustrated by Federal Rule of Evidence 408, which generally makes evidence of conduct or statements made during settlement negotiations inadmissible. *See* Fed. R. Evid. 408. In *Goodyear*, the Sixth Circuit addressed "whether communications made in furtherance of settlement negotiations are *discoverable*," and found that "any communications made in furtherance of settlement are privileged." 332 F.3d at 979, 983. As the court made clear, "[t]he ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications." *Id.* at 980. In establishing the settlement privilege, *Goodyear* did not distinguish between factual information concerning the parties' dispute that is exchanged at the outset of settlement negotiations and all other communications made in furtherance of settlement, and Ford has located no cases in the Sixth Circuit interpreting *Goodyear* that draw such a distinction.

In fact, in *Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438 (6th Cir. 2010), the Sixth Circuit held that certain materials closely analogous to the Settlement Communications were in furtherance of settlement negotiations thus triggering application of Rule 408. There, the court excluded the defendant's letter responding to an initial notice letter from plaintiff's counsel and summarizing the findings of the defendant's internal investigation and advising that no

10

wrongdoing was found. *See id.* at 440, 443-45. The court rejected the plaintiff's argument that the descriptions and factual admissions contained in the defendant's letter did not qualify as settlement negotiations, reasoning that Rule 408 specifically "adopts a rule excluding factual admissions made in the course of settlement negotiations" and that the "letter's discussion of [defendant's] internal investigation, provided to explain [defendant's] settlement position, is exactly the type of admission that falls within the scope of Rule 408." *Id.* at 446; *see also United States v. Doxie*, No. 13-cr-101, 2014 WL 3845699, at *10 (N.D. Ga. Aug. 5, 2014) ("[I]t does not matter that the statements involved were not actually offers but rather facts proffered about the dispute. Rule 408 covers all conduct and statements during negotiation including the facts disclosed to promote a settlement."). Like the defendant's letter in *Eid*, here, the Settlement Communications are "factual admissions made in the course of settlement negotiations . . . provided to explain [the suppliers'] settlement position," and are thus necessarily precluded from discovery by *Goodyear*. *Eid*, 377 F. App'x at 446.

In requiring the production of the Settlement Communications, the Special Master did not properly consider the context of the Settlement Communications. The only reason for an OEM and a supplier to have a meeting that includes discussions of "the existence of the automotive parts conspiracy and its scope, duration, nature, and extent" would be to further settlement of claims arising from any such conspiracy. It is highly unlikely that a supplier would approach an OEM and describe all of its arguably unlawful conduct without at least some prior discussion between the parties concerning the confidentiality of the parties' communications, including assurances that the communications would be subject to Rule 408. Because it is also unlikely that any documents exchanged at any initial meetings describing the scope of the conspiracy would have been created for any purpose other than settlement, such documents are not

11

discoverable. *See Westlake Vinyls, Inc. v. Goodrich Corp.*, No. 03-cv-00240, 2007 WL 1959168, at *1 (W.D. Ky. June 29, 2007) (documents created for the purpose of furthering settlement negotiations protected from discovery under *Goodyear*).

### B. Production Of The Settlement Communications Is Not Proportional To The Needs Of This Case

Even assuming *arguendo* that the Settlement Communications are not privileged, the Serving Parties have not shown – and cannot show – that production of the Settlement Communications is in any way proportional to the needs of the case considering the parties' relative access to the information sought. *See* Fed. R. Civ. P. 26(b)(1). The Serving Parties have access to broad party discovery in their respective actions, and can investigate any allegations of anti-competitive conduct through document requests and depositions. Further, as part of their own settlement discussions, the Serving Parties can request that defendants confidentially proffer to them the very information regarding the nature and scope of the conspiracies that is the subject of the Order. The substantial burden associated with the contemplated invasion of the confidential settlement negotiations between non-party OEMs and their business partners far outweighs the needs of this case where factual information about the scope of the conspiracies can be obtained from other sources. This is particularly true where the confidential materials are related to settlement discussions between business partners, the production of which may have a chilling effect on settlement negotiations.

## CONCLUSION

Based on the foregoing, Ford respectfully requests that the Court reverse paragraphs 2 and 3 of the Order and deny the Serving Parties' motion to compel documents responsive to Request No. 31. Because of Ford's substantial interest in the Order, Ford respectfully requests that it be permitted to participate in any hearing on any Objections to the Order.

Dated: February 8, 2017

By: /s/ *Hector Torres*
Hector Torres
Sarah Gibbs Leivick
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
htorres@kasowitz.com
sleivick@kasowitz.com

Eric J. Pelton (P40635)
KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@kohp.com

*Attorneys for Interested Non-Party Ford Motor Company*

**CERTIFICATE OF SERVICE**

  I hereby certify that on February 8, 2017, a true and correct copy of the foregoing Objection of Interested Non-Party Ford Motor Company to the Order of the Special Master Granting in Part and Denying in Part Certain Serving Parties' Motion to Compel Production in Response to Request No. 31 in the Serving Parties' OEM Subpoena was electronically filed with the Clerk of the Court using the ECF system, which sends electronic notice to all counsel of record.

              /s/ Hector Torres
              Hector Torres
              KASOWITZ, BENSON, TORRES
                & FRIEDMAN LLP
              1633 Broadway
              New York, New York 10019
              (212) 506-1700
              htorres@kasowitz.com