UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | |
| ALL PARTS | 12-md-02311<br>Honorable Marianne O. Battani |
| THIS RELATES TO: ALL CASES | |

**REPLY IN SUPPORT OF OBJECTION OF INTERESTED NON-PARTY FORD MOTOR COMPANY TO THE ORDER OF THE SPECIAL MASTER GRANTING IN PART AND DENYING IN PART CERTAIN SERVING PARTIES' MOTION TO COMPEL PRODUCTION IN RESPONSE TO REQUEST NO. 31 IN THE SERVING PARTIES' OEM SUBPOENA**

**STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438 (6th Cir. 2010)

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)

*In re Vitamins Antitrust Litig.*, 198 F.R.D. 296 (D.D.C. 2000)

Fed. R. Civ. P. 26(b)(1)

# TABLE OF CONTENTS

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................... i

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.   THE SPECIAL MASTER'S ORDER SHOULD BE REVIEWED *DE NOVO* ................ 2

II.  THE SETTLEMENT AGREEMENTS ARE NOT RELEVANT .................................... 2

III. THE SETTLEMENT COMMUNICATIONS ARE PROTECTED BY *GOODYEAR* ...... 5

IV.  UPHOLDING THE ORDER WILL CHILL SETTLEMENT .......................................... 6

CONCLUSION ...................................................................................................................... 7

## TABLE OF AUTHORITIES

Page

**CASES**

*Eid v. Saint-Gobain Abrasives, Inc.*,
   377 F. App'x 438 (6th Cir. 2010) ................................................................................. 5-6

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
   332 F.3d 976 (6th Cir. 2003) ........................................................................................ 5-6

*High Point SARL v. Sprint Nextel Corp.*,
   No. 09-cv-2269, 2012 WL 5306268 (D. Kan. Oct. 29, 2012) ....................................... 2

*Pennington v. Midland Credit Mgmt.*,
   No. 10-cv-112, 2010 WL 3187955 (E.D. Va. Aug. 9, 2010) ......................................... 3

*State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*,
   No. 14-cv-10266, 2016 WL 6901379 (E.D. Mich. Oct. 27, 2016) ................................. 6

*In re Vitamins Antitrust Litig.*,
   198 F.R.D. 296 (D.D.C. 2000) ....................................................................................... 2

**RULES**

Fed. R. Civ. P. 26(b)(1) .......................................................................................................... 4

**PRELIMINARY STATEMENT**

Without any factual basis and based on nothing more than speculation, the Automobile Dealership Plaintiffs ("Plaintiffs")[1] contend that the OEMs and defendants are seeking to conceal discoverable information concerning the scope, duration or nature of the automotive parts conspiracies, which purportedly can be obtained only through the OEMs' production of the Settlement Agreements and Settlement Communications.[2] The relief Plaintiffs seek contravenes the Federal Rules of Civil Procedure or ignores the privilege established by the Sixth Circuit in *Goodyear*.

Plaintiffs have made absolutely no showing that the Settlement Agreements are relevant to Plaintiffs' claims. Nor can Plaintiffs reasonably deny that the Settlement Communications, which were in furtherance of settlements between the OEMs and their automotive parts suppliers, are protected by the *Goodyear* privilege. Indeed, requiring production of these highly sensitive materials would chill settlements between the direct targets of the alleged conspiracies and defendants, and would be disproportionate to the needs of the action, particularly in view of other available discovery. Thus, Paragraphs 2 and 3 of the Order should be reversed and the motion to compel should be denied.[3]

---

[1]  Although all indirect purchaser plaintiffs moved to compel documents responsive to Request No. 31, only Plaintiffs filed Certain Serving Parties' Opposition to Objection Regarding Special Master's Order on Request No. 31 in the Serving Parties' Subpoena, Case No. 12-md-2311, Doc. 1681, Feb. 23, 2017 ("Opp.").

[2]  All terms not defined herein are defined in Ford's Objection to the Order of the Special Master Granting in Part and Denying in Part Certain Serving Parties' Motion to Compel Production in Response to Request No. 31 in the Serving Parties' OEM Subpoena, Case No. 12-md-2311, Doc. 1655, Feb. 8, 2017 ("Ford Obj." or "Ford's Objection").

[3]  In submitting its Objection, Ford does not agree that it has foreclosed its opportunity to separately seek relief from the Court if Ford and the Serving Parties are unable to reach a resolution on Request No. 31. (*See* Opp. at 25 n.6.) The motion to compel was not filed against Ford, and Ford is not subject to the Order. Ford submitted its Objection because of the significance of these issues to Ford, but reserves its right to resolve any further disputes with the Serving Parties regarding Request No. 31 before this Court, if necessary, including with respect to any issues unique to Ford and its negotiations with the Serving Parties.

# ARGUMENT

## I. THE SPECIAL MASTER'S ORDER SHOULD BE REVIEWED *DE NOVO*

Plaintiffs' argument that the Order should be reviewed for abuse of discretion because the Order addresses procedural matters is erroneous. (Opp. at 2-3.) The Special Master's determinations related to relevance and privilege -- not procedural matters. Relevance and privilege decisions are subject to *de novo* review. *See, e.g.*, *High Point SARL v. Sprint Nextel Corp.*, No. 09-cv-2269, 2012 WL 5306268, at *3 (D. Kan. Oct. 29, 2012) (special master's decision on applicability of attorney-client privilege reviewed *de novo*); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 298 (D.D.C. 2000) (special master's relevance determination reviewed *de novo* because relevance presents legal question); *see also* Ford Obj. at 4.[4]

## II. THE SETTLEMENT AGREEMENTS ARE NOT RELEVANT

Plaintiffs have failed to demonstrate the relevance of the Settlement Agreements. Instead, they rely on the baseless and unsupported contention that the Settlement Agreements "will shed light on practices and mechanics of OEMs' commercial relationship with their suppliers" and the speculative conjecture that they "may" contain admissions concerning the "workings and scope of the conspiracy." (*See* Opp. at 17-18.) Standard agreements to settle disputed legal claims, however, contain neither type of information and Plaintiffs fail to provide any explanation as to the reason that the Settlement Agreements here would depart from this standard protocol.[5]

---

[4] The Special Master's Order regarding the Settlement Agreements and Settlement Communications should be reversed even if the Court applies an abuse of discretion standard. The Special Master requested no showing, conducted no analysis and made no finding regarding relevance of the Settlement Agreements, and ordered the production of the Settlement Communications in clear contravention of the controlling *Goodyear* precedent.

[5] Plaintiffs also argue that they are seeking "any documents containing the post-conspiracy modifications of collusive rates," which they characterize as "regular business documents." (Opp. at 17.) However, the Special Master did not order the production of commercial agreements entered into between the OEMs and their suppliers after the disclosure of the conspiracy, he ordered the production of "settlement agreements." (Order at ¶ 3.)

2

Ford can represent unequivocally that it has not entered into any settlement agreement that contains any information that would "shed light on practices and mechanics" of Ford's commercial relationship with its suppliers, including, for example, post-conspiracy price modifications. (*See* Opp. at 17.) Nor do Ford's settlement agreements provide any factual description of the "workings" of the alleged conspiracies. (*Id.* at 18.)[6]

This should come as no surprise to Plaintiffs, who have entered into their own class action settlement agreements with certain defendants. Plaintiffs know that those settlement agreements contain no information about the nature or scope of any conspiracy. Nor do any of those agreements contain any admissions of liability, which is consistent with the standard disclaimer of liability or damages in settlement agreements. *See, e.g.*, *Pennington v. Midland Credit Mgmt.*, No. 10-cv-112, 2010 WL 3187955, at * 2 (E.D. Va. Aug. 9, 2010) (denying motion to compel production of settlement agreements where requesting party suggested agreements might be relevant to causation or other elements of claims, but showed no connection between content of the agreements and material facts of the case).

Plaintiffs' other arguments concerning relevance are equally unavailing.

*First*, Ford never suggested, as implied by Plaintiffs, that indirect purchasers cannot recover damages in this action. (*See* Opp. at 18.) Instead, Ford's Objection explains that Settlement Agreements between Ford and a supplier necessarily would concern claims arising from Ford's *direct* purchases of automotive parts, which could be global in scope and involve multiple parts. (Ford Obj. at 6-7.) Plaintiffs have offered no explanation of how the amount of any such Ford settlement could be relevant to calculating Plaintiffs' damages in their *indirect*

---

[6] In any event, if there were any issue concerning these affirmative statements regarding Ford settlement agreements or if otherwise necessary, Ford reserves the right to request that the Court conduct an *in camera* review of a sample of its settlement agreements before any disclosure of such agreements.

3

purchaser cases, which are limited to vehicles sold in the United States and specific to one automotive part. In fact, Plaintiffs have not even attempted to make a showing that the settlement amounts are in any way relevant to their claims.

*Second*, although Plaintiffs assert that they "believe" some statements by certain OEMs were "made with potential bias," (Opp. at 17), Plaintiffs do not explain how such a belief is reasonable, why the OEMs may be biased, or how the Settlement Agreements could show any such purported bias. At this stage of the litigation, without knowing the scope of Plaintiffs' claims at trial (if any), the identity of the OEMs connected to those claims or whether any particular OEM witnesses will be called to testify, it is entirely premature to require production of all confidential Settlement Agreements because of the theoretical possibility that certain of these Agreements may, at some point, be relevant to witness bias. (*See* Ford Obj. at 8-9.)

*Third*, Plaintiffs do not need the Settlement Agreements to see "the documents suppliers agreed to produce to OEMs as part of the agreements" to inform their own requests, "or simply to understand the sorts of documents and data that can possibly be produced." (Opp. at 18.) If any such supplier documents are relevant to Plaintiffs' claims, they should be requested from, and produced by, defendants. It is not proportional to the needs of the case to require the non-party OEMs to produce the Settlement Agreements -- which may or may not contain references to specific documents -- when any relevant documents can be obtained from another source, and specifically from parties to this action. *See* Fed. R. Civ. P. 26(b)(1).[7]

---

[7] Although Plaintiffs assert that there are "many" other reasons why the Settlement Agreements are relevant, (Opp. at 18), they have offered no further insight into what these reasons might be. Even if Plaintiffs could make some showing of relevance, in view of the highly sensitive nature of these Settlement Agreements, it is not proportional to the needs of the case to invade the OEMs' confidential negotiations and potentially chill future settlements.

4

**III.     THE SETTLEMENT COMMUNICATIONS ARE PROTECTED BY *GOODYEAR***

Plaintiffs' contention that the *Goodyear* privilege does not apply to the Settlement Communications because factual descriptions of criminal conduct are outside of discussions regarding "settlement terms," (Opp. at 6), wholly mischaracterizes the Sixth Circuit's decision.[8] The holding in *Goodyear* is in no way limited to negotiations or discussions solely regarding settlement terms, but rather mandates application of the settlement privilege to "*any communications* made in *furtherance* of settlement." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003); *see also id.* at 977, 979.[9] Plaintiffs' attempt to limit *Goodyear*'s application to "the exchange of potential terms and conditions of settlement," (Opp. at 6-7), ignores how the *Goodyear* court framed the very question it decided. *See* 332 F.3d at 977 ("The issue presented on appeal is whether statements made in *furtherance* of settlement are privileged . . . .").

Such statements "in furtherance of settlement" include the Settlement Communications at issue here, which would only be provided to an OEM in an effort to settle a dispute arising from a supplier's anti-competitive conduct, and cannot be separated from that context. *See id*. at 980 (recognizing that parties "must be able to make hypothetical concessions . . . and generally make statements that would otherwise belie their litigation efforts" in order to facilitate settlement); *see also Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438, 445 (6th Cir. 2010) ("factual

---

[8]     Plaintiffs' claim that the decision in *Goodyear* has been "roundly criticized," (Opp. 5), does not change the fact that the settlement privilege established in *Goodyear* is still the law in this Circuit.

[9]     All emphasis supplied unless otherwise indicated.

5

admissions . . . provided to explain [the defendant's] settlement position" were in furtherance of settlement for purposes of Rule 408).[10]

### IV. UPHOLDING THE ORDER WILL CHILL SETTLEMENT

Plaintiffs' argument that there will be no effect on settlements between OEMs and their suppliers if the Court upholds the Order, (Opp. at 19-21), is directly contradicted by the underlying rationale of and holding in *Goodyear*. "Without a [settlement] privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost." *Goodyear*, 332 F.3d at 980.

Indeed, the effectiveness and efficiency of any negotiation processes developed by the OEMs for resolving antitrust disputes with their suppliers would be threatened if the Order is upheld. Parties participate in settlement negotiations based in part on the understanding that their discussions and negotiations will be confidential. Requiring the disclosure of the Settlement Communications and Settlement Agreements would strip away that confidentiality, increasing the likelihood that certain suppliers would be unwilling to settle, and forcing certain OEMs to seek redress for their damages in court.

Plaintiffs argue that their settlement negotiations with defendants have not been harmed by the fact that all of their settlement agreements are made public, including to defendants with which they have not settled. (Opp. at 19.) Unlike the OEMs here, Plaintiffs -- who are obligated

---

[10] The cases cited by Plaintiffs (Opp. at 7) provide no support for their position. Each of these cases concerned disputes regarding the production of settlement *agreements* and did not concern the type of communications at issue here. Although these decisions recognize the well-settled proposition from *Goodyear* that settlement negotiations are protected from discovery, nothing in these opinions addresses the scope of negotiations that are protected by the settlement privilege, much less suggests that *Goodyear* restricts the privilege to the negotiation of settlement terms. One decision cited by Plaintiffs explicitly acknowledges that *Goodyear* is not so limited. *See State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-cv-10266, 2016 WL 6901379, at *2 (E.D. Mich. Oct. 27, 2016) ("[C]ommunications *surrounding* settlement negotiations receive a unique privilege in this Circuit . . . .").

6

to publicly disclose settlements of their putative class actions -- can control when they make their settlement agreements public by filing motions for preliminary approval, and such decision is presumably impacted by the status of the negotiations with other defendants. The Order would require the OEMs to produce all of their Settlement Agreements at the same time, without regard to the status of any ongoing settlement negotiations, thus potentially jeopardizing settlement negotiations with certain alleged co-conspirators of settled suppliers.

The risk that settlements will be chilled far outweighs any purported benefit to Plaintiffs, particularly where Plaintiffs can obtain from a number of other sources the information they claim is available only from OEMs. These sources include party discovery in their own actions, information provided by Department of Justice leniency applicants, which were named defendants in many, if not all, cases, and the cooperation that certain settling defendants are obligated to provide Plaintiffs pursuant to their settlement agreements. Invading the confidential settlement negotiations of the OEMs under these circumstances is not proportional to the needs of the case and is entirely unjustified.

## CONCLUSION

Based on the foregoing, Ford respectfully requests that the Court reverse paragraphs 2 and 3 of the Order and deny the Serving Parties' motion to compel.

Dated: March 1, 2017

By: /s/ *Hector Torres*
Hector Torres
Sarah Gibbs Leivick
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
htorres@kasowitz.com
sleivick@kasowitz.com

                          Eric J. Pelton (P40635)
                          KIENBAUM OPPERWALL
                              HARDY & PELTON, P.L.C.
                          280 N. Old Woodward Ave., Ste. 400
                          Birmingham, Michigan 48009
                          (248) 645-0000
                          epelton@kohp.com

                          *Attorneys for Interested Non-Party*
                          *Ford Motor Company*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 1, 2017, a true and correct copy of the foregoing Reply in Support of Objection of Interested Non-Party Ford Motor Company to the Order of the Special Master Granting in Part and Denying in Part Certain Serving Parties' Motion to Compel Production in Response to Request No. 31 in the Serving Parties' OEM Subpoena was electronically filed with the Clerk of the Court using the ECF system, which sends electronic notice to all counsel of record.

                                                 /s/ Hector Torres
                                                 Hector Torres
                                                 KASOWITZ, BENSON, TORRES
                                                    & FRIEDMAN LLP
                                                 1633 Broadway
                                                 New York, New York 10019
                                                 (212) 506-1700
                                                 htorres@kasowitz.com