**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness | : | 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00203 |
| In Re: Fuel Senders | : | 2:12-cv-00303 |
| In Re: Heater Control Panels | : | 2:12-cv-00403 |
| In Re: Bearings | : | 2:12-cv-00503 |
| In Re: Alternators | : | 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | : | 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | : | 2:13-cv-00903 |
| In Re: Radiators | : | 2:13-cv-01003 |
| In Re: Starters | : | 2:13-cv-01103 |
| In Re: Ignition Coils | : | 2:13-cv-01403 |
| In Re: Motor Generator | : | 2:13-cv-01503 |
| In Re: HID Ballasts | : | 2:13-cv-01703 |
| In Re: Inverters | : | 2:13-cv-01803 |
| In Re: Electronic Powered Steering Assemblies | : | 2:13-cv-01903 |
| In Re: Fan Motors | : | 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02203 |
| In Re: Power Window Motors | : | 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | : | 2:13-cv-02603 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | 2:13-cv-02803 |
| In Re: Spark Plugs | : | 2:15-cv-03003 |
| In Re: Automotive Hoses | : | 2:15-cv-03203 |
| In Re: Ceramic Substrates | : | 2:16-cv-03803 |
| In Re: Power Window Switches | : | 2:16-cv-03903 |
| THIS DOCUMENT RELATES TO: End-Payor Actions | : : : | |

## JOINT OBJECTION TO PROPOSED ROUND TWO SETTLEMENTS AND REQUEST FOR ATTORNEYS' FEES

Class Members Olen York (Claimant No. 9A791897D5), Amy York (Claimant No. F0619D2B2C), and Nancy York (Claimant No. 2D7FB72438) ("Objectors") join in objecting to the fairness and reasonableness of Round Two settlements and request for attorneys' fees based upon the factual and legal grounds set forth below. Objectors qualify to participate in several class settlements because they purchased the following qualified vehicles from automobile dealerships in West Virginia during the class period containing the eligible parts listed:

*2003 Toyota Corolla* (Vin No. JTDBR32E230012891) -- purchased by Olen York in August 2002 from Mike Ferrell Toyota in Chapmanville, WV. According to the settlement website, covered parts include Radiators, Power Window Motors, Occupant Safety Restraint Systems, Anti-Vibration Rubber Parts, Alternators, Windshield Wiper Systems, Starters, Windshield Washer Systems.

*2009 Ford Escape XLT* 2.5L (Vin No. 1FMCU03739KA59048) -- purchased by Amy York on May 23, 2009 from River Cities Ford in Lavalette, WV. Covered parts include Fuel Injection Systems, Wire Harness Systems, Bearings, Air Conditioning Systems, Occupant Safety Restraint Systems, Windshield Wiper Systems.

*2010 Ford Focus SE* 2.0L **(**Vin No. 1FAHP3FN9AW117065) -- purchased by Olen York, Jr. (deceased) and Nancy York on September 12, 2009 from Stephens Auto in Danville, WV. Covered parts include Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices, Power Window Motors, Occupant Safety Restraint Systems, Alternators, Windshield Wiper Systems.

The York Objectors repeat certain arguments advanced in Round One settlements now under appeal. Verification of vehicle ownership was provided in Joint Objection to Round One settlements (DE 1339-2, Page ID##23687-23703).

## **ARGUMENT**

### I. THE UNREASONABLENESS OF CLASS COUNSEL'S FEE REQUEST IS DEMONSTRATED BY APPLYING THE SIXTH CIRCUIT'S FACTORS TO THE CIRCUMSTANCES PRESENTED.

Irrespective of class participation, class counsel's motion falls far short of demonstrating why they deserve nearly 30% of a $379 million mega-fund settlement made possible by governmental prosecution. *See Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1152 (6th Cir. 1998) ("The district court should pay particularly close attention to counsel's fee requests, because this money comes from the beneficiaries, not from the defendants."). The complexity of the issues is a significant factor to be considered in making a fee award. In the present case, class counsel freely admits piggybacking off the government's intensive efforts to uncover an unlawful price-fixing conspiracy among the defendants. Where a government body has obtained a guilty plea, criminal conviction, or civil judgment against a defendant, class counsel in a "piggyback" class action arising out of the same set of facts face a reduced risk of loss and a reduced risk or burden of discovery and trial. A reasonable attorney fee in such cases may be the value that class counsel adds to the settlement that would have been available to the class but for the counsel's work. See, e.g., *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993)." Managing Class Action Litigation: A Pocket Guide for Judges, at 24 (Federal Judicial Center, 2005).

It is uncontroverted that the Department of Justice ("DOJ") engaged in significant pre-complaint investigation efforts, prosecuted defendants for their antitrust violations, and secured convictions. Indeed, DOJ began investigating criminal price-fixing and bid-rigging conspiracies years before class counsel even filed suit. In September 2011, DOJ secured its first criminal convictions against Furukawa Electric Co. Ltd. for its role in a criminal price-fixing and bid-rigging conspiracy involving the sale of parts to automobile manufacturers. Moreover, they intend to continue riding DOJ's coattails in order to corral the remaining Defendants. Because DOJ's investigations and convictions paved the way for Plaintiffs' success, the risk and complexity of class counsel's enhancement was minimal. *In re First Databank Antitrust Litigation,* 209 F. Supp. 2d 96, 98 (D.D.C. 2002).

Consequently, a proper fee award should reflect **class counsel's actual contribution** to the settlement's value. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53-54 (2d Cir. 2000) (4% fee awarded, in part because counsel benefitted from work done by federal authorities); *see also Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1259 (C.D. Cal. 1997) (court reduced "benchmark" percentage to 10% due to government's involvement); *In re First Databank Antitrust Litigation,* 209 F. Supp. 2d 96, 98 (D.D.C. 2002) (reducing fee award due to Federal Trade Commission's work reducing risk and complexity to counsel). Because the DOJ's legwork significantly reduced class counsel's risk in bringing

these actions while increasing their chance of success, class counsel's fee award should be adjusted accordingly.

Class counsel's desire to reap nearly 30% of the $379 million settlement pool would be patently unreasonable even without the foregoing mitigating factors. Such a request also violates the longstanding principle that fee awards in megafund settlements should be drastically lowered to account for economies of scale. The process begins by selecting the appropriate method for calculating fees under the circumstances presented: lodestar versus percentage-of-the-fund. District courts have discretion "to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). In common fund cases, the award of attorney's fees need only "be reasonable under the circumstances." *Id.* However, a district court generally must explain its "reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (internal quotation marks omitted).

Upon determining the lodestar, a district court also has discretion to decide whether an upward or downward adjustment is warranted in order to reach a reasonable fee award. *Geier*, 372 F.3d at 792. In considering any adjustment, the

Supreme Court has cited with approval twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) he amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the " undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar case.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Irrespective of class counsel's reported lodestar, York believes that unnecessary duplication of effort and unreasonably high hourly rates (not to mention unjustified pretrial activities) have inflated class counsel's real contribution. See, *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).

Plaintiffs' preference for the percentage approach offers little relief. In such case, the court must utilize those factors articulated by the Sixth Circuit for evaluating the fee request. See *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d. 1188, 1196 (6th Cir. 1974). Objectors respectfully submit that the biggest variable affecting the size of the fee is the ***size of the settlement***. "To avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee as the size of the fund increases." *Precision Associates, Inc. v.*

6

*Panalpina World Transp. (Holding) Ltd.*, 08-CV-42 JG VVP, 2013 WL 4525323, at *16 (E.D.N.Y. Aug. 27, 2013) (internal quotation marks and citation omitted).

One study found that the percentage awarded for federal class action settlements in 2006 and 2007 "tended to drift lower at a fairly slow pace until a settlement size of $100 million was reached, at which point the fee percentages plunged well below 20 percent, and by the time $500 million was reached, they plunged well below 15 percent, with most awards at that level under even 10 percent," though that last category covered only eleven settlements.  Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical L. Stud. 811, 838 (2010).  Another study, by Theodore Eisenberg and Geoffrey P. Miller, also showed decreasing percentages as the size of the fund increased.  See Theodore Eisenberg and Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements: 1993-2008, 7 J. Empirical L. Stud. 248, 265 (2010).  The present case boasts a $379 million settlement pool.  Thus, ***it surpasses the threshold for awarding a 20% fee*** as a matter of course.  When one also considers the unique mitigating factors discussed above, class counsel would be hard pressed to justify a percentage fee award of nearly 30% of the settlement pool.

## II. FAILING TO CENTRALIZE THE SETTLEMENTS IN THE MDL MASTER CASE FILE VIOLATES CLASS MEMBERS' RIGHT TO PROCEDURAL DUE PROCESS.

This Court's Case Management Protocol Orders do not establish a uniform, cost-effective procedure for class members to register objections or to appeal if the Court rejects their challenges. Any administrative obstacle that needlessly hinders an objector's procedural rights must undergo careful scrutiny:

> What is important here is that they are parties in the sense of being bound by the settlement. Allowing them to appeal a settlement approval when they have objected at the fairness hearing preserves their own interests in a settlement that will bind them, despite their expressed objections before the trial court. Allowing such appeals will not undermine the class action goal of preventing multiple suits. Restricting the power to appeal to those members who objected at the fairness hearing limits the class of potential appellants considerably.

*Devlin v. Scardelletti*, 536 U.S. 1, 2 (2002). Streamlining the objection and appeal of an *MDL* class settlement is a logical extension of 28 U.S.C. § 1407's statutory purpose. See, e.g., *In re Amino Acid Lysine Antitrust Litigation*, MDL No. 1083, 1996 WL 197671 (N.D. Ill.) (preliminary fairness review of cases consolidated in MDL); *Pearson v. NBTY* No. 11-cv-7972, 2014 WL 30676 (approving global settlement of cases consolidated in a second amended complaint), rev'd, 772 F.3d 778 (2014). *Rawson v. Source Receivables Management, LLC*, (ND Ill 2016).

Consistent with 28 U.S.C. § 1407's purpose, the court's protocol order organized MDL 2311 cases into four administrative categories: Master Case, Lead

Cases, Class Cases, and Miscellaneous Cases. (Rev. Prot. Ord). The Master Case expressly includes "all cases involving automotive parts antitrust actions that are transferred to the Court by the Judicial Panel on Multidistrict Litigation ("JPML") *or otherwise consolidated or coordinated with other matters before the Court*". Id. That maximizing efficiency was this Court's primary goal is clear:

> [W]e find that these actions involve common questions of fact, and that centralization of all actions in the Eastern District of Michigan will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. It is undisputed that these actions share factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.

*In re: Auto. Wire Harness Sys. Antitrust Litig.*, 844 F. Supp. 2d 1367 (J.P.M.L. 2012). To that end, the court encouraged the use of uniform pleadings throughout the pretrial process of resolving the parties' dispute. Thus:

(1) Plaintiffs filed *one* motion for preliminary approval;
(2) The Court filed *one* preliminary approval order;
(3) Plaintiffs published *one* notice of proposed settlements;
(4) Plaintiffs filed *one* motion for final approval;
(5) Class members are submitting *one* notice of objections;
(6) The Court will convene *one* fairness hearing;
(7) The Court will issue *one* final approval order.

Contrary to MDL 2311's purpose, however, the Round One and Round Two auto part settlements are split into separate cases by each defendant. This greatly

9

complicates processing objections and appealing their denial. This raises the specter of collusion: the parties are fully aware that no class member could (or would) pay thousands in filing fees to appeal a single order.[1] In addition to inviting inconsistent adjudications, this result runs directly counter to the whole purpose of multidistrict litigation. Failing to file the final orders into the MDL Master Case will cause objecting class members to abandon valuable appeal rights without just cause. The Yorks reserve the right to supplement and/or to amend their objections in light of additional information. They also join in all subsequently-filed objections.

Respectfully Submitted,

*s/ Olen York*
Olen York, Esq.
15 Riverview Court
Milton, W.Va. 25541
304.633.1178

*s/ Amy York*
Amy York
15 Riverview Court
Milton, W.Va. 25541
304.633.1178

*s/ Nancy York*
Nancy York
9 Gable Drive
Milton, WV 25541
304.743.5949

*Class Members/Joint Objectors*

*s/ George W. Cochran*
LAW OFFICE OF GEORGE W. COCHRAN
1385 Russell Drive
Streetsboro, Ohio 44241
Tel: (330) 607-2187
Fax: (330) 230-6136
lawchrist@gmail.com
*Counsel to the York Objectors*

---

[1] Due to this costly and inefficient system, the Yorks had to forfeit significant appeal rights in the Round One settlements regarding several auto part defendants.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was served by overnight express mail to the following on March 14, 2017, with instructions to file it electronically via CM/ECF, thereby serving by the same means on all counsel of record. (To ensure compliance with the stated deadline for docketing objections, I also filed a PDF copy electronically via CM/ECF on the same date):

| Court | Notice Administrator |
|---|---|
| U.S. Dist. Court for Eastern Dist. of Michigan Clerk's Office Theodore Levin U.S. Courthouse 231 W. Lafayette Blvd., Room 564 Detroit, MI 48226 | Auto Parts Settlements Objections P.O. Box 10163 Dublin, OH 43017-3163 |

*/s/ George W. Cochran*
George W. Cochran
Counsel to the York Objectors