## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Honorable Marianne O. Battani |
| IN RE: WIRE HARNESSES | Case No. 12–cv–00103 |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 12–cv–00203 |
| IN RE: FUEL SENDERS | Case No. 12–cv–00303 |
| IN RE: HEATER CONTROL PANELS | Case No. 12–cv–00403 |
| IN RE: OCCUPANT SAFETY RESTRAINT SYSTEMS | Case No. 12–cv–00603 |
| IN RE: ALTERNATORS | Case No. 13–cv–00703 |
| IN RE: RADIATORS | Case No. 13–cv–01003 |
| IN RE: STARTERS | Case No. 13–cv–01103 |
| IN RE: SWITCHES | Case No. 13–cv–01303 |
| IN RE: IGNITION COILS | Case No. 13–cv–01403 |
| IN RE: MOTOR GENERATORS | Case No. 13–cv–01503 |
| IN RE: STEERING ANGLE SENSORS | Case No. 13–cv–01603 |
| IN RE: HID BALLASTS | Case No. 13–cv–01703 |
| IN RE: INVERTERS | Case No. 13–cv–01803 |
| IN RE: AIR FLOW METERS | Case No. 13–cv–02003 |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 13–cv–02203 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 13–cv–02403 |

1

| | |
|---|---|
| **IN RE: VALVE TIMING CONTROL DEVICES** ) ) ) | Case No. 13−cv−02503 |
| **IN RE: ELECTRONIC THROTTLE BODIES** ) ) ) | Case No. 13−cv−02603 |

**THIS DOCUMENT RELATES TO ALL END-PAYOR ACTIONS**

## <u>CLASS MEMBER OBJECTION</u>

Class Member, Ben Feury resides in Naples, Florida, and is objecting to the fairness and reasonableness of Round Two Settlements and Class Counsel's request for attorneys' fees based upon the factual and legal grounds set forth below. Objector is a class member, because he purchased the following qualified vehicles: A 2015 Toyota Corolla, and a 2010 Hyundai, both purchased in the state of Florida. The covered parts include: instrument panel clusters, heater control panels, wire harness systems, bearings, radiators, electric powered steering assemblies, power window motors, alternators, windshield wiper systems, starters, air condition system, fuel injector, and windshield washer systems. Mr. Feury objects to the settlements with the following Settling Defendants:

Aisin Seiki Co., Ltd. and Aisin Automotive Casting, LLC); DENSO Corporation; DENSO International America, Inc.; DENSO International Korea Corporation, DENSO Korea Automotive Corporation; DENSO Automotive Deutschland GmbH; ASMO Co., Ltd.; ASMO North America, LLC; ASMO Greenville of North Carolina, Inc.; and ASMO Manufacturing, Inc.; Furukawa Electric Co., Ltd. and American Furukawa, Inc. ; G.S. Electech, Inc.; G.S. Wiring Systems Inc.; and G.S.W. Manufacturing, Inc.; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; and Mitsubishi Electric Automotive America, Inc. ; NSK Ltd.; NSK Americas, Inc.; NSK Steering Systems Co., Ltd.; and NSK Steering Systems America, Inc.; Omron Automotive Electronics Co. Ltd.; Schaeffler Group USA Inc. ; Sumitomo Riko Co. Ltd. and DTR Industries, Inc.; Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.; Valeo Japan Co., Ltd. on behalf of itself and Valeo Inc.; Valeo Electrical Systems, Inc.; and Valeo Climate Control Corporation.

## A. <u>OBJECTIONS</u>

## I.  <u>COMMON ISSUES DO NOT PREDOMINATE, THEREBY PRECLUDING CLASS CERTIFICATION.</u>

For a class to be certified, the party seeking certification "has the burden to prove the Rule 23 certification requirements." <u>Young v. Nationwide Mut. Ins. Co.</u>, 693 F.3d 532, 537 (6th Cir. 2012). Specifically, the party seeking certification must meet all the requirements of Rule 23(a), "and fall within one of the three types of class actions listed in Rule 23(b)." <u>Id.</u> In the case at bar, Counsel has failed to meet the predominance requirement of Rule 23(b)(3) and has failed to show that the proposed class is manageable under Rule 23(b)(3)(d).

### a.   <u>The Predominance Requirement For Class Certification Is Not Met In This Case.</u>

The named Plaintiffs have failed to specifically connect the multiple component parts with specific vehicles and it is obvious that individual issues overwhelm common issues, especially in terms of liability, impact and quantifiable damages. "When common issues and facts are involved, as obvious in antitrust cases, the pertinent question is whether [plaintiffs] can demonstrate with common proof that the members of the class have suffered a common injury as indirect purchasers…" <u>A & M Supply Co. v. Microsoft Corp.</u>, 252 Mich. App. 580, 599–600, 654 N.W.2d 572, 582–83 (2002). The party seeking certification must show more than "common proof that each class member suffered injury", they need to also show "pass-on." *Id*. at 601 (2002). Accordingly, it must be proven that "plaintiffs purchased products at prices that, as a result of the conspiracy, were higher than they should have been." *See* <u>Atlantic Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 339–41 (1990).

In each and every case, Plaintiffs failed to provide any proof showing a "pass-on" of the increased price, or that the price was increased due to the conspiracy. Instead, Plaintiffs have focused on attempts to prove damages, simply by showing that conspiracies existed between the Defendants. However, this case involves separate conspiracies, separate parts, separate parties and separate defendants, intervening independent parties and thereby fails to establish predominance. As the

requirements of Rule 23 were not met, the classes do not meet the requirements of class certification.

### b. **The Proposed Class Is Not Ascertainable And Is Not Easily Managed.**

To certify a class, it must "be sufficiently defined, [and] the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." 693 F.3d 538. This objector previously objected to the Round 1 Settlements as they unfairly and unreasonable required class members to specifically identify each part of each Defendant in the class members' vehicles in or to object or file a claim. In fact, Judge Battani, commented that it is "ludicrous" to expect consumers to correctly identify the manufacturer of the individual parts contained in the car. MD R.1384-3, Page ID #24946 (Excerpt Fairness Hearing). In this case, class members still have to identify which Defendant's settlement they are objecting to, requiring them to still be able to identify which Defendant created which part that went into their car, when the Plaintiffs are not able to determine these facts themselves.

## II.   **THE REQUESTED ATTORNEYS' FEE IS EXCESSIVE, AND UNSUPPORTED BY COUNSEL'S FILINGS TO DATE.**

Class Counsel ("Counsel") requests a 27.5% attorneys' fee in addition to the rolling $11.25 million unearned payment already approved by this Court, and already received by Counsel from the Settlement Fund. Class counsel has not met its burden of demonstrating that its fee request of almost 30% of the settlement

benefits is reasonable. See <u>Bowling v. Pfizer, Inc.</u>, 132 F.3d 1147, 1152 (6th Cir. 1998) ("The district court should pay particularly close attention to counsel's fee requests, because this money comes from the beneficiaries, not from the defendants."). Here, Plaintiffs' Class Counsel's request is excessive, unreasonable and unfair, considering a) the manner in which the interests of the class has been represented and the obstacles put in place to limit their ability to participate/remain informed in the action; ii) the "piggyback" nature of this action; iii) the significant departure from the megafund benchmark; iv) the lack of documentation justifying the requested fees; and v) the failure to meet the standards set forth by the Sixth Circuit.

### a.   Conduct Has Occurred That Has Jeopardized Class Members' Rights To Object, Or Opt Out Of A Settlement.

The Class Notice and Class Notice Program suggested by Counsel and implemented, required, and still requires any and all objectors, or individuals who want to opt out of the settlement to "specifically [reference] which of the settlements the Class member is covered by," and must also identify the specific part eligible for membership. WH R.421, Page ID#13258. Such rigid requirements not only unfairly and unreasonably prevent class members, from objecting or opting out, but it also hinders class members' ability to make a successful claim to the settlement.

It is unfair to subject individuals to binding judicial proceedings, without

providing procedural and substantive safeguards. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Throughout this case, procedural and substantive due process issues have remained unanswered and unresolved, which has jeopardized the class members' rights. The manner in which this case has proceeded has valued money over substance, with the attorneys being paid well before their clients. Accordingly, Counsel is not entitled to almost 30% of the Settlement Funds in addition to unearned payments of $11.25 million.

The above-mentioned is not the only action which has jeopardized class members' interests. Class counsel requested, and received an unearned payment of approximately $11.25 million from prior settlements, prior to any class member receiving any benefit and without oversight. Furthermore, per the Notice class members will not receive any payment from the settlement, until all the cases and issues are fully litigated which could take many years despite the granting of final approval of the settlements. Yet, Counsel previously received 20% of attorneys' fees, plus their claimed costs, and $11.25 million in unearned payments from the settlements, and they now seek an additional award of 27.5% of the Round 2 Settlement amount, all before any payments are ever made to class members and without any assurances to protect class member's interests. Counsel are seeking all this without providing proper proofs of reasonableness. A class settlement should benefit the class members first, then the attorneys.

**b.** **This Action Is A "Piggyback" Action Based On An In-Depth Investigation Completed By The United States Department Of Justice ("DOJ").**

This action was filed after an almost four (4) year investigation by the DOJ into the same price fixing alleged in this case. Following its extensive and in-depth investigation the DOJ obtained convictions against numerous defendants, and levied fines in excess of $600 million. It is not unusual for Courts to reduce "benchmark" percentages to recognize the benefit reaped by class counsel from a DOJ investigation. *See* Quantum Health Resources, Inc., 962 F. Supp. 1254, 1259 (C.D. Cal. 1997) (court reduced "benchmark" percentage to 10% due to government's involvement); *see also* Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 53-54 (2d Cir. 2000) (court awarded a 4% fee, in part because counsel benefitted from work done by federal authorities).

**c.** **Counsel's Request For Attorneys' Fees And Costs Is Excessive, Unreasonable And Unfair, And Is A Marked Departure From The Megafund Benchmark.**

To the extent that class counsel seeks to use its claimed lodestar amount to justify an upward departure from the megafund benchmark of 17%, the Court must perform a detailed review of class counsel's claimed hours, rates and efficiency, and not simply accept their asserted lodestar total. At almost thirty percent (30%) of gross recovery, Counsel's request also ignores the longstanding principle that fee awards should be reduced when class funds exceed $100 million so that actual

class members can benefit from the economies of scale afforded by class treatment. *See* <u>In re Synthroid Marketing Litig.</u>, 325 F.3d 974, 980 (7th Circuit 2003) ("*Synthroid II*"). This lawsuit is hardly the exception to the rule: class counsel's burden was significantly lightened thank to the Government's cooperation, *see supra* Section IV (b), the case was never tried; and the lodestar has not been tested. Accordingly, Counsel's request of almost thirty percent (30%) of the Settlement, should be denied.

### d.   <u>Similar To The Round 1 Settlements, Proper Documentation Justifying Its Request For Twenty-Seven And A Half Percent (27.5%) Of The Round 2 settlements Has Not Been Provided.</u>

In <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), the Fifth Circuit established twelve factors to determine reasonable attorneys' fees in a class action. For a Court to properly weight the twelve factors involved, Counsel needs to provide proper documentation, including, but not limited to, timesheets, and a description of work done, to aid the Court in its analysis of what is reasonable. *See* <u>Shane Group, Inc., et al. v. Blue Cross Blue Shield of Michigan</u>, 825 f.3d 299 (6th Cir. 2016) (Court denied award of attorney fees, in part due to class counsel's failure to provide any "backup whatsoever — no time records, no descriptions of work done — in support of their hours spent working on the case"). In the case at bar, Counsel fails to provide the proper documentation to allow this Court to properly assess the reasonableness of their

time and charges, and in fact, unlike in the Round 1 Settlement, does not even provide a breakdown of the hours worked and necessary costs expended.

In *Shane Group*, the Court noted that if class counsel is charging "Bentley rates, not Cadillac rates," those rates should be justified with proper documentation as described above. *See id.* at 310. In the case at bar, Counsel does not even provide the hourly rate charged, or any breakdown of the total amount of attorneys' fees requested for each of the Round 2 Settling Defendants.

## III. THE DUE PROCESS RIGHTS OF CLASS MEMBERS SINCE THE INCEPTION OF THIS CASE HAS VIOLATED .

### a. The Use Of Separate Settlement Rounds Is A Strategic Attempt By The Parties To Discourage Class Members From Exercising Their Rights To Object Or Appeal The Proposed Settlement.

Although this case was certified as a multi-district action, the separation into separate filings/cases has made this case overwhelming and unduly burdensome for class members to get the information they need and be properly represented. In addition, instead of keeping with the pattern of filing uniform pleadings throughout this litigation, the Parties divided the settlement into different rounds, based on Defendants. This creates confusion for class members as to exactly what needs to be appealed, and creates an insurmountable burden for *pro se* litigants and objectors to meet when it comes to filing an appeal. This case involves numerous Defendants, each subject to separate settlement agreements, instead of the customary uniform settlement agreement for all defendants. This strategic *single*

10

*case* settlement makes it virtually impossible for class members to afford to appeal a settlement to protect their interests. A class member would be required to object to and appeal each case separately to the tune of tens of thousands of dollars in filing fees (now two times), which is unduly burdensome and is an unfair financial block to the exercise of a class members' rights.

### b.  The Sealing Of The Court Record Prevented Proper Notice And Ability To Object, Violating The Due Process Rights Of Class Members.

Throughout the case, the Court, at the request of the Plaintiffs and the Defendants ("Parties"), sealed multiple court records, including, but not limited to, the Fourth Amended Complaint, which was the last Complaint filed in this matter, numerous other court filings, and the Answers to the Fourth Amended Complaint by several of the settling Defendants. However, the Parties failed to meet the stringent burden required to justify that the sealing of certain court records was appropriate and necessary.

Generally, there is a strong presumption in favor of openness of court records, which should be strictly applied, especially in a class action where the public has an interest in obtaining court records and being able to make fully informed decisions as to their rights and remedies. *See id.* at 305.  Before any documents are sealed, the Court must perform a document by document analysis looking at several factors, including but not limited to, propriety of information, reason for

secrecy, and the legal authority, if any, cited in support of a request to seal. *See id.* at 305. In civil litigation, there are generally only a few types of court records that are sealed, including trade secrets, privileged information, or information sealed by statute. *See id.* at 308. Regardless, before sealing any documents, a Court, must examine what class members would give up if the record is sealed. In the case at bar, the class members, especially potential objectors, or members who want to opt out, are severely affected by inability to fully and openly examine all documents relevant to the case. Additionally, the lack of access to court records is likely to mask a Defendant's potential unsavory conduct.

The sealing of the court records deprived Class Members of their ability to assess the likelihood of success on their claims and whether the settlement compensation was fair, reasonable or adequate. Furthermore, the sealing of court records denied Class Members due process as they could not meaningfully participate in the settlement process contemplated by Fed. R. Civ. P. 23 (e), because they could not review the specific basis of the proposed settlements, since numerous documents were sealed.

    c.   **Rule 23 Dictates That Certain Procedures Must Be Followed To Satisfy The Due Process Rights Of Class Members That Have Not Been Adequately Followed To The Detriment of The Rights Of Class Members.**

From the inception of this lawsuit, class members have faced insurmountable hurdles to prove they are class members where they have been required to

provide very specific, rigid and unreasonable proof of class eligibility. Even today, to object, a class member is required to identify each part at issue, and identify the corresponding defendant responsible for the manufacturing of said part. This rigid requirement is overly burdensome, overwhelmingly difficult and time consuming for class members to meet. Additionally, Counsel has not provided, in its notice, an adequate method to determine the price fixed parts and corresponding manufacturing Defendant.

### d.   **The plan of allocation is unfair and unreasonable.**

The plan of allocation is structured in a manner, which puts Counsel's interest above the classes' interest. Specifically, not only does counsel receive an unearned payment of $11.25 million, before any distributions to the class, Counsel also wants to obtain payment of its attorneys' fee prior to any class distributions. Per the Notice provided by Counsel, class members will not receive any payment from the settlement, until all the cases and issues are fully litigated, which could take many years despite the granting of final approval of the settlements. Furthermore, as mentioned above, Counsel does not provide enough information for class members to make an informed decision as to whether they wish to object or opt out of the settlement or to reasonably understand the claims allocation process.

## B.   <u>FAIRNESS HEARING</u>

I will not attend the fairness hearing scheduled for April 19, 2017 before the

Honorable Marianne O. Battani at the United States District Courthouse,

Courtroom 272, 231 West Lafayette Blvd., Detroit, MI 48226.

## D. CONCLUSION

For the foregoing reasons, this Court should DENY approval of the proposed

Settlements, as well as Plaintiffs' Class Counsel's request for attorneys' fees and costs.


Dated: March 15, 2017

*Benjamin C. Feury*

Benjamin Feury
Address: 6512 Huntington Lakes, No. 102
         Naples, FL  34119
Telephone: 239-250-2450
However all contact must be through:
Linderman Law PLLC
9524 Portage Trail
White Lake, MI 48386
(810) 220-0600

Respectfully Submitted on March 15, 2017,

LINDERMAN LAW PLLC


/s/ Marla A. Linderman
Marla A. Linderman (P55759)
9524 Portage Trail
White Lake, MI 48386
(810) 220–0600
lindermanlaw@sbcglobal.net
Attorney for Ben Feury

---

PROOF OF SERVICE

The undersigned certifies that the forgoing instrument was served upon the Clerk of the Court for the U.S. District Court for the Eastern District of Michigan and all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on this March 15, 2017 via the Court's Electronic Filing System.  In addition, the class member objection and supporting documents were sent via overnight mail to both the Clerk of the Court for the U.S. District Court for the Eastern District of Michigan and the address provided for the Auto Parts Settlements Objections on March 15, 2017.  In addition, the class member objection and supporting documents were sent via first class mail to the address provided for Auto Parts Settlements Objections also on March 15, 2017.


Signature /s/ Marla A. Linderman

---

# SUPPORTING DOCUMENTS

# RETAIL PURCHASE AGREEMENT

FORM# 5D12 DEAL# 35521 STORE# 125 STK# FC229578 CUST# 4718527

(HEREINAFTER REFERRED TO AS "SELLER") RETAIL ORDER FOR A MOTOR VEHICLE.

PLEASE ENTER MY ORDER FOR THE FOLLOWING: ☐ NEW ☐ USED ☐ DEMO ☐ PREVIOUS SHORT TERM LEASE ☐ EXECUTIVE VEHICLE ☐ OTHER _____

| | | | |
|---|---|---|---|
| DATE 11/11/2014 | DEAL # 35521 | SALES #1 ERACA,SHAUNA | F & I MGR. RUBIO,HUGO |
| STOCK # FC229578 | CUSTOMER # 4718527 | SALES #2 | SALES MGR. ENNIS,DUNCAN |

Purchaser BENJAMIN CHARLES FENRY   DL# 5600-063-72-255-0   DOB 02/15/1977

Co-Purchaser _____   DL# _____   DOB _____

Street Address 6512 HUNTINGTON LAKES CIR 1102   City NAPLES   State FL Zip 34119

Home Phone _____   Bus. Phone _____   Cell Phone _____

E-Mail Address _____

| Year | Make/Model | Body Type | Vehicle Identification Number | TPP Number |
|---|---|---|---|---|
| 2015 | TOYOTA COROLLA | SD | 2T1BURHE5EC229578 | |
| No. Cyl. | Engine Size | Transmission | Color | Mileage |
| | 1.8L 4 CYL | AT | GREEN | |

## ITEMIZATION OF COSTS

| TRADE-IN VEHICLE #1 | | | | | |
|---|---|---|---|---|---|
| YEAR | MAKE | MODEL | BODY TYPE | | |
| STOCK # | | MILEAGE | | | |
| COLOR/TRIM | | PLATE# | ☐ ACTUAL ☐ INACCURATE DECAL# | | |
| VIN# | | | | | |

**SELLING PRICE** $ 16551.82

**SELLER INSTALLED EQUIPMENT:** The following options which have been provided through your dealer, are not products of the manufacturer. Please note that any warranty on these items is not through the manufacturer and should the need arise, you should contact your dealer or the vendor that provided the option.

OPTIONAL ACCESSORIES/PRODUCTS/SERVICES*

| TRADE-IN VEHICLE #2 | | | |
|---|---|---|---|
| YEAR | MAKE | MODEL | BODY TYPE |
| STOCK # | | MILEAGE | |
| COLOR/TRIM | | PLATE# | ☐ ACTUAL ☐ INACCURATE DECAL# |
| VIN# | | | |

| | + | N/A |
|---|---|---|
| | + | N/A |
| APPEARANCE PROTECT 6 YR | + | 500.00 |
| THEFT PROTECTION 2500 | + | 299.00 |
| FLOOR MATS | + | 249.00 |

### LIENHOLDER / PAYOFF INFORMATION

LIENHOLDER _____

ADDRESS _____

PHONE _____   ACCOUNT # _____

PAYOFF _____   ESTIMATE/ACTUAL _____

GOOD TILL _____   VERIFIED BY _____

The balance owed on Your Trade-In Vehicle(s) as disclosed above is based on the information You have provided to Us. This payoff amount is only an estimate. We have not been able to confirm the exact balance owed as of the date of this Agreement. If We tender payment to payoff the remaining balance(s) owed, You authorize the lienholder(s) to release the title(s) to the Trade-In(s) to Us. If the actual amount of the balance owed on the Trade-In Vehicle(s) is greater than the amount of the balance owed as listed in this Agreement, You agree to pay the difference to Us within 48 hours of our demand, if You fail to do so, We will place a lien on the Vehicle(s). If the actual amount of the balance owed is less than the amount listed, We will pay the difference to You.

X_____

Purchaser guarantees that the Trade-In Vehicle __ HAS __ HAS NOT (i) been in an accident requiring repairs in excess of $2,000 (ii) a welded or bent frame (iii) suffered flood damage (iv) been designated as a "salvage vehicle" or "restored salvage" by any agency (v) liens or circumstances other than as represented (vi) sustained substantial physical damage (vii) latent mechanical defects. Purchaser agrees to be liable for any damages Seller may incur if any of the above statements are untrue including attorneys' fees and costs.

If Purchaser checked "HAS" above, specify details:

X_____

*OPTIONAL ACCESSORIES/PRODUCTS/SERVICES; You have elected to purchase the optional items listed. The Seller does not require you to purchase any of these items. The amount for these items represents cost and profit to the

| | + | N/A |
|---|---|---|
| | + | N/A |
| | + | N/A |
| | + | N/A |
| | + | N/A |
| | + | N/A |
| TOTAL SELLING PRICE INCLUDING ACCESSORIES | | 17798.82 |
| LESS: DISCOUNT AND/OR TRADE-IN ALLOWANCE | − | N/A |
| CASH DIFFERENCE | | 17798.82 |
| DEALER SERVICE FEE | + | 699.25 |
| FLORIDA BATTERY FEE | + | 1.50 |
| FLORIDA TIRE FEE | + | 5.00 |
| TAG AGENCY/ELEC FILING FEE** | + | 98.75 |
| | + | N/A |
| SUBTOTAL | | 18604.02 |
| SALES TAX @ 6.0% | + | 1116.24 |
| | + | N/A |

| | | | |
|---|---|---|---|
| | | + | N/A |
| PHONE | ACCOUNT # | + | N/A |
| PAYOFF | | + | N/A |
| | ESTIMATE/ACTUAL | + | N/A |
| GOOD TILL | | + | N/A |
| | VERIFIED BY | + | N/A |

The balance owed on Your Trade-In Vehicle(s) as disclosed above is based on the information You have provided to Us. This payoff amount is only an estimate. We have not been able to confirm the exact balance owed as of the date of this Agreement. If We tender payment to payoff the remaining balance(s) owed, You authorize the lienholder(s) to release the title(s) to the Trade-In(s) to Us. If the actual amount of the balance owed on the Trade-In Vehicle(s) is greater than the amount of the balance owed as listed in this Agreement, You agree to pay the difference to Us within 48 hours of our demand. If You fail to do so, We will place a lien on the Vehicle(s). If the actual amount of the balance owed is less than the amount listed, We will pay the difference to You.

X_____

| | |
|---|---|
| TOTAL SELLING PRICE INCLUDING ACCESSORIES | N/A |
| LESS: DISCOUNT AND/OR TRADE-IN ALLOWANCE | 17298.82 |
| CASH DIFFERENCE | |

X_____   X_____

Purchaser guarantees that the Trade-In Vehicle ___ HAS ___ HAS NOT (i) been in an accident requiring repairs in excess of $2,000 (ii) a welded or bent frame (iii) suffered flood damage (iv) been designated as a "salvage vehicle" or "restored salvage" by any agency (v) liens or encumbrances other than as represented (vi) sustained substantial physical damage (vii) latent mechanical defects. Purchaser agrees to be liable for any damages Seller may incur if any of the above statements are untrue including attorneys' fees and costs.

If Purchaser checked "HAS" above, specify details:

| | | | |
|---|---|---|---|
| | | = | 17298.82 |
| DEALER SERVICE FEE** | | + | 699.95 |
| FLORIDA BATTERY FEE | | + | 1.50 |
| FLORIDA TIRE FEE | | + | 5.00 |
| TAG AGENCY/ELEC FILING FEE** | | + | 98.75 |
| SUBTOTAL | | = | N/A |

*OPTIONAL ACCESSORIES/PRODUCTS/SERVICES: You have elected to purchase the optional items listed. The Seller does not require you to purchase any of these items. The amount for these items represents cost and profit to the Seller. See TERMS AND CONDITIONS on reverse side.

**This charge represents costs and profit to the Dealer for items such as inspecting, cleaning, adjusting new and used vehicles, and preparing documents related to the sale.

| | | | |
|---|---|---|---|
| SALES TAX @ 6.0% | | + | 1116.24 |
| | | + | N/A |
| | | + | N/A |

### WARRANTY STATEMENT

WE ARE SELLING THIS VEHICLE TO YOU AS-IS AND WE EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, UNLESS OTHERWISE INDICATED BELOW. ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN OUR DEALERSHIP ARE THEIRS, NOT OURS, AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES. WE NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR US ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE AND THE RELATED GOODS AND SERVICES. IF WE SELL A SERVICE CONTRACT ON OUR OWN BEHALF, ANY IMPLIED WARRANTIES WILL APPLY ONLY WITH RESPECT TO THE ITEMS COVERED IN THE SERVICE CONTRACT. CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

| | | | |
|---|---|---|---|
| REG/TAG/TITLE   FEES | | + | 84.35 |
| SUBTOTAL | | = | 18604.02 |
| BALANCE OWED ON TRADE-IN | | + | 1200.00 |
| | | + | N/A |
| | | + | N/A |
| | | + | N/A |
| | | + | N/A |
| | | + | N/A |

☐ USED VEHICLE LIMITED WARRANTY APPLIES. We are providing the attached Used Vehicle Limited Warranty in connection with this transaction. Any implied warranties are limited in duration to the term of the Used Vehicle Limited Warranty.

By signing below, I represent that I am at least 18 years of age and have authority to enter into this Agreement. I have read the terms and conditions of this Agreement, including those that appear on the reverse side (which I agree to the same as if they were printed above my signature) and hereby acknowledge that this Agreement is complete and accurately reflects the negotiations and agreements between the Seller and myself. If I did not understand any of the above, I have had my own representative and agent read and explain in my native language (or have had the opportunity but have elected not to do so) all of the above and foregoing.

| | | | |
|---|---|---|---|
| TOTAL DUE | | = | N/A |
| FACTORY CASH / REBATE ASSIGNED TO SELLER | | = | 19804.61 |
| DEPOSIT / PARTIAL PAYMENT | | – | N/A |
| DEPOSIT / PARTIAL PAYMENT | | – | N/A |
| UNPAID BALANCE DUE | | = | 19804.61 |

### IMPORTANT ADDITIONAL TERMS AND CONDITIONS ON BACK

PURCHASER/CO-PURCHASER ACKNOWLEDGES HE OR SHE HAS READ ALL OF THE FOREGOING AND HAS RECEIVED A TRUE COPY OF THIS AGREEMENT. NO REPRESENTATIONS HAVE BEEN MADE THAT ARE NOT SET OUT HEREIN.

ACCEPTED BY: RUBIO, HUGO
SELLER (MANAGER)

PURCHASER

CO-PURCHASER _Benjamin C. Ferry_

**VERBAL PROMISES ARE NOT BINDING. DEMAND THAT PROMISES ARE PUT IN WRITING.**

**MAKE SURE YOUR SALESPERSON GIVES YOU A SIGNED COMPANY RECEIPT FOR ANY CASH TENDERED.**

SR-ANFL-RPA (Rev. 03/14)

TO REORDER CALL 800-XXX-XXXX #7542115

# PRIME
### HYUNDAI

SACO, MAINE 04072
Telephone 282-6161  1-800-244-6132
www.primemotorgroup.com

**2535**

PURCHASER'S NAME **BENJAMIN C. FEURY**

ADDRESS **148 BREAKWATER DRIVE #116**

CITY **SOUTH PORTLAND** STATE **ME** ZIP **04106**

SALESPERSON **WARRICK A** DATE OF BIRTH **07/15/1977**

DATE **02/08/10**
TELEPHONE-W
TELEPHONE-H
CELLPHONE #
E-MAIL ADD.
STOCK NUMBER **HV0269**

I hereby agree to purchase from you under terms and conditions specified below and on reverse side hereof, the following

| | | YEAR **2010** | MAKE **HYUNDAI** | MODEL **SONATA GLS** | | Deal # 5518 |
|---|---|---|---|---|---|---|

XX NEW / DEMO / USED — CAR / TRUCK / OTHER

COLOR **BLACK** TYPE — CYL **4** — TRANSMISSION — XX AUTO / STD — MILEAGE **13**

VEHICLE IDENTIFICATION NUMBER **5 N P E T 4 A C 6 A H 4 7 4 2 6**

APPROX. DEL. DATE **02/08/10**

### NEW VEHICLE WARRANTY

XX STANDARD NEW VEHICLE MANUFACTURER WARRANTY

OTHER **N/A**

**WARRANTY**
THE VEHICLE HAS BEEN INSPECTED IN ACCORDANCE WITH TITLE 29, SECTION 2502 STATUTE AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER. USED VEHICLE SALE IMPLIED WARRANTY IS EXCLUDED ON USED VEHICLE SALES.

BUYER'S DISCLOSURE (TRADE-IN):

USED CAR TRADED IN: YEAR **2004** MAKE **NISSAN**

MODEL **MAXIMA** MILEAGE **48154** TYPE **4-DOOR**

COLOR **SILVER** VIN **1N4BA41E84C847222** CYL **6**

PRINCIPLE USE OF VEHICLE

WAS VEHICLE EVER SOLD FOR SALVAGE? YES / NO

HAS VEHICLE EVER HAD PRIOR PAINT OR BODY WORK? YES / NO

IF YES, AMOUNT OF REPAIR WAS: $

TYPE OF DAMAGE WAS:

MECHANICAL DEFECTS KNOWN

DO YOU HAVE ANY REASON TO BELIEVE THAT THE AIR BAG SYSTEM HAS BEEN DEACTIVATED OR IS OTHERWISE RENDERED INOPERATIVE? YES / NO

BALANCE OWED TO: **CHANGING SEASONS**

ADDRESS:

PHONE: ACCT #

SPOKE WITH PAYOFF

GOOD TO PER DIEM

TITLE INFORMATION: TITLE # STATE

### USED CAR WARRANTY

DEALER HEREBY _____ DOES _____ DOES NOT DISCLAIM ALL IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ON THIS VEHICLE.

VALID FOR 30 DAYS FROM DELIVERY DATE

| | | |
|---|---|---|
| CASH DELIVERED PRICE FACTORY OPTIONS | $ | 19800 00 |
| N/A | $ | None |
| N/A | $ | None |
| N/A | $ | None |
| N/A | $ | None |
| N/A | $ | None |
| DEALER INSTALLED OPTIONS | $ | None |
| N/A | $ | None |
| N/A | $ | None |
| N/A | $ | None |
| TOTAL PRICE | $ | 19800 00 |
| PREPARATION OF DOCUMENTS | $ | 329 00 |
| SUB TOTAL | $ | |
| LESS: TRADE-IN GROSS | $ | |
| NET DIFFERENCE | $ | 7000 00 |
| SALES TAX | $ | 11129 00 |
| SUB TOTAL | $ | 556 45 |
| TITLE FEE | + $ | 11685 45 |
| ARBITRATION FEE | + $ | 33 00 |
| SERVICE CONTRACT | + $ | 1 00 |
| PAYOFF ON TRADE | + $ | None |
| FACTORY REBATE | | 3875 00 |
| SUB TOTAL | $ | 2500 00 |
| PARTIAL PAYMENT - NON REFUND. | $ | 18083 45 |
| SUB TOTAL | $ | None |
| CASH ON DELIVERY | = $ | 18083 45 |
| AMOUNT FINANCED | = $ | None |
| | $ | 18083 45 |

### TITLE INFORMATION

NAME OF LIEN HOLDER **J P MORGAN CHASE BANK NA**

ADDRESS **PO BOX 901098**

CITY **FORT WORTH** STATE **TX** ZIP **76101**

NOTICE TO PURCHASER: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT. BUYER ACKNOWLEDGES RECEIPT OF COPY OF THIS CONTRACT. THIS ORDER IS NOT VALID UNTIL ACCEPTED BY DEALER. CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE ONLY - THE INFORMATION YOU SEE ON THE (FEDERAL TRADE COMMISSION) WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

SECURITY INTEREST: Seller retains an interest in the motor vehicle described in this contract to secure payment and performance of buyer's obligation under this contract. I HAVE READ THE MATTER ON THE BACK HEREOF AND AGREE TO IT AS A PART OF THIS ORDER THE SAME AS IF IT WERE PRINTED ABOVE MY SIGNATURE.

Purchaser's signature **Benjamin C. Feury**

Accepted by:

Date **02/08/10**

#24 (Rev 10-08)

Dealer by: **Patrick Ryan** Business Mgr

Name and Title

RETAIL ORDER/TRADE AGREEMENT

FORM# 5012 DEAL# 35521 STORE# 125 STK# FC229578 CUST# 4718527

(HEREINAFTER REFERRED TO AS "SELLER") RETAIL ORDER FOR A MOTOR VEHICLE

PLEASE ENTER MY ORDER FOR THE FOLLOWING: ☐ NEW ☐ USED ☐ DEMO ☐ PREVIOUS SHORT TERM LEASE ☐ EXECUTIVE VEHICLE ☐ OTHER

| DATE | 11/11/2014 | DEAL # | 35521 | SALES #1 | ERACA, SHAWNA | F&I MGR: | RUBIO, HUGO |
|---|---|---|---|---|---|---|---|
| STOCK # | FC229578 | CUSTOMER # | 4718527 | SALES #2 | | SALES MGR: | FINTE, DUNCAN |

| Purchaser | BENJAMIN CHARLES FEHR | DL# | F600-063-77-255-0 | DOB | 07/15/1977 |
|---|---|---|---|---|---|
| Co-Purchaser | | DL# | | DOB | |
| Street Address | 6512 HUNTINGTON LAKES CIR #102 | City | NAPLES | State | FL Zip 34119 |
| Home Phone | | Bus. Phone | | Cell Phone | |
| E-Mail Address | | | | | |

| Year | Make/Model | | Body Type | Vehicle Identification Number | TPR Number |
|---|---|---|---|---|---|
| 2015 | TOYOTA | COROLLA | 5D | 2T1BURHE5FC229578 | |
| No. Cyl | Engine Size | Transmission | | Color | Mileage |
| 4 | 1.8L 4 CYL | | | GREEN | |

## TRADE-IN VEHICLE #1

| YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|
| STOCK # | MILEAGE | | |
| COLOR/TRIM | PLATE # | ☐ ACTUAL ☐ INACCURATE | |
| VIN# | | DECAL # | |

## TRADE-IN VEHICLE #2

| YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|
| STOCK # | MILEAGE | | |
| COLOR/TRIM | PLATE # | ☐ ACTUAL ☐ INACCURATE | |
| VIN# | | DECAL # | |

## LIENHOLDER / PAYOFF INFORMATION

| LIENHOLDER | |
|---|---|
| ADDRESS | |
| PHONE | ACCOUNT # |
| PAYOFF | ESTIMATE/ACTUAL |
| GOOD TILL | VERIFIED BY |

The balance owed on Your Trade-In Vehicle(s) as disclosed above is based on the information You have provided to Us. This payoff amount is only an estimate. We have not been able to confirm the exact balance owed as of the date of this Agreement. If We hereby payoff the remaining balance(s) owed, You authorize the lienholder(s) to release the title(s) to the Trade-in(s) to Us. If the actual amount of the balance owed on the Trade-in Vehicle(s) is greater than the amount of the balance owed as listed in this Agreement, You agree to pay the difference to Us within ten (10) days of demand. If the actual amount of the balance owed on the Trade-in Vehicle(s) is less than the amount listed, We will pay the difference to You.

Purchaser guarantees that the Trade-in Vehicle ☐ HAS ☐ HAS NOT (i) been in an accident requiring repairs in excess of $2,000 (ii) a rebuild or flood vehicle (iii) suffered flood damage (iv) been designated as a "salvage vehicle" or "restored salvage" by any agency (v) liens or encumbrances other than as represented (vi) sustained substantial physical damage (vii) known mechanical defects. Purchaser agrees to be liable for any damages Seller may incur if any of the above statements are untrue including attorneys' fees and costs.

If Purchaser checked "HAS" above, specify details:

"OPTIONAL ACCESSORIES/PRODUCTS/SERVICES: You have elected to purchase the optional items listed. This Seller does not require you to purchase any of these items. The amount for these items represents cost and profit to the Seller. See TERMS AND CONDITIONS on reverse side."

## ITEMIZATION OF COSTS

SELLING PRICE

SELLER INSTALLED EQUIPMENT. The following options which have been provided through your dealer, may carry separate warranties through the manufacturer. Please note that any warranty on these items is not through the manufacturer and should the need arise, you should contact your dealer or the vendor that provided the option.

OPTIONAL ACCESSORIES/PRODUCTS/SERVICES

| | | |
|---|---|---|
| | + | N/A |
| | + | N/A |
| APPEARANCE PROTECT 5 YR | + | 599.00 |
| THEFT PROTECTION 2500 | + | 299.00 |
| FLOOR MATS | + | 249.00 |
| | + | N/A |
| | + | N/A |
| | + | N/A |
| | + | N/A |
| | + | N/A |
| | + | N/A |
| | + | N/A |
| TOTAL SELLING PRICE INCLUDING ACCESSORIES | = | 17788.82 |
| LESS: DISCOUNT AND/OR TRADE-IN ALLOWANCE | – | N/A |
| CASH DIFFERENCE | | 17788.82 |
| DEALER SERVICE FEE | + | 699.95 |
| FLORIDA BATTERY FEE | + | 1.50 |
| FLORIDA TIRE FEE | + | 5.00 |
| TAG AGENCY/ELEC FILING FEE | + | 98.75 |
| | + | N/A |
| SUBTOTAL | | 18594.02 |
| SALES TAX @ 6.0% | + | 1116.24 |
| | + | N/A |
| | + | N/A |

| | | | | | |
|---|---|---|---|---|---|
| PHONE | ACCOUNT # | | | + | N/A |
| PAYOFF | | | | + | N/A |
| GOOD TILL | ESTIMATE/ACTUAL | | | + | N/A |
| | VERIFIED BY | | | + | N/A |

The balance owed on Your Trade-In Vehicle(s) as disclosed above is based on the information You have provided to Us. This payoff amount is only an estimate. We have not been able to confirm the exact balance owed as of the date of this Agreement. If We tender payment to the Trade-In(s) to Us, If the actual amount of the balance owed on the Trade-In Vehicle(s) is greater than the amount of the balance owed on the Trade-In Vehicle(s) is difference to Us within 48 hours of our demand. If You fail to do so, We will please claim on this Vehicle(s). If the actual amount of the balance owed is less than the amount listed, We will pay the difference to You.

X_____ X_____

Purchaser guarantees that the Trade-In Vehicle __ HAS __ HAS NOT (i) been in an accident requiring repairs in excess of $2,000 (ii) a welded or bent frame (iii) suffered flood damage (iv) been designated as a "salvage vehicle" or "rectored salvage" by any agency (v) liens or encumbrances other than as represented (vi) sustained substantial physical damage (vii) latent mechanical defects. Purchaser agrees to be liable for any damages Seller may incur if any of the above statements are untrue including attorneys' fees and costs.

If Purchaser checked "HAS" above, specify details:

X_____

**OPTIONAL ACCESSORIES/PRODUCTS/SERVICES:** You have elected to purchase the optional items listed. The Seller does not require you to purchase any of these items. The amount for these items represents cost and profit to the Seller. See TERMS AND CONDITIONS on reverse side.

***This charge represents costs and profit to the Dealer for items such as inspecting, cleaning, adjusting new and used vehicles, and preparing documents related to the sale.

### WARRANTY STATEMENT

WE ARE SELLING THIS VEHICLE TO YOU AS-IS AND WE EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, UNLESS OTHERWISE INDICATED BELOW. ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN OUR DEALERSHIP ARE THEIRS, NOT OURS, AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES. WE NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR US ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE AND THE RELATED GOODS AND SERVICES. IF WE SELL A SERVICE CONTRACT ON OUR OWN BEHALF, ANY IMPLIED WARRANTIES WILL APPLY ONLY WITH RESPECT TO THE ITEMS COVERED IN THE SERVICE CONTRACT. CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

☐ USED VEHICLE LIMITED WARRANTY APPLIES. We are providing the attached Used Vehicle Limited Warranty in connection with this transaction. Any implied warranties are limited in duration to the term of the Used Vehicle Limited Warranty.

By signing below, I represent that I am at least 18 years of age and have authority to enter into this Agreement. I have read the terms and conditions of this Agreement, including those that appear on the reverse side (which I agree to the same as if they were printed above), my signature) and hereby acknowledge that this Agreement is complete and accurately reflects the negotiations and agreements between the Seller and myself. If I did not understand any of the above, I have had my own representative and agent read and explain in my native language (or have had the opportunity but have elected not to do so) all of the above and foregoing.

**IMPORTANT ADDITIONAL TERMS AND CONDITIONS ON BACK**

PURCHASER-CO-PURCHASER ACKNOWLEDGES HE OR SHE HAS READ ALL OF THE FOREGOING AND HAS RECEIVED A TRUE COPY OF THIS AGREEMENT. NO NEW SITUATIONS HAVE BEEN MADE THAT ARE NOT SET OUT HEREIN.

ACCEPTED BY: _____ RUBIO, HUGO

SELLER (Dealership)

**VERBAL PROMISES ARE NOT BINDING. DEMAND THAT PROMISES ARE PUT IN WRITING.**

MAKE SURE YOUR SALESPERSON GIVES YOU A SIGNED COMPANY RECEIPT FOR ANY CASH TENDERED.

SR-ANFL-RPA (Rev. 03/14)

| | | | | |
|---|---|---|---|---|
| TOTAL SELLING PRICE INCLUDING ACCESSORIES | | | = | N/A |
| LESS: DISCOUNT AND/OR TRADE-IN ALLOWANCE | | | - | 17798.82 |
| CASH DIFFERENCE | | | = | N/A |
| | | | | 17798.82 |
| DEALER SERVICE FEE | | | + | 899.95 |
| FLORIDA BATTERY FEE | | | + | 1.50 |
| FLORIDA TIRE FEE | | | + | 5.00 |
| TAG AGENCY/ELEC FILING FEE | | | + | 98.75 |
| SUBTOTAL | | | = | N/A |
| | | | | 18804.02 |
| SALES TAX @ 6 % | | | + | 1116.24 |
| | | | + | N/A |
| | | | + | N/A |
| REG/TAG/TITLE | FEE | | + | N/A |
| SUBTOTAL | | | = | 84.35 |
| BALANCE OWED ON TRADE-IN | | | - | 19804.61 |
| | | | + | N/A |
| | | | + | N/A |
| | | | + | N/A |
| | | | + | N/A |
| | | | + | N/A |
| | | | + | N/A |
| TOTAL DUE | | | = | N/A |
| FACTORY CASH / REBATE ASSIGNED TO SELLER | | | - | 19804.61 |
| DEPOSIT / PARTIAL PAYMENT | | | - | N/A |
| DEPOSIT / PARTIAL PAYMENT | | | - | N/A |
| UNPAID BALANCE DUE | | | = | 19804.61 |

PURCHASER _____

CO-PURCHASER _____