```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF MICHIGAN
 2                      SOUTHERN DIVISION
                           _   _   _
 3
     IN RE: AUTOMOTIVE PARTS
 4   ANTITRUST LITIGATION
     _____
 5                                       Case No. 12-02311
     IN RE ALL PARTS
 6   _____    Hon. Marianne O. Battani

 7   THIS DOCUMENT RELATES TO:

 8   All Actions
     _____/
 9
                     MOTION ON DISCOVERY ISSUES
10              CONCERNING HONDA DEALERSHIPS' DATA

11            BEFORE SPECIAL MASTER GENE ESSHAKI
              Theodore Levin United States Courthouse
12                231 West Lafayette Boulevard
                        Detroit, Michigan
13                   Monday, May 8, 2017

14
     APPEARANCES:
15
     For the Plaintiffs:   SHAWN M. RAITER
16                         LARSON KING, L.L.P.
                           30 East Seventh Street, Suite 2800
17                         Saint Paul, MN  55101
                           (651) 312-6500
18
                           VICTORIA ROMANENKO
19                         CUNEO, GILBERT & LaDUCA, L.L.P.
                           507 C Street NE
20                         Washington, D.C.  20002
                           (202) 789-3960
21

22

23

24

25
```

```
 1    APPEARANCES:

 2    For the Defendants:   KEVIN F. O'SHEA
                            MILLER LAW
 3                          950 W. University Dr., Suite 300
                            Rochester, MI 48307
 4                          (248) 841-2200

 5                          J. DAVID ROWE
                            DUBOIS, BRYANT & CAMPBELL
 6                          303 Colorado, Suite 2300
                            Austin, TX 78701
 7                          (512) 457-8000

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24        To obtain a copy of this official transcript, contact:
              Robert L. Smith, Official Court Reporter
25            (313) 964-3303 • rob_smith@mied.uscourts.gov
```

1                          TABLE OF CONTENTS

2
                                                                Page
3

4     Motion by Mr. O'Shea................................ 4

5     Motion by Mr. Rowe.................................15

6     Response by Mr. Raiter............................17

7     Reply by Mr. O'Shea...............................27

8     Ruling by the Special Master.....................29

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Detroit, Michigan

2    Monday, May 8, 2017

3    at about 1:30 p.m.

4                          —   —   —

5            (Special Master and Counsel present.)

6            SPECIAL MASTER ESSHAKI:  We are calling the matter

7    of Master File No. 12-02311, and that is the only case file

8    that I have on this.  This is In re: Automotive Parts

9    Antitrust, In re: All Parts, this matter relates to all

10   actions.

11           This is the issue regarding potential production of

12   data by the Honda OEM regarding dealership information that

13   they may have filed with Honda and that being produced in

14   this case.

15           So who wants to start in this matter?

16           MR. RAITER:  I think it's your motion.

17           SPECIAL MASTER ESSHAKI:  Okay.  Please identify

18   yourself, sir.

19           MR. O'SHEA:  Kevin O'Shea of the Miller firm on

20   behalf of the end payor plaintiffs, Your Honor.

21           SPECIAL MASTER ESSHAKI:  Very good, Mr. O'Shea.  If

22   you will please begin.

23           MR. O'SHEA:  So we are here under unusual

24   circumstances, Your Honor.  I think you, yourself, just used

25   the phrase potential production.  So we are here talking

1    about data that is going to be produced by Honda, but as far

2    as I can tell, there is no threat that there is any allegedly

3    confidential information that will be disclosed if Your Honor

4    doesn't make a ruling today.  In fact, all of the parties are

5    in agreement that all of the information designated as

6    confidential will be treated that way pursuant to the Court's

7    orders, so there is no issue to decide today regarding

8    confidentiality.  The only scenario in which there would be

9    an issue is if one of the parties determines that the

10   information once produced is going to be attached to a filing

11   in the case, and we have no idea whether that's even going to

12   happen.

13          So whether Your Honor treats this as unripe or

14   premature or uses some other term, I think what it boils down

15   to is there isn't really a controversy that needs to be

16   resolved here today.  And that's made very clear by

17   Judge Battani's sealing order that she entered in February.

18   That was less than 90 days ago, and here we are back here

19   debating what Judge Battani already disposed of.  She already

20   decided that a determination regarding whether materials

21   should be sealed from public view forever will be made at the

22   time of the filing, not at the time of production.  And I've

23   had occasion to read over the order several times in the past

24   few days, and it references the term filing over 40 times in

25   the first three paragraphs, so there's nothing ambiguous

 1    about the order.  In fact, the title of the order is

 2    stipulated order regarding sealed filings, that's what the

 3    order is talking about, and I think that's the real reason we

 4    are here today because the dealers hope to persuade Your

 5    Honor to eviscerate Judge Battani's order.  They make the

 6    extraordinary argument that the order should be rewritten to

 7    require that the decision on whether to seal materials should

 8    be made at the time of production, not at the time of filing,

 9    if that happens at all, which is precisely the opposite

10    protocol that Judge Battani imposed.

11         In fact, the dealerships make that argument

12    explicitly in their sur-reply brief.  Let me read to you from

13    their brief at page 3, Your Honor, because I think it is very

14    important.  Quote, the determination to treat third-parties'

15    information as confidential and to order that it be redacted

16    if used in a public filing makes sense to decide now when the

17    information is being produced.  The alternative that the

18    opposing party suggests -- and they go on to detail some

19    logistical horrors that they think would happen if we waited

20    until the time of filing, but what strikes me in this, Your

21    Honor, is their reference to the alternative is actually a

22    reference to the protocol we currently have.  The alternative

23    is Judge Battani's order that this is to be determined at the

24    time of filing, not at the time of production.

25         In fact, what they would like to do is make the

1    filing date insignificant so that the only date that matters

2    is the date of production which, again, is completely

3    contrary to what Judge Battani has said.

4         So I would like to briefly touch on two main

5    arguments against rewriting Judge Battani's order.  First, it

6    is not Your Honor's role to step in and completely reverse

7    what Judge Battani said less than 90 days ago.  And second,

8    even if that were the role of Your Honor, there is no

9    evidence in the record supporting such an act.  The

10   dealerships have proceeded with the assumption that Your

11   Honor has the authority to rewrite the sealing order but it

12   is not apparent that such a result is appropriate or even

13   possible in this forum.  It would plainly go far beyond Your

14   Honor interpreting or applying Judge Battani's order to a

15   specific fact situation, which my understanding is you've

16   done all along with the orders from the Judge.

17        This is about effectively flipping the order on its

18   head so that the cardinal distinction she makes in the order

19   between production and filing simply disappears.  And with

20   respect, I'd suggest that Your Honor is not in a position

21   today to make that decision, that's an argument properly

22   before Judge Battani, and it should be made in a motion to

23   Judge Battani.  Her order is the order that is at issue.

24        Now, when pressed in pleadings the dealers argue

25   that you have the authority to alter the order for two

1    reasons.  First, they say that you previously ordered OEM

2    data sealed prior to the filing stage, and, second, they say

3    that your ordered discovery-related filings would not be

4    subject to Judge Battani's order.

5         As to the first argument which we have detailed in

6    our briefing, the data at issue in the OEM situation was far

7    different than the data here.  There is no argument that the

8    sales data that Honda is producing includes anything like a

9    pricing methodology or information that could be

10   characterized as truly secret; it is just sales data.  And

11   that order was entered before Judge Battani's sealing order.

12        The dealerships have argued that it was negotiated

13   simultaneously with the sealing order so the two must fit

14   together, they must be consistent, but I think that misses

15   the point entirely.  What it means is that anything that Your

16   Honor does now, today, or in the future, must comply with

17   Judge Battani's sealing order because that's now in place and

18   it has been in place since February 27th.  That wasn't true

19   of your prior order regarding the OEMs.

20        Now, with regard to the second argument about the

21   discovery, it's disingenuous to assert that your order

22   regarding the discovery materials is somehow inconsistent

23   with Judge Battani's order.  In fact, I have her order here,

24   Your Honor, and the very last paragraph of the order,

25   paragraph 10, specifically notes that one of the parties

1   anticipates filing a motion to exclude discovery-related

2   filings.  She says and allowing such filings to be made under

3   seal pursuant to an applicable protective order with no

4   further motion.  In the event that such a motion is granted

5   this stipulation shall not apply to such discovery-related

6   filings.  Until such motion is ruled on, discovery-related

7   filings will not be subject to the requirements of this

8   stipulation.

9       So Judge Battani already knew when she entered this

10  order that the issue of discovery-related materials was

11  carved out.  And what you ruled, Your Honor, with regard to

12  those materials, which she anticipated, was entirely

13  consistent with this order because she did specifically carve

14  that out.

15      But, Your Honor, even if you could rewrite the

16  sealing order I think there is a second reason -- a second

17  argument against doing so, and that's that there's no factual

18  or legal justification to go forward with such a drastic

19  action.

20      Your Honor is probably familiar with the adage that

21  extraordinary claims or arguments require equally

22  extraordinary support, I think that's been attributed to

23  Carl Sagan, but it applies here in spades because the

24  dealerships have -- are making an extraordinary request that

25  you rewrite and essentially reverse Judge Battani's protocol

1    less than 90 days after it was approved and stipulated to by

2    the parties.

3          So let me engage in a brief foray into the history

4    of the sealing order because I think it's very instructive.

5    Judge Battani was motivated by the Sixth Circuit's decision

6    in Shane that the over sealing of materials in a class action

7    can be a basis to vacate class settlements.  So last fall she

8    ordered the parties to confer and create a process for

9    sealing that would avoid the Shane problem of blanket sealing

10   without specific showings on specific data, and the parties

11   did it.  They agreed on a process, presented it to

12   Judge Battani, she approved and adopted it, and that's what's

13   in her order of February 27th.

14         In doing so she balanced the concern regarding the

15   Shane outcome, which is a true catastrophe for class action

16   settlement; after years of hard work to reach a resolution a

17   case goes to the Sixth Circuit and suddenly it comes back

18   down because over sealing occurred.  And she balanced that

19   against the legitimate concerns parties always have in

20   litigation about confidentiality.  She made that balance and

21   that's embodied in the order.

22         So what are their arguments for rewriting the

23   order?  Well, it is difficult to discern because we are

24   operating a bit in the dark here, Your Honor.  We are talking

25   about materials you said which are potentially produced so we

1    don't know exactly what we are talking about, but what we do

2    know is it appears to be routine sales data, that's what

3    Honda was ordered to produce and that's what they say they

4    are going to produce.  Contrary to the assertions of -- in

5    the briefs, there is no personal consumer information

6    involved, there will not even be VIN numbers.  So push that

7    aside and realize that the only argument they are making is

8    that out of thousands of dealers who are contacted, four

9    dealers asserted that there would be confidential business

10   information in the materials.  This is information that's all

11   voluntarily reported to Honda either directly or indirectly

12   by the dealers already.  Very importantly, Your Honor, there

13   is no indication that Honda has any legal obligation to keep

14   that information confidential, and there is no dispute that

15   individual consumers are provided with the information by the

16   dealerships on a routine basis.  So we argue that any right

17   to confidentiality there could have been has been waived on

18   that basis.  But in any event, there is no evidence in the

19   record that any of the information is entitled to be sealed

20   from public view.

21       The declaration of Mr. Waikem, which opposing

22   counsel relies on, is repeatedly vague on this point.  It is

23   not even clear, Your Honor, that Mr. Waikem is talking about

24   the same data that Honda intends to produce, they don't match

25   up clearly.  I believe that declaration is conclusory and

1    therefore unsupported.

2            But even if the data matches up there is no showing

3    of any substantial harm to the dealerships if it happens to

4    be disclosed and, again, there's no risk of any disclosure at

5    this point, Your Honor.  There is no reason why we can't

6    delay a determination about what should be disclosed to be

7    consistent with Judge Battani's protocol.

8            And that's the real comparison to be made here.  It

9    is not whether the information is public or nonpublic, it is

10   whether we make the determination about whether it should be

11   nonpublic today at the time of production or at the time of

12   filing as Judge Battani has indicated.

13           And weighing against all of this, these vague

14   assertions that there would be harm from this information

15   being revealed is the real-world risk posed by the Shane

16   decision that motivated the order in the first place:  Over

17   sealing information that class members may legitimately need

18   to view in order to evaluate a proposed settlement.

19           The measured solution is clear and that's to make

20   the sealing determination on a case-by-case basis at the time

21   of filing, if that even comes to pass.  In other words, Your

22   Honor, a wait-and-see solution.  What we are talking about

23   here, after all, is merely a matter of timing.  All the

24   parties always have a right to be heard on the issue of

25   sealing materials.  Judge Battani has made it clear that the

1   timing should be at the time of filing, not production, and

2   there is no harm to the dealerships to wait until that time,

3   and certainly no compelling reason to overturn the protocol

4   that Judge Battani carefully adopted.

5           At the very least, Your Honor should hold off on

6   making a ruling until there has been a production and we know

7   for sure what information has been presented.  We can compare

8   it to what the dealers think is going to be considered, and

9   then Your Honor can make a determination about when the

10  sealing should take place at a later time.  So I think it is

11  very clear that the wait and see approach is most reasonable,

12  it is to the most judicious thing to do today, and I think it

13  is the approach that is most consistent with Judge Battani's

14  order.

15          SPECIAL MASTER ESSHAKI:  Counsel, I recall quite

16  clearly the ruling because it came at the end of several long

17  days of mediation trying to get some solutions to some very,

18  very complicated issues.  At the time Honda said we want

19  to -- somebody suggested that we want to give the dealers an

20  opportunity -- the Honda dealers an opportunity to object to

21  the production of this data because it is their data, it is

22  not Honda's data, but I was told at that time that there was

23  no personal data, there were no names, there were no

24  addresses, there were no VIN numbers as to the vehicles.  In

25  the pleadings that I've received today I understand now that

1    there are VIN numbers, there are names, there are addresses,

2    there are sex designations, male, female, so forth.  Do you

3    have any idea?

4         MR. O'SHEA:  No, Your Honor, and that points to one

5    of the issues we've got here today.  We are operating in the

6    dark and you're being asked to make a decision about data

7    that hasn't been produced.  We are guessing about what's in

8    the data.  It seems to me in order to move forward you at

9    least need to know what Honda is actually producing, where

10   the information came from, was it shared with them from the

11   dealers, and does it contain personal information.  If it

12   does, obviously we would make stipulations on that point, but

13   it raises a different issue than purely commercial

14   information.

15        SPECIAL MASTER ESSHAKI:  That's where I was going

16   next.  If it does contain consumer identities, addresses, VIN

17   numbers and/or profit per vehicle attributed to a dealership,

18   should that be protected?

19        MR. O'SHEA:  With regard to the last item, Your

20   Honor, I'm not certain.  With regard to the personal

21   information, certainly we would have no objection to editing

22   that material out but again --

23        SPECIAL MASTER ESSHAKI:  How, how do we do that?

24        MR. O'SHEA:  Through a redaction process that you

25   could design, Your Honor, but, again, that's something that

 1      should take place at the filing stage.  I think one of the

 2      faults in the approach that's being proposed by opposing

 3      counsel is that you are being asked at the production stage

 4      to act in the dark.  At least at the filing stage we have had

 5      an opportunity to view the information and digest it,

 6      everybody knows what we are working with, and then when you

 7      make a determination, at that point you are operating with

 8      all the information you need in order to make a decision.

 9              SPECIAL MASTER ESSHAKI:  Thank you very much,

10      Counsel.

11              MR. ROWE:  May I be heard for the defendants?

12              SPECIAL MASTER ESSHAKI:  Please, please.  I will be

13      glad to entertain any argument by anyone.

14              MR. ROWE:  David Rowe, Your Honor, for the

15      defendants today.

16              Mr. O'Shea eloquently presented our position.  I

17      just wanted to add one clarification, and it goes in response

18      to the question you just asked about what's in the data and

19      might it contain personal information that we might be

20      concerned with.  Although it is an interesting and important

21      question, may I suggest it's not really the relevant

22      question.  The question isn't what might Honda produce, the

23      question really is down the road what might someone actually

24      file with the Court.

25              Now, the data that Honda will produce is most

```
 1   certainly going to go to experts who will crunch their
 2   numbers and develop reports.  Because this hasn't happened
 3   yet we don't know exactly what an expert report might have in
 4   it but we've all seen a bunch of expert reports and we've
 5   seen their supporting data, and it is not crazy to suggest
 6   that whatever might be in an expert report that might one day
 7   be filed would not be so specific as to contain the personal
 8   information that Your Honor is concerned about, information
 9   that, of course, we don't even know if it will be produced in
10   the first instance but, as I said, the more important
11   question is what might be filed.  And that, Your Honor, is
12   precisely why today is not the day for you to rule that
13   whatever might be filed in the future has to be sealed, that
14   question should be asked and answered at the time that it is
15   sealed.
16        Let me also add right quick that from the
17   defendants' perspective if an expert down the road wanted to
18   file something that has support in it that truly contained
19   sensitive personal information, the defendants are not going
20   to oppose anyone's request to seal that information.  The
21   only reason we are today opposing what the auto dealers have
22   requested is because if settlements are reached we want them
23   to stick.
24        Judge Battani has done two things sua sponte within
25   the last couple of months or maybe six months.  First she
```

```
 1   raised Shane Group on her own and asked the parties to
 2   address it.  Second, sua sponte, she raised the idea of a
 3   settlement facilitator.  It's pretty clear that the Court,
 4   being Judge Battani, wants these cases to settle and she
 5   wants the settlements to stick.
 6           I think what the auto dealers are doing today is
 7   inviting error and huge risk that we won't be able to carry
 8   out in Judge Battani's wishes.
 9           SPECIAL MASTER ESSHAKI:  Thank you, sir.
10           Mr. Raiter --
11           MR. RAITER:  Thank you, Your Honor.
12           SPECIAL MASTER ESSHAKI:  -- were you able to attend
13   the festivities yesterday?
14           MR. RAITER:  I was, and she went through with it
15   which was good.  We weren't sure with our eight-year-old
16   whether she was going to receive her First Holy Communion,
17   but she did it, so we were happy with that, and I was able to
18   make it.  I appreciate you accommodating --
19           SPECIAL MASTER ESSHAKI:  May I suggest something
20   that is going to sound absolute crazy to you but it is so
21   true, it will be a blink of an eye when you are walking her
22   down the aisle.
23           MR. RAITER:  At times I look forward to that.  With
24   this daughter she is challenging, to say the least, she is
25   other own little person.
```

1       SPECIAL MASTER ESSHAKI:  It has been my experience

2  that daughters love their dads a little.

3       MR. RAITER:  She is fantastic.  What I tell people

4  is when she is 25 years old her personality traits will serve

5  her well in the world, until then she's going to drive her

6  mother and father crazy.

7       SPECIAL MASTER ESSHAKI:  That's her job.  Thank

8  you, sir.

9       MR. RAITER:  Yes.  So --

10       SPECIAL MASTER ESSHAKI:  You may proceed with your

11  argument, Counsel.

12       MR. RAITER:  Thank you.  So we are not asking you

13  to rewrite the Judge's sealing order, by any means.  This

14  information -- it's kind of an awkward situation; we have the

15  defendants and the end payors both saying well, go ahead and

16  produce the dealers' information, let's see what it looks

17  like and we will deal with it later.  If we had ever

18  suggested that be the process for the defendants' information

19  in this litigation you could imagine how many people would be

20  in the courtroom screaming to high heck about that process.

21  It is the proverbial fox in the henhouse here.

22       The problem we have here is that Honda concedes

23  that the data that it will produce is our data, it is not

24  Honda's data, it is not the defendants' data, it is not the

25  end payors' data, it's ours or the Honda's dealerships.  That

1    information does, in fact, according to e-mails provided by

2    counsel for Honda, seem to be likely to include VIN numbers,

3    gender, age, zip codes, and most assuredly includes price of

4    vehicles, gross and net profit, which Your Honor has

5    previously ruled is information that is highly confidential

6    under the protective order in various settings.

7          So really what the defendants want when we hear

8    counsel talk about experts, the data, et cetera, what they

9    want is the pricing and the sales data; they want the profit,

10   the net profit, the gross, and that's what they are going to

11   use, and that's the very data that has already been covered

12   by various orders that you have issued in this litigation,

13   and it should be treated the same way here.

14         Fundamentally Honda has said hold on, you guys need

15   to figure this out, please go get some direction from the

16   Court, it's your data, we don't want to do anything.  We need

17   from you an order that says when they produce this

18   information it shall be designated highly confidential and it

19   shall be treated as highly confidential.

20         That then leads us to well, what do you do with it

21   for filing in the future?  And Shane says a number of things,

22   and what Shane really says when you read the decision is

23   listen, the Court has to make findings, it has to actually

24   look at the data, it can't just allow the parties to make

25   willy-nilly filings under seal.  In Shane there were some

 1    very important filings that the objectors wanted to see, that

 2    the Court had not made any specific findings about and the

 3    Sixth Circuit said you need to go back and redo that.

 4         Judge Battani on April 19th when she just heard

 5    final fairness and considered objectors who raised Shane in

 6    this litigation, she rejected their objections, she said no,

 7    the information here has not been filed en masse under seal,

 8    and the things filed under seal and remain under seal were

 9    not pertinent to the settlement amount or the settlements at

10    issue, and therefore you objectors don't even have a basis

11    for raising a Shane objection.

12         What we have here right now is data that hasn't

13    been produced yet, we are right about that.  We generally

14    know what it is; Honda has told us it is essentially the

15    final price of the vehicles.  There is vehicle information

16    about what it was, model, trim, options, gross and net

17    profit, the terms of the purchaser lease is in there, and

18    also potentially gender, age, zip code of purchase and other

19    information that would allow somebody really great

20    information.

21         If you were a Toyota dealer and you had all of that

22    information about Honda sales and Honda dealerships you would

23    be well armed to compete with Honda dealerships, and that's

24    why we are so concerned about this.  That information is

25    essentially what a dealership trades in; how do we sell these

 1    cars, what do we make, what do we not make, what sold well,

 2    where did we make profit, where didn't we make profit?  By

 3    providing the zip code of the purchase, that essentially

 4    tells you what Honda dealership sold the vehicle most likely

 5    because of the geographic contractual obligations or

 6    territories that a dealership has.  So this is very, very

 7    important information to these dealerships, and we've raised

 8    these arguments for those reasons.

 9           What we can't have happen here is Honda just

10    produces it however it wishes.  We don't know whether it is

11    going to designate highly confidential.  It's too late if the

12    horses are out of the barn, we don't think we can get them

13    back into the barn.  So, number one, it should be designated

14    highly confidential when produced.  That then, of course,

15    requires people to treat it as highly confidential for

16    purposes of filings and things going forward.

17           Now, the argument today primarily was well, you are

18    going to rewrite Shane -- or you are going to rewrite the

19    Judge's sealing order, that wasn't an argument that these

20    parties made in their brief but let's address it anyway.  We

21    are not asking you to do that.  What we are asking you to do

22    is to say okay, if Honda is producing this information, which

23    is what we are told they are going to produce, you have

24    before you sufficient information to make findings today

25    about how to treat that information when it is filed in the

1   future.

2           What we have proposed is trying to be efficient and

3   trying to minimize future filings about the same topic.  So

4   gross and net profit, for example, you have been up and down

5   that street many times in this litigation about dealerships.

6   If you know that that is likely to be contained in the Honda

7   DMS data, you, we believe, are well equipped to make a

8   finding right now about how that information would be filed

9   in the future.  And obviously anyone here, us, the

10  defendants, the end payors or some objectors, some class

11  member could come to the court and ask for the information to

12  be unsealed, or maybe we unsealed it by agreement once we see

13  how it is actually produced and put into the record.  Right

14  now we don't know what a defense expert will do with the

15  data.  We don't know what it will look like when it goes in a

16  filing, and the problem is we have dealerships who are very

17  interested in this and very worried about this, and we don't

18  want to have to wait and see and guess what's going to happen

19  in the future with that information.

20          So we think you've been provided affidavits,

21  briefs, a number of briefs obviously, case law, and that you

22  have sufficient information before you today to make findings

23  sufficient to justify filing under seal of this data if it

24  is, in fact, filed at all, and there is a question about

25  whether it will or won't ever be filed for that matter, but

```
 1    we are concerned about unringing the bell, getting the horses
 2    back in the barn, all of those things going forward, and that
 3    it makes sense to do this one time.  The sealing -- the
 4    timing of the sealing orders and the pricing orders, and
 5    Shane, there were discussions going on -- the sealing order
 6    talks about when you are filing things there is no doubt
 7    about that, but here we have information that, as it is being
 8    produced, it could be designated pursuant to the protective
 9    order and it can be produced pursuant to instructions from
10    Your Honor about how to file this information.
11           And, again, everybody has a right to come later and
12    say, you know what, this particular information should remain
13    under seal, it should not remain under seal, but from our
14    perspective doing it right now, having some certainty going
15    forward, I think Honda would appreciate that.  Certainly
16    their counsel has e-mailed and, kind of like, we're in the
17    middle of this, we don't want to be in the middle of this,
18    give us some direction.
19           If you can set the playing rules here, the ground
20    rules today, I think it would help everyone and it would
21    minimize the future impact of this data's -- excuse me.  It
22    would minimize the likelihood that we are back here with
23    motion practice, either us or anyone else.  What we don't
24    want to have is every time the defendants file this
25    information, let's say they do file it five or ten times, do
```

1   we have to come back and ask you to make the same ruling on

2   gross and net profit over and over and over and over again?

3   It doesn't make a lot of sense.

4        Judge Battani and you have done a great job of

5   trying to find ways to be efficient, streamlined and focused

6   going forward.  Your OEM -- the OEM order on the OEM data

7   does exactly that.  We are really just asking for the same

8   treatment as the same type of data that was produced by the

9   OEMs.  This is being produced by a subset of the OEMs, and it

10  is a little different, but some of the same information

11  that's in the OEM pricing data and the OEM productions that

12  you've already issued an order on is really what we are

13  dealing with here.  We want the same treatment of that data.

14       SPECIAL MASTER ESSHAKI:  Mr. Raiter, I have a

15  couple questions.

16       MR. RAITER:  Sure.

17       SPECIAL MASTER ESSHAKI:  One, with respect to the

18  sealing order that -- the stipulated sealing order that the

19  Judge signed, remind me of the mechanism; somebody's filing a

20  document that contains highly confidential information, they

21  file it under seal, is the process then that they have to

22  move for permanent sealing or does somebody have to move to

23  remove the seal?

24       MR. RAITER:  Somebody has to move to maintain the

25  seal.

1          SPECIAL MASTER ESSHAKI:  Maintain, so that would be

2     move to permanently seal?

3          MR. RAITER:  Yeah.  So we would have to come in

4     each time and say here we are again on gross and net profit,

5     let's seal it again, and it seems to be not the most

6     efficient way to handle that.

7          SPECIAL MASTER ESSHAKI:  All right.  Second, there

8     are outstanding protective orders in this case.  Is the

9     description subject to protective order attorneys' eyes only,

10    is that within the protective order?

11         MR. RAITER:  Yes.

12         SPECIAL MASTER ESSHAKI:  I created a new protective

13    order for expert-eyes only, correct?

14         MR. RAITER:  Yes.

15         SPECIAL MASTER ESSHAKI:  And that's because we were

16    banking the documents in the possession of a certain limited

17    number of attorneys?

18         MR. RAITER:  Yes.

19         SPECIAL MASTER ESSHAKI:  Okay.  Is there a

20    distinction?  If there is, what is between information is

21    subject to a protective order, attorneys' eyes only, or

22    highly confidential?

23         MR. RAITER:  Well, the highly confidential is the

24    initial designator so it is essentially highly confidential,

25    attorneys' eyes only.

1          SPECIAL MASTER ESSHAKI:  Is that in the protective

2     order?

3          MR. RAITER:  Yes.

4          SPECIAL MASTER ESSHAKI:  So you are not asking for

5     anything more than what's already there?

6          MR. RAITER:  Correct.

7          SPECIAL MASTER ESSHAKI:  Okay.

8          MR. RAITER:  Correct.  And if you give me one

9     second to confer with Ms. Romanenko, I want to --

10          SPECIAL MASTER ESSHAKI:  You go get your marching

11     orders, sir.

12          MR. RAITER:  So what we are suggesting and are

13     comfortable with is that you order the designation of the

14     production of the information highly confidential, attorneys'

15     eyes only.  Where we have a bit of a disconnect here is that

16     we believe then that that means that this information must be

17     filed under seal going forward, and the defendants and the

18     end payors haven't agreed to that aspect of it either.  I'm

19     not sure whether they agree to the highly confidential

20     designation or not.

21          In the meet-and-confer process leading up to this

22     motion, Mr. Williams indicated that -- I don't think he

23     opposed that but he said it is -- Honda will designate it as

24     such and it is Honda's idea to designate this -- or burden to

25     designate this.  And I kept saying no, this is our data and

```
 1    that's the problem, we can't just hope that Honda designates
 2    it highly confidential, attorneys' eyes only, so that's why I
 3    asked you earlier, that would be very important to us that we
 4    have that designation from Honda that you order them to
 5    produce it as such and then when the information is filed, it
 6    is filed under seal and as we proposed in our brief -- or
 7    briefs we think it makes sense for you to make some findings
 8    right now about whether that information is properly filed
 9    under seal, given what we know about what is in the data or
10    almost certain to be in the data.
11            SPECIAL MASTER ESSHAKI:  Okay.  Thank you, Counsel.
12            MR. RAITER:  Thank you.
13            SPECIAL MASTER ESSHAKI:  Mr. O'Shea, how do you
14    feel about a blanket highly confidential, attorneys' eyes
15    only designation?
16            MR. O'SHEA:  What do you mean by blanket?
17            SPECIAL MASTER ESSHAKI:  Across all the Honda
18    productions?
19            MR. O'SHEA:  We are not opposed in principle.
20            SPECIAL MASTER ESSHAKI:  What they are arguing is
21    they are concerned that it is their data and it's in the
22    possession of Honda.  Honda is being forced to produce it
23    pursuant to the subpoena that was served upon them, and if
24    Honda fails to designate the data highly confidential,
25    attorneys' eyes only, that may give you free reign to do
```

```
 1    whatever you wish with it.
 2          MR. O'SHEA:  Understood, and that's a very
 3    reasonable point, Your Honor, so that's why I say we have no
 4    objection in principle to proceeding like that.  Simply to
 5    emphasize that the sealing process would remain the same as
 6    it is in Judge Battani's order and we would follow that
 7    rather than flipping the sealing so that everything is
 8    instantly sealed and then it is our burden to go forward.
 9          You know what struck me in Mr. Raiter's
10    presentation was, and I even wrote down his words, virtually
11    the first words out of his mouth in describing the data was
12    that -- or the documents was, quote, it seems to be likely to
13    include, unquote.  Well, that gets right to the heart of the
14    problem that I noted a few minutes ago, Your Honor, is we
15    don't know.  And I don't know why we're being compelled or
16    suggested to make that decision or you're being compelled to
17    make that decision without having viewed the production.  I
18    think the solution that you are talking about eliminates
19    their concern but it doesn't go so far as to violate the
20    Judge's order because Mr. Raiter says you can do this without
21    doing any damage to what Judge Battani has ordered, but the
22    truth is, if we don't follow the two-step process of having
23    the designation of sealing happen at the time of filing then
24    it is inevitably in conflict with the Judge's order.  This
25    seems to get -- what we seem to be moving toward gets around
```

 1    that issue, but again there doesn't seem to be an urgent

 2    reason that I've heard to make a determination today without

 3    having viewed the documents.  We don't know what's in them,

 4    we are now being told for the first time well, we think it

 5    might include this data or that data, we think it is similar

 6    to the OEM data that you dealt with earlier, we simply don't

 7    know, and it would really help things along if we did.  And

 8    if their concern is that just producing the data as you say

 9    is going to allow it to be used for any purpose by anyone, we

10    are very happy to stipulate to a process that will protect

11    it, and then we can, in the normal course of events if there

12    is a filing, then we can make a determination at that point.

13            SPECIAL MASTER ESSHAKI:  Okay.  Thank you, sir.

14            Well, I want to thank you all.  The arguments were

15    very well prepared and well presented, and I do appreciate

16    the quality.

17            Again, I recall this vividly.  The purpose of my

18    carve-out was when Honda said we are putting the ruling

19    regarding Honda's data on the record, Honda said, you know,

20    if we have to produce the data that we maintain on our

21    systems from the DMS of the dealers, that is their data, and

22    we don't feel comfortable producing this willy-nilly, and at

23    that point I said that the Honda dealers would be given an

24    opportunity to object to the production of their data

25    pursuant to my order that ordered Honda to produce its

 1    information which included the DMS data of its dealers.

 2          I believe that the protective orders in this case

 3    are sufficient to protect this data.  I would like counsel,

 4    however, to take one step further because if we were dealing

 5    with simply summaries of profits, summaries of costs, those

 6    sorts of things, that would be one thing, but if we are

 7    dealing with the name of a consumer, the VIN number, the

 8    address, the zip code, whatever of the consumer, I have a

 9    little more stringent concern, and as a consequence I'm going

10    to direct that we -- that an order be prepared in which all

11    of the data to be produced by Honda from the DMS information

12    on file from their dealers will be designated highly

13    confidential, attorneys' eyes only, and if per chance some of

14    that data gets through Honda and does not come with that

15    designation it will be assumed that it has the designation by

16    the receiving parties, and Honda and/or the auto dealer

17    plaintiffs will have the ability to call back any document

18    and stamp it with attorneys' eyes only and highly

19    confidential.

20          With respect to sealing the data in advance, I do

21    believe that flies in the face of the Judge's order.

22    Judge Battani is a very serious person, she thinks very

23    closely about her decisions.  She, with the assistance of

24    counsel, crafted a solution that she believes is workable in

25    this case and fits within the parameters of the Shane

1    decision of the Sixth Circuit in order to protect against

2    future settlement objections because sufficient data wasn't

3    made available.

4           In essence indicating that there may be data that

5    should be protected, that should be filed under seal, or we

6    may never file any of this data indicates to me that we have

7    a ripeness issue and we really have a question of an advisory

8    opinion, which I am loath to engage in.  I'm not going to

9    give an advisory opinion, and I don't think the Court should

10   go about making decisions as to whether data should be sealed

11   without having an actual controversy, and giving a blanket

12   sealing order, I think, flies in the face of the Judge's

13   order, flies in the face of Shane, and I'm simply not going

14   to do that.  I would fall back on all the data will be

15   designated highly confidential, attorneys' eyes only.  If it

16   slips through, it will be dealt with by the receiving parties

17   that way.  The auto dealer plaintiffs will have a right to

18   come back and say we want to call it back and put that

19   designation on it if anybody objects.

20          I want that understood, if the auto dealer

21   plaintiffs say this document was not stamped highly

22   confidential, attorneys' eyes only, it is to be assumed that

23   it is.  If the defendants says well, wait a minute, this is

24   not the type of document that should be designated highly

25   confidential, attorneys' eyes only, you need to notify the

1    auto dealer plaintiffs and they have the right to bring that

2    issue back up.  I'm assuming we are not going to have that

3    problem because it's simply discovery.  I will not issue a

4    sealing order in advance.  I will not carve out or classify

5    data that should be subject to a sealing order.  We will

6    address those if and when those issues arise.

7            So, Mr. O'Shea, the procedure is that you would

8    prepare an order to the best of your ability based upon my

9    rulings and, again, it should say that I am exercising the

10   discretion that has been conferred to me by the order

11   appointing me Special Master in reaching this decision, and

12   it should also contain the language -- the magic language

13   that is in my appointment order that says this order is

14   subject to appeal before Judge Battani pursuant to the order

15   appointing me Special Master.  And would you circulate it to

16   opposing counsel, get their consent, and submit it for

17   submission?  If there's no objection I will have it entered.

18   If there is, we will have to bring it up for a hearing.

19           MR. O'SHEA:  Understood.

20           SPECIAL MASTER ESSHAKI:  Ms. Romanenko, I see --

21           MS. ROMANENKO:  Your Honor, we understand that at

22   such a time as there is a filing using the data, dealership

23   counsel may come in and make the motion to seal?

24           SPECIAL MASTER ESSHAKI:  Yes, yes, you may.  You

25   can put that as part of the order, that if there is a sealing

1   dispute you have the right to come in and seek that it be

2   sealed.  Counsel?

3           MR. ROWE:  Your Honor, not to be too pedantic, but

4   at least one of the auto dealers objected to producing the

5   data at all, and I think --

6           SPECIAL MASTER ESSHAKI:  That objection is denied.

7           MR. ROWE:  All right.  Thank you.

8           SPECIAL MASTER ESSHAKI:  All right.  You can put

9   that in the order as well.  Mr. O'Shea, anything else?

10          MR. O'SHEA:  No, Your Honor.

11          SPECIAL MASTER ESSHAKI:  Mr. Raiter?

12          MR. RAITER:  No, Your Honor.  Thank you.

13          SPECIAL MASTER ESSHAKI:  Again, it was good to see

14   you all.  Welcome to Detroit when there is a day of sunshine.

15   Thank you.

16          (Proceedings concluded at 2:12 p.m.)

17                     _   _   _

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATION

 2

 3              I, Robert L. Smith, Official Court Reporter of

 4    the United States District Court, Eastern District of

 5    Michigan, appointed pursuant to the provisions of Title 28,

 6    United States Code, Section 753, do hereby certify that the

 7    foregoing pages comprise a full, true and correct transcript

 8    taken in the matter of Automotive Parts Antitrust Litigation,

 9    Case No. 12-02311, on Monday, May 8, 2017.

10

11

12                              s/Robert L. Smith
                                Robert L. Smith, RPR, CSR 5098
13                              Federal Official Court Reporter
                                United States District Court
14                              Eastern District of Michigan

15

16

17    Date:  05/19/2017

18    Detroit, Michigan

19

20

21

22

23

24

25
```