```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
                            -   -   -
IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION
_____
                                        Case No. 12-02311
IN RE: HEATER CONTROL PANELS            Case No. 12-00401
_____
                                        Hon. Marianne O. Battani
THIS DOCUMENT RELATES TO:

Direct Purchaser Actions
_____/


                    DENSO'S MOTION TO COMPEL

          BEFORE SPECIAL MASTER GENE ESSHAKI
        Theodore Levin United States Courthouse
              231 West Lafayette Boulevard
                    Detroit, Michigan
              Tuesday, September 12, 2017


APPEARANCES:

For the Plaintiffs:     EUGENE A. SPECTOR
                        SPECTOR ROSEMAN & KODROFF
                        1818 Market Street, Suite 2500
                        Philadelphia, PA 19103
                        (215) 496-0300


                        NATHAN FINK
                        FINK + ASSOCIATES LAW
                        38500 Woodward Ave, Suite 350
                        Bloomfield Hills, MI 48304
                        (248) 971-2500
```

```
 1   APPEARANCES:
     (Continued)
 2
     For the Defendants:    DAVID P. DONOVAN
 3                          WILMER, CUTLER, PICKERING, HALE, and
                            DORR, L.L.P.
 4                          1875 Pennsylvania Avenue, NW
                            Washington, D.C. 20006
 5                          (202) 663-6000
```

*To obtain a copy of this official transcript, contact:*
*Robert L. Smith, Official Court Reporter*
*(313) 964-3303 • rob_smith@mied.uscourts.gov*

```
 1   TABLE OF CONTENTS

 2
                                                          Page
 3   Motion to Compel
     Motion by Mr. Donovon............................. 4
 4   Response by Mr. Spector........................... 9
     Ruling by the Special Master......................12
 5
```

1   Detroit, Michigan
2   Tuesday, September 12, 2017
3   at about 9:55 a.m.
4                         -  -  -
5           (Special Master and Counsel present.)
6           SPECIAL MASTER ESSHAKI:  Good morning, everybody.
7   It is Tuesday, September 12th, at 10:00 a.m.  This is the
8   date and time set for a hearing on a motion.  We are calling
9   Master File 12-md-02311, sub-file 2:12-cv-0401-MOB-MKM.
10          This is the matter of a motion by Denso to compel
11  discovery.
12          So, Counsel, would you please identify yourself and
13  make your motion?
14          MR. DONOVAN:  David Donovan, Wilmer Hale, counsel
15  for Denso.
16          SPECIAL MASTER ESSHAKI:  Counsel.
17          MR. SPECTOR:  Eugene Spector on behalf of the
18  direct purchaser plaintiffs.
19          MR. FINK:  Nathan Fink for the direct purchaser
20  plaintiffs.
21          SPECIAL MASTER ESSHAKI:  Okay.
22          MR. DONOVAN:  Master Esshaki, the briefs are brief
23  and I will attempt to be as succinct.
24          First, let me just talk for a moment about what
25  this motion is not about.  It is not about the scope of

 1   discovery.  The plaintiffs agreed three years ago what they
 2   would produce, and the opposition does not take issue with
 3   anything that we described about what they agreed to produce.
 4          It is not about mediation.  The direct purchasers
 5   say twice in their opposition that they have provided Denso
 6   with more than enough information to proceed to mediation.
 7   That's a direct quote.  This has nothing to do with
 8   mediation.  The mediation is irrelevant to these proceedings.
 9          Judge Battani at the January hearing expressly
10   addressed the issue of whether discovery would be stayed
11   pending mediation.  She heard from all parties, and she
12   expressly declined to enter any stay with respect to
13   litigation while the mediation is proceeding.
14          It's not about the discovery plan or lack thereof.
15   The direct purchasers argue they are not obligated to produce
16   any documents because no discovery plan has been entered.
17   That's the argument they make at page 1 of their opposition.
18   That's simply wrong, and there is no basis in the federal
19   rules or any court order for that position.  Whenever this
20   Court ultimately orders discovery to be finished, the direct
21   purchasers are required to engage in discovery now.
22          This is not about Denso's production.  The direct
23   purchasers have filed no motion with respect to Denso's
24   production which Denso commenced more than a year ago.  We
25   produced our transaction data 14 months ago.  We produced so

*1*   far 40,000 pages of documents; there's another 7,000 or 8,000
*2*   pages that will be produced in the next week or so.  And, in
*3*   fact, until the opposition brief was filed by the direct
*4*   purchasers, we had heard nothing from the direct purchasers
*5*   with respect to our production or our discovery responses in
*6*   more than two years.  So it is not about Denso's production.
*7*   There has been no motion filed about Denso production much.

*8*   　　　　　This is also not about whether Tiffin and Fleetwood
*9*   have improperly split their claims, as is mentioned in the
*10*  opposition and addressed in our reply.  Tiffin and Fleetwood
*11*  are plaintiffs both in this action, the heater control panel
*12*  action, as well as the air-conditioning systems action.
*13*  Heater control panels are an element in the AC case as well.
*14*  But whatever their claim is in this case and whether or not
*15*  they have improperly attempted to split their claims between
*16*  two cases doesn't make any difference.  They have to produce
*17*  now the documents that are relevant to this case.

*18*  　　　　　DPPs have no response at all in their opposition
*19*  about the inadequacy or impropriety of their reference to
*20*  Rule 33(d) with respect to certain of our interrogatories
*21*  answers, they haven't addressed that issue at all.  So it is
*22*  not about whether we are right about that.  They haven't said
*23*  we are wrong.  And I think we cited case law, we think we're
*24*  pretty clearly correct.

*25*  　　　　　Although I will say one thing about Rule 33(d).  We

```
 1   are not trying to impose some impossible or onerous condition
 2   on them.  What we told them almost two years ago -- I'm
 3   sorry, two and a half years ago was that they should identify
 4   the portions of the interrogatories for which answers can be
 5   derived from business records, provide responses to any
 6   portions for which answers cannot be derived from business
 7   records, and if they are not able to answer interrogatories,
 8   if they just don't know the answer, say so.
 9          What we don't want to be is sandbagged in a year or
10   two years, whenever we get to summary judgment in this case,
11   when they've told us in an interrogatory answer that they are
12   going to produce documents that may or may not exist from
13   which the answers may or may not be able to be derived.  I
14   don't know want to be sandbagged in two years when they come
15   forward with a witness who says yeah, yeah, that wasn't in
16   the documents, here's the answer.
17          If they have an answer, we are entitled to what it
18   is.  If they don't know the answer, we are entitled to know
19   that.  And if they -- the only thing they can say is that
20   there are documents from which the answer might be derived
21   but they have no other knowledge, we need them to say that,
22   but they just need to take a position: do they have an answer
23   or don't they, do the documents exist or don't they?  And if
24   they are truly referring us to documents because they have no
25   other information, they need to say so rather than to have
```

*1*  this generic response that pursuant to Rule 33(d) they will
*2*  produce documents from which the answers may or may not be --
*3*  the documents that may or may not exist.
*4*          So that gets us to what this case is actually
*5*  about, and it's simply about their obligation to produce the
*6*  documents they said three years ago that they had and that
*7*  they would produce and that they have failed and so far
*8*  refused to produce.
*9*          Now, to update Your Honor, on Friday evening we got
*10* a production from Tiffin of 159 pages of documents.  They're
*11* principally invoices, mostly from the years 2009 and 2010
*12* with a few stray ones from 2004.  That's their production to
*13* date.
*14*         Now, two and a half years ago they told us -- this
*15* is on June 4th, 2015 so not quite two and-a-half years ago --
*16* they told us that Tiffin had a database of transactional data
*17* showing all purchase data from 2004 to 2007 and a separate
*18* database with data from 2007 to present, and that Fleetwood
*19* had a database of all of their purchases and sales from 2000
*20* to 2009 when they declared bankruptcy.
*21*         They haven't told us yet whether Fleetwood has
*22* hardcopy documents prior to 2000 or whether Tiffin has
*23* hardcopy documents prior to 2004, but after three years we
*24* are entitled to the data, all of it.  We are entitled to
*25* their documents, all of them.  We are entitled to the

```
 1    documents they said they would give us, and we are entitled
 2    to it now without any further excuses.
 3             SPECIAL MASTER ESSHAKI:  Thank you, Counsel.
 4             Sir, may I ask you to identify yourself?
 5             MR. HUTCHINSON:  I'm with IT from the Court here.
 6             SPECIAL MASTER ESSHAKI:  Very good, sir.  Welcome.
 7             MR. HUTCHINSON:  I'm sorry.  I didn't mean to
 8    interrupt.
 9             SPECIAL MASTER ESSHAKI:  That's okay.  All right.
10             Mr. Spector, are you going be addressing the Court
11    next?
12             MR. SPECTOR:  I am, if I might.
13             SPECIAL MASTER ESSHAKI:  Please.
14             MR. SPECTOR:  Where do I begin?  I begin with let's
15    look at the history of what occurred here.  We were served
16    with discovery.  We were negotiating with regard to the scope
17    of that discovery.  We answered interrogatories.  We filed
18    supplemental answers to interrogatories last year when we got
19    a letter from Mr. Donovan or Mr. Cherry on behalf of Denso
20    asking for certain additional information.  We gave them that
21    information identifying people who were involved in the
22    purchase process, what the purchase process was at Tiffin and
23    at Fleetwood, et cetera.
24             The issue here is documents, what documents were we
25    obligated to produce?  We hadn't finished the meet-and-confer
```

```
 1   process.  The time frame has not been established, it hasn't
 2   been agreed to in terms of what we would produce.  And
 3   without final -- without finalization of those issues, I
 4   don't believe we were obligated to produce yet.  We haven't
 5   finished the meet-and-confer process with Denso with regard
 6   to its production.  The documents it has produced, quite
 7   honestly, other than the transaction data, documents that
 8   were ordered to be produced because they were produced to the
 9   Department of Justice as part of their guilty plea obligation
10   by court order.
11           So putting that in this context, we now got this
12   letter from Mr. Donovan.  I spoke to Mr. Donovan and we told
13   him that we were agreeing to produce purchase data and we
14   were going to start to produce it.  And, quite candidly, the
15   mediation came up in this discussion because in
16   correspondence back and forth with regard to the mediation,
17   that's exactly what we said we would do, and so we have
18   started that process.
19            So we didn't understand why we would have to go
20   forward with a motion to compel since we had already agreed
21   that we would be starting to produce and we have, in fact,
22   started to produce documents that we said we would produce in
23   connection with the mediation process.
24           Let's look at why the mediation -- the
25   meet-and-confer process with regard to discovery stopped.
```

```
 1   Denso said to us we will not deal with you with regard to
 2   these claims until you prove to us that you bought a heater
 3   control panel, so we did.  And we didn't hear another word
 4   from Denso about our producing documents or other discovery
 5   issues for a year.  We get a letter a year later as a result
 6   of which we supplemented our answers to interrogatories and
 7   provided them with additional information.  That's -- we had
 8   said we would produce documents under 33(d) and we will; it
 9   is part of what we have started to produce now.
10              Basically we view this motion as unnecessary.  We
11   view this motion as something that came about as a result of
12   our having filed the 30(b)(6) notice with Denso.
13              SPECIAL MASTER ESSHAKI:  Thank you, Counsel.
14              Mr. Fink, anything you want to add?
15              MR. FINK:  Nothing to add, Your Honor.
16              SPECIAL MASTER ESSHAKI:  Young lady, can I ask you
17   to identify yourself?
18              MS. EISENSTEIN:  Yes.  Kathryn Regan Eisenstein on
19   behalf of the auto dealer plaintiffs, Mantese Honigman.
20              SPECIAL MASTER ESSHAKI:  Welcome, welcome very
21   much.
22              All right.  I have had an opportunity to read
23   everything that has been submitted to me and consider this
24   matter.  We were all in the courtroom in January when
25   Judge Battani was asked to stay and/or stagger discovery, and
```

```
 1   her response was emphatic, she said I will not.  She said I
 2   have the power to order discovery and, of course, I will.
 3   Those words were very, very clear.  I was sitting right in
 4   this chair when she said so.
 5             So in my estimation, I believe that the motion is
 6   well placed and the plaintiffs need to produce their
 7   documents and they need to do so short of some explanation of
 8   great undue hardship within 30 days.
 9             So, Mr. Donovan, if you will prepare an order to
10   that effect.  I know you drafted an order, but your order
11   does not have the magic language that this order is subject
12   to appeal to Judge Battani pursuant to the order appointing
13   Special Master dated whatever it was.
14             Counsel, I thank you for coming in, and I assume I
15   will see you all again tomorrow morning.
16             MR. DONOVAN:  Your Honor, just one other
17   outstanding matter is our requests for fees.  Under the
18   federal rules, we believe that we are clearly entitled to
19   fees.
20             SPECIAL MASTER ESSHAKI:  There are two outstanding
21   matters.  The motion for fees will be denied.
22             And is there anyone that believes this transcript
23   needs to be sealed?
24             MR. DONOVAN:  Not from --
25             MR. SPECTOR:  No.
```

1        SPECIAL MASTER ESSHAKI:  Sealing has been waived.
2   Thank you all.  I will see everybody in the morning.
3            (Proceedings concluded at 10:08 a.m.)

```
 1                         CERTIFICATION

 2

 3            I, Robert L. Smith, Official Court Reporter of

 4   the United States District Court, Eastern District of

 5   Michigan, appointed pursuant to the provisions of Title 28,

 6   United States Code, Section 753, do hereby certify that the

 7   foregoing pages comprise a full, true and correct transcript

 8   taken in the matter of In Re: Automotive Parts Antitrust

 9   Litigation, Case No. 12-02311, on Tuesday,

10   September 12, 2017.

11

12

13                              s/Robert L. Smith
                               Robert L. Smith, RPR, CSR 5098
14                             Federal Official Court Reporter
                               United States District Court
15                             Eastern District of Michigan

16

17

18   Date:  09/22/2017

19   Detroit, Michigan
```