**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                          MASTER FILE NO. 12-md-02311

                                              HON. MARIANNE O. BATTANI

_____

In Re: BEARINGS                               12-cv-00502
In Re: ANTI-VIBRATION RUBBER PARTS            13-cv-00802

_____

THIS DOCUMENT RELATES TO:

Dealership Actions
End-Payor Actions
_____/

**REDACTED ORDER DENYING GENERAL MOTOR'S OBJECTION TO THE
MASTER'S ORDERS COMPELLING PRODUCTION OF CERTAIN CONFIDENTIAL
COMMERCIAL, TRADE SECRET PRICING DOCUMENTS AND DENYING CERTAIN
DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S DECEMBER 29, 2016 ORDER
REGARDING THE PRODUCTION OF CERTAIN VEHICLE PRICING
INFORMATION FROM CERTAIN NONPARTY ORIGINAL EQUIPMENT
MANUFACTURERS AND THEIR AFFILIATED ENTITIES AND MODIFYING
ORDER REGARDING DISCOVERY FROM NONPARTY ORIGINAL
<u>EQUIPMENT MANUFACTURER GENERAL MOTORS</u>**

Before the Court is Third Party General Motors, LLC's ("GM") Objection to Special

Master's Orders Compelling Production of Certain Confidential Commercial, Trade Secret

Pricing Documents (Doc. No. 1600 (sealed), Doc. No. 1818 (redacted) in 12-2311) and

Certain Defendants' Objections to Special Master's December 29, 2016, Order Regarding

the Production of Certain Vehicle Pricing Information from Certain NonParty Original

Equipment Manufacturers and their Affiliated Entities (Doc. No. 1599 in12-2311).  The

Court heard oral argument on the Objections on June 7, 2017. At the conclusion of the hearing, the Court took these matters under advisement. For the reasons that follow, the Court **DENIES** GM's Objection and Certain Defendants' Objection. Further, the Court **MODIFIES** the Pricing Information Order.

**I. BACKGROUND**

On November 7, 2016, Auto Dealer Plaintiffs and the Serving Parties, which includes End-Payor Plaintiffs, Truck and Equipment Dealer ("TED") Plaintiffs, the State of Florida, the State of Indiana, and certain nonsettled Defendants, filed a Renewed Motion to Compel Discovery from several nonparty Original Equipment Manufacturers ("OEMs"), including GM. ADPs and Serving Parties were seeking documents related to pricing practices to prove pass-through damages. GM opposed the discovery, arguing that as a third party, it could not be forced to produce documents of the highest confidentiality unless the requesting parties demonstrated substantial need in light of other document discovery or deposition testimony. (Doc. No. 1600 at 5-6).

The Master heard argument on December 9, 2016. He acknowledged the sensitive nature of the GM pricing materials, and the devastating fallout that would occur should the materials fall into the wrong hands. He nevertheless ordered their production, reasoning that the information was needed to address pass through in the indirect purchaser cases (Doc. No. 1572, Tr. at 50:3-24).

In his December 29, 2016 GM Order, the Master ruled GM must produce:



2

(Doc. No. 1575, ("GM Order") Ex. A at 3-4).

On the same date, the Master issued a Pricing Information Order covering the Production of Certain Vehicle Pricing Information of Certain NonParty Original Equipment Manufacturers and their Affiliated Entities. (Doc. No. 1579). The Pricing Information Order provided that the OEM Vehicle Pricing Documents must (1) be received and maintained at a single firm for End-Pay Plaintiffs, a single firm for Auto Dealer Plaintiffs, a single firm for Truck and Equipment Dealer Plaintiffs, and a "single law firm for Defendants in each of the Auto Part Cases;" (2) "be downloaded and viewed only on free-standing computers that are not connected to the internet;" (3) "be produced by the OEMs to the Serving Parties on portable media (e.g., thumb drives or disks) or other electronic means and shall be encrypted [and] password protected." (Doc. No. 1579 at 6-7, "Pricing Information Order"). Pursuant to the Pricing Information Order, the pricing documents are not to be transferred to another defense firm if the custodial firm settles or is otherwise dismissed from the litigation without notice to and consent from the OEMs. (Pricing Information Order ¶ 2.C.3). Other protections included in the Order required documents used in a court filing to be filed only in camera (Order ¶ C.5), and with seven days notice to the OEM producing the pricing documents to facilitate the opportunity to object (Order ¶ C.6). The Master ordered all copies to be logged, including information about "how the copy will be maintained, stored, and transferred." (Order ¶ D.1). Documents shall be returned to the originating OEM with an affidavit stating that everything has been returned, ND no other access was granted. (Id.)

3

The Order also contains provisions relevant to experts. Experts may view the documents on free-standing computers, not connected to the internet, and not accessible to anyone outside of the expert's offices. (Pricing Information Order ¶ B.2). Further, experts receiving the data must sign confidentiality agreements and abide by the additional protections. (Pricing Information Order ¶ B.3). Counsel for Serving Parties "shall not access or review the OEM Pricing Data, but may review any and all experts' output, analyses, work product, reports, opinions and/or conclusions generated, derived from, and/or based upon the OEM Vehicle Pricing Data." (Pricing Information Order ¶ B.5).

Certain Defendants challenge two of the provisions as too burdensome and unfair to them: First, that the documents must be maintained at only one "custodian firm out of all defendants' law firms in a given lead Case, and second, that pricing documents may reside at the custodial firm only after "entry of a class certification schedule" in the Lead Case. (Pricing Information Order ¶ 2.C.1). GM challenges the provision allowing industry experts to review the GM Pricing Methodology Documents. GM asserts that once that material is reviewed, it is not realistic to assume that industry insiders will just forget the materials thereby preventing the information from having an impact on future work in the automotive industry.

## II. STANDARD OF REVIEW

Rule 53, Fed. R. Civ. P., governs review of a master's decision. Under Rule 53(f), a court reviews findings of fact and conclusions of law de novo, whereas a "court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5). Under Rule 52(f)(3), the court decides "de novo all objections to findings

4

of fact made or recommended by a master." The same de novo review applies to conclusions of law. Fed. R. Civ. P. 53(f)(4).

## III. ANALYSIS

### A. Vehicle Pricing Information

At issue in GM's objection is whether the Master erred in ordering the production of the pricing information. According to GM, Serving Parties cannot show the documents are necessary to their litigation, and even if they could, the risk of harm to GM from disclosure outweighs any necessity. Because the Court agrees with the Master's analysis balancing the competing factors, it affirms the ruling on discovery of the pricing information. The governing law and the Court's reasoning follow.

Federal Rule of Civil Procedure 45(c) provides for the "protection of persons subject to subpoenas." Rule 45(c)(3) identifies those circumstances in which the Court may quash a subpoena. Courts have recognized that Rule 45(c)(3) "tracks the provisions of Rule 26(c)" which provides for the issuance of protective orders. See Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002). Thus, a nonparty may seek the Court's protection "via the overlapping and interrelated provisions" of Rule 26 and 45. Id. The application of these provisions requires the court to balance several competing factors: (1) relevance, (2) need, (3) confidentiality, and (4) harm. Id.

If GM establishes the documents are confidential and that disclosure of the pricing documents would unfairly harm its ability to compete in the marketplace, the burden shifts to Serving Parties to establish that the requested documents are both relevant and necessary. See Mannington Mills, 206 F.R.D. at 528-29; Echostar Comm.

5

Corp. v. The News Corp. Ltd., 180 F.R.D. 391, 394 (D. Colo.1998); American Standard Inc. v. Pfizer, Inc., 828 F.2d 734, 741 (Fed. Cir. 1987); Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co., 107 F.R.D. 288, 292 (D. Del. 1985). The balance is "tilted in favor of disclosure" when relevance and necessity have been shown. Id.

### 1. Confidentiality

Here, the Master found that GM, as the subpoenaed party, met its burden to show that the information is confidential and that "its disclosure might be harmful." Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc., 2005 WL 2045818, at *2 (W.D. Mich. Aug. 24, 2005), aff'd, 2005 WL 2571943 (W.D. Mich. Oct. 12, 2005) (considering whether a third party should be protected from producing subpoenaed trade secret or confidential commercial information); Laborers Pension Trust Fund-Detroit & Vicinity v. CRS Poured Concrete Walls, Inc., 2006 WL 3804912, at *7 (E.D. Mich. Dec. 22, 2006); Universal Del., Inc. v. Comdata Network, Inc., 2011 WL 1085180, at *2 (M.D. Tenn. Mar. 21, 2011). The Court agrees.

There can be little doubt that ███████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████

6

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████

██████████████████████(emphasis added).

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████ Without question the documents are confidential.

### 2. Relevant and Necessary

The second consideration is whether the information sought is both relevant and necessary to the litigation. Laborers Pension Trust Fund, 2006 WL 3804912, at *7. The question of "necessity" includes consideration of whether the information may be obtained by other, less burdensome means. Spartanburg Reg'l Healthcare Sys., 2005 WL 2045818, at *5.

Early in the OEM subpoena process, ████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████

███████████████████████████████████████████

████████████████████ Serving Parties nevertheless pursue the ██████████

███████████████████████████████████████████

7

███████████████████████████████

Pricing information is routine in indirect purchaser price-fixing actions. See e.g. In re Mushroom Direct Purchaser Antitrust Litig., No. 06-0638 2012 WL 298480 (E. D. Pa. Jan. 31, 2012) (addressing a motion to quash subpoenaed information, including confidential pricing documents). Every business must set the prices of the products it sells. Pricing documents go to the heart of class certification, pass through, and damages and will support the claims and defenses. Therefore, the Court finds the information is relevant.

To show necessity, Serving Parties must demonstrate that discovery is required in the context of the claims they are advancing and that the information sought is not sufficiently available through other sources. Id. at * 3. GM characterizes Serving Parties' need for these documents as speculative, ███████████████████████████ ███████████████████████████████████████████ GM's position notwithstanding, the information itself is necessary to confirm or defend against the claims. Therefore, the Court agrees with the Master that the evidence is needed to establish whether pass through did or did not occur.

The Court further finds that the ████████████████████████████████ ███████████████████████████████████████ are necessary even given the documents already made available to Serving Parties. ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

███████████████████████████████████████ The Court agrees that ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ (Doc. No. 1549, Ex. G at ¶ 9, Suppl. Decl. of Steve Williams).

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████

In sum, the Court finds that the information is relevant and necessary. Because Serving Parties meet this factor, the Court must weigh the potential harm to GM against the Serving Parties' need for the information. <u>Spartanburg Reg'l Healthcare Sys.</u>, 2005 WL 2045818, at *3.

### B. Sufficiency of Protection

The sufficiency of the protection afforded in the Master's Order is challenged not only by GM, who argues the protection is insufficient, but also by Certain Defendants, including Mitsuba Corporation and American Mitsuba Corporation, Panasonic Corporation of North America, Panasonic Corporation, TRAM, Inc., Tokai Rika Co., Ltd., NTN Corporation, NTN USA Corporation, and Sanden International (USA), Inc., who argue in their Objection that the protective measures are too onerous.

According to GM, ████████████████████████████████████ ████████████████████████████████████ The risk of disclosure is heightened by Serving Parties' ██████████████████████████████████████████████████████████

9

■. GM, in conjunction with other OEMs seek to modify the Pricing Information Order to reflect the additional safeguards the OEMs requested in the OEM Proposed Order (Doc. No. 1600, Exhibit D).[1]

Certainly there must be protections in place to protect disclosure of the pricing documents. Before turning to what additional protections, if any, are needed, the Court addresses whether the protections in the Order are procedurally proper. According to Certain Defendants, the Order imposes limitations never requested by a party. The Court has "broad discretion" to decide "when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). There is no requirement that a limitation be proposed by a party. Accordingly, the Court rejects Certain Defendants' procedural argument.

Under Rule 26 of the Federal Rules of Civil Procedure, a court, for good cause, "may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). For good cause shown, the Court may enter a protective order to prohibit or limit discovery from any person from whom discovery is sought, including requiring that a "trade secret" or other confidential information be revealed in a specified way. Fed. R. Civ. P. 26(c). The burden of demonstrating good cause rests on the proponent of the protective order. Pub. Citizen v. Lagged Grp., Inc., 858 F.2d 775, 789

---

[1]The OEM proposed order included additional confidentiality safeguards: prevention of "industry" experts from reviewing the Pricing Methodology Documents; giving the OEMs seven days to object to an expert before the expert begins receiving and reviewing OEM vehicle pricing data. The OEMs contend that these restrictions are needed to prevent those in the industry from accessing the nonparty OEMs' highly confidential pricing methodology and to provide consistency with respect to access to any confidential materials that may be quoted, referred to, or attached to court filings.

(1st Cir. 1988). The Rule also allows a court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Certain Defendants contend that the Order limits the ability of some parties to access information critical to their defense and creates an unfair advantage for plaintiffs, custodial defendants, and defendants in the earlier cases that have class certification schedules because later Defendants will be forced to wait for a class certification schedule to be entered to have access. In addition, the Order forces defense counsel to travel to another firm to view the documents, thereby, creating an undue hardship. Because only necessary copies may be made, repetitive trips will be required during the briefing process, and during deposition preparation, and access to the documents may be limited if the documents are in heavy demand. Certain Defendants contend these hardships are too great.

The Court is not persuaded that these hardships require lessened restrictions. To the contrary, the Court finds the protections afforded in the Order are not sufficient relative to these documents. According to GM, ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Without question, the information is confidential, sensitive business information. Without question, the availability increases exponentially the chance of inadvertent disclosure.

Courts facing the practicalities of accessing highly sensitive information routinely

11

restrict it to a single location. Here, the Court agrees that the GM Pricing Methodology Documents should only be viewable at GM's offices in Detroit on a secure, non-networked computer. Federal courts have fashioned protective orders that limit access to extremely confidential, electronically-stored information, often source code, when they have found the need to keep the information confidential paramount. See Jagex Ltd. v. Impulse Software, 273 F.R.D. 357, 358-59 (D. Mass. 2011) (fashioning protective order where produced source code was only available for "inspection on a secure, non-networked computer in the District of Massachusetts at outside counsel's office for the producing party."); Inventor Holdings, LLC v. Wal-Mart Stores Inc., 2014 WL 4370320, at *3 (D. Del. Aug. 27, 2014) ("The jointly-proposed protective order [ ] provides undisputed language that a 'single electronic copy' of source code 'shall be provided on a stand-alone computer (i.e., not connected to a network or the internet) in a secure room,' available for inspection."); Rensselaer Polytechnic Inst. v. Apple Inc., 2014 WL 1871866, at *1(N.D.N.Y. May 8, 2014) ("The protective order placed strict parameters on plaintiffs' review of Apple source code, requiring that such materials be made available for inspection at Apple's offices, under supervision, on secured, stand-alone computers."); Leader Technologies Inc. v. Facebook Inc., 2009 WL 3021168, at *4 n.4 (D. Del. Sept. 4, 2009) ("Under the terms of the Protective Order . . . . Leader will only be permitted to review Facebook's source code at a location of Facebook's choosing, at which Facebook will provide a non-networked, stand-alone, password-protected computer terminal for Leader's use. Only a single electronic copy of the source code will be made available to Leader's examiners. Leader may only designate as examiners two of its outside counsel and two of its experts[.]"). The Court

does not find such protections are limited to source code. Therefore, the Court agrees with GM that access to this highly sensitive information must be restricted to a single location. Specifically, the GM Pricing Methodology Documents shall only be viewable at GM's offices in Detroit on a secure, non-networked computer.

The Court is not persuaded, however, that the additional limitations sought by GM and the other OEMs on copying and experts are warranted. Specifically, the Court affirms the provision allowing in-person reviewers to make copies of the OEM Vehicle Pricing Documents if "reasonably necessary for purposes of this litigation," and to "transfer" the copies. This standard is neither too vague nor too lenient to sufficiently protect the information.

Given the crucial nature of the documents, the Court find that the Serving Parties are entitled to reasonable access, and it has been provided. The two restrictions challenged by Certain Defendants entail inconvenience, but the protections are reasonable given the confidential nature of the information and the relationship of OEMs to the Serving Parties. The Order prevents disclosure of the information by limiting who may review the information, when the information becomes available, and placing limits on copying the information. The Order limits how information may be disclosed in court filings.

Finally, the Court rejects the request to add even more protections. Notably, in Paragraph 3 of the order proposed by OEMs, the provision requiring that any expert who receives and reviews the pricing data sign a confidentiality agreement, adds a provision so that OEMs may object to an expert. Experts routinely work with confidential information; and the circumstances of this case do not warrant a grant of

veto power to OEMs over the parties' selection of their experts.

## IV. CONCLUSION

In sum, the Court **DENIES** the Objections, but **MODIFIES** the Pricing Information Order to restrict the inspection of the documents to a secure, nonnetworked computer maintained by GM to protect GM from substantial harm.

**IT IS SO ORDERED.**

Date:  November 2, 2017                                  s/Marianne O. Battani
                                                                                  MARIANNE O. BATTANI
                                                                                  United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 2, 2017.

                                                                                                     s/ Kay Doaks
                                                                                                      Case Manager