1                     UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN

2                          SOUTHERN DIVISION

3                            —  —  —

4

5  IN RE: AUTOMOTIVE PARTS         Case No. 12-02311

6  ANTITRUST LITIGATION           Hon. Marianne O. Battani

7  _____/

8  THIS DOCUMENT RELATES TO:       Case No. 12-501

9  BEARINGS - DIRECT PURCHASER     Hon. Marianne O. Battani
    ACTION

10

11  _____/

12

13                    TELEPHONE CONFERENCE

14         BEFORE THE HONORABLE MARIANNE O. BATTANI
            United States District Judge

15       Theodore Levin United States Courthouse
          231 West Lafayette Boulevard

16                Detroit, Michigan
          Wednesday, May 1, 2019

17

18

19

20

21

22

23     *To obtain a copy of this official transcript, contact:*
        *Robert L. Smith, Official Court Reporter*

24       *(313) 234-2612 • rob_smith@mied.uscourts.gov*

25

TABLE OF CONTENTS

MATTER                                                          PAGE

Telephone Conference regarding
Court of Appeals ruling............................. 6

```
 1    Detroit, Michigan
 2    Wednesday, May 1, 2019
 3    at about 10:40 a.m.
 4                          —   —   —
 5              (Court and Counsel via telephone.)
 6              THE COURT:  Good morning.  This is Judge Battani.
 7              THE ATTORNEYS:  (Collectively)  Good morning, Your
 8    Honor.
 9              THE COURT:  I understand we have quite a few people
10    here, so I'm going to ask you for appearances one at a time.
11    Nate, can we start with you?
12              MR. N. FINK:  Sure.  Your Honor, this is
13    Nathan Fink on behalf of direct-purchaser plaintiffs, along
14    with David --
15              MR. D. FINK:  David Fink.
16              THE COURT:  Okay.  Mr. Spector.
17              MR. SPECTOR:  Yes.  Good morning, Your Honor.
18    Eugene Spector on behalf of the direct-purchaser plaintiffs.
19              THE COURT:  Mr. Kanner.
20              MR. KANNER:  Good morning, Your Honor.
21    Steve Kanner on behalf of direct-purchaser plaintiff.
22              THE COURT:  Randall Weill.
23              MR. WEILL:  Good morning, Your Honor.  It's
24    Randall Weill on behalf of direct-purchaser plaintiffs.
25              THE COURT:  All right.  I have down here
```

*Telephone Conference • May 1, 2019*

**4**

1     John Dominguez; is that right?

2              MR. DOMINGUEZ:  Good morning, Your Honor.

3     John Dominguez on behalf of direct-purchaser plaintiffs.

4              THE COURT:  Okay.  Mr. Amato.

5              MR. AMATO:  Good morning, Your Honor.

6     Jeffrey Amato for the NTN defendants.

7              THE COURT:  Paul Spector.

8              MR. VICTOR:  Yes.  Good morning, Your Honor.

9     Paul Victor for --

10             THE COURT:  Is it Spector or Victor?

11             MR. VICTOR:  Victor, V-I-C-T-O-R.

12             THE COURT:  Okay.  Let me change this.

13    V-I-C-T-O-R.  I was wondering if maybe you were

14    Gene Spector's son or something.

15             MR. SPECTOR:  No.  He's older than I am, Judge.

16             THE COURT:  I thought I hadn't caught that

17    relationship before.

18             Okay.  Debra Dermoody.

19             MS. DERMOODY:  Good morning, Your Honor.

20    Debra Dermoody for the --

21             THE COURT:  Dermoody.  Thank you.  For which

22    defendants?

23             MS. DERMOODY:  The SKF defendants.

24             THE COURT:  Okay.  Mr. Iwrey.

25             MR. IWREY:  Good morning, Your Honor.  Howard Iwrey

 1    also for the SKF defendants.

 2            THE COURT:  Okay.  Michelle Mantine.

 3            MS. MANTINE:  Yes.  Good morning, Your Honor.

 4    Michelle Mantine on behalf of the SKF defendants.

 5            THE COURT:  Mr. Herrmann.

 6            MR. HERRMANN:  Good morning, Your Honor.

 7    Fred Herrmann on behalf of the NTN defendants.

 8            THE COURT:  Okay.  Is it Jeffrey Calsyn?

 9            MR. CALSYN:  Yes.  Jeremy Calsyn, C-A-L-S-Y-N, for

10    the NSK defendants.

11            THE COURT:  Wait a minute.  It's Jeremy?

12            MR. CALSYN:  Jeremy, yes.

13            THE COURT:  Okay.  I've got Jeffrey.  And your last

14    name is spelled how?

15            MR. CALSYN:  C-A-L-S-Y-N.

16            THE COURT:  Okay.  Mr. Davis.

17            MR. DAVIS:  Yes, Your Honor.  Good morning.

18    Ken Davis on behalf of the Natchi defendants.

19            THE COURT:  And Ms. Lambert.

20            MS. LAMBERT:  Good morning, Your Honor.

21    Heather Lambert on behalf of JTEKT.

22            THE COURT:  Okay.  Mr. Fink, since you called this

23    meeting, I will let you speak first.

24            MR. N. FINK:  Okay.  Thank you, Your Honor.  I will

25    take it over to Mr. Spector.

```
 1              THE COURT:  Okay.  And if anybody speaks I want --
 2   please say your name first for the court reporter.
 3              MR. SPECTOR:  Good morning, Your Honor.
 4   Gene Spector on behalf of the direct-purchaser plaintiffs.
 5              We have, as you know, unsuccessfully challenged
 6   your opinion in the Court of Appeals in that they refused a
 7   23(f) petition.  And we want to move on with this litigation
 8   by proposing a revised class, and we are going to file a
 9   motion -- we would like to file a motion to seek permission
10   to file a revised class certification motion that follows the
11   guidelines that you've given us in your opinion with regard
12   to a class that our plaintiffs can -- can and should
13   represent.
14              THE COURT:  Okay.  Who wants to speak for
15   defendants?  Nobody?
16              MR. VICTOR:  This is Paul Victor, Your Honor.
17   There is really not much for us to say in --
18              THE COURT:  Excuse me.  Could you please speak up
19   because we are having trouble hearing you.
20              MR. VICTOR:  Sorry, Your Honor.  Is this better?
21              THE COURT:  Yeah, uh-huh.
22              MR. VICTOR:  This is Paul Victor.  We obviously
23   can't speak to what we will be doing until we see their
24   papers because we don't know exactly what they are actually
25   planning to put into their papers with respect to the class
```

 1   that they then will allege they represent.

 2          THE COURT:  Okay.  What I'm not sure of,

 3   Mr. Spector, is you said you want to file a motion for

 4   permission to file a motion for a revised class.  Is that

 5   what you're saying?

 6          MR. SPECTOR:  Yes, yes, Your Honor.  It's our

 7   view --

 8          THE COURT:  Well, let's just --

 9          MR. SPECTOR:  -- and our understanding that we

10   cannot file a motion for a revised class without your

11   permission to do so.

12          THE COURT:  Okay.

13          MR. SPECTOR:  And --

14          THE COURT:  Let me -- let me say -- let's go right

15   to, and defendants can speak if you want to, but I would like

16   to go right to the motion for a revised class, as opposed to

17   a motion to be allowed to file that motion.  I will grant you

18   that permission.  We might as well get to the merits of this.

19          MR. SPECTOR:  Okay.

20          THE COURT:  Okay.

21          MR. SPECTOR:  Yes, Your Honor.  We just -- we need

22   to work out a schedule under those circumstances, and the

23   schedule from our standpoint requires some time for our

24   experts to be able to reevaluate the data and revise their

25   reports, and I'm assuming the regression analysis, to be able

*Telephone Conference • May 1, 2019*

**8**

 1    to establish the impact on a class-wide basis.

 2            And understanding those circumstances, I would ask

 3    for permission to file that motion for a revised class in

 4    approximately 90 days.

 5            THE COURT:  Okay.  Defendants, has anybody --

 6            MR. SPECTOR:  So it would be somewhere around

 7    August the 1st.

 8            THE COURT:  Okay.  Any defendant have any comment

 9    on that or objection to the August 1st --

10            MR. CALSYN:  Your Honor, it's Jeremy Calsyn for

11    NSK.

12            It's a little -- as Paul was saying, it is

13    difficult to understand how we would -- what we would have

14    done if they filed a motion for permission to file because we

15    have no idea what they're going to propose as their class.

16            THE COURT:  Right.

17            MR. CALSYN:  At this point in the case, they should

18    know that.  And I think, you know, the process -- if they

19    were to file a motion for permission to file a new motion,

20    they would, I think, need to set out what their proposed

21    class would be, and you could consider that, but I think, you

22    know, I don't think we have any objection to it on this side,

23    but I will let others speak to it.

24            THE COURT:  Okay.

25            MR. CALSYN:  It's just, you know, it's hard to say

1    anything without knowing what they are going to propose.

2            THE COURT:  I understand that.  Yes.

3            MR. VICTOR:  I agree with you, Jeremy.  This is

4    Paul Victor.  I agree with Jeremy.

5            THE COURT:  I could see where the permission to

6    file would give you some heads-up, but I still think it's a

7    waste of time.  We should get to the merits of this.

8            All right.  I will give you until August 1st to

9    file the motion.

10            MR. SPECTOR:  We would not -- Your Honor, we would

11    not oppose the defendants then having an adequate time to

12    review the class, the expert reports, take the expert

13    discovery, et cetera.  And I would think 90 days for them to

14    be able to file a response should be fair.

15            THE COURT:  Defense?

16            MR. KANNER:  Unless the Court, Your Honor, may

17    think they don't need that much time.

18            THE COURT:  Who's speaking?  Wait a minute.  Wait a

19    minute.

20            MR. AMATO:  Your Honor, this is Jeffrey Amato.  We

21    weren't -- we're not really able to determine what amount of

22    time we would need, whether it's 90 days or less or more,

23    until we know what class the direct purchasers are seeking to

24    certify.  And so I would propose that maybe if they told us

25    that in advance of the 90 days, we could work out a schedule

1    and propose it to Your Honor for your approval.

2              THE COURT:  Hold on.

3              MR. CALSYN:  Jeremy Calsyn for NSK.  I think it

4    would be better for the plaintiffs and the defendants to work

5    together on a proposed schedule that we could submit to you,

6    Your Honor.  I don't think that the defendants and the

7    plaintiffs had talked about a schedule before this call, and

8    it's probably better for us not to do it on the fly given

9    that there probably will need to be additional depositions of

10   experts and other steps before full briefing is completed.

11             THE COURT:  Okay.  Who spoke just before you?

12             MR. CALSYN:  That was Jeff Amato.

13             THE COURT:  Jeff Amato.  Okay.  Thank you.

14             All right.  Why don't we have you file the motion,

15   and then let's say maybe two weeks after you file the motion,

16   you get together, and you decide on a schedule and submit it

17   to the Court.  Would that give you enough time to work out

18   your schedule?

19             MR. SPECTOR:  Your Honor, this is Gene Spector.  I

20   have a -- kind of a different suggestion.

21             THE COURT:  Okay.

22             MR. SPECTOR:  We have a status conference on June

23   the 5th.

24             THE COURT:  Correct.

25             MR. SPECTOR:  I would suggest that we get together

 1    with the defendants between now and June the 5th, and at that

 2    status conference -- or by the status conference, propose to

 3    you a schedule.

 4              THE COURT:  Will you have your --

 5              MR. SPECTOR:  That way -- we should have -- we

 6    should be clear on what we need by that time, working with

 7    our experts, and we should be able to work something out with

 8    the defendants on a schedule.

 9              THE COURT:  Defendants?

10              MS. LAMBERT:  This is Heather Lambert for JTEKT.

11              I think some of the difficulty, Your Honor, is that

12    because we're sort of skipping over the step of the motion

13    for permission to file it, we don't know until they file

14    their motion what their class is.  So maybe one step, and I

15    don't know, maybe this is what you were suggesting, Gene, is

16    that before they file their paper on August 1st, maybe we do

17    that at the June 5th date.  They tell us what their

18    propose -- their class is -- their proposed class is at that

19    point in time even before they file it, and then we will be

20    better equipped to negotiate a schedule with them.

21              THE COURT:  Plaintiffs?

22              MR. SPECTOR:  Your Honor, that -- that's

23    fundamentally the idea that I had when I said we would come

24    to you on June the 5th.  By that point we should be clear

25    with our experts on what they can do and have a better idea

 1    of exactly how to best define the class that we want.

 2    That's -- that's the only reason for any delay, quite

 3    candidly on our part; we need to see how our experts can

 4    utilize the information that we have.  We are not asking for

 5    additional discovery.  We are not asking for additional data.

 6    And so we are trying to -- to figure out based on what we

 7    have and how that has to be reevaluated, how we can best

 8    define the class.

 9                THE COURT:  But are you --

10                MR. SPECTOR:  That's why I'm not saying right now

11    exactly what it is.  Quite honestly, we already know that

12    it's going to be aftermarket purchasers, we already know it's

13    most likely distributors, we've already talked about that

14    with the defendants.  It's the edges of that definition that

15    we want to be clear about, and that -- that's what's taking a

16    little bit longer than to be able to say today exactly what

17    the definition is.

18                THE COURT:  Well, do you think you would be able to

19    say the definition in a couple of weeks so that after you

20    have it defined you could do your -- work out a schedule?

21                MR. SPECTOR:  That's why I am proposing we do it by

22    June the 5th, Your Honor.  It gives us a month to get that

23    done.

24                THE COURT:  What?  To get your class defined by

25    June 5th, is that what you are talking about?

1        MR. SPECTOR:  To get the class defined by June 5th
2   and for us to meet with the defendants and talk about the
3   schedule.
4        THE COURT:  Okay.  But before you can meet with the
5   defendants to talk about the schedule, they want to know the
6   definition of the class.  So my question is:  When will you
7   have the definition of the class, which will give you time to
8   meet with the defendants, all by June 5th?
9        MR. SPECTOR:  To be safe, Your Honor, I would say
10  by May 24th, that would give --
11       THE COURT:  May 24th.  Okay.  So that would be
12  one --
13       MR. SPECTOR:  -- a week and a half to negotiate a
14  schedule.
15       THE COURT:  Okay.  Ms. Lambert, what do you think
16  about that?
17       MS. LAMBERT:  Well, I'm only speaking on behalf of
18  my client.
19       THE COURT:  Right.
20       MS. LAMBERT:  But I think that makes more sense.
21  I -- I -- I think we can probably work with that.  I would
22  like to see what they propose, and then defendants will move
23  quickly to try to come up with a schedule that makes sense
24  given all that needs to occur after that.  So I don't know
25  what other defendants think, but that seems workable to me.

 1          THE COURT:  Okay.  Mr. Amato, what do you think?

 2          MR. AMATO:  Yes, Your Honor, and I speak for the

 3   NTN defendants.  Thank you.

 4          THE COURT:  And, Mr. Victor, you spoke; what do you

 5   think?

 6          MR. VICTOR:  Yes, Your Honor, that's fine.

 7          THE COURT:  Okay.  Then let's follow that plan,

 8   that we'll put this on the agenda, and we will be sending out

 9   a notice for agenda items.  So please remember to put this on

10   in case I forget, that we talk about this at the June 5th

11   meeting, and hopefully you'll have a schedule or at least

12   questions that are holding up a schedule so we can resolve

13   them.  Okay.

14          MR. SPECTOR:  Yes.  Thank you, Your Honor.

15          THE COURT:  Okay.  Anything else on that, on the

16   revised class for the bearings?

17          (No response.)

18          THE COURT:  No.  Okay.

19          How about -- the second item is the Dalc case

20   scheduling issues.

21          MR. SPECTOR:  Yes, Your Honor.  From the

22   direct-purchaser plaintiffs' standpoint, now that, you know,

23   we've gone through class certification in the bearings case

24   and we have this revised schedule, we want to go forward and

25   move the Dalc case along so we can get it done.  There's some

```
 1    discovery that needs to be completed that's already been
 2    requested and for some time we were trying to get that
 3    resolved.  We can then take whatever depositions need to be
 4    taken, it shouldn't be that many, and then we can go forward
 5    and set the schedule for class certification, summary
 6    judgement, et cetera.
 7            THE COURT:  Okay.  What are you asking for
 8    specifically, what time?
 9            MR. SPECTOR:  We just want to complete discovery
10    and then -- with the defendants, and then set a schedule,
11    and --
12            THE COURT:  How -- wait a minute, wait a minute.
13    How much time do you need to complete discovery?
14            MR. SPECTOR:  Well, we have a discovery plan in
15    place that gives us 200 days to complete depositions once the
16    documents that -- we have a certification that final
17    production has been made of the documents.  We don't have
18    that certification yet.  Once we have that, we'll -- we will
19    take whatever depositions we have to take and go from there.
20            THE COURT:  Defendants, what about that final
21    certification.
22            MR. AMATO:  Yeah, Your Honor.  This is
23    Jeffrey Amato for the NTN defendants, and I'm speaking on
24    behalf of all defendants, I believe.
25            That given the Court's ruling in the main case
```

1   denying class certification, and the uncertainties on how

2   that case will proceed, we don't believe there is any reason

3   to lift the current stay of discovery in Dalc and subject the

4   defendants to full discovery in that case or schedule another

5   round of class certification for that case.  It would be just

6   a waste of time and expense because the same class is

7   proposed in Dalc as the one that Your Honor rejected in the

8   main case, and so if the plaintiffs intend to pursue full

9   discovery on that full class definition in Dalc, then we

10  would intend to seek an order that would have the named --

11  main case class certification denial apply to the Dalc case

12  and have that class struck and discovery stayed until that is

13  resolved.

14          THE COURT:  Well, are the facts the same in the

15  Dalc case in terms of the class that the Court already ruled

16  on?

17          MR. AMATO:  Your Honor, it's the same plaintiffs,

18  it's the same allegations, it's the same alleged conspiracy,

19  and it's the same class as was in the main case.  The only

20  difference is that this was a later follow-on case brought

21  against the European subsidiaries and affiliates of the

22  defendants, with no change whatsoever, other than the timing

23  of when it was brought and the fact that discovery couldn't

24  be done before class proceedings in the main case.

25          THE COURT:  Okay.  So could plaintiff tell me if

 1   there's any reason why the ruling would not apply to this
 2   case?
 3          MR. SPECTOR:  Well, Your Honor, we believe, first
 4   of all, that it is a different case, that it wasn't
 5   consolidated, the defendants opposed consolidation.
 6          THE COURT:  But that doesn't make any difference
 7   in -- on this issue.
 8          MR. SPECTOR:  On the issue of what the class will
 9   be, I doubt that it will ultimately be different than the
10   class in the case that you've already found, Your Honor, I
11   doubt it.  But we haven't filed a class certification motion,
12   we haven't finally defined a class, we haven't completed
13   discovery.  The discovery that we are looking at is discovery
14   that relates to the substantive claims of price fixing and
15   bid rigging and the things that would affect the prices paid
16   by our clients and everyone else that purchased bearings, and
17   so the discovery that we are talking about is relevant either
18   way.
19          So I -- I'm really not clear about why the
20   different definition of the class would affect the scope of
21   the discovery with regard to the conspiracy that was carried
22   out and whether we have an opportunity this time to
23   reevaluate that evidence and say, okay, wait a minute, what
24   about this and how this impacts everybody that purchased, so
25   that we -- it may very well be that the definition isn't

1  exactly the same, and the result is not the same.

2       THE COURT:  Defendants?

3       MR. AMATO:  Your Honor, we have a very different

4  view.  We believe the plaintiffs brought this case alleging

5  the same exact claims.  They've said so in their motion to

6  consolidate that the cases are exactly the same except for

7  the different defendants, and we believe that Your Honor's

8  class certification denial makes clear that there are large

9  portions of this case that the plaintiffs cannot proceed on.

10  They cannot proceed on RFQs.  They cannot proceed on APR

11  theories.  And there is a very, very vast amount of discovery

12  that they will be seeking in the Dalc case that's just

13  completely inapplicable to whatever class they might be

14  pursuing in the main case or in Dalc later on down the road.

15       And so we think it would be an enormous waste of

16  time to have depositions about RFQ collusion or APRs or

17  anything related to the automotive market for which these

18  named plaintiffs are just -- they are found not to be

19  adequate representatives to pursue such claims.  And we think

20  it would be much more efficient to have those issues resolved

21  before subjecting other defendants to additional burdensome

22  discovery, and also the Court's resources in resolving any

23  issues that come up with respect to Dalc.

24       MR. SPECTOR:  Your Honor, it sounds to me as if the

25  defendants are asking you to give them a preliminary preview

1    ruling on what is relevant and not relevant discovery without

2    filing a motion on specific discovery and saying it's

3    irrelevant or it's beyond the scope of what's provable here

4    or part of the case.

5                THE COURT:  Well --

6                MR. AMATO:  Your Honor, if I may respond to that

7    briefly?  We are more than willing to submit a motion that

8    details why the class certification ruling in the main case

9    applies on all fours and should be applied to strike the

10   class in the Dalc case.

11               THE COURT:  All right.

12               MR. SPECTOR:  We don't have a class in the Dalc

13   case.  We haven't moved for a class in the Dalc case yet.

14               THE COURT:  Well, you haven't moved for the class,

15   but you've defined who your plaintiffs are.

16               MR. SPECTOR:  Yes, Your Honor, but the definition

17   in the complaint may -- may change, as it did in the bearings

18   case.

19               THE COURT:  Well, anything may change, but I think

20   we need to -- we need to work out, first, the main case and

21   see.

22               MR. SPECTOR:  And, Your Honor, this is not

23   additional discovery.  This is discovery we've asked for and

24   it's been there and -- and being dealt with for some time,

25   and the defendants haven't finalized their productions from

```
 1    before.  This is not something we've asked for or are going

 2    to ask for in the future, something different than we have

 3    already asked for.  It's something that they've already had.

 4              THE COURT:  Defendants?

 5              MR. AMATO:  Well, Your Honor, it's certainly the

 6    case that this discovery was served while class certification

 7    was pending in the main case, but we believe that the order

 8    and the uncertainty in how the main case will proceed

 9    certainly impacts whether anything should be produced and

10    what, if anything, should be produced in the Dalc case.

11              THE COURT:  I tend to agree with you, but I would

12    like to look at it, so go ahead and file your motion.

13              MR. AMATO:  Thank you, Your Honor.

14              THE COURT:  All right.  Is there anything else?

15              (No response.)

16              THE COURT:  All right.

17              MR. SPECTOR:  Not from the direct purchasers, Your

18    Honor.

19              THE COURT:  Defendants, anything?

20              (No response.)

21              THE COURT:  All right.

22              MR. AMATO:  I don't believe so, Your Honor.

23              THE COURT:  We will see you -- we will see you then

24    on the 5th.  Thank you.  Okay.  Bye-bye.

25              MR. SPECTOR:  Thank you, Your Honor.
```

*Telephone Conference • May 1, 2019*

1          MR. AMATO:  Thank you, Your Honor.

2          MR. KANNER:  Thank you very much, Your Honor.

3          (Proceedings concluded at 11:04 a.m.)

4                        -   -   -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          *CERTIFICATION*

2

3              I, Robert L. Smith, Official Court Reporter of

4     the United States District Court, Eastern District of

5     Michigan, appointed pursuant to the provisions of Title 28,

6     United States Code, Section 753, do hereby certify that the

7     foregoing pages comprise a full, true and correct transcript

8     taken in the matter of In Re: Automotive Parts Antitrust

9     Litigation, Case No. 12-2311, on Wednesday, May 1, 2019.

10

11

12                        *s/Robert L. Smith*
                       Robert L. Smith, RPR, CSR 5098
13                      Federal Official Court Reporter
                       United States District Court
14                      Eastern District of Michigan

15

16

17    Date:  05/06/2019

18    Detroit, Michigan

19

20

21

22

23

24

25