```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3

 4    IN RE AUTOMOTIVE PARTS ANTITRUST
      LITIGATION_____./        Case No. 12-2311
 5

 6
                 FINAL FAIRNESS HEARINGS (VIA ZOOM VIDEO)
 7                      BEFORE HON. SEAN F. COX
                        United States District Judge
 8                         829 U.S. Courthouse
                        231 West Lafayette Boulevard
 9                        Detroit, Michigan 48226

10                      (Thursday, July 16, 2020)

11    APPEARANCES:         DAVID H. FINK, ESQUIRE
                           NATHAN J. FINK, ESQUIRE
12                         STEVEN A. KANNER, ESQUIRE
                           GREGORY P. HANSEL, ESQUIRE
13                         EUGENE SPECTOR, ESQUIRE
                           JOSEPH KOHN, ESQUIRE
14                         Appearing on behalf of Direct Purchaser
                           Plaintiffs.
15
                           KATHERINE DUTCHER, ESQUIRE
16                         Appearing on behalf of Defendant Toyoda
                           Gosei.
17
                           STEVEN CHERRY, ESQUIRE
18                         Appearing on behalf of Defendant DENSO.

19                         ELLEN MAXWELL-HOFFMAN, ESQUIRE
                           Appearing on behalf of Defendant NGK.
20
                           JEFFREY AMATO, ESQUIRE
21                         Appearing on behalf of Defendant Corning.

22                         LINDSEY R. VAALA, ESQUIRE
                           Appearing on behalf of Hitachi Autmotive
23                         Systems defendants.

24                         FRED K. HERRMANN, ESQUIRE
                           JAMES LERNER, ESQUIRE Appearing on behalf
25                         of Defendant Hitachi Metals.
```

```
 1                         MICHAEL BRODY, ESQUIRE
                           Appearing on behalf of the Mitsubishi
 2                         Electric defendants.

 3                         PAUL VICTOR, ESQUIRE
                           Appearing on behalf of Hitachi Metals.
 4
                           SHANNON K. MCGOVERN, ESQUIRE
 5                         Appearing on behalf of Defendant Diamond
                           Electric.
 6
                           HOWARD B. IWREY, ESQUIRE
 7                         Appearing on behalf of Defendant Aisin
                           Seiki.
 8
                           DANIEL FOIX, ESQUIRE
 9                         Appearing on behalf of Defendant NGK.

10     COURT REPORTER:     MARIE METCALF, CVR, CM
                           Federal Official Court Reporter
11                         829 U.S. Courthouse
                           231 W. Lafayette Boulevard
12                         Detroit, Michigan 48226
                           metcalf_court@msn.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

*In Re Automotive Parts Antitrust Litigation*

1            **TABLE OF CONTENTS**

2

3     **PROCEEDINGS – THURSDAY, JULY 16, 2020**            **PAGE**:

4

5     **Subpart Number 13-1401, Ignition Coils**            **4**

6     **Subpart Number 16-3601, Automotive Brake Hoses**   **12**

7     **Subpart Number 16-3801 Ceramic Substrates**        **16**

8     **Subpart Number 13-2501 Valve Timing Controls**     **23**

9     **Motions re attorneys fees**                        **28**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*In Re Automotive Parts Antitrust Litigation*

1          Detroit, Michigan

2          Thursday, July 16, 2020

3          (At 11:15 a.m.)

4                          *       *       *

5          DEPUTY COURT CLERK:  The Court calls case number

6    12-2311, In re Automotive Parts Antitrust Litigation, subpart

7    number 13-1401, the ignition coils matter.

8          Counsel appearing for this matter, can you please

9    state your appearances for the record?

10         MR. D. FINK:  Your Honor, David Fink appearing as

11   interim liaison counsel for the direct purchaser plaintiffs.

12         MR. N. FINK:  And Nathan Fink, also appearing on

13   behalf of the direct purchaser plaintiffs, as interim liaison

14   counsel.

15         MR. HANSEL:  Good morning, Your Honor.  Greg Hansel

16   on behalf of the direct purchaser plaintiffs as one of the

17   interim co-lead counsel.

18         MR. KANNER:  Good morning, Your Honor.  Steve

19   Kanner, also appearing on behalf of direct purchaser

20   plaintiffs, as interim co-lead counsel on each of the cases

21   that are being called today.

22         MR. LERNER:  James Lerner, appearing on behalf of

23   the Hitachi Metals defendants.

24         MR. CHERRY:  Steve Cherry, of WilmerHale, appearing

25   on behalf of the DENSO defendants.

*In Re Automotive Parts Antitrust Litigation*

1      MR. BRODY:  Michael Brody, appearing on behalf of

2   the Mitsubishi Electric defendants.

3      MR. SPECTOR:  Eugene Spector, appearing on behalf of

4   the direct purchaser plaintiffs, one of the co-lead counsel.

5      MR. KOHN:  Good morning, Your Honor.  Joseph Kohn,

6   also for the direct purchaser plaintiffs, one of the interim

7   lead counsel.

8      MS. MCGOVERN:  Shannon McGovern of Simpson, Thacher

9   Bartlett on behalf of the Diamond Electric defendants.

10      MR. HERRMANN:  Good morning, Your Honor.  Fred

11   Herrmann appearing on behalf of Hitachi Metals and brake

12   hoses.  I'm not sure if we're at those appearances yet, but

13   it seems others are appearing for all the proceedings.

14      THE COURT:  Yes.

15      MR. IWREY:  Good morning, Your Honor.  Howard Iwrey

16   on behalf of Aisin Seiki.

17      THE COURT:  All right.  Is that it?

18      MR. AMATO:  Good morning, Your Honor.  Jeff Amato

19   from Winston and Strawn, for the Corning defendants in the

20   ceramic substrates matter.

21      MS. DUTCHER:  Kate Dutcher, appearing on behalf of

22   the Toyoda Gosei defendants in brake hoses.

23      THE COURT:  I'm sorry, who was that?

24      MS. DUTCHER:  Kate Dutcher.

25      THE COURT:  Got it.  Thank you.

*In Re Automotive Parts Antitrust Litigation*

1        And Mr. Victor?

2        MR. VICTOR:  Yes.  Good morning, Your Honor.

3    Appearing on behalf of Hitachi Metals in the brake hoses

4    case.

5        THE COURT:  Good morning everybody.  Now, most of

6    you have been together on this case for eight years.  And of

7    course, I've been on this case for less than eight weeks.  So

8    you guys are going to have to help me out a little bit.

9        I have read all the motions and the responses that

10   are up today.  And so Mr. Fink and Mr. Iwrey I did see your

11   e-mails, so why don't you two kind of help me out regarding

12   who everybody is, and identify different individuals as we

13   proceed through these hearings here this morning.

14       And the first set of hearings are motions for final

15   approval of provisional approved settlements in four

16   component part cases involving ignition coils, brake hoses,

17   ceramic substrates, and valve timing controls.

18       So is it going to be Mr. Fink or Mr. Kanner?  The

19   ball's in either one of your courts.

20       MR. D. FINK:  Your Honor, this is David Fink as

21   liaison counsel.  And I will introduce the Court to each of

22   the co-lead counsel that are handling these matters.

23       As the Court noted, this case has been going on for

24   over eight years.  And interestingly and significantly,

25   during that eight-year period, the same group of co-lead

6

*In Re Automotive Parts Antitrust Litigation*

1    counsel and liaison counsel for the direct purchaser

2    plaintiffs have continuously represented the direct purchaser

3    plaintiffs.  So with respect to the first part, ignition

4    coils, Eugene Spector from Spector, Roseman & Kodroff, will

5    be presenting our motions to the Court.

6         If the Court would like, I'll be happy to provide a

7    little more information about the history of the case, but I

8    know the Court has had an opportunity to review probably as

9    much as it needs at this point.

10         THE COURT:  I'm good right now.  Mr. Spector, you

11   may proceed.

12         MR. SPECTOR:  Thank you, Your Honor.  Eugene Spector

13   on behalf of the direct purchaser plaintiffs, and we're

14   seeking final approval, Your Honor, of four settlements with

15   Mitsubishi Electric, MELCO, Hitachi Automotive or HIAMS and

16   --

17         THE COURT:  All right, let's go.

18         MR. SPECTOR:  I'm sorry.

19         THE COURT:  But as we walk through, let's take them

20   one at a time, okay?

21         MR. SPECTOR:  Yes, Your Honor.  And as you have

22   alluded to our papers, we set forth in detail why all four of

23   these settlements are fair, reasonable and adequate.

24         But let's start with a little bit of the case

25   history, and that begins when the point of All European Auto

*In Re Automotive Parts Antitrust Litigation*

1    Supply filed a case in May of 2015 on behalf of direct
2    purchasers of ignition coils.
3            Now, All European Auto Supply is an auto supply
4    company located in Ferndale, Michigan, and is one of the
5    largest suppliers of European auto parts in the Midwest.  The
6    lawsuit alleged that the defendants conspired to fix, raise,
7    and maintain, and stabilize, rig bids, and allocate the
8    supply of ignition coils sold in the United States.
9            We've settled with the four defendants.  First, with
10   Mitsubishi Electric in September of 2018, Judge Battani
11   preliminarily approved the settlement with Mitsubishi
12   Electric in the amount of $2,986,486.
13           Also in September of 2018, Judge Battani
14   preliminarily approved the settlement with the HIAMS
15   defendants in the amount of $2,000,653.86.
16           In April of 2019, and in an amended order of May of
17   2019, Judge Battani preliminarily approved settlement with
18   DENSO in the amount of $100,000.
19           And finally, in January of 2020, Judge Battani
20   preliminarily approved the settlement with the Diamond
21   Electric defendants in the amount of $200,000.
22           All told, these four settlements amount to almost
23   six million dollars.  And at the same time that the Court
24   preliminarily approved the settlements, she provisionally
25   certified four separate settlement classes.

*In Re Automotive Parts Antitrust Litigation*

1    As I said, the total of the settlements is actually

2    $5,942,332.  The factors that are required to support a

3    settlement like this to be considered are laid out in detail

4    in our briefs and I'll repeat them if the Court would like,

5    but I simply would like to say that this settlement really is

6    a fair, reasonable, and adequate one that was attained

7    through the diligent work of counsel for both the plaintiffs

8    and the defendants.

9    This is the result of a knowledgeable resolution

10   where the settlement counsel reviewed hundreds of thousands

11   of pages of documents produced by the defendants, met with

12   the applicant for amnesty from the Department of Justice to

13   get interviews and understand how this whole industry worked

14   and this conspiracy worked, investigated the industry, and

15   worked also with our clients in terms of getting industry

16   information and approval of any of the steps that we took.

17   Settlement class counsel considered all of this

18   information before beginning their settlement negotiations

19   with defendants.  The settlement negotiations were conducted

20   at arm's length by counsel that are both very experienced,

21   and very knowledgeable in this business, considered the

22   inherent risks, the uncertainties in the cost of continuing

23   to litigate versus the benefits and certainties provided by

24   settlements.

25   Class counsel decided that the dollar value of the

*In Re Automotive Parts Antitrust Litigation*

1   settlements, coupled with the defendants' cooperation

2   provided really a good justification for these settlements.

3   And that cooperation was important, and would be if this

4   settlement is not approved and we have to go forward and try

5   these cases.  That cooperation will be quite valued.

6        And when we sent out notice, we sent out notice and

7   advised 609 identified class members of this settlement, and

8   none objected, and very few opted out.

9        In fact, those statistics we now have final on, we

10  have no objections through the period by which objections had

11  to be submitted to the Court, and we have opt-outs that are

12  identified in our papers.  In this case, there are nine

13  opt-outs for this case.  So we believe that this response by

14  the class members show that this settlement is fair,

15  reasonable and adequate, and should be approved by the Court.

16       THE COURT:  Okay.  Do any of the defendants in the

17  ignition coils wish to speak?

18       All right, no one.  Okay.

19       With respect to ignition coils, the Court finds that

20  the settlement is fair, reasonable, adequate, and should be

21  approved, approves the distribution plans, and certifies the

22  class for settlement.

23       The Court notes that the class representatives and

24  class counsel have adequately represented the class.  The

25  proposal resolution was negotiated at arm's length, and the

*In Re Automotive Parts Antitrust Litigation*

1    relief sought for the class is adequate, taking into account

2    the costs, risks, and delay of trial and appeal, and the

3    effectiveness of a proposed method of distribution.  And the

4    proposal treats class members equitably relative to each

5    other.

6            And so the Court will grant the motion regarding

7    ignition coils.

8            Any other issues regarding ignition coils?

9            MR. SPECTOR:  Yes, Your Honor.  We have also pending

10   a motion for the approval of the payment of attorneys' fees.

11           THE COURT:  Can I do all those motions together?

12   That was my plan.  Is that --

13           MR. SPECTOR:  Fine, Your Honor.  We can go on to the

14   others.  Absolutely.  No problem.

15           THE COURT:  Mr. Iwrey, is that agreeable to you?

16           MR. IWREY:  Absolutely, Your Honor.  So we can go

17   through the four final --

18           MR. D. FINK:  Yes, Your Honor.

19           THE COURT:  Okay.

20           MR. IWREY:  -- first.

21           THE COURT:  How do you feel about the jury

22   consultant?  Okay, go ahead.

23           MR. IWREY:  And it's fine with defendants, Your

24   Honor.  Thank you.

25           THE COURT:  Great.

*In Re Automotive Parts Antitrust Litigation*

1        MR. D. FINK:  And Steven Kanner, who is from Freed,

2    Kanner London & Millen is here to present on that motion.

3        THE COURT:  Mr. Kanner, you may proceed.

4        MR. KANNER:  Good morning, Your Honor.  I'll try and

5    make this as streamlined as possible since the Court does

6    have our memorandum in support, and is fully aware.

7        We're here obviously, as with the other cases,

8    seeking final approval of the settlement with Hitachi Metals

9    and Toyoda Gosei defendants.

10        As we indicated in our memorandum, and as I'll

11    discuss today, we firmly believe that the settlements are

12    fair, reasonable, adequate and merit approval by the Court.

13        Historically, the complaints were filed in this case

14    in December of 2016 and September of 2019.  The plaintiff is

15    Emerald Capital Advisory Corporation, in its capacity as

16    trustee for the FAH liquidating trust.

17        It filed the suit against Hitachi Metals and Toyoda

18    Gosei on behalf of all direct purchasers of automotive brake

19    hoses.  All of these cases today are out of the same general

20    allegations that the defendants conspired to fix, maintain,

21    and stabilize prices, rank bids, and allocate the supply of

22    automotive brake hoses sold in the United States.

23        With respect to Hitachi Metals, in September of 2017

24    Judge Battani preliminarily approved the settlement with

25    Hitachi Metals in the amount of $2.725 million.  With respect

*In Re Automotive Parts Antitrust Litigation*

1    to Toyoda Gosei, in January of 2020 Judge Battani

2    preliminarily approved the settlement with Toyoda Gosei

3    defendants in the amount of $2,266,667.

4          In conjunction with the orders preliminarily

5    approving the settlements, the Courts also provisionally

6    certified the proposed Hitachi Metals and Toyoda Gosei

7    settlement classes.

8          As set forth in the notice report, which is included

9    in the package of materials Your Honor has today, there were

10    reductions to the total amounts based on opt-out requests

11    from certain class members. The Hitachi Metals settlement

12    was reduced to $1.975 million and the Toyoda Gosei settlement

13    was reduced to $950,000.

14          With respect to fairness, adequacy and

15    reasonableness, Your Honor, we believe that these settlements

16    were obtained through diligent hard work of counsel for both

17    plaintiffs and the defendants. Settlement class materials

18    produced by defendants were reviewed. They consisted of

19    thousands of documents that they had produced to the

20    Department of Justice.

21          We also received cooperation from Toyoda Gosei,

22    which is the leniency applicant, and conducted a thorough

23    independent investigation of the industry.

24          Class counsel considered all of this information in

25    the settlement negotiations with the defendants. The

*In Re Automotive Parts Antitrust Litigation*

1    negotiations were indeed conducted at arm's-length and were

2    quite robust.  They were done by experienced counsel on both

3    sides that considered the inherent risks, and uncertainties

4    and costs, while mitigating versus the benefits and

5    uncertainties provided by the settlement.

6         Class counsel determined that the dollar value of

7    the settlements provided ample justification to answer and

8    took the settlements.

9         Now, this conclusion is supported by the fact that

10   in response to our notice we received no objections to the

11   class settlements and only two opt-outs for one defendant and

12   one opt-out for the other -- Toyoda Gosei had -- I'm sorry,

13   two opt-outs, General Motors and Toyota.  I'm sorry.  I'm

14   incorrect on that.

15        Hitachi had the two opt-outs, General Motors and

16   Toyota, and Toyoda Gosei had only one opt-out and that was

17   Toyota.

18        With respect to notice, Your Honor, notice was

19   proper, satisfied due process.

20        You understand all the rules, and I don't have to go

21   through, I don't believe, the requirements of Rule 23 with

22   respect to notice and the identities of the various entities.

23   I can tell the Court that on February 7th the claims

24   administrator mailed all notices to potential members of the

25   settlement class identified by the defendants.  That notice

*In Re Automotive Parts Antitrust Litigation*

1    was posted and remains posted on a website dedicated to this

2    litigation.

3              On February 17th summary notice of proposed

4    settlements were published in Automotive News, an online or

5    -- an online banner notice, I should say, appeared over a

6    three-week period on www.autonews.com, the digital version of

7    Automotive News and an informational press release was issued

8    nationwide by the PR Newswires Autowire publication that

9    targets industry, the auto industry trade publications.

10             I would also inform the Court that both Hitachi

11   Metals' and Toyoda Gosei's counsel have informed us that they

12   have fulfilled their obligations under the Class Action

13   Fairness Act by giving direct written notice to the

14   appropriate federal and state officials.

15             We do believe that the settlements are fair,

16   adequate, and reasonable.  I think we have made it clear in

17   our papers that we satisfy the other elements of Rule

18   23(a)(1) through (4) of numerosity, commonality, typicality,

19   and adequacy.

20             With that in mind, you know, and noticing that again

21   there have been no objections, we do believe that this case

22   is appropriate for your determination of granting approval

23   for the final settlement.

24             THE COURT:  All right.  Thank you very much, sir.

25             Does anyone wish to speak on behalf of the

*In Re Automotive Parts Antitrust Litigation*

1    defendants on brake hoses?

2            MR. HERRMANN:  Your Honor, Hitachi Metals has

3    nothing to add.

4            THE COURT:  Okay, thank you.

5            The Court finds that the settlement is fair,

6    reasonable, and adequate, and it should be granted, the final

7    approval, the approval of Distribution plans, and we'll

8    certify the class for purposes of settlement.

9            The class represented and class counsel have

10   adequately represented the class.  The proposal was

11   negotiated at an arm's-length.  The relief provided for the

12   class is adequate, taking into account the cost, risks, and

13   delay of trial and appeal.  The effectiveness of any method

14   of -- the effectiveness of the proposed method of

15   distribution, as well as the processing of the class member

16   claims.  And the proposal treats the class members equitably

17   relative to each other.  And therefore the motion is granted.

18           Any other issues on brake hoses?  No?  Okay.

19           Mr. Fink?

20           MR. D. FINK:  I apologize, Your Honor.  The next

21   matter I believe is ceramic substrates, and Greg Hansel of

22   the of Preti Flaherty firm will be presenting on the final

23   approval motion.

24           MR. HANSEL:  May it please the Court, good morning

25   again, Your Honor.

16

*In Re Automotive Parts Antitrust Litigation*

1    I want to thank Your Honor for holding this hearing

2    by Zoom.  It really enables all of the parties and the Court

3    to move the case forward under all the circumstances that

4    we're living in now in these extraordinary times.  And we

5    really appreciate justice moving forward, even though we're

6    all dealing with coronavirus.  So thank you for that.

7        I was not much of a car guy before I got involved in

8    these cases, but I did learn that a ceramic substrate is a

9    honeycomb-like structure that is the main ingredient in the

10   catalytic converter which cleans the exhaust of a car, and

11   it's the most expensive ingredient in a catalytic converter.

12   And so that's what the part is that I'm talking about.

13       This part, there were three defendants.  And after

14   filing the complaint on behalf of our client, Airflow

15   Systems, Inc. we were faced with motions to dismiss, both a

16   collective motion to dismiss, and an individual motion to

17   dismiss on behalf of DENSO.  Direct purchasers responded to

18   those.  We did have other contested motions.

19       And we eventually obtained a large volume of

20   documents which were seized by or produced to the Department

21   of Justice by the defendants.  And we received cooperation

22   from the amnesty applicant in this case.  So eventually,

23   through a great deal of investigation, hard work, analysis,

24   and motion practice, we began to negotiate settlements with

25   these defendants.  The first settlement reached was with NGK

*In Re Automotive Parts Antitrust Litigation*

1    in the amount of $10.2 million; the second settlement was

2    with DENSO in the amount of $100,000; and the third was with

3    Corning in the amount of $7 million.  So the total amount of

4    these three settlements is 17.3 million.

5         The first two settling defendants each agreed to

6    provide cooperation against the remaining defendants.  And as

7    Mr. Spector noted, if the settlements were not approved, we

8    would still need that cooperation today, and we believe that

9    cooperation is a vital element, a valuable element of

10   settlements, which gave us more negotiating leverage, and

11   ability to prove our case against the non-settling defendant,

12   the last settling defendant.

13        The settlements are fair, reasonable, and adequate.

14   They were negotiated at arm's-length after a full

15   investigation.  The negotiations took place over many months.

16   In the case of two of the settlements, distinguished

17   mediators were involved.  As the Court is aware, Judge

18   Battani initiated a mediation program in this case.  And in

19   this antitrust bar, many of the lawyers are able to negotiate

20   settlements directly just on a bilateral basis between two

21   parties without a mediator.

22        But we've also had the benefit of some very fine

23   mediators who have facilitated the parties reaching

24   settlements, and that was certainly true in the case of

25   ceramic substrates.

*In Re Automotive Parts Antitrust Litigation*

1          In the DENSO settlement, the mediator was James

2     Quinn from New York, and with the Corning settlement, the

3     mediator was Eric Green from Boston.  And they are two of the

4     leading mediators in the United States and they're familiar

5     with antitrust law.  And they really helped us, you know,

6     after many months and a lot of bumps in the road, helped us

7     reach these settlements.

8          The relief provided to the class is significant,

9     $17.3 million, plus cooperation.  It's very valuable.

10         The distribution plan, which is also part of our

11    motion for final approval, is very straightforward and

12    equitable.  It's a pro rata distribution plan according to

13    each class member's purchases of the correct products during

14    the class periods.

15         And it's also -- it benefits the public interest to

16    approve these settlements, because it will conserve judicial

17    resources, resolve difficult litigation, and provide a

18    benefit to the class members.

19         The notice process complied with Rule 23 and due

20    process.  Notices were mailed to 237 potential class members.

21    A lot of courts have observed that mailing notice directly to

22    a class member is sort of the gold standard.

23         And then, as kind of a backup method, there's also

24    significant publication notice that we did in this case,

25    including in Automotive News, both the paper and electronic

*In Re Automotive Parts Antitrust Litigation*

1   versions.  Also Autowire through PR Newswire.

2          And as the Court is aware there is an official

3   website called autopartsantitrustlitigation.com.  This

4   website was set up by the direct purchasers with the approval

5   of the Court.  And on this website can be found all of the

6   direct purchaser settlements.  A lot of the key papers are --

7   you can just click on a link and read the papers.  And it's a

8   great vehicle for providing notice to class members.  So the

9   notice was robust.

10          The Court, under Judge Battani, under her watch,

11   granted preliminary approval to all three of these

12   settlements.  But as the Court is aware, there is a higher

13   standard for final approval, and we believe that higher

14   standard is satisfied in this ceramic substrates case.

15          Numerosity, there are 237 entities to whom we've

16   provided notice, and joinder of all of them would be

17   extremely impracticable and onerous in individual litigation.

18   There are common issues, and those common issues predominate.

19          I'll cover both of those points in one.  So the same

20   set of core operative facts and theory of liability applies

21   to each class member.  Those issues include whether the

22   defendant has entered into an illegal conspiracy to

23   artificially fix prices of ceramic substrates; whether that

24   conspiracy caused impact on the class members.

25          And in this case, each of the class members, if they

*In Re Automotive Parts Antitrust Litigation*

1    sued individually, would be required to prove the same
2    wrongdoing.  So there are common issues, and they do
3    predominate.

4          Typicality.  Our client, Airflow Catalyst Systems,
5    Inc. is typical.  They are a direct purchaser from defendants
6    in this case.  They happen to be a very engaged plaintiff,
7    very knowledgeable.  And they are typical of the class
8    members.  They bought during the right period of time, they
9    bought the right product, and they have the same legal claim
10   as the other class members, which is Section One of the
11   Sherman Act.

12         The class representative and the class counsel are
13   adequate, so the adequacy requirement is satisfied.  I
14   covered the class representative already.  And counsel, the
15   interim co-lead counsel for direct purchasers are experienced
16   in this type of antitrust class action litigation.

17         The class action is superior to individual actions.
18   It is much more efficient for the Court to resolve what
19   really amount to hundreds of claims in a single proceeding,
20   rather than have a multiplicity of separate lawsuits with the
21   possibility of inconsistent results.

22         The reaction of the class after receiving notice has
23   been overwhelmingly positive.  Out of the over 200 class
24   members notified, there have only been a total of eight
25   requests for exclusion from the class.

*In Re Automotive Parts Antitrust Litigation*

1   As the Court is aware, there are actually three

2   different settlement classes we are proposing, one for each

3   defendant.  And two of the settlement classes only had four

4   families of -- of requests for opt-outs, one had eight.  And

5   there was -- across all three, there was a total of only

6   eight unique opt-outs.

7   So for all of those reasons, direct purchasers

8   respectfully suggest that the settlements in ceramic

9   substrates are fair, reasonable, and adequate, and request

10   the Court to approve them finally today.

11   Thank you, Your Honor.

12   THE COURT:  All right, thank you.

13   Does anyone wish to speak on behalf of the

14   defendants?  Okay.

15   MR. FOIX:  Your Honor, this is Daniel Foix,

16   appearing on behalf of defendant NGK entities.  I didn't

17   enter my appearance earlier.  I wanted to do that now.  I

18   don't have anything to add on the settlement approval.

19   THE COURT:  All right, thank you.

20   All right.  The Court finds the settlement is fair,

21   reasonable, and adequate, and will grant the final approval,

22   the approval of the distribution plan, and certify the class

23   for purposes of settlement.

24   The Court finds that the class representatives and

25   class counsel have adequately represented the class.  The

*In Re Automotive Parts Antitrust Litigation*

1    proposal was negotiated at arm's-length, relief provided for

2    the class is adequate, taking into account costs, risks,

3    delay of trial and appeal, the method of distribution will --

4    distributing relief to the class.  And the proposal treats

5    class members equitably relative to each other.

6            So we will grant your motion.

7            And Mr. Fink the final is valve timing controls, is

8    that correct?

9            MR. D. FINK:  That's correct, Your Honor.  And Joe

10   Kohn, of Kohn, Swift & Graf who's been co-lead counsel since

11   the beginning, will speak to that.

12           THE COURT:  Mr. Kohn?

13           MR. KOHN:  Thank you, Your Honor.  May it please the

14   Court, and let me just echo my colleagues' thanks for hearing

15   us on this matter and this method.

16           The valve timing control devices motion also

17   similarly involves multiple defendants.  There were four

18   defendants in the case.  If the Court were to grant the

19   approval of these settlements, it would conclude that matter

20   in totality for the direct purchaser class.

21           The first settlements were preliminarily approved by

22   Judge Battani in November of 2018 with the Hitachi HIAMS

23   defendants, and the Mitsubishi Electric defendants.

24           Then in May of 2019, a settlement with DENSO was

25   preliminarily approved.  And then finally, February of 2020,

*In Re Automotive Parts Antitrust Litigation*

1    the final settlement with the Aisin Seiki defendants was

2    granted preliminary approval.

3            And our position, thinking, was to not separately

4    notice, but that it made more sense for efficiency for the

5    Court, for the class, for notice costs to continue our

6    negotiations and our efforts in this case until we could

7    conclude the entire case, and then to proceed as we are

8    today.

9            March 20 of 2020, Judge Battani did approve a notice

10   program similar to the ones that my colleagues have mentioned

11   of the four settlements.

12           The settlement with Hitachi HIAMS is in the amount

13   of $1,410,000.

14           The settlement with Nissan Seiki is $850,000,

15   Mitsubishi Electric $359,000, and with DENSO $100,000, for a

16   total of $2,719,274.  And these settlements also contained

17   cooperation along the way, which Mr. Hansel explained, did

18   provide value as each of those settlements were filed.  The

19   remaining defendants saw that that cooperation was being

20   obtained.

21           As a plaintiff in these cases, there's just the

22   single class representative which is the All European Auto

23   Supply, Inc. which was the class representative in the matter

24   that Mr. Spector spoke to this morning.

25           The report on the notice program and an appropriate

*In Re Automotive Parts Antitrust Litigation*

1    affidavit from the claims administrator was filed dated June

2    4, 2020, that day from Ms. Birdsall (phon.) of the Epic

3    Company.

4         This class had 201 members.  I was able to get the

5    list from the records of the defendants there, their sales

6    invoices to these purchasers.  It was mailed March 25th and

7    was published April 6th in the Auto News, Automotive News and

8    on the website.

9         Once again, we're happy to report, as we did in our

10   papers, there were no objections from any class members, and

11   we continued to check up until this morning.  There's still

12   no objections.  And, you know, a handful of opt-outs that do

13   vary in the different settles.

14        And that has been the history in this case, that the

15   OEMs and other purchasers remain in classes frequently, and

16   at different times for different reasons, will choose to opt

17   out.  So, for example, in this case, there were four opt-outs

18   from the Aisin Seiki settlement, and four from the Hitachi

19   settlement, plus seven from Mitsubishi, and nine from DENSO.

20        And there's a schedule of these on a chart that was

21   attached.  It's Exhibit Three to the affidavit from Ms.

22   Birdsall.  So it is interesting, for example, that Toyoda

23   opted out of the DENSO settlement, but remains in the other

24   settlement, and the other examples.

25        So the point I'm trying to make is that these are

*In Re Automotive Parts Antitrust Litigation*

1    sophisticated class members, many of them with inside and

2    outside counsel.  And I think that gives extra comfort to us

3    on the issue of the objections.  These are obviously class

4    members who can act for themselves.  They remain in a class.

5    They opt out if they saw problems with the settlements.  They

6    would have the ability to object.

7         Our approval motion was filed on April the 24th.

8    And I know Your Honor is very familiar with the procedures

9    under Rule 23, and we've obviously gone through them at some

10   length this morning, so I won't repeat those.  We do rely on

11   our papers.

12        If I could maybe just highlight a few things about

13   this particular case.  We also did receive the Department of

14   Justice documents pursuant to procedures that had been in

15   place from Judge Battani early in the case.  This was a case

16   that also involved an amnesty applicant, and we did receive a

17   proffer.  We had all the risks that go with class litigation

18   and antitrust litigation generally.

19        In addition, there were some particular defenses

20   that were raised.  Defendant Aisin had a unique defense with

21   respect to the venue of the case pursuant to their sales

22   transaction documents.  Two of the defendants' settlements

23   with Hitachi and with DENSO were reached with the help of

24   mediation.

25        The DENSO settlement, Mr. Quinn, who Mr. Hansel

*In Re Automotive Parts Antitrust Litigation*

1    mentioned, was part of the group that was appointed by Judge

2    Battani.  That included Judge Rosen, Judge Weinstein, the

3    JAMS organization.  And then the Hitachi settlement was

4    reached with the help of Ken Feinberg, who I would say is a

5    well-known mediator.  And we were able to settle the other

6    ones directly with our distinguished colleagues in the

7    defense bar.

8         We have the same plan of allocation that has

9    previously been approved by the Court, and we've actually

10   been able to complete some distributions in the direct

11   purchaser cases as this litigation has proceeded.  A claim

12   form was included with the notice, and claims have come in.

13   They are being analyzed now by the claims administrator.

14        So we would respectfully request the Court's

15   approval of the settlement.  They are the agreed-upon

16   judgment orders that were negotiated as a part of these

17   settlement documents, carefully negotiated with the defense

18   counsel, and to approve those settlements, to approve the

19   settlement classes, and to approve our plan of allocation,

20   which would conclude the direct purchaser valve timing and

21   control device case.

22        THE COURT:  All right.  Thank you, Mr. Kohn.

23        Does anybody want to speak on behalf of the defense?

24        MS. VAALA:  No, thank you, Your Honor.

25        MR. BRODY:  No, Your Honor.

*In Re Automotive Parts Antitrust Litigation*

1          MR. CHERRY:  No, Your Honor.

2          THE COURT:  All right.  The Court finds that the

3    settlement is fair, reasonable, and adequate, and will grant

4    final approval, approve the distribution plan, and certify

5    the class for the purposes of settlement.

6          The Court finds class representatives and class

7    counsel had adequately represented class.  The proposal was

8    negotiated at arm's length.  The relief provided for the

9    class is adequate, taking into account the costs, risks, a

10   delay of trial and appeal, the method of distribution, claim

11   processing, and the proposal treats class members equitably

12   relative to each other.  Therefore, the motion is granted.

13         So Mr. Fink, and Mr. Iwrey, I believe we move on now

14   to the motions for award of attorney fees, litigation costs,

15   and expenses and service awards.  Is that correct?

16         MR. D. FINK:  That's correct, Your Honor.

17         THE COURT:  And where is Howard?

18         MR. IWREY:  That is correct.  And I believe none of

19   the defendants have opposed that motion.

20         THE COURT:  Okay.  Just give me a second here to

21   move my notes around.

22         (Brief pause in proceedings)

23         THE COURT:  Okay, Mr. Fink.  I think the first

24   matter is the ignition coils.

25         MR. D. FINK:  Yes.  The first matter is ignition

*In Re Automotive Parts Antitrust Litigation*

1    coils, and again, Eugene Spector from Spector, Rosen &

2    Kodroff is prepared to present to the Court a request for

3    fees, expenses and an incentive payment.

4         THE COURT:  All right.  Mr. Spector?

5         MR. SPECTOR:  Thank you, Your Honor.  As I've

6    previously said, this is a settlement in the amount of

7    $5,940,332 which has been reached with the four defendants,

8    and we previously enumerated the amounts with each.

9         Six hundred and nine individual notices were mailed

10   to potential class members based upon the records of those

11   defendants, who we specifically were able to identify.

12        Notice was published on our Auto Parts website.

13   Notice was published in the Automotive News.  An information

14   press release was released on our Newswire's Autowire.  And

15   after all of that, we have no objections.

16        And we have a limited number of opt-outs for nine

17   companies, but there were various opt-outs in different

18   cases.  There were only seven in the MELCO case, six in the

19   HIAMS case, nine in the DENSO settlement, and four in the

20   Diamond Electric Settlement.

21        Plaintiffs' counsel has requested a 30 percent fee

22   of the settlement proceeds after deducting litigation costs

23   and expenses.  This was also obviously contained in the

24   notice, and there were again no objections and again few

25   opt-outs.  We thought that -- we think, and the Court has

*In Re Automotive Parts Antitrust Litigation*

1    already found that the settlement is fair, reasonable, and

2    adequate.

3          We think that the reaction of the class members

4    indicates their broad support for the settlement and for our

5    requests for fee.

6          We've asked the Court to apply the percentage of the

7    fund method as has been done in all of the other direct

8    purchaser cases in this MDL, because that method conserves

9    judicial resources, and eliminates any need to talk about the

10   reasonableness of rates and hours, and aligns the interests

11   of counsel and the class, and it's typical in this kind of

12   litigation.

13         Thirty percent is also within the range of other

14   class-action fees awarded in the Sixth Circuit and by this

15   Court in prior auto parts settlements.

16         Now, as we've alluded to in our presentations on the

17   approval if the settlement, counsel vigorously and

18   effectively pursued the claims on behalf of the direct

19   purchasers.  We investigated the facts, we drafted the

20   complaints, we opposed a motion to dismiss, reviewed and

21   analyzed documents, obtained information about claims,

22   negotiated the terms of the settlement, and prepared the

23   settlement documents.

24         The Sixth Circuit approval factors are laid out

25   extensively in our briefs, that we did obtain a valuable

*In Re Automotive Parts Antitrust Litigation*

1    benefit for the class, almost $6 million.

2            And the value of the services that were rendered by

3    counsel in this lodestar cross-check confirms a reasonable

4    fee.  The percentage -- lodestar percentage multiplier that

5    we're seeking right now as of the time put into the case

6    through April 30th is 1.1 times our lodestar, and which is

7    well within the range of reasonables and approved by courts

8    in this district and by this Court.

9            The allocation -- we ask that the Court authorize

10   interim lead counsel to allocate the fee among the law firms

11   that have contributed to the result.  Generally that's what's

12   done and that's basically because we're the ones who know who

13   did what and how that contribution helped benefit the case.

14           As for the litigation costs and expenses, we've

15   excluded telephone, fax, and internal copying costs as have

16   been requested to do by Judge Battani in these cases, and are

17   asking for a reimbursement of $27,485.69.

18           And the other request that we have at this point is

19   for a service or incentive award to the class representative

20   All European in the amount of $25,000.

21           Now, I'll tell you that All European was not

22   promised an incentive award.  Settlements were presented to

23   it and discussed with the representatives of All European and

24   approval was sought from them without any mention of an

25   incentive award.  The requested incentive award is a

*In Re Automotive Parts Antitrust Litigation*

1    reasonable one lower than in some cases and not unusual.  And

2    the class representative has devoted some significant time

3    and effort to this case.

4         The assistant counsel, in developing our overall

5    understanding of the automotive parts industry, and coils in

6    particular, discussed collecting documents for review and

7    potential protection to the defendants.  They've discussed

8    preservation of electronic and hard copy documents and

9    implemented a plan to do that, reviewed pleadings and kept

10   apprised of the litigation, reviewed the settlement details

11   and conferred with counsel to determine whether the

12   requirements were in the best interest of the class.

13        I think, under all those circumstances, considering

14   that there have been no objections here, we would ask the

15   Court to award the fees and expenses, and the incentive award

16   we've requested.

17        Thank you, Your Honor.

18        THE COURT:  Thank you, Mr. Spector.

19        Does anyone wish to speak on behalf of the defense

20   on this issue?

21        MR. IWREY:  No, Your Honor.

22        THE COURT:  Okay.  The Court finds that the request

23   of the award for attorney fees are reasonable under the

24   circumstances.  The Court will grant the percentage of the

25   fund approach.  The Court finds, and has considered the value

*In Re Automotive Parts Antitrust Litigation*

1    of the benefit rendered, society's stake in rewarding

2    attorneys who provide such benefits in order to maintain an

3    incentive to others whether the services were undertaken on a

4    contingent fee basis, the complexity of the litigation, the

5    professional skill and standing of the counsel involved on

6    both sides, as well as the value of the services on an hourly

7    basis.  Those are the remaining factors.  So that motion here

8    is granted.

9          And Mr. Fink, can we now move on to brake hoses?

10         MR. FINK:  Mr. Fink, yes, Your Honor.  Mr. Kanner

11   will speak to fees regarding brake hoses.

12         MR. KANNER:  Thank you, Your Honor.

13         Once again, I'll echo the comments of my colleagues.

14   We do appreciate your holding this meeting with so many

15   attorneys on Zoom in order to move the wheels of justice.  We

16   do appreciate it.  And --

17         THE COURT:  Yes.  And --

18         MR. KANNER:  -- the remaining cases with Your Honor.

19         THE COURT:  Mr. Kanner, I have it pretty easy

20   because all I have to do is click it on.  But it's actually

21   Jennifer McCoy, our docket manager that's stuck putting this

22   all together.  So we should really think her.

23         MR. KANNER:  Well, on behalf of all plaintiffs'

24   counsel, we do appreciate it.

25         THE COURT:  I'm sorry for interrupting you.  You may

*In Re Automotive Parts Antitrust Litigation*

1    proceed.

2        MR. KANNER:  No, not at all, Your Honor.  Sometimes

3    kudos have to be given to the right people before we get into

4    it, and I do appreciate it.

5        Moving ahead though, the direct purchaser plaintiffs

6    as you're well aware, respectfully request to award again a

7    fee of 30 percent after deduction of reimbursed litigation

8    costs and expenses. In this particular case, the litigation

9    costs totaled $11,575.06.  And as with the previous case, we

10    also seek an incentive award to the class representative in

11    the amount of $25,000.

12        If I can give a brief presentation of some of the

13    details that were handled in this case, I think it would help

14    further Your Honor's understanding of the efforts that went

15    into producing this result.

16        As in any case, we began this with a detailed

17    investigation of the brake hoses industry, which included

18    obtaining experts on the manufacturing side, the business,

19    and the sales sides of the industry.

20        We, as you might expect, drafted the initial and

21    amended complaints after conferring with experts.  We

22    conducted any number of meetings with counsel representing

23    the amnesty applicant to obtain information and cooperation

24    to use in prosecuting the case, and with the non-amnesty

25    defendant working out not just the details and obtaining

*In Re Automotive Parts Antitrust Litigation*

1    documents, but to resolve the case.  We conducted extensive

2    negotiation with both defendants to ultimately resolve these

3    cases.

4              We drafted the materials in conjunction with the

5    settlement agreements, the notices, the orders, the

6    preliminary and final approval of the motions and the briefs.

7              With respect to the documents produced, not only did

8    we review those and analyze them, but they were all coded

9    into a database which was usable and critical in prosecuting

10   these cases.

11             Finally, we worked extensively with the claims

12   administrators to design and send out the class notices which

13   you've heard about, the claim forms, and to create and

14   maintain the settlement website.

15             As an ongoing principle in these cases, co-lead

16   counsel avoid duplication of efforts among the attorneys

17   within their own firms and other attorneys working on the

18   cases.  Throughout the case we were able to work both

19   cooperatively and officially with both opposing counsel and

20   the Court.

21             I believe in my initial presentation I covered the

22   timing and details of the class notice, so I don't think,

23   unless Your Honor would request me to do so, that I need to

24   go through those again.

25             THE COURT:  No.

*In Re Automotive Parts Antitrust Litigation*

1        MR. KANNER:  Thank you.

2        With respect to the reasonableness of attorneys'

3  fees, our motion for award of attorneys' fees describes how

4  the direct purchaser plaintiff counsel have complied with the

5  requirements of Rule 23, requiring notice to the class of

6  attorneys' fees and the opportunity to object.

7        Historically, as Your Honor has heard before, we've

8  requested a fee based on a percentage basis which the Sixth

9  Circuit has left to -- regularly to the judgment of the

10  District Court.

11        With respect to the factors considered by the Sixth

12  Circuit, I'll just address a couple of those, and the results

13  achieved would be the first.

14        We believe that the recovery of this $2.925 million

15  is a significant recovery in view of the circumstances.  As I

16  said, this was originally essentially a $5 million settlement

17  until the opt-outs were included.

18        The cross-check analysis used to compare the

19  percentage fee approved with the lodestar reflects a total of

20  1,675.4 hours of inception of the case through January 31st.

21  Lodestar is based on historical rates, and that comes out to

22  of $938,161.

23        Based on the supplemental report filed on July 6,

24  2020, that 30 percent fee of the current value of the

25  settlement of 2.2 -- $2.925 million, minus cost and expenses

*In Re Automotive Parts Antitrust Litigation*

1    of $11,575.06 results actually in a negative multiplier of

2    .87, so ultimately we believe that's extraordinarily

3    reasonable.

4          The requested fee, as Your Honor knows, is never a

5    guarantee.  Plaintiffs' counsel face a myriad of risks, and

6    while we were optimistic about the outcome of the case,

7    there's always a substantial risk factor.

8          There was indeed in this case a guilty plea

9    regarding brake hoses to certain customers, but the DOJ

10   doesn't seek recovery for class members who withheld from

11   counsel to do so.  And as Judge Battani previously noted,

12   success is not guaranteed where a settling defendant pleads

13   guilty since the DOJ is not obligated to prove impact or

14   damages.  I can discuss societal benefits, the complexity of

15   antitrust cases, but I believe Your Honor is well aware of

16   those.

17         We do seek the Court's authority to determine the

18   fee allocation of most of the attorneys.  As you previously

19   heard, it makes sense for interim counsel to do so because we

20   have the best analysis of what the relative contributions of

21   various counsel were.

22         With respect to reimbursement of costs, as I said,

23   we do seek reimbursement of costs and expenses in the amount

24   I've designated, and those costs are itemized on the

25   declaration attached to Exhibit One, and they were all

*In Re Automotive Parts Antitrust Litigation*

1   necessary to prosecute this case.

2        With respect to the incentive award, as Mr. Spector

3   previously indicated, no promises were made to the plaintiff.

4   A significant amount of time was devoted by the plaintiffs'

5   representative to assist prosecution analysis of this case.

6   So we do believe that a $25,000 incentive reward would be

7   appropriate.

8        And I will close, Your Honor, by indicating that we

9   have received no objections to the request for fees as sent

10  out in the notice.

11       THE COURT:  Thank you very much, Mr. Kanner.

12       Anybody on behalf of the defense wish to speak?

13       MR. HERRMANN:  Hitachi Metals has nothing, Your

14  Honor.  Thank you.

15       THE COURT:  Okay, Mr. Herrmann.

16       The Court finds that the request for attorney fees

17  are reasonable under the circumstances.  The Court grants the

18  request to use percentage of the fund approach.  The Court

19  has considered the value of the benefit rendered, society's

20  stakes in rewarding attorneys who provide such benefits in

21  order to maintain an incentive to others, whether the

22  services were undertaken on a contingent fee basis, the

23  complexity of the litigation, the professional skills,

24  standing of counsel involved on both sides, and the value of

25  the services on an hourly basis.  The motion is granted.

*In Re Automotive Parts Antitrust Litigation*

1        And last by the way, Mr. Kanner, we were talking

2    about kudos earlier on.  I would like to thank Nate Fink, as

3    well as Howard Iwrey for helping, getting this hearing off

4    the ground.  Both of you were very helpful.  Thank you very

5    much.

6        MR. KANNER:  Thank you.

7        MR. IWREY:  Thank you, Your Honor.

8        THE COURT:  Nate Fink, not David Fink.

9        MR. N. FINK:  Oh, I heard you.

10       THE COURT:  I guess we are next going to hear from

11   Mr. Hansel.

12       MR. HANSEL:  That's correct, Your Honor.

13       THE COURT:  You may proceed.

14       MR. HANSEL:  Thank you, Your Honor.  Again, Greg

15   Hansel for direct purchaser plaintiffs.

16       Direct purchaser plaintiffs respectfully request an

17   award of attorneys' fees, litigation expenses, and incentive

18   payments for the class representative in the ceramic

19   substrates case.

20       As we discussed earlier, just before Your Honor's

21   approval of the motion for final approval of the settlements,

22   the ceramics substrates settlements total $17.3 million with

23   Corning, DENSO, and NGK, three defendants.  And this series

24   of settlements will conclude the direct purchaser action in

25   the ceramics substrates part.  So it's another part, you

*In Re Automotive Parts Antitrust Litigation*

1   know, that we can check off here, and that helps move this

2   entire MDL towards closure.

3          We don't know what Judge Battani might have promised

4   you, Your Honor.  We don't know if she promised you that the

5   case would somehow efficiently resolve, but we are doing

6   everything we can to seek resolution, either by settlement or

7   litigation of the entire MDL.  And there is a certain

8   satisfaction after doing this for over eight years to close

9   out a single part, and that's what we're doing with ceramic

10   substrates and others.

11          THE COURT:  Mr. Hansel, there was no promises made.

12   As a matter of fact, it cost me a dinner.  So go ahead.

13          MR. HANSEL:  So our request again is for 30 percent

14   using a percentage of the fund approach.  And that was

15   included in the class notice that we described earlier and I

16   won't repeat all of the forms of notice.  The key point being

17   that there have been zero objections to the notice, and very

18   few opt-outs.

19          In our brief, we cite the *Sheick* case, 2010 Westlaw

20   4136958 at page 22 from the Eastern District of Michigan in

21   2010, in which the Court held that the scarcity of objections

22   indicates broad support.

23          It reminds me of the old expression "it's scarcer

24   than hens' teeth."  And there have, indeed been no objections

25   to this settlement or this fee application, and application

*In Re Automotive Parts Antitrust Litigation*

1    for expenses, and incentive awards.

2         I want to note that the same standards described by

3    my co-counsel apply.  The request -- the settlements are

4    fair, reasonable, and adequate, as the Court has found.  The

5    reaction of the class has been favorable.

6         The historic use of the percentage of the fund

7    method in this district and this circuit, the benefits of

8    that include to conserve judicial resources, eliminate

9    disputes about the reasonableness of rates and hours, to

10   align the interests of counsel with the interest of the

11   class, and is typical in this type of litigation.  And it's

12   within the range of other class action fees in this district

13   and this circuit.

14        Direct purchaser counsel vigorously and effectively

15   pursued the case on behalf of Airflow Catalyst Systems, Inc.

16   and the class.  We investigated the facts.  We studied the

17   industry.  We worked closely with our client.  Ceramic

18   substrates are -- it's amazing, Your Honor, with all these

19   different auto parts.  Every one is a little bit different

20   and ceramics substrates is no exception.

21        Airflow Catalysts was very helpful in educating us

22   about that particular part of the automotive parts industry.

23   We have reviewed massive amounts of documents and coded them,

24   documents produced to the DOJ, in particular.  We

25   investigated, we consulted with experts.  We had extensive

*In Re Automotive Parts Antitrust Litigation*

1    arm's-length negotiations through mediators and directly with

2    defendants.  We prepared many court papers.  We litigated

3    motions to dismiss and other motions.

4         I want to just stress another point here.  We are up

5    against some of the finest defense firms in the world in this

6    case.  So plaintiffs' counsel, we have to bring our best to

7    this case every day.  And we never underestimate the

8    difficulty of a case like this.  So that's the work we did.

9         THE COURT:  Mr. Hansel, I do know that at least part

10   of the case went up against the Marine Corps seeing Mr.

11   Herrmann over there.  Go ahead.

12        MR. HANSEL:  Yes, Your Honor.

13        So the Sixth Circuit factors, as the Court has

14   noted, include the value of the services on an hourly basis.

15   In this case, the lodestar through April 30 is 3.3 million,

16   which translates into a lodestar multiplier of 1.56, which is

17   well within the range in similar cases, including similar

18   cases in this MDL.  The actual request of 30 percent after

19   deducting fees and -- sorry, after deducting costs, and

20   expenses, and incentive awards, the fee request amounts to

21   $5,171,087.93.

22        We ask that the Court authorize interim lead counsel

23   to allocate the fee among all of the different law firms who

24   contributed.

25        We are, as lead counsel, most familiar with what

*In Re Automotive Parts Antitrust Litigation*

1    everyone has done to advance the case.  The number of hours

2    invested by direct purchaser counsel as of January 31 of this

3    year was 5,672 hours, and we would add to that the hours

4    since then, which we don't have today, but there were

5    additional hours.

6          We are also seeking from the Court an award of

7    litigation expenses in the amount of $63,040.24, not

8    including telephone, fax, and internal copying.

9          And we are seeking a service award or incentive

10   award to the class representative Airflow Catalysts, Inc. in

11   the amount of $25,000.  They have been very helpful, and

12   diligent, and I might add are extraordinarily knowledgeable

13   about the science behind catalytic converters and ceramic

14   substrates, which is actually really helpful in understanding

15   issues in the lawsuit.

16         They spent a lot of time with counsel.  They

17   assisted us in many ways.  We kept them apprised.  They were

18   not promised an incentive award, and they've been a stalwart

19   class representative.  So we request that incentive payment.

20         And then I'll just conclude by saying again there

21   have been no objections, and that is a strong indication of

22   support from the class.

23         Thank you, Your Honor.

24         THE COURT:  Thank you.

25         Anything further from the defense?  Okay.

*In Re Automotive Parts Antitrust Litigation*

1          The Court will grant the motion.  The Court finds

2    that your request for attorney fees are reasonable under the

3    circumstances.  The Court grants request to use a percentage

4    of fund approach.  The Court has considered the *Ramey*

5    factors, has considered the value of the benefit rendered,

6    society's stakes in rewarding attorneys who provide such

7    benefits in order to maintain incentive to others, whether

8    the services were undertaken on a particular fee basis, the

9    complexity of the litigation, professional skill and standing

10   involved on both sides, and the value of the services on an

11   hourly basis.  The motion is granted.

12          And, last but not least, I believe it's Mr. Kohn.

13          MR. KOHN:  That's correct, Your Honor.  Joseph Kohn

14   again for the direct purchaser's in the valve timing control

15   case.  If Your Honor, please, I would like to simply

16   incorporate, if I may, the arguments of my colleagues

17   bringing up the rear here as I am, with respect to the legal

18   standards and the case law with respect to these issues, and

19   again, just touch on them, the particular specifics of this

20   case.

21          We seek a similar order which would direct that the

22   lead counsel allocate the fees among all counsel.  There were

23   a total of eight firms in the action, including the five

24   firms that you see here today; three additional firms.  We

25   all worked cooperatively together on the matter.

44

*In Re Automotive Parts Antitrust Litigation*

1        The total settlements again amounted to $2,719,274.

2   We are requesting reimbursement of out-of-pocket expenses of

3   $22,208.59.  And the details of those are set forth in the

4   particular affidavits and summaries from each of the law

5   firms.

6        We then are respectfully requesting the Court award

7   a 30 percent fee as you have approved in these other matters

8   this morning, from the amount, after deducting the costs

9   first, and that would produce a fee of $809,119.62.

10       The time in this matter was principally spent on a

11  number of items.  One, the review of the Department of

12  Justice documents.  Secondly, there was a motion practice,

13  including, as I mentioned earlier, some unique motion issues

14  relative to defenses that -- I think Defendant Aisin was

15  asserting, which also related to issues involving the extent

16  of the class period, which did involve some extensive

17  briefing, and actually had prepared complaints to be filed in

18  other jurisdictions pursuant to their defense, which was then

19  part of our settlement negotiations with them, and then

20  obviously the preparation of all the settlement documents,

21  the claim forms, the analyses, and et cetera.

22       The total lodestar in the case which we had updated

23  for the Court is $1,061,033.25.  Therefore, the requested 30

24  percent fee, if approved, would represent a fractional or a

25  negative multiplier, if you will, of the .76 or 76 percent of

*In Re Automotive Parts Antitrust Litigation*

1    that time at the hourly rate.

2          Again, as with the other matters, I'm pleased to

3    report no objections from any of the sophisticated class

4    members that were referred to earlier, and that the 30

5    percent figure, in addition to the precedent Your Honor has

6    set this morning, and that these rulings is consistent with

7    decisions that remained earlier in this case in the air

8    conditioning systems case, and in the alternator's case,

9    among others, and the extensive list of cases we included in

10   our briefing.

11         With respect to the incentive award, we request

12   respectfully in this case a $25,000 award to the class

13   representative.  All European Auto Supply did everything

14   needed, everything requested of it, and as in some other

15   cases, it was the sole plaintiff.

16         There have been incentive awards in various cases in

17   the auto parts and in other ligations where there are a

18   number of plaintiffs.  So that this $25,000 payment is the

19   sum total of any incentive award.  And if they had not

20   stepped forward and undertaken the burdens and everything

21   that went with it, there would have been no recovery of any

22   kind for the class members.  And again, that $25,000 award is

23   in line with some other decision, including the power window

24   case, and less awards in some other cases, including the wire

25   harness case where there was much more extensive requirement

*In Re Automotive Parts Antitrust Litigation*

1    of the class representatives.  So I believe that's the

2    appropriate number for this matter.

3            So again, unless Your Honor has other questions for

4    me, we would respectfully rest on our papers and request Your

5    Honor's approval.

6            THE COURT:  Thank you Mr. Kohn.  Anyone from the

7    defense?

8            MR. IWREY:  Nothing from Aisin Seiki, Your Honor.

9    Thank you.

10           THE COURT:  Great.  All right.  The Court finds that

11   the request of attorney fees is reasonable under the

12   circumstances.  The Court will grant the request, the

13   percentage of the fund approach.

14           The Court has considered the value of the benefit

15   rendered, society's stake in rewarding attorneys who produce

16   such benefits in order to maintain an incentive to others,

17   whether the services were undertaken on a contingent fee

18   basis, the complexity of the litigation, professional skill

19   and standing of counsel involved on both sides, and the value

20   of the services on an hourly basis.  So the motion is

21   granted.

22           Any other issues for me today, Mr. Fink or Mr.

23   Iwrey?

24           MR. D. FINK:  Yes, Your Honor.  There is one issue I

25   just called to the Court's attention, and that is, that

*In Re Automotive Parts Antitrust Litigation*

1    although we had, pursuant to the procedure Judge Battani

2    established, we had submitted orders, eight orders earlier.

3    We have since submitted eight revised orders which update the

4    orders regarding -- well, first of all, of course, the name

5    of the Court and the name of the judge, the details about

6    opt-outs, and the accurate percentage on the lodestar

7    multiplier.

8            So I assume that Ms. McCoy has seen those, but I

9    just want to make sure that the Court is aware, of course

10   Nate, who will be getting an appropriate partnership share

11   increase, can speak to the details since he submitted them.

12           THE COURT:  It's my understanding that -- I'm aware

13   of the original orders and the revised orders.  I have to

14   work through that because in my conference table next door

15   there's a lot of paper on this file, and basically as you

16   know the Court has been shut down and I've been unable --

17   I've got the papers right now.  So I think that Howard and I

18   and my staff will have to kind of get the revised orders

19   entered.  And I don't know if there's any further tweaks or

20   not.  I've just got to work my way through the paper.

21           I understand how much everyone wants these orders

22   entered, and believe me, it's my plan to get them entered as

23   soon as possible, but we're probably going to need some more

24   help from Nate and Howard, okay?

25           MR. IWREY:  Not a problem.

48

*In Re Automotive Parts Antitrust Litigation*

1        THE COURT:  Anything else before we close?  All

2   right.  Thank you very much.  See you later.

3        DEPUTY COURT CLERK:  Court is in recess.

4        (Court in recess at 12:41 p.m.)

5                    *       *       *

6

7

8

9

10

11

12

13

14            **C E R T I F I C A T I O N**

15        I, Marie J. Metcalf, Official Court Reporter for the

16   United States District Court, Eastern District of Michigan,

17   Southern Division, appointed pursuant to the provisions of

18   Title 28, United States Code, Section 753, do hereby certify

19   that the foregoing is a correct transcript of the proceedings

20   in the above-entitled cause on the date hereinbefore set

21   forth.

22        I do further certify that the foregoing transcript

23   has been prepared by me or under my direction.

24   s\Marie J. Metcalf                    August 12, 2020

25   Marie J. Metcalf, CVR, CM              (Date)